REDACTED VERSION

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SOLAS OLED LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> SAMSUNG DISPLAY CO., LTD., et al., <br><br> *Defendants.* | Case No. 2:19-cv-00152-JRG |

**PLAINTIFF SOLAS OLED LTD.'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S AMENDED INFRINGEMENT CONTENTIONS**

**REDACTED VERSION**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT................................................................................................................... 1

    A. Samsung Waited Until The Last Week Of Discovery To Raise Its Objection With Solas, and Waited until Another Month To File Its Flawed Motion--Both Facts Are Procedurally Fatal to the Sweeping Sanction it Seeks..................................................... 1

    B. Now That Opening and Rebuttal Expert Reports Have Been Served, There Is No Real Dispute that Solas's Representative Charts Are--And Always Were--Actually Representative, Which Confirms Samsung's Motion Also Has Fatal Defects On Its Substance ........................................................................................................................ 6

    C. Samsung's Cited Cases Are Inapposite--If Anything, They Prove That Samsung Waited Far Too Long To Bring Its Defective Motion And That There Is No Legal Support For The Exclusionary Sanctions It Seeks ...................................................... 10

    D. There is Good Cause to Add the Additional Six Representative Products—and No Articulable Prejudice to Samsung In Doing So.......................................................... 14

III. CONCLUSION ............................................................................................................. 15

**REDACTED VERSION**

I.     **INTRODUCTION**

        Samsung waited until the last weeks of fact discovery to object that Solas's contentions were deficient for relying on representative products. Now, after expert reports and nine months after Solas first served its infringement contentions, it seeks the extreme sanction of eliminating the vast majority of its products from Solas's case. Solas has one theory of infringement for each of the asserted patents, which it disclosed last October and has maintained throughout. Both sides' experts on infringement present materially identical theories across all accused products, repeating the same text to apply those theories to the different accused products. If Solas had provided separate charts for each product in its contentions, the descriptions of its theories would likewise have been identical. This untimely motion should be rejected.

II.     **ARGUMENT**

    A.     **Samsung Waited Until The Last Week Of Discovery To Raise Its Objection With Solas, and Waited until Another Month To File Its Flawed Motion-- Both Facts Are Procedurally Fatal to the Sweeping Sanction it Seeks**

        Samsung has been aware, from the date it received Solas's initial Preliminary Infringement Contentions on October 7, 2019, that the infringement charts prepared and served by Solas as part of its Patent Rule 3-1 and 3-2 disclosures were intended to be representative of Solas's infringement theory against all of the accused products. Solas's claim charts expressly identify the infringement theories mapped therein as being applicable all accused products under the three asserted patents. *See, e.g.*, Dkt. 117-1, at 13-44 ('450 patent infringement chart), 46-61 ('338 patent chart), 63-87 ('311 patent chart). Those claim charts fully disclosed Solas's infringement theories, and it is those theories that Solas's infringement expert applied in expert reports to opine on infringement.

        Samsung' motion is not only a belated effort to strike the majority Solas's infringement case, it belies Samsung's course of conduct during discovery. Throughout the majority of the multiple meet and confers regarding alleged deficiencies in Solas's infringement contentions, Samsung did not object to Solas's reliance on the representative nature of the claim charts served with its infringement contentions. In fact, the substance of Samsung's allegations about

1

purported deficiencies in Solas's infringement contentions is detailed in Samsung's own meet-and-confer correspondence, which was filed with the motion at Dkt. 117-2.

The first time Samsung raised any alleged deficiencies in Solas's infringement contentions was on February 7, 2020, during a meet and confer scheduled for discussing document production topics not at issue in this motion. During that meet and confer, counsel for Samsung stated that it believed "Solas [was] advancing different infringement theories for certain of the products that are accused in the present litigation for which Solas has not served claim charts." Dkt. 117-2, at 22 (email from Samsung counsel to Solas). Specifically, Samsung complained that the theories of infringement advanced by Solas in separate cases pending in the Western District of Texas against other defendants were potentially "different" from the theories Solas disclosed in its infringement contentions against the Samsung Defendants here. *Id.* Samsung identified four claims (claims 3, 12 and 13 of the '450 patent, and claim 9 of the '338 patent) as support for their suggestion that Solas had advanced different theories against defendants sued in the Western District of Texas. *Id.* Defendants said: "Insofar as Solas is relying on different infringement theories for certain accused products, we requested that Solas promptly supplement its infringement contentions to include detailed claim charts disclosing such theories and the accused products that you contend fall under those theories . . . ." *Id.*

During that February 7, 2020 meet and confer, counsel for Solas informed Defendants that its claim charts were "representative" and that the theories of infringement were identical across the accused products listed in the cover pleading of its infringement contentions. Defendants acknowledged this in their February 10, 2020 email memorializing the February 7, 2020 meet and confer. *Id.* Defendants did not request that Solas generate individual claim charts for each of the accused products. As Defendants were and are aware, the designs of the accused products are materially identical for purposes of infringement.

Samsung sent another email to Solas on March 4, 2020 which again mentioned alleged deficiencies in Solas's contentions. Dkt. 117-2, at 16-18 (March 4, 2020 email from Daniel Cho to James Tsuei). Defendants' March 4, 2020 email asked for identification of the "factual basis"

for four claims it raised in its February 10 email. *Id.* Samsung asked whether Solas would "be withdrawing its infringement allegations" as to those specific claims. Defendants also asked for "claim charts disclosing each of your infringement theories for the products listed in Solas's infringement contentions." *Id.* Samsung's counsel emailed again on March 9, reiterating objections to Solas's allegations of infringement of claims 3, 12, and 13 of the '450 patent, and claim 9 of the '338 patent. Dkt. 117-2, at 15 (March 9, 2020 email from Daniel Cho to James Tsuei). Neither of these March 2020 emails alleged that Solas could not rely on its representative charts to disclose its infringement theories.

On March 12, 2020, in response to Samsung's requests, Solas provide amended representative claim charts for the '450 and '338 patents that provided the factual basis that Defendants had specifically requested for claims 12 and 13 of the '450 patent and claim 9 of the '338 patent. *See* Declaration James S. Tsuei ("Tsuei Decl.") ¶ 6. Solas's amended claim chart for the '450 patent also removed claim 3 from the case, which Solas elected to do at Defendants' request and after reviewing discovery produced in the case. *Id.*

The parties met and conferred on March 13, 2020 and discussed Samsung's allegations. *Id.* ¶ 7. During that meet and confer, Solas again informed Samsung that the claim charts were representative of the accused products and that the infringement theory expressed in those charts was applicable to the accused products. Samsung, again, confirmed that the substance of its complaints was related to purported differences in infringement theories between this case and other cases against third-parties in the Western District of Texas. *See id.*; Dkt. 117-2, at 13 (March 13, 2020 email from Daniel Cho to James Tsuei). Notably, Defendants stated:

> "With respect to Solas's infringement contentions, ***insofar as Solas is relying on different infringement theories for certain accused products***, we again asked that Solas supplement its infringement contentions to include detailed claim charts disclosing such theories and the accused products that it contends fall under those theories."

*Id.* (emphasis added). As was clear from the parties meet and confer (and as reflected in Samsung's own correspondence), Samsung's objections were limited to the factual basis of

3

dependent claims from the '450 and '338 patents. Samsung did not complain about any alleged problem with the representative nature of the product charted in Solas's claim charts.

In response to Samsung's specific demand during the March 13, 2020 meet and confer, Solas served a second amended claim chart for the '450 patent on March 20, 2020, which provided additional factual basis for Defendants' infringement of claims 12 and 13 of the '450 patent. *See* Dkt. 117-4, at 15-16.

Samsung sent another email on April 10, 2020, where they complained that there were still "clear inconsistencies" in Solas's amended infringement contentions. Dkt. 117-2, at 8-9 (April 10, 2020 email from Daniel Cho to James Tsuei). Defendants said: "In particular, to the extent that Solas is relying on different factual theories of infringement for different subsets of accused products," Samsung demanded "Solas amend its contentions to identify those different theories." *Id.* at 9. Again, Samsung did not suggest that the representative aspect of Solas's charts was deficient. To the contrary, Samsung acknowledged that the theories expressed in Solas's representative claim charts were applicable to the other accused products. *Id.* (requesting that Solas "confirm that Solas's factual infringement theories for the Galaxy S6 and Galaxy S7 Edge are identical to those identified for the Galaxy S8").

The parties conferred on April 15, 2020, which was memorialized by Samsung in an April 17, 2020 email. *See* Dkt. 117-2, at 6. Again, Samsung reiterated its concern about potentially different infringement theories being used in the forthcoming expert reports in the case: "With respect to Solas's infringement contentions, insofar as Solas is relying on different infringement theories for certain accused products, we reiterated our request that Solas supplement its infringement contentions to include detailed claim charts disclosing all such theories and clearly identifying the accused products that it contends fall under each theory." *Id.* Defendants did not identify any additional "inconsistencies" Solas's infringement theories.

This pattern continued the next email sent by Samsung, on May 1, 2020, which purported to memorialize the parties' April 29, 2020 meet and confer. Dkt. 117-2, at 3-4. In that email, Samsung demanded supplemental contentions from Solas "based on Defendants' technical

4

documents." *Id.* at 3.  On May 6, 2020, counsel for Samsung sent an email demanding that Solas identify "Solas's factual basis for contending limitations are met or identify the theory under which Solas contends the limitation is met." Dkt. 117-2, at 2. Samsung also complained in this May 6, 2020 email, for the first time, that it was supposedly confused about the infringement theories for all but the charted products. *Id.* at 2 (alleging that Solas's contentions "has not clearly disclosed its infringement theories for the accused products"). This was inexplicable, as Solas had been clear all along that the theories in its representative claim charts were meant to be applicable to all accused products. Solas provided its final set of supplemental infringement contentions on May 17, 2020. In those contentions, Solas dropped certain products and claims, which was the product of Samsung's continued insistence and Solas's decision to narrow its case in the normal course of discovery.

On May 22, 2020, during the last week of discovery and in the midst of numerous depositions, Defendants emailed Solas and alleged that although Solas had charted a representative product in its charts, "that product is not representative of all of the accused products." *See* Dkt. 117-8, at 4-5 (May 22, 2020 email from Grant Johnson to Solas). This was the **<u>first time</u>** that Samsung had alleged that the product charted in Solas's charts were "not representative." But, as demonstrated below, Samsung was, and is, wrong.

Solas served its infringement expert report on June 1, 2020 in accordance with the controlling Docket Control Order, which identified the final set of products accused of infringement ("Currently Accused Samsung Models"). Solas's expert report (attached to the Tsuei Declaration as Exhibit 1) confirmed what Solas had said all along: that Solas's infringement theory for each of the Currently Accused Samsung Models was contained in its representative claim charts, and that there were no "inconsistencies" in infringement theory from accused product to accused product.

In fact, in a meet and confer after the parties exchanged initial expert reports, counsel for Solas confirmed verbally and (later in writing) that Solas would "not present new infringement theories in our report regarding reads for which Samsung does not currently have notice." Dkt.

117-8, at 2 (June 2, 2020 email from Reza Mirzaie to Daniel Cho). And, as Solas noted further, "Samsung has had notice of our reads through our charts on actually representative models--and specifically identified models--for many months now," including through "exemplary documents (down to the pincite)." *Id.*

Notably, Samsung's motion does not identify any allegedly "undisclosed" infringement theory or any "material" differences between the Currently Accused Samsung Models. It cannot, because Solas's infringement theory is consistent across the Currently Accused Samsung Models for each of the asserted patents, and (as explained below) there are no differences in the Currently Accused Samsung Models material to infringement.

  **B. Now That Opening and Rebuttal Expert Reports Have Been Served, There Is No Real Dispute that Solas's Representative Charts Are--And Always Were-- Actually Representative, Which Confirms Samsung's Motion Also Has Fatal Defects On Its Substance**

It is telling that Samsung's motion does not identify any differences between the accused products that would prevent the charts in Solas's infringement contentions from placing Samsung on notice of its infringement theories for all the products it now accuses. In fact, there are no such differences that are material to Solas's theories.



The '450 and '338 patent claims are both directed to the circuits that drive each of the pixels making up an OLED display. Each claim recites elements of these circuits such as transistors, capacitors, and electrodes. These circuits are nearly identical across all of the accused products, and Solas's infringement theory for each of them is the same. Solas determined the

6

design of Samsung's circuits through costly tear-down and reverse engineering of a number of representative Samsung products, producing imagery such as that above. Dkt. 117-3 at 24 of 89.

It would not have been cost-effective or reasonable for Solas to perform this same costly reverse engineering for every OLED product that Samsung sells. It also was unnecessary. As Samsung's own expert explains in his non-infringement report, "███████████ ███████████████████████████████████████████████████████████████████." Ex. 2 (Samsung non-infringement rebuttal report), at 8.[1] This ███████████ ███████████████████████████████████████:



*Id.* at 10.

As Solas's expert, Mr. Credelle explains, not only is ███████████ ███████████████████████████████████████: "███████████ ███████████████████████████████████████'" Ex. 1 (Solas infringement expert report), ¶¶ 127–128. Mr. Credelle explains how the ███████████████████████████████████ ███████████.[2] *Compare* Ex. 1, ¶ 127, *with id.* ¶ 128.

---

[1] Citations to exhibits refer to exhibits attached to the concurrently-filed Tsuei Declaration, unless otherwise noted.

[2] ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ *Compare* Ex. 1, ¶ 127, *with id.* ¶ 128.

Because of the tremendous similarities among the accused products, Mr. Credelle did not have to present different infringement theories for different products under the '450 and '338 patents. Indeed, the body of his 100-page infringement report presents a single infringement theory for each patent, which applies across all the products. Ex. 1, ¶¶ 109–139. Mr. Credelle then provided Exhibits to his report that identified specific documents with infringement evidence for each product, but these exhibits do not present different infringement theories. Indeed, a review of these exhibits reveals that the text and annotations in each are nearly word-for-word identical, with the only differences being in the names of the products and in the Samsung documents that are referenced. *Compare, e.g.*, Ex. 5 with Ex. 6.

Samsung's expert, Dr. Fontecchio, also did not provide non-infringement opinions that differ among the accused products. Rather, he discusses all accused products in a single section, *e.g.* Ex. 2, ¶¶ 149–154, or he repeats the exact same paragraphs verbatim to present the same non-infringement arguments across all the products, *e.g. id.* ¶¶ 76–97, 102–148, 161–182, 188, 192.

The sole exception to this, where Dr. Fontecchio does distinguish among the accused products in his non-infringement analysis, is in an argument he makes concerning the "interconnections" limitation in the '338 patent. In each product, Solas points to "wavy strips" as the "interconnections," but Dr. Fontecchio distinguishes ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *Id.* ¶¶ 220–229. According to Dr. Fontecchio, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

But the representative product that Solas used in its infringement contentions for the '450 and '338 patents is the Samsung Galaxy S8, a product that does not have ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See, e.g.*, Dkt. 117-4 at 1, 7; Ex. 2, ¶ 226. The ▉ do not form part of the infringement theory in Solas's contentions, and they are not something that Mr.

8

Credelle relies on to show infringement for any product. Ex. 1, ¶¶ 133–134. The infringement theory for the interconnections based upon the wavy strips and set forth in Solas's contentions applies to all of the accused products.

Solas only has one infringement theory for the '450 and '338 patents, as shown by the fact that both Solas's expert and Samsung's expert repeat the same text verbatim when setting forth their respective theories for different products. If Solas had provided separate charts in its infringement contentions, as Samsung suggests it should have, those charts too would have cut and pasted identical text, setting forth the identical theories, for each accused product. Nothing in the Patent Rules or in the cases cited by Samsung suggests that such an exercise in redundancy was required.

The remaining asserted patent, the '311 patent, is broadly speaking directed to the use of a metal mesh sensor that wraps around one or more edges of a display. The representative product '311 patent that Solas used in its infringement contentions for the '311 patent is the Samsung Galaxy S9, a product that utilizes a display module produced by Samsung under its Y-OCTA program. As Solas's infringement expert demonstrated, the Samsung models he analyzed for infringement were similar and that the S9's sensor (which was charted by Solas) was representative: "" Ex. 1, ¶¶ 143-44 (emphasis added):



9

Samsung's noninfringement expert for the '311 patent, Dr. Konstantinos Sierros, did not disagree. *See* Ex. 4, at 76:18-77:6. Dr. Sierros also did not provide non-infringement opinions that differ among the accused products. Rather, he discusses all accused products in a single section, or he repeats the exact same paragraphs verbatim to present the same non-infringement arguments across all the products, *see, e.g.* Ex. 3 ¶¶ 88–105, 106–150. Likewise, Solas's technical expert attached product-specific infringement charts to his infringement report, but those exhibits do not present different infringement theories. A review of these exhibits reveals that the text and annotations in each are virtually identical, with the only differences being in the names of the products and in the Samsung documents that are referenced (as well as the figures excerpted from those documents). *Compare, e.g.*, Ex. 6 with Ex. 7.

Likewise, Solas only has one infringement theory for the '311 patent. Both Solas's expert and Samsung's expert repeat the same text verbatim when setting forth their respective theories for different products. As with the '338 and '450 patents, if Solas had provided separate charts in its infringement contentions for each accused product, those charts too would have cut and pasted identical text, setting forth the identical theories, for each accused product. Again, nothing in the Patent Rules or in the cases cited by Samsung suggests that such an exercise in redundancy was required.

> C. **Samsung's Cited Cases Are Inapposite--If Anything, They Prove That Samsung Waited Far Too Long To Bring Its Defective Motion And That There Is No Legal Support For The Exclusionary Sanctions It Seeks**

None of Samsung's cited cases support the exclusionary sanction it seeks. Samsung's primary authority, *Alacritech Inc. v. CenturyLink, Inc.*, No. 216CV00693JRGRSP, 2017 WL 3007464 (E.D. Tex. July 14, 2017), is inapposite. In *Alacritech*, the court ordered the plaintiff to either (1) chart every model identified in its contentions, or (2) "explain and support, as part of its contentions, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between the accused products that affect its infringement theories for the uncharted products relative to the charted products." *Id.* at \*5.

10

Unlike in *Alacritech*, however, Samsung never established that the uncharted accused products (inclusive of the Currently Accused Samsung Models) were materially different from the products charted in Solas's representative claim charts. In *Alacritech*, the defendant served "interrogatory responses that detailed a number of differences between the [charted] 82599 controller and the uncharted products." *Id.* at *4. To that point, the court found that the plaintiff should "explain the basis for the equivalency" between the charted and uncharted products and, if it chose to do so, should "specifically address in detail the allegedly material differences raised by Intel in its motion and correspondence." *Id.*

Here, Samsung never even attempted to identify allegedly material differences between in the accused products relevant to Solas's infringement theories, in either correspondence or this motion. To the extent Defendants genuinely believe there are "differences" between its products that have caused Solas to reply on undisclosed infringement theories (which, to be clear, Solas does not believe is the case), they waited too long to raise the issue. As the court in *Alacritech* confirmed, a plaintiff need not "chart every accused instrumentality if its contentions otherwise provide sufficient notice … of its infringement theories." *Id.* Notwithstanding Defendants' late objections, they had notice of the infringement theories in Solas's claim charts and, despite having the benefit of the expert report of Solas's infringement expert prior to filing this motion, ***still*** has not identified any alleged "new" theory of infringement for which it was not put on notice.

*UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496, 2013 WL 12140173 (E.D. Tex. May 28, 2013), does not support Defendants. There, the court ordered the plaintiff to supplement its infringement contentions because they "fail to chart all of the elements of the asserted claims" and did not show the charted product was "actually representative." *Id.* at *2. Defendants to not argue here that Solas failed to chart all elements of the asserted claims (which it did). As for whether the products charted in Solas's charts were "actually representative," Defendants failed to make that objection until the last week of discovery. In any event, the charted products ***are*** representative, and Defendants have offered no explanation why they are not.

Similarly, in *Jaipuria v. Linkedin Corp.*, No. 6:11-CV-00066, 2013 WL 12146741, at *3 (E.D. Tex. Mar. 27, 2013), the problem with the plaintiff's contentions was that they tried to bring within the scope of the infringement case an uncharted website "related to the charted website" with a "footnote" which stated that the uncharted website was "encompassed by the infringement contentions." *Id.* This, the court held, did not provide sufficient notice of the "infringement theories regarding this product." *Id.* Not so, in our case. Solas has never hid the ball on its infringement theory: Defendants' OLED displays and touch sensor-enabled display modules across the Currently Accused Samsung Models are materially identical with respect Solas's infringement theories, and Solas said so, multiple times, throughout this case in meet-and-confer. And, until the very last week of discovery, Defendants never disputed this fact and certainly had notice of the infringement theories relied upon by Solas's infringement expert as soon as Solas served its initial infringement contentions in October 2019.

The court's order in *Uniloc 2017 LLC, v. Google LLC*, No. 2:18-cv-00491-JRG-RSP, slip op. at 2 (E.D. Tex. March 27, 2020) (Dkt. 117-9), also does not support Defendants' motion. There, the plaintiff had failed to show how any of the uncharted products were similar to charted products and could not simply "identify the other uncharted products" to meet its obligations under the Patent Rules. *Id.* In this case, there was never any confusion how the accused products were similar: they are mobile devices that have OLED displays and touch sensors designed by Samsung which are materially identical for infringement. The fact that Samsung did not even suggest otherwise until the last week of discovery, despite having been on notice of Solas's infringement theories since October 2019, underscores the reality here: Defendants' motion is gamesmanship based on alleged but otherwise unexplained confusion. In any event, Defendants' tardiness and lack of prejudice do not support the exclusionary sanctions they request.

*Tech. Properties Ltd. LLC v. Canon Inc.*, No. 14-3646-CW (DMR), 2015 WL 5118687 (N.D. Cal. Aug. 31, 2015), is instructive. The court there, applying the Patent Rules of the Northern District of California, held that a plaintiff "need only provide enough information to 'permit a reasonable inference that all accused products infringe'" and that the plaintiff "can rely

on representative products to meet its obligations under Patent Local Rule 3-1." *Id.* at *3. The applicability of the infringement theories disclosed in Solas's claim charts to the uncharted products was clear from the beginning, and Defendants did not claim otherwise until the last week of discovery. Even now, Defendants are mum on what "differences" in the products exist that affect infringement. *See id.* at *5 ("Importantly, Defendants do not assert that different controllers and connectors function differently, nor do they explain how variations between the components render the representative products unrepresentative of the uncharted products. It is telling that Defendants failed to identify any material differences in the joint letter.").

Likewise, the court in *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099-JST, 2013 WL 5545276 (N.D. Cal. Oct. 8, 2013), rejected the defendant's effort to exclude from the case, on summary judgment, all accused products that were not charted as part of the plaintiff's infringement contentions. *Id.* at *2-*4. The court in *ASUS Computer* faulted the defendant for, among other reasons, waiting too long (as Defendants have done here) to complain about the plaintiff's use of "representative" claim charts. *Id.* at *2-*3.

Finally, in *ParkerVision, Inc. v. Qualcomm Inc.*, No. 6:14-CV-687-ORL, 2015 WL 4751354, at *2 (M.D. Fla. Aug. 11, 2015), the court rejected defendant Samsung's motion to strike certain accused products from the case which the plaintiff had not charted but instead relied upon a chart of a representative product. As the court noted: "The purpose of infringement contentions is to provide the defendant with notice of the plaintiff's theories of infringement beyond what is disclosed in the complaint. Additionally, where a plaintiff accuses a large number of products and asserts that each accused product infringes the asserted technology in the same way, a representative accused product can be used to outline the plaintiff's infringement contentions against other accused products." *Id.* at *3 (citation omitted). Notably, Samsung in *Parkervision* "t[ook] no issue with ParkerVision's infringement contentions against the [charted] Qualcomm-based accused products" (*id.*), much as it does not take any issue with the sufficiency of Solas's charts as to the specific, charted product. In any event, "to the extent Samsung contends [plaintiff] is mistaken in its belief that the [non-charted] acused products function in the

13

same manner as the [charted] accused products, Samsung essentially asks the Court to address the merits of [plaintiff's] case, which is inappropriate at this juncture." *Id.* The result in *Parkervision* should occur here: "[Solas] will ultimately live and die by its contentions. As the infringement contentions currently stand, [Solas] provides Samsung adequate notice of its case against each accused product. Should [Solas] be incorrect or impermissibly vague in its theories of infringement, those are issues Samsung can pursue on summary judgment or at trial." *Id.*

> **D.  There is Good Cause to Add the Additional Six Representative Products— and No Articulable Prejudice to Samsung In Doing So**

As explained above, Solas was required to perform costly reverse engineering of representative products to prepare its infringement contentions. It then made reasonable inferences concerning what other Samsung products were likely made in the same ways as the products that it reverse-engineered. It was not until Samsung produced its confidential technical documents in this case that Solas was able to determine definitely which products had the features Solas accused of infringing and which did not, and thus to determine whether there were additional infringing products beyond those in Solas's existing contentions.

Both Samsung's production of these documents and Solas's review were delayed from the typical schedule under the Court's rules. First, Samsung's production of P.R. 3-4 documents was delayed by over a month as a result of its need to obtain approval from the government of South Korea to produce those documents in the United States. *See* Joint Motion to Modify Docket Control Order, Dkt. 58 at 1–2. Later, the developing COVID-19 pandemic disrupted Solas's review of documents and temporarily prevented Solas from reviewing Samsung's most sensitive technical documents, until the parties could make arrangements for Solas to review such documents remotely. *See* Agreed Temp. Amendment to Protective Order, Dkt. 116 at 1–2.

The nature of the documents produced by Samsung also delayed Solas's ability to determine whether there were additional infringing products for Solas to accuse. Solas's infringement contentions identified Samsung products using the marketing names of the end-user products, such as "Galaxy S8." Exhibit 1 at 3. However, Samsung's core technical documents do

14

not identify product marketing names, but instead use two-letter product codes for the display. *E.g.*, [Credelle, ¶ 115]; [Exhibit with first page of SDC0176442]. It was not until Samsung provided interrogatory responses on April 15 with correspondences between the internal product codes and the product marketing names that Solas had the information necessary to identify the marketing names of additional products that infringed the '338 patent. It performed this analysis and disclosed the additional infringing products on May 17, 2019. Ex. 6 at 3, 11.

Disclosure of these six additional infringing products for the '338 patent on May 17 did not prejudice Samsung. Each of the six products (S5, S6 Edge+, Note3, Note 4, Note Edge, and Note 5) had already been accused of infringing either the '450 patent, the '311 patent, or both in Solas's original October 7, 2019 infringement contentions, so each was already part of the case. Ex. 1 at 2–4. Solas did not need and did not seek any further discovery concerning these products that was specific to the '338 patent. And, as explained above, Solas's '338 patent infringement theory for these six products is identical to that it disclosed for the other products in October 2019.

As described in Samsung's motion and above, Samsung had specifically requested that Solas supplement its contentions, and Solas had previously amended its contentions to address Samsung's requests and to add further Samsung products, without Samsung suggesting that a motion was required for leave from the Court. Dkt. 117 at 2–4. However, to the extent that leave from the Court was required to add these products, Solas respectfully moves for such leave now.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to strike should be denied.

| | |
|---|---|
| Dated: July 15, 2020 | /s/ *Reza Mirzaie* |

Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Kent N. Shum
CA State Bar No. 259189
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone: 310-826-7474
Email: mfenster@raklaw.com
Email: rmirzaie@raklaw.com
Email: nrubin@raklaw.com
Email: kshum@raklaw.com

Sean A. Luner
CA State Bar No. 165443
Gregory S. Dovel
CA State Bar No. 135387
Jonas B. Jacobson
CA State Bar No. 269912
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
Telephone: 310-656-7066
Email: sean@dovel.com
Email: greg@dovel.com
Email: jonas@dovel.com

                    T. John Ward, Jr.
TX State Bar No. 00794818
Claire Abernathy Henry
TX State Bar No. 24053063
Andrea L. Fair
TX State Bar No. 24078488
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606
Telephone: 903-757-6400
Email: jw@wsfirm.com
Email: claire@wsfirm.com
Email: andrea@wsfirm.com

**ATTORNEYS FOR PLAINTIFF, SOLAS OLED LTD.**

17

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on July 15, 2020 with a copy of this document via the Court's ECF system.

DATED: July 15, 2020                                    Respectfully submitted,

                                                        By: /s/ *Reza Mirzaie*
                                                             Reza Mirzaie