```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                      MARSHALL DIVISION

 4   SOLAS OLED LTD.              )(

 5                                )(     CIVIL ACTION NO.

 6                                )(     2:19-CV-152-JRG

 7   VS.                          )(     MARSHALL, TEXAS

 8                                )(

 9   SAMSUNG DISPLAY CO.,         )(     SEPTEMBER 9, 2020

10   LTD., ET AL.                 )(     10:27 A.M.

11                      PRETRIAL HEARING

12          BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

13            UNITED STATES CHIEF DISTRICT JUDGE

14

15   FOR THE PLAINTIFF: (See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
16

17   FOR THE DEFENDANTS:(See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
18


19

20   COURT REPORTER:      Shelly Holmes, CSR, TCRR
                          Official Reporter
21                        United States District Court
                          Eastern District of Texas
22                        Marshall Division
                          100 E. Houston Street
23                        Marshall, Texas  75670
                          (903) 923-7464
24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

```
 1                          I N D E X

 2

 3  September 9, 2020

 4                                             Page

 5        Appearances                          1

 6        Pretrial Hearing                     3

 7        Court Reporter's Certificate         114

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Appearances ... 1
Pretrial Hearing ... 3
Court Reporter's Certificate ... 114

09:33:37 (line 7)
09:33:37 (line 8)

| 10:27:17 | 1 | COURT SECURITY OFFICER:  All rise. |
| 10:27:18 | 2 | THE COURT:  Be seated, please. |

10:27:24    3        All right.  Counsel, we'll continue the pre-trial

10:28:03    4   hearing in the Solas/Samsung case which we recessed after a

10:28:08    5   full day yesterday.

10:28:09    6        During the day yesterday, disputes arose between

10:28:14    7   the parties with regard to matters that were characterized

10:28:18    8   as requiring claim construction of the Court under 02 Micro

10:28:25    9   and similar precedent.

10:28:26   10        In an abundance of caution and to make ensure that

10:28:32   11   the Court fully discharges its obligation under the

10:28:35   12   guidance of the Federal Circuit, vis-a-vis 02 Micro, the

10:28:38   13   Court ordered targeted briefing by the parties overnight,

10:28:44   14   which I have received and reviewed.  And I'm prepared to

10:28:48   15   hear very targeted argument on the matters raised in the

10:28:55   16   briefing and as a part of yesterday's pre-trial,

10:28:58   17   particularly "said active elements" and "covers."

10:29:02   18        In light of all that we have before us and the

10:29:12   19   limited time in which we have to accomplish it, I'm going

10:29:15   20   to give each side 10 minutes to argue this as set forth in

10:29:19   21   the overnight briefing, and then I'll attempt to give you

10:29:21   22   some guidance.

10:29:21   23        Let me hear from Solas first on these two issues.

10:29:27   24        MR. MIRZAIE:  Thank you, Your Honor.

10:29:27   25        I have another slide deck, Your Honor.  May I

10:29:45   1   approach?

10:29:46   2             THE COURT:  You may approach.

10:30:03   3             All right.  Counsel, let's proceed.

10:30:07   4             MR. MIRZAIE:  Thank you.

10:30:08   5             So I'll begin with the first term, Your Honor, and

10:30:11   6   that's "said active elements."  As you see here in Slide 2,

10:30:16   7   there's an agreed on construction for the term "active

10:30:19   8   elements."  We discussed that yesterday.  And it's circuit

10:30:22   9   elements that have gain or that direct current flow, e.g.,

10:30:26   10  for example, transistors.

10:30:29   11            I wanted to give you an overview of the claim, as

10:30:33   12  we did yesterday, to show where that antecedent basis is,

10:30:37   13  Your Honor.  The antecedent basis is right there in the

10:30:43   14  first element and -- which says active elements, plural,

10:30:46   15  formed over said substrate.  And there's four instances in

10:30:52   16  which there's referral back to that act -- the active

10:30:56   17  elements using the said active elements term.

10:30:59   18            Now, the parties are not disputing that Samsung's

10:31:03   19  products have seven transistors.  All of them do.  But the

10:31:08   20  parties are disputing whether the legal -- legal scope of

10:31:11   21  the claim requires that active elements or said active

10:31:15   22  elements requires a showing that the relevant claim

10:31:19   23  requirements for all seven transistors must be met in

10:31:24   24  Samsung's products.  That's what the parties are disputing.

10:31:26   25            THE COURT:  I understand.  Samsung says, yes, and

| 10:31:28 | 1 | you say, no. |

10:31:28  1  you say, no.

10:31:29  2      MR. MIRZAIE:  Correct.  Samsung says, yes, despite

10:31:32  3  the fact that it's a comprising claim, the claim requires a

10:31:35  4  showing that the relevant claim requirements for active

10:31:38  5  elements is true -- is met for all seven transistors in

10:31:42  6  Samsung's products.  And a showing as to two is not enough

10:31:46  7  if there are five additional ones where you can't meet the

10:31:49  8  relevant claim limitations.

10:31:50  9      We take the -- the opposite position, as you know.

10:31:53  10      So starting with what the parties do agree on,

10:32:01  11  Your Honor.  The parties agree that the antecedent basis

10:32:05  12  term of "active elements" is two or more active elements.

10:32:10  13  So here on this slide, you see that -- as my colleague

10:32:14  14  stated yesterday, Dr. Fontecchio, their expert, agreed

10:32:17  15  that, quote, active elements, end quote, is met by two or

10:32:20  16  more active elements.

10:32:22  17      And he further agreed that Mr. Credelle points to

10:32:32  18  two active elements of the seven, T1 and T3.

10:32:36  19      So inserting that into the claim, what you see

10:32:39  20  here on Slide 10, Your Honor, is two or more active

10:32:42  21  elements.  The parties agree to that.

10:32:44  22      The next instance of the term is said two or more

10:32:47  23  active elements.

10:32:48  24      And the third, which is the -- the element in

10:32:53  25  which this dispute was brought before the Court, it's said

10:32:56  1  two or more active elements.

10:32:59  2        The -- the exact position was clarified yesterday,

10:33:04  3  as you suggested.  Samsung's counsel said that if there are

10:33:10  4  five in the products, all five must be met.  You can't have

10:33:14  5  two active elements that meet the claim requirements and --

10:33:17  6  and three that don't.

10:33:19  7        Now, this is how Samsung is reading it, according

10:33:23  8  to their -- their agreement to what the dispute is.  This

10:33:28  9  is the claim with the -- with the relevant limitations.

10:33:31 10  It's a display apparatus comprising two or more active

10:33:36 11  elements in the first -- in the first limitation.

10:33:41 12        Getting to the third limitation, the way that they

10:33:43 13  read it, just using what they represented in the briefs and

10:33:46 14  to the Court yesterday, two or more active elements is not

10:33:49 15  enough.  It has to be that there are no additional active

10:33:55 16  elements that don't meet those claim requirements.  They

10:33:58 17  made that clear in their representation to the Court

10:34:01 18  yesterday and in their briefs again last night.

10:34:03 19        Another way to view what Samsung is proposing here

10:34:07 20  is in -- black letter law on exactly how they're reading

10:34:12 21  this claim that two is not enough for that second instance

10:34:18 22  of said two or more active elements is that there are no

10:34:22 23  additional active elements.  That's the very definition of

10:34:27 24  applying a consisting of or a comprising only of, instead

10:34:32 25  of comprising.

10:34:33  1          That is exactly the universal definition of those

10:34:40  2  transitional phrases under patent law.

10:34:42  3          Another way to view it is that if it's not about

10:34:48  4  said active -- active elements, the first instance of

10:34:51  5  active elements can only be met so long as there are no

10:34:55  6  additional active elements that don't meet the claim

10:35:01  7  limitations.

10:35:02  8          THE COURT:  All right.  You've used about half of

10:35:04  9  the time, counsel.  Let's go on to cover, unless you have

10:35:11  10  something that you need to add.

10:35:12  11          MR. MIRZAIE:  Yes, I just wanted to add that not

10:35:15  12  only, as we talked about yesterday, is that a violation --

10:35:20  13  Samsung's proposal for active elements and said active

10:35:23  14  elements a violation of the universal term of patent law

10:35:26  15  convention by -- by violating comprising of, it's also,

10:35:31  16  Your Honor, a violation of this Court's constructions --

10:35:33  17  this Court's instructions to the jury, rather.

10:35:36  18          On Slide 26, we show an example of this Court's

10:35:39  19  consistently-applied instructions to the jury, and we

10:35:41  20  provide an example.  And it would violate that instruction.

10:35:44  21  So one way or another, we believe that Samsung's position

10:35:48  22  must be rejected; otherwise, it will violate one or more

10:35:52  23  rules.

10:35:52  24          And their attempt to distinguish the Gillette case

10:35:56  25  fails.  The Gillette case is directly on point.  In that

10:36:00  1  case, there were a group of three blades --

10:36:04  2          THE COURT:  I'm familiar with the Gillette case.

10:36:07  3          MR. MIRZAIE:  Thank you.  I'll move on to the

10:36:08  4  second term, Your Honor.

10:36:09  5          There -- the last point I'll make, actually, is

10:36:16  6  that their reasons for violating the universal patent

10:36:20  7  convention don't hold up.  There's no caselaw supporting

10:36:23  8  that the purpose of the invention -- A, it's not the

10:36:26  9  purpose of the invention; but, B, even if it were, it does

10:36:30  10  not overcome the universal convention here.  Neither does

10:36:33  11  all embodiments showing it.

10:36:34  12          Okay.  So cover.  Here's the dispute as to cover,

10:36:38  13  Your Honor.  It was captured yesterday by Your Honor.  They

10:36:41  14  say it means entirety of the item must be covered, 100

10:36:45  15  percent.

10:36:45  16          And we say it doesn't have to be 100 percent so

10:36:48  17  long as it is formed as to cover, as the claims state.

10:36:56  18  Formed as to cover, it just has -- it has to lie on the

10:36:59  19  surface of, consistent with the plain meaning.  It does not

10:37:04  20  have to be 100 percent.

10:37:05  21          Now, what the parties agree on -- I think it's

10:37:09  22  important to --

10:37:09  23          THE COURT:  You're telling me that both sides

10:37:11  24  agree that cover should be construed for the same use in

10:37:14  25  all instances?

10:37:15  1          MR. MIRZAIE:  That's -- that's also what I'm

10:37:17  2  telling you, Your Honor.  And it makes sense.  There's --

10:37:20  3  there's four instances of cover in this claim.  The Federal

10:37:24  4  Circuit law is quite clear that there's a strong

10:37:28  5  presumption that the term should be applied with the same

10:37:30  6  exact meaning each time it shows up.

10:37:34  7          This is a really important point, Your Honor.

10:37:38  8          THE COURT:  So cover means the same thing when

10:37:40  9  used for first electrode, insulation film, second

10:37:45 10  electrode, and OE layer?

10:37:47 11          MR. MIRZAIE:  Correct.

10:37:48 12          THE COURT:  Okay.

10:37:48 13          MR. MIRZAIE:  And the reason this is an important

10:37:51 14  point, Your Honor, is that Samsung's position -- it's

10:37:56 15  actually threefold for -- for why we can't be right about

10:37:59 16  what cover means, why it requires a hundred percent

10:38:03 17  coverage.

10:38:03 18          Their first one is that the object of the

10:38:06 19  invention is to -- is to prevent light -- prevent a hundred

10:38:12 20  percent of the light from coming into the transistor, and

10:38:14 21  that the term "cover," therefore, must be interpreted in

10:38:18 22  light of this patent and the, quote, unquote, object of the

10:38:22 23  patent in order to prevent a hundred percent of light.

10:38:25 24          The problem with that, Your Honor -- as you just

10:38:29 25  noted, the other three instances in which the term "cover"

10:38:32   1   is used are inconsistent with that -- that argument.

10:38:38   2   They -- they -- that premise is false in light of -- of

10:38:41   3   that issue.

10:38:44   4           THE COURT:  Let me ask you this, counsel.

10:38:46   5           MR. MIRZAIE:  Yes.

10:38:46   6           THE COURT:  Your briefing from overnight indicated

10:38:49   7   that you believed cover should be construed to be lie on

10:38:52   8   the surface of.  Are you now telling me that it should be

10:38:58   9   construed to be formed on as an alternative or a -- a

10:39:03   10   different construction than lie on the surface of?

10:39:06   11           MR. MIRZAIE:  We believe that the two are

10:39:08   12   interchangeable, Your Honor, because the -- the plain

10:39:10   13   meaning of cover and giving context with the contextual

10:39:15   14   claim language formed on so as to cover, the plain meaning

10:39:17   15   of that is to lie on the surface of.  We showed that

10:39:21   16   through the intrinsic record, which repeatedly references

10:39:24   17   the problem solved in the background of the invention to be

10:39:27   18   creating extra surface area, Your Honor.  And extra surface

10:39:32   19   area for light emission is created just -- just to form it

10:39:35   20   on the layer above.

10:39:36   21           The dictionary definitions we provided also show

10:39:38   22   that it has to lie on the surface of.

10:39:39   23           None of those things show a hundred percent

10:39:42   24   coverage.

10:39:44   25           And so the second argument that Samsung makes,

10:39:51  1   Your Honor, is that the plain meaning in light of the

10:39:54  2   patent is that cover must require 100 percent coverage.

10:40:00  3   But that fails for the same reasons, Your Honor.

10:40:03  4          The plain meaning can't be limited that way for

10:40:06  5   the same reasons.  Every instance of cover in the claims

10:40:12  6   can't be read that way.  Why do we know that?  Because

10:40:14  7   every instance -- some of the instances would contradict

10:40:18  8   that very premise, Your Honor.

10:40:21  9          In the patent at Column 6, Lines 39 through 44; 8,

10:40:30  10  57 through 30 -- 62; and 15, 16 through 22, it actually

10:40:34  11  says, Your Honor, that the one or more of the electrode

10:40:39  12  layers is transparent.  Therefore, all instances of cover

10:40:44  13  cannot be read to prevent light from entering the -- that

10:40:50  14  layer.

10:40:50  15         The claims also make another thing clear, Your

10:40:55  16  Honor.  The claims here -- as you can see, none of the

10:40:58  17  other claim limitations here on Slide 38 say anything about

10:41:04  18  preventing light.  And even on the element in which this

10:41:09  19  dispute was brought to Your Honor, which is that second

10:41:12  20  element, it's clear that cover is not the -- the claim term

10:41:18  21  that requires preventing light.

10:41:25  22         It's a separate requirement that merely requires

10:41:27  23  that the material in which the first electrode is made of

10:41:30  24  shields visible light.  They don't dispute that that's met

10:41:34  25  in the product.  So the material has to be light shielding,

10:41:38   1   but there's no suggestion that cover has to be the term to

10:41:40   2   prevent a hundred percent of the light.

10:41:42   3           And, furthermore, Your Honor, their expert

10:41:46   4   admitted through cross-examination that the cover element

10:41:50   5   itself does not require shielding light.

10:41:53   6           Their final argument, which is that all

10:41:57   7   embodiments of the invention support their construction is

10:42:03   8   also wrong.  That's not the law.  We agree that the plain

10:42:08   9   meaning applies.  All embodiments, the Federal Circuit

10:42:12  10   tells us, cannot change the plain meaning.  The only thing

10:42:16  11   that can is a disclaimer or lexicography, and there is not

10:42:21  12   a disclaimer or lexicography here, Your Honor.

10:42:24  13           So we have a situation where the plain meaning,

10:42:27  14   the intrinsic record, and the extrinsic record all point in

10:42:33  15   the same direction, which is that Samsung's overly narrow

10:42:38  16   requirement that the -- the term "cover" be interpreted

10:42:42  17   to -- to entirely cover -- or 100 percent cover, it must be

10:42:48  18   rejected.  It's narrower than the plain meaning.  It's

10:42:51  19   inconsistent with the intrinsic record, which only refers

10:42:54  20   to being formed over the surface of, Your Honor.

10:42:58  21           THE COURT:  Now, previously to distinguish prior

10:43:01  22   art, didn't Solas or its predecessor use "placed above" to

10:43:09  23   address this concept?

10:43:10  24           MR. MIRZAIE:  So in the file history, and I'm

10:43:13  25   showing that on Slide 42 here, they -- what they used

| 10:43:19 | 1 | here -- this is the file history, and we have this as |
| 10:43:23 | 2 | Exhibit 1 to the brief last night, Your Honor.  This is the |
| 10:43:25 | 3 | only place in which cover is mentioned, the term at issue, |
| 10:43:30 | 4 | to distinguish art. |
| 10:43:32 | 5 | It's telling, Your Honor, because the explanation |
| 10:43:35 | 6 | from the patentee on that term "cover" completely supports |
| 10:43:40 | 7 | Solas's position here, which is that cover means formed |
| 10:43:46 | 8 | above or lie on the surface of, consistent with its plain |
| 10:43:50 | 9 | meaning, because doing so frees up the light emission layer |
| 10:43:56 | 10 | from being on the same level as the transistors so that |
| 10:44:03 | 11 | more surface area can be used to emit light. |
| 10:44:06 | 12 | It explains, consistent with our plain -- plain |
| 10:44:10 | 13 | meaning, that it merely has to be formed above so that it's |
| 10:44:13 | 14 | not at the same level of the transistors because the |
| 10:44:17 | 15 | transistors take up the surface area in the prior art. |
| 10:44:21 | 16 | And so this prosecution history, the only places |
| 10:44:25 | 17 | where cover is mentioned perfectly aligned with our |
| 10:44:29 | 18 | construction and contradicts Samsung's narrow one.  Cover |
| 10:44:34 | 19 | does not require a hundred percent merely covering, and it |
| 10:44:39 | 20 | merely requires forming it above so that it's above the |
| 10:44:44 | 21 | transistors, and the transistors don't interfere with the |
| 10:44:48 | 22 | surface area of emitting light, Your Honor. |
| 10:44:51 | 23 | THE COURT:  All right.  Let me hear a response |
| 10:44:55 | 24 | from Samsung. |
| 10:45:04 | 25 | Mr. Lerner, I'm going to ask you to confine your |

10:45:07  1  arguments to the same approximate 10-minute time frame.

10:45:11  2         MR. LERNER:  Okay, Your Honor.  Thank you.

10:45:14  3         Thank you, Your Honor.  Jeff Lerner for

10:45:31  4  Defendants.

10:45:32  5         The meaning of said is agreed.  It means "the."

10:45:36  6  The meaning of active elements, that's where we may differ

10:45:40  7  from the Plaintiffs.  We -- the term has a construed

10:45:44  8  meaning, and that's agreed to.  But active elements is an

10:45:47  9  unbounded number.  It is not two or more.

10:45:49  10        And the confusion is it would permit a display

10:45:53  11 that has two active elements, but if a display has more

10:45:57  12 active elements, if it has three, then all of those --

10:46:01  13 everything -- every element of the display that is a

10:46:03  14 circuit element that has gain or that directs current flow

10:46:06  15 is an active element.  And it's that set of active elements

10:46:10  16 that has to be covered by the first electrode.  That's the

10:46:13  17 clear import of the claim language.  It's the clear import

10:46:17  18 of the specification.

10:46:17  19        The whole point of the claimed invention is

10:46:21  20 uncovered transistors will malfunction because light will

10:46:28  21 hit them.  That's what distinguished the prior art.  And it

10:46:31  22 would make no sense to have a -- a structure in which some

10:46:34  23 of the transistors were uncovered.

10:46:36  24        The --

10:46:37  25        THE COURT:  Why do all the active elements in the

10:46:40  1  accused device have to be mapped to the claim?  Tell me

10:46:45  2  why.

10:46:45  3      MR. LERNER:  Because the claim uses the term

10:46:47  4  active elements of unbounded number.  It's a display

10:46:50  5  apparatus comprising.  We're talking about a display

10:46:53  6  apparatus.  We're not talking about things outside the

10:46:57  7  display.  And in the display, what meets the definition of

10:47:00  8  an active element is in that set of active elements.  And

10:47:03  9  it's that set of active elements that, therefore, has to be

10:47:07  10  covered by the first electrode.

10:47:08  11      THE COURT:  But, I mean, if this is a comprising

10:47:11  12  claim, it can clearly contain other items.  And what's to

10:47:15  13  say there are not active elements within those other items

10:47:18  14  that don't have to be treated in the way as the active

10:47:23  15  elements do that are the basis of the claim, if that makes

10:47:28  16  sense?

10:47:32  17      MR. LERNER:  We're not talking about active

10:47:35  18  elements outside of the display area.  So the active

10:47:37  19  elements are what the patent is talking about.  And what

10:47:39  20  the patent says is that you have to cover them to prevent

10:47:41  21  the malfunction.

10:47:44  22      THE COURT:  Well, the display device is an

10:47:46  23  embodiment.  It's a product.  I'm talking about the

10:47:51  24  language of the claim itself, which in this case applies to

10:47:55  25  this particular embodiment but is certainly not limited to

10:47:59   1   this particular embodiment.  I mean --

10:48:01   2        MR. LERNER:  You're correct, Your Honor.  But

10:48:04   3   active elements is a recited claim element, and that's why

10:48:08   4   yesterday I went over the Federal Circuit caselaw saying

10:48:11   5   comprising does not permit abrogation or negation of claim

10:48:14   6   elements.  If we're talking about a passive element, that's

10:48:17   7   a different story.

10:48:18   8        But this claim is saying active elements.  And as

10:48:20   9   we pointed out in our briefing last night, if you look at

10:48:22  10   the patent and the figures, they have numerous examples

10:48:25  11   with more than two transistors.  And they're all covered

10:48:28  12   because any malfunction will cause the display to

10:48:32  13   malfunction, and any accused products -- if the active

10:48:36  14   elements malfunction, the display wouldn't work right.

10:48:40  15   That's why all have to be covered. And the claim language

10:48:42  16   is consistent with that purpose.

10:48:43  17        There's no intrinsic evidence for the Plaintiff's

10:48:46  18   position, and it would be inconsistent with the purpose of

10:48:50  19   the claimed invention.  As we pointed out in the summary of

10:48:53  20   the invention, when it talks about the purpose of coverage

10:48:58  21   to block light, it talks about the active elements.  It

10:49:02  22   doesn't say some of the active elements or at least two.

10:49:04  23   And if you --

10:49:05  24        THE COURT:  Let me stop you because I'm not sure

10:49:07  25   that we're clearly communicating.

| | | |
|---|---|---|
| 10:49:09 | 1 | My -- my question is this.  Within the |
| 10:49:13 | 2 | open-endedness of a comprising claim, can't there be active |
| 10:49:19 | 3 | elements outside of the claim?  In other words, the recited |
| 10:49:27 | 4 | active elements are one thing, but can't there be unrecited |
| 10:49:31 | 5 | active elements within the openness of a comprising claim |
| 10:49:36 | 6 | that don't have to be treated the same way? |
| 10:49:38 | 7 | MR. LERNER:  Well, Your Honor, there's no |
| 10:49:39 | 8 | numerical limit on active elements.  And that's why if |
| 10:49:43 | 9 | something -- |
| 10:49:43 | 10 | THE COURT:  Exactly. |
| 10:49:44 | 11 | MR. LERNER:  -- is an active element, then it |
| 10:49:46 | 12 | falls within this claim limitation, active elements.  That |
| 10:49:49 | 13 | I think is how we read the claim.  That's consistent with |
| 10:49:51 | 14 | the purpose of the invention and we believe the plain |
| 10:49:54 | 15 | meaning. |
| 10:49:55 | 16 | And there's also Federal Circuit caselaw that even |
| 10:49:58 | 17 | if you could treat something as unrecited, you can't have |
| 10:50:01 | 18 | something that's inconsistent with the image -- |
| 10:50:03 | 19 | THE COURT:  Well, I agree with you that they're |
| 10:50:05 | 20 | not active element 1, active element 2, active element 3 in |
| 10:50:09 | 21 | the claim language.  But there's active element regarding |
| 10:50:12 | 22 | the first electrode.  There's active element regarding the |
| 10:50:16 | 23 | insulation film, the second electrode, and the OE layer. |
| 10:50:19 | 24 | And those appear to be the recited active elements. |
| 10:50:26 | 25 | Beyond those four, could there not be other active |

10:50:29  1  elements within the open-ended application of a comprising

10:50:32  2  claim?

10:50:32  3          MR. LERNER:  Your Honor, those are all referring

10:50:35  4  back to the same active elements.  It's just saying you

10:50:38  5  have a substrate with active elements.  The first layer

10:50:41  6  over that is this insulation film.  Over that is the first

10:50:45  7  electrode.  It's referring back each time to the same

10:50:48  8  active elements.

10:50:48  9          And, in fact, you would have to cover them with

10:50:50  10  the insulation film, or they were would short.  I think

10:50:55  11  that's supports our position that -- that active elements

10:50:57  12  is referring to all of them, not just some subset.  And

10:51:01  13  there'd be no basis in the claim to determine which ones

10:51:04  14  matter and which don't.

10:51:05  15          If you have a -- a multi-pixel display, as most

10:51:10  16  displays are, it wouldn't make sense to say you could have

10:51:13  17  two transistors in any one pixel that are covered when the

10:51:17  18  other ones are not.  And that would be the reading of

10:51:22  19  comprising, since this claim is to a display apparatus.

10:51:25  20          That's -- that's -- we believe the claim language

10:51:29  21  is consistent with the very clear disclosure that the

10:51:32  22  active elements must be covered.  And the figures, like

10:51:36  23  Figure 21, Figure 13, Figure 14, where they show multiple

10:51:40  24  active elements -- more than two active elements, they're

10:51:44  25  all covered because they need to prevent the malfunction.

10:51:47 1          And it's -- the recited element of the claim,

10:51:51 2   active elements, anything that's a circuit element in the

10:51:54 3   display that has gain or that directs current is an active

10:51:58 4   element.  And it's that set that we believe is picked up by

10:52:02 5   a set.  That's -- that's how we reach our conclusion, Your

10:52:04 6   Honor.

10:52:04 7          THE COURT:  All right.  Why don't we transition to

10:52:06 8   your position on cover?

10:52:07 9          MR. LERNER:  So for cover, again, the intrinsic

10:52:11 10   evidence we laid out in our submission last night, we --

10:52:13 11   we believe strongly supports our position.  Formed so as to

10:52:18 12   cover is terminology used repeatedly in the patent, in the

10:52:22 13   specification, and in the claims.  And in every instance

10:52:24 14   it's used, it's to cover the entirety of the object.

10:52:28 15          When something is else is intended, there's

10:52:31 16   different language that's used that specifies what portion

10:52:35 17   is not covered.

10:52:35 18          And so when the claims say formed so as to cover,

10:52:38 19   they're talking about covering the object.

10:52:45 20          To clarify a couple of points, we're not arguing

10:52:49 21   that cover -- the term means blocked light.  We're -- the

10:52:55 22   term "first electrode" is formed so as to cover.  The claim

10:52:55 23   proceeds to say:  And it's made from a material that

10:52:55 24   shields light.

10:52:59 25          So to block light, you have to have two

10:53:02   1   conditions.  First you have to cover something.  And that

10:53:04   2   coverage has to be with a material that blocks light.

10:53:07   3          But we're not saying the term "cover" means

10:53:12   4   blocked light.  When the electroluminescent material covers

10:53:12   5   the active elements, that's talking about the broadness,

10:53:17   6   because the point of the invention is you want to expand or

10:53:21   7   enlarge your light-emitting area.

10:53:24   8          And so the -- the other point is the Plaintiff's

10:53:28   9   argument would render the claim language superfluous.

10:53:34   10  They're saying now that cover means to be -- to lie over,

10:53:41   11  to be placed over.  And we saw in the spec -- in the

10:53:45   12  prosecution history, Your Honor, mentioned, it says:

10:53:48   13  Placed over the active elements so as to cover.

10:53:51   14         If placed above was all that cover meant, that

10:53:54   15  would be entirely superfluous.  Likewise in the claims, an

10:53:59   16  insulation film formed over said substrate so as to cover.

10:54:03   17  It's already telling you it's formed over, it lies above.

10:54:07   18  So as to cover has to do extra work.  And what it's telling

10:54:11   19  you is it is covering the other element.

10:54:13   20         At least one first electrode formed on said

10:54:16   21  insulation film so as to cover said active elements.  It's

10:54:20   22  all they're telling you.  If placed above, it lies over.

10:54:20   23  The additional work "so as to cover" does is it tells you

10:54:24   24  that object is covered.

10:54:25   25         And the -- really what the Plaintiffs are doing is

10:54:28  1   taking the improper Texas Digital approach looking at a
10:54:33  2   general purpose online dictionary from now, not looking at
10:54:36  3   the intrinsic evidence, which is agreed.  It's talking
10:54:38  4   about preventing light from hitting the active elements,
10:54:42  5   and that requires covering the active element as such.
10:54:45  6   That's what's shown in the specification repeatedly.
10:54:49  7   There's no counter example to that.  That's what it means
10:54:53  8   to form on so as to cover.
10:54:54  9        And the position they advance would also make
10:54:56  10  no -- it would leave unanswerable how much coverage.  How
10:55:01  11  much is enough?  They're saying cover means partially
10:55:06  12  cover.  To what extent?  The patent doesn't say because
10:55:09  13  when it's talking about cover, it's talking about the
10:55:11  14  entirety of the object.
10:55:12  15       So they don't cite any intrinsic evidence that
10:55:15  16  supports them.  I don't think it's necessary to get into
10:55:18  17  how the term "cover" and its different uses was used in
10:55:21  18  different patents, which is one of their arguments.
10:55:24  19       And if you look in the dictionary, cover is a
10:55:26  20  transitive verb, has a number of different uses.  One, if
10:55:29  21  you want to use a dictionary definition, is envelop, and
10:55:32  22  that's what the claims are talking about here.  If you
10:55:36  23  cover the hatch of a submarine before it dives, you're not
10:55:39  24  going to let water in by having it half open.  In this
10:55:46  25  case, too, for optics, when you cover to prevent light from

10:55:47  1  hitting it, that means you're covering the entirety.

10:55:47  2       And we think a very good example in the

10:55:51  3  specification is when it talks about covering a cathode

10:55:54  4  with an insulation film to prevent oxidation.  If not all

10:55:58  5  of it was covered, that oxidation wouldn't be prevented.

10:56:03  6  And it's a very clear instance where the specification is

10:56:05  7  using cover to support -- to indicate that the entire

10:56:08  8  object is being covered.

10:56:09  9       So we don't believe there's any support in the

10:56:15 10  specification.  It would be contrary to the invention to

10:56:18 11  have mere partial coverage.  And the -- the proposal that

10:56:23 12  Plaintiffs have made now would also render superfluous

10:56:27 13  other claim language because formed over so as to -- formed

10:56:30 14  over already says it lies over and above.  So as to cover

10:56:35 15  has to do different work.

10:56:37 16       Now, Renishaw, the Federal Circuit made clear, the

10:56:40 17  claim that stays true to the language -- the construction

10:56:43 18  that stays true to the language and the purpose of the

10:56:45 19  invention is the right one.

10:56:46 20       I think there's no doubt what the purpose of the

10:56:49 21  invention was here.  It was to prevent light from hitting

10:56:52 22  these active elements.  It would make no sense to say a

10:56:55 23  mere part, an undefined part, 1 percent, 2 percent, 20

10:57:00 24  percent, would be enough.  And there's nothing in the

10:57:01 25  patent that would answer how much is enough.  The claim

10:57:05  1  would be wholly indefinite under such an approach.

10:57:10  2       So for that reason, we believe the meaning of

10:57:15  3  cover in this patent is that the entire object is covered.

10:57:16  4       THE COURT:  All right.  Thank you, Mr. Lerner.

10:57:17  5       Well, having reviewed your briefing and having

10:57:24  6  heard your argument and being cognizant of the fact that

10:57:34  7  the progression of this case to trial is largely affected

10:57:44  8  by the guidance that I'm going to give you here, I don't

10:57:48  9  think that the Court has the luxury of taking this under

10:57:54  10  advisement for a lengthy period of time or really any

10:57:58  11  length -- any additional length of time.

10:58:00  12       As I said yesterday, the unexpected advent of a

10:58:13  13  claim construction issue requires effectively the Court to

10:58:16  14  throw an emergency brake on the train of both the pre-trial

10:58:23  15  disputes and the upcoming jury selection and trial.

10:58:26  16       So having thrown that emergency brake yesterday,

10:58:33  17  required the briefing, heard the argument, it's incumbent

10:58:34  18  on the Court to get the train moving again as quickly as

10:58:38  19  possible.

10:58:38  20       So with that in mind, I'm advising the parties as

10:58:43  21  follows:  Said active elements is not, in my view, a claim

10:58:49  22  construction issue.  I reaffirm the

10:58:55  23  agreed-upon-by-the-parties and adopted-by-the-Court

10:58:59  24  construction of active elements.

10:59:00  25       Within the open-endedness of this comprising

10:59:03  1   claim, the Court holds that the Plaintiff in this case is

10:59:09  2   allowed to map the claim to a subset of the active elements

10:59:14  3   in the accused devices as long as it's two or more.

10:59:19  4           And I reject the position of Samsung that said

10:59:25  5   active elements requires mapping the claim to all active

10:59:33  6   elements, no matter how many there might be.

10:59:36  7           With regard to the word "cover," I do concede that

10:59:44  8   this needs specific construction from the Court for the

10:59:52  9   parties to go forward.  And while there is support for both

10:59:55  10  of the positions taken by the parties, the Court's

10:59:58  11  persuaded that the preponderance of the authority and

11:00:10  12  evidence leads the Court to construe "cover" to mean "lie

11:00:18  13  over the surface of."

11:00:23  14          And I reject Samsung's position that cover must

11:00:28  15  include "covering the entirety of an active element."

11:00:40  16          Now, with that being completed, we'll return to

11:00:46  17  the remaining dispositive motions that have yet to be dealt

11:00:52  18  with by the Court as a part of the pre-trial hearing in

11:00:54  19  this case.

11:00:54  20          And next I'll take up Plaintiff's motion to strike

11:01:10  21  portions of the expert report of Christopher Martinez.

11:01:15  22          Let me hear from the Plaintiff on this.

11:01:19  23          MR. HOFFMAN:  May I have the document camera,

11:01:36  24  please?

11:01:36  25          Your Honor, Adam Hoffman for Solas.

11:01:37  1          I think this has been extensively briefed, so I

11:01:41  2  just wanted to hit a couple of -- of important points,

11:01:45  3  particularly admissions in the briefing by Samsung.

11:01:47  4          In terms of the comparability of the licenses, and

11:01:53  5  I'm not going to talk about the named licenses so that we

11:01:59  6  don't have to seal the Court, but in terms of the

11:02:02  7  comparability of the licenses upon which Mr. Martinez

11:02:06  8  relies, there just is no economic comparability analysis in

11:02:09  9  his opinion.

11:02:10  10          Most of the time, we would agree that disputes

11:02:14  11  between experts should be handled by cross-examination, but

11:02:18  12  there is a low bar to cross.  There has to be actual

11:02:20  13  analysis, especially when we're talking about settlements

11:02:24  14  because there's an inherent issue with settlements that

11:02:28  15  there are reasons why they're not -- or reasons why they

11:02:31  16  may not be comparable to the hypothetical negotiation,

11:02:33  17  which I would say is not a settlement situation.  So it has

11:02:37  18  to be addressed.

11:02:38  19          The only place where Mr. Martinez addresses it at

11:02:49  20  all is he states, as is admitted by Samsung in its briefing

11:02:51  21  at DI, 205 at 2, its sur-reply, the only place he addresses

11:02:52  22  it is to say, the cost of litigation may be an input.

11:02:56  23  That's just an identification of the problem we're talking

11:02:59  24  about.  That's not an analysis of how he's dealing with it.

11:03:04  25  He's has to either explain, well, if it may be an input,

11:03:09  1  why is it comparable?  Are you saying that's not relevant

11:03:13  2  here?  Are you saying that I'm adjusting my opinion?  Just

11:03:15  3  saying that he recognizes the settlement is not an

11:03:18  4  analysis.

11:03:18  5        And that's true throughout his comparability --

11:03:20  6  economic comparability opinion.

11:03:23  7        In its briefing at -- at Docket 164 at 5, its

11:03:31  8  opposition, Samsung states that Mr. Martinez addresses

11:03:36  9  economic comparability by concluding that quote, the

11:03:40  10  licenses were objective market indicators, and, quote,

11:03:40  11  presumably in good faith.  Those are just presumptions.  To

11:03:46  12  just say, I'm presuming that this agreement is made in good

11:03:49  13  faith, and I'm presuming that it's a market indicator, and,

11:03:53  14  therefore, it's comparable is not an economic analysis.

11:03:56  15  It's just a presumption.

11:03:57  16        And, importantly, they're citing there to his

11:04:00  17  deposition, so it's not even a presumption that he actually

11:04:03  18  provided in his Rule 26 report.

11:04:05  19        Finally, on this issue of comparability, we'd just

11:04:09  20  like to point out -- you know, on Page 10 of our brief at

11:04:13  21  Footnote 2, we note that Mr. Martinez also has a separate

11:04:20  22  set of lump-sum licenses in Schedule 12 of his report.  He

11:04:25  23  also talks about them in Paragraph 138 to 139 where he

11:04:29  24  admits that these are lump-sum agreements that are

11:04:33  25  non-comparable.

11:04:34  1       They didn't oppose this part of the brief at all,
11:04:37  2  I don't believe.  I don't believe they addressed it at all.
11:04:37  3  So we think that that at the very least is -- is an
11:04:40  4  undisputed part of the dispute.  And, certainly, it
11:04:42  5  shouldn't be the case that Mr. Martinez should be able to
11:04:44  6  present to the jury lump-sum amounts in agreements that he
11:04:49  7  says are not comparable.  He may be arguing that the fact
11:04:52  8  that they are lump sums is relevant to the form of license,
11:04:56  9  but he should not be permitted to show to the jury a
11:05:00  10  number -- a royalty that he does not think is comparable,
11:05:03  11  and there doesn't seem to be any dispute that -- that he
11:05:08  12  doesn't -- about that issue.
11:05:10  13       In terms of the -- the cost analysis where
11:05:14  14  Mr. Martinez relies on a single document to argue what the
11:05:18  15  price of the SSPPU should be, they argued, first of all,
11:05:24  16  that he's not really required to meet any requirements
11:05:26  17  under Daubert because it's a rebuttal argument, and he's
11:05:29  18  just criticizing Mr. Dell.  There's no rule that somehow
11:05:33  19  the rules applying to experts disappear because it's a
11:05:37  20  rebuttal argument.
11:05:40  21       And when they say they're just sort of showing
11:05:42  22  that Mr. Dell's numbers are too big, they're not really
11:05:46  23  talking about the price of the SSPPU.
11:05:48  24       As we pointed out, this is his schedule.  And
11:05:55  25  where it says SSPPU price, this is him saying the price of

| | | |
|---|---|---|
| 11:05:59 | 1 | the SSPPU is this amount.  That is directly -- that -- |
| 11:06:06 | 2 | that's from that document.  He is saying the price of the |
| 11:06:10 | 3 | SSPPU in this case is that amount.  He should not be |
| 11:06:13 | 4 | permitted -- well, he shouldn't be permitted to do so |
| 11:06:17 | 5 | unless there is a basis to say that that is, in fact, the |
| 11:06:20 | 6 | price of the SSPPU. |
| 11:06:21 | 7 | And that brings us to the real flaw in this |
| 11:06:28 | 8 | analysis.  At Docket 164, at Page 12 of 13, in Samsung's |
| 11:06:38 | 9 | briefing, they state:  Mr. Martinez does not refer to the |
| 11:06:42 | 10 | prices of ITO sensors to calculate his proposed royalties |
| 11:06:46 | 11 | for the Atmel patent and does not draw any equivalency |
| 11:06:51 | 12 | between the ITO sensors and the SSPPU for the Atmel patent. |
| 11:06:54 | 13 | They're admitting that he is not saying that these are |
| 11:06:58 | 14 | comparable prices, yet he's using the price from a |
| 11:07:01 | 15 | non-comparable, non-accused product to say that's the price |
| 11:07:04 | 16 | of the SSPPU. |
| 11:07:04 | 17 | He can disagree about what the SSPPU is, but he |
| 11:07:07 | 18 | has to establish that that number is relevant before he |
| 11:07:09 | 19 | bases his opinion on it.  And he doesn't do so.  Again, |
| 11:07:13 | 20 | there's no dispute that these are non-accused comp -- |
| 11:07:16 | 21 | components from non-accused products. |
| 11:07:19 | 22 | Mr. Martinez does not dispute that -- well, they |
| 11:07:25 | 23 | admit that these are -- that he's not even saying that |
| 11:07:27 | 24 | these are comparable to the components in the accused |
| 11:07:30 | 25 | products that they say are the SSPPU.  And Mr. Martinez |

11:07:34   1   admitted in deposition that he doesn't know if these prices

11:07:38   2   on these very selectively-produced numbers are even

11:07:41   3   representative of the components he's looking at.  They're

11:07:44   4   just a few selected screenshots of components of a

11:07:50   5   non-accused product, which, of course, is the other problem

11:07:52   6   with the document itself.

11:07:53   7           The document is -- purports to be a screenshot.

11:07:57   8   They took -- I think it is important that they took

11:08:00   9   screenshots from a database.  They could have done a report

11:08:06  10   from the database.  Any database you do a query.

11:08:08  11   Presumably did a query.  They could have produced a

11:08:09  12   document from the database.  They could have produced the

11:08:11  13   purchase orders underlying that document.

11:08:13  14           They didn't do any of that.  They took a

11:08:15  15   screenshot so you can't see what's included and what's not.

11:08:19  16   So you don't know what the query was.  And they put that

11:08:23  17   into an Excel document with columns and lines to make it

11:08:25  18   look like it was a spreadsheet.  And they keep referring to

11:08:26  19   it as a spreadsheet.  I mean, it's just not a spreadsheet.

11:08:30  20   A spread -- just because you stick something -- a

11:08:32  21   screenshot into an Excel document doesn't make it a

11:08:39  22   spreadsheet.

11:08:39  23           And we would argue it's prejudicial to tell the --

11:08:40  24   to say to the jury you have a spreadsheet when you've taken

11:08:41  25   a screenshot from a database.  And they didn't produce any

11:08:44   1   of the underlying evidence.

11:08:49   2          So it's an improper analysis.  It's based on

11:08:52   3   improper evidence.  But even if the document was not in

11:08:56   4   itself clearly not created in the course of a normal

11:08:59   5   business, clearly created for this litigation, we have no

11:09:03   6   idea how they even selected which of these to show.  He

11:09:06   7   admits they don't know -- he doesn't know if they're

11:09:10   8   representative or not.

11:09:11   9          The mere fact that he says that they're not

11:09:13   10  comparable to the components he says are the SSPPU means

11:09:17   11  they're just -- it's improper to show those to -- to say to

11:09:20   12  the jury, this is what you should be looking at for the

11:09:23   13  price of the SSPPU.

11:09:23   14         In terms of the issue of timing, that's really

11:09:28   15  sort of a subissue.  I'd just point out that they sort of

11:09:31   16  invented this story about why they produced this so late.

11:09:35   17  They say that, oh, in passing, you -- you referred to the

11:09:37   18  SSPPU as being the accused product, so that's why somehow

11:09:40   19  we came up with this document.

11:09:42   20         I don't really understand that argument.  What I

11:09:45   21  do understand is that in our opening brief, we pointed out

11:09:48   22  that the metadata on this document shows that it was

11:09:51   23  created on May 19th, 2020.  If they had produced it at that

11:09:59   24  time, we would have had it in time to talk to the witnesses

11:10:01   25  designated on the relevant topics about it.  Instead, they

11:10:02  1   didn't produce it until after those depositions.

11:10:09  2          Finally, just quickly on the display panel issue,

11:10:15  3   separately for the '450 and '338 patents, they want to

11:10:19  4   argue that the SSPPU is not the display module, but it's a

11:10:21  5   subpart of the display panel.  They say that the evidence

11:10:24  6   for that is that SEI provides that panel to some

11:10:24  7   subsidiaries.

11:10:32  8          They -- that's an entirely -- there's no evidence

11:10:32  9   in this case at all that supports that.  It's entirely

11:10:35  10  based in a conversation -- a hearsay conversation with a --

11:10:40  11  with a -- with a fact employee -- an employee of Samsung.

11:10:46  12         And the problem with that is that we had a

11:10:49  13  specific interrogatory.  It's Exhibit K to our motion,

11:10:52  14  Rog -- Rog 10, asking for any sales -- any sales of any

11:10:58  15  product containing OLED technologies.  If they are now in

11:11:01  16  their rebuttal report suddenly going to say, oh, the SSPPU,

11:11:05  17  the real product -- the real component at issue is this

11:11:09  18  thing, and it's sold because we give it to a subsidiary

11:11:12  19  that puts together the module, then it was incumbent on

11:11:18  20  them to actually provide any indication of that during

11:11:23  21  discovery, and in particular to answer that rog.

11:11:25  22         Instead in that rog -- in response to that rog,

11:11:29  23  they gave a 33(d) response that identified sales

11:11:31  24  information about the display module because that's really

11:11:36  25  what was at issue up until the rebuttal report.  And they

11:11:40  1  still haven't produced any evidence about this so-called

11:11:44  2  sale.  And they still haven't produced any evidence about

11:11:46  3  what the -- what the costs were or the dollars or what the

11:11:50  4  sale price was.  So they're just putting out that there's

11:11:54  5  an SSPPU that we've suddenly identified in a rebuttal

11:11:57  6  report.  And they say, well, we don't have to produce any

11:12:00  7  sales information because -- because it was essentially a

11:12:05  8  sister company or it wasn't really an arm's length

11:12:08  9  transaction, the sales price doesn't matter.

11:12:10  10       Well, they don't get to make that choice.  They

11:12:12  11  don't get to say, hey, this is the SSPPU.  You don't need

11:12:16  12  to know what the sales price is.  We're just not going to

11:12:18  13  produce it.

11:12:19  14       They didn't produce any information during

11:12:21  15  discovery.  We asked for that information.  They didn't

11:12:24  16  produce it.  So that should be excluded on that basis.  And

11:12:28  17  beyond, it's just not a reliable basis to have a couple of

11:12:32  18  sentences in a conversation to say, hey, you know, we sell

11:12:35  19  this -- this -- a hearsay conversation.  By the way, we --

11:12:39  20  we provide the components -- the people who put together

11:12:42  21  the display module, we provide them with the components,

11:12:46  22  and, therefore, that should be the basis of your opinion

11:12:49  23  that that's a salable SSPPU.

11:12:50  24       They're going to say that, well, Mr. Fontecchio

11:12:50  25  has his own opinion that the display panel is the SSPPU,

11:12:56   1   and we don't -- we're not moving to -- to exclude

11:12:57   2   Dr. Fontecchio's opinion that he thinks technically a

11:13:00   3   display panel rather than a display module is the SSPPU.

11:13:04   4           But the opinion that the display panel is actually

11:13:07   5   salable and is actually sold, that is in Mr. Martinez's

11:13:10   6   opinion, and that should be excluded because it was not

11:13:12   7   disclosed during discovery, and it has no basis in any

11:13:16   8   evidence.

11:13:17   9           THE COURT:  What else, counsel?

11:13:22  10           MR. HOFFMAN:  That's it, Your Honor.

11:13:24  11           THE COURT:  Let me hear a response from

11:13:26  12   Defendants.

11:13:34  13           MR. LERNER:  Your Honor, Jeff Lerner on behalf of

11:13:36  14   Defendants.

11:13:36  15           THE COURT:  Please proceed.

11:13:38  16           MR. LERNER:  Thank you, Your Honor.

11:13:39  17           To start with the settlements, Dr. Sierros, a

11:13:41  18   technical expert, considered the patents at issue in each

11:13:44  19   of the agreements and offered opinions that they're

11:13:46  20   technically comparable to the '311 patent.  He reviewed

11:13:50  21   every patent.  He looked at the commercial products that

11:13:53  22   were at issue in the cases.

11:13:55  23           Solas hasn't challenged Dr. Sierros's technical

11:13:59  24   comparability opinions.  Mr. Martinez considered the

11:14:03  25   technical comparability explained by Dr. Sierros and the

11:14:06  1  relevant circumstances surrounding each of the agreements

11:14:08  2  to evaluate economic comparability.  He considered that

11:14:11  3  they were in the context of litigation.  He considered who

11:14:17  4  the parties were.  Each of these involved Samsung

11:14:21  5  Electronics or Samsung Electronics America.  He considered

11:14:21  6  the circumstances of the negotiation.

11:14:24  7        He points out that the agreements were all for

11:14:26  8  lump-sum royalty structures, which is consistent with how

11:14:32  9  Samsung Display would -- or Samsung Electronics would

11:14:32  10  negotiate a hypothetical royalty.

11:14:36  11        And the mere fact these were entered into in

11:14:39  12  connection with settlement doesn't make them

11:14:41  13  non-comparable.  Solas hasn't identified any specific

11:14:44  14  aspect of the litigation or agreements that would make them

11:14:47  15  non-comparable.

11:14:49  16        Mr. Martinez offers the opinion they are

11:14:51  17  comparable, and his opinions on this issue are reliable,

11:14:54  18  they're well-founded, they're based on unchallenged

11:14:59  19  technical opinions.  And if they want to challenge the

11:15:01  20  weight to be given to these, they can do that.  But there's

11:15:04  21  nothing unreliable about these opinions.

11:15:06  22        And as far as the non-comparable agreements,

11:15:11  23  Mr. Martinez uses those simply to point out a practice of

11:15:17  24  the Defendants to negotiate lump-sum, rather than running

11:15:20  25  royalty agreements.

11:15:21  1          I don't believe there's any intention to put the

11:15:23  2   numbers in those agreements before the jury.  It's simply

11:15:26  3   to show additional evidence of the practice of the

11:15:31  4   Defendants in terms of how they negotiate royalty

11:15:35  5   arrangements and the preference for lump-sum -- lump-sum

11:15:37  6   structures.

11:15:38  7          To turn to the smallest salable patent practicing

11:15:44  8   unit, again, this concerns the '311 patent.  Dr. Sierros

11:15:48  9   offers a technical opinion that the smallest salable patent

11:15:53 10   practicing unit is the touch sensor.  Again, that opinion

11:15:55 11   is not challenged by Solas.

11:15:57 12          Mr. Martinez looked for information to value a

11:16:05 13   touch sensor.  And to step back and give some of the

11:16:08 14   history here, I mentioned yesterday, Solas had accused a

11:16:14 15   large number of products of infringing the '311.  Their

11:16:16 16   contentions changed at various times.  Until May 17, 2019,

11:16:21 17   they were accusing products that contained a touch sensor

11:16:24 18   made out of material called ITO.

11:16:27 19          And so when they tell you now ITO is unsuitable,

11:16:31 20   throughout the litigation until two weeks before it end --

11:16:34 21   the discovery period ended, they were accusing products

11:16:37 22   with that ITO material of infringing.

11:16:40 23          And when we looked into this, and certainly when

11:16:43 24   we asked for their position on what is the smallest salable

11:16:48 25   patent practicing unit and they came back and said it's a

11:16:51  1  smartphone, we looked into what information we could come

11:16:53  2  up with to show what's the value of a touch sensor, Samsung

11:16:59  3  Display purchased those ITO touch sensors from a vendor.

11:17:03  4  And this gets into the document issue.

11:17:05  5        As I understand it, there's a database within

11:17:09  6  Samsung Display where they have vendor invoices.  They're

11:17:12  7  not separate documents.  They can't be printed out

11:17:14  8  individually.

11:17:15  9        It's not a database we understand that can be

11:17:18  10  queried in the way a sales database might be.  We worked

11:17:24  11  carefully and closely with the client to figure out how can

11:17:24  12  we get this information.  And it was determined the way to

11:17:27  13  get it would be to take screen captures of the information

11:17:31  14  from that display to provide it, because we can't

11:17:34  15  provide -- we can't produce a database.

11:17:36  16        We've provided that information, and counsel

11:17:39  17  points out that the metadata shows it was created on May

11:17:43  18  19th, and we got it to them eight days later.

11:17:46  19        But all before that, there was intense

11:17:49  20  investigation to understand what information the client

11:17:52  21  has, how to access it, what can we -- what form it can be

11:17:56  22  put in.  This is all during a period that's not only

11:18:01  23  intensely busy in this case, but we and our client are

11:18:02  24  dealing with COVID issues that have people out of their

11:18:05  25  offices and are hampering coordination.

11:18:10  1      We worked closely with the client to get the

11:18:14  2  information in the discovery period to provide it.  And

11:18:15  3  what that information shows is commercial value of touch

11:18:18  4  sensors.  And Mr. Martinez doesn't use it to say this is

11:18:21  5  the value of the touch sensor specifically in the accused

11:18:25  6  products, but it's proxy.

11:18:28  7      Under LaserDynamics, you look at proxies, you look

11:18:33  8  at industry standards information, and that provides a way

11:18:36  9  to value the smallest salable patent practicing unit,

11:18:40 10  which, again, our expert here says is the touch sensor, not

11:18:44 11  the display module.

11:18:44 12      This was provided in fact discovery.  Solas didn't

11:18:48 13  raise any questions about the document in fact discovery.

11:18:52 14  They didn't reach out to us.  They didn't -- this wasn't

11:18:57 15  something they even requested.  This is something that in

11:19:01 16  thinking about the issues we determined ought to be

11:19:04 17  provided.

11:19:04 18      And what they're seeking now is a sanction to

11:19:06 19  exclude it, a document produced in fact discovery.  It was

11:19:10 20  even produced before the deposition as a corporate

11:19:10 21  representative on the collection and production of

11:19:16 22  documents.  It's a witness who they asked about purchases

11:19:17 23  of certain materials.

11:19:18 24      It's important evidence to Mr. Martinez's

11:19:23 25  opinions, and it's also worth pointing out that they had an

11:19:28   1   opportunity to address it in their expert reports.

11:19:31   2   Mr. Dell had a supplemental report on June 3rd, which they

11:19:34   3   asked for to address certain documents.  We agreed.  They

11:19:37   4   didn't ask for any further reports on this.

11:19:41   5        So this is a document that was provided to -- to

11:19:48   6   prepare -- to provide information that's more relevant to

11:19:52   7   the smallest salable patent practicing unit.  It's reliable

11:19:56   8   information from the company.

11:19:58   9        Mr. Martinez discussed it with Mr. Kim, the

11:20:01  10   witness who was also available for deposition.

11:20:05  11        But more to the point, there was never any

11:20:08  12   question raised.  We would have been able to address those

11:20:12  13   questions.  We would have hoped to work cooperatively to

11:20:15  14   raise -- to address any questions about the contents of a

11:20:17  15   document.

11:20:17  16        So we believe that Mr. Martinez should be

11:20:20  17   permitted to rely on documents produced in discovery to

11:20:23  18   support his opinion.  Again, if they have questions about

11:20:26  19   is the pricing right, is it representative, they can ask

11:20:29  20   that on cross-examination, but it doesn't get to the

11:20:33  21   reliability of the opinions or the analysis.

11:20:37  22        On the final point about the '450 and '338s,

11:20:43  23   Dr. Fontecchio offered a technical opinion that the

11:20:47  24   smallest salable patent practicing unit is the panel, not

11:20:49  25   the module.  The difference is the module adds polarizing

11:20:54  1  films, touch sensors, glass, things that are not related to
11:21:01  2  the claims of the '450 and the '338.
11:21:02  3          Solas doesn't identify anything extra in the
11:21:05  4  module that relates to the claims.  And SDC, in fact, sells
11:21:11  5  OLED panels to subsidiaries which Mr. Martinez understood
11:21:15  6  and confirmed in a discussion with Mr. Kim.
11:21:18  7          But Dr. Fontecchio's opinions about smallest
11:21:21  8  salable patent practicing unit which aren't challenged
11:21:22  9  would support Mr. Martinez's opinions regardless.  And it
11:21:25 10  bears note that for other displays, like LCDs, display
11:21:31 11  panels are sold commercially -- widely on the market, as
11:21:36 12  Mr. Credelle, Solas's expert, admits.
11:21:40 13          So the issue here is Mr. Martinez recently points
11:21:40 14  out that the difference in value is something that's
11:21:43 15  relevant to an apportionment analysis for the '450 and
11:21:47 16  '338.  And, again, if Solas disagrees with that, that's
11:21:51 17  something they can cross-examine him on.
11:21:53 18          But there's no unreliability, particularly when
11:21:56 19  they're not moving to exclude Dr. Fontecchio from
11:22:01 20  testifying that smallest salable patent practicing unit is
11:22:02 21  the display panel.
11:22:05 22          Unless Your Honor has any questions, I have
11:22:10 23  nothing further.
11:22:10 24          THE COURT:  No.  Thank you, counsel.
11:22:11 25          All right.  With regard to this motion, I'm going

11:22:39   1   to grant the motion with regard to Mr. Martinez's opinions

11:22:44   2   that rely on this Excel spreadsheet, which I think has been

11:22:49   3   identified as DC -- excuse me, SDC0332534.  The underlying

11:23:00   4   data is suspiciously absent, and the factual basis for his

11:23:07   5   opinions are unreliable, in the Court's view.  And this, in

11:23:09   6   my view, crosses the Daubert threshold as unreliable.

11:23:12   7        And to give application to that partial grant, I'm

11:23:19   8   going to strike Paragraph 198 from Mr. Martinez's opinions

11:23:25   9   and Schedule 11 to his report.

11:23:28  10        Now, in all other respects, the motion is going to

11:23:34  11   be denied.  And with regard to the comparability issues,

11:23:41  12   the settlements, the other matters that were argued over,

11:23:45  13   none of those, in the Court's view, cross the Daubert

11:23:49  14   threshold of being unreliable.

11:23:54  15        And so except as to the Excel spreadsheet issue,

11:24:01  16   all the other grounds and bases urged by Plaintiff in their

11:24:05  17   motion are denied.

11:24:08  18        Now, I also want to turn at this juncture to two

11:24:15  19   dispositive motions that the parties yesterday represented

11:24:20  20   to the Court that they were both in agreement that should

11:24:24  21   be decided and acted on based on the briefing and the

11:24:29  22   papers and that there was not a pressing need for oral

11:24:31  23   argument for the parties on those two motions.

11:24:33  24        Those include Defendants' motion for summary

11:24:39  25   judgment of no willfulness, Document 141; and Plaintiff's

11:24:46  1  motion to strike the expert opinions concerning

11:24:54  2  non-infringing alternatives, Document 135.

11:24:56  3        With regard to Document 141 and Defendants' motion

11:24:56  4  for summary judgment of no willfulness, the Court's

11:25:07  5  persuaded, having reviewed the briefing in its entirety and

11:25:10  6  all matters on file, that there are genuine issues of

11:25:17  7  material fact that preclude the Court granting that motion,

11:25:21  8  and the Court denies the Defendants' motion for summary

11:25:24  9  judgment of no willfulness.

11:25:26  10        With regard to Document 135, Plaintiff's motion to

11:25:30  11  strike expert opinions concerning non-infringing

11:25:33  12  alternatives, the Court's considered the entirety of the

11:25:38  13  briefing between the parties on this, as well, and the

11:25:41  14  Court concludes that there are no challenges as to those

11:25:51  15  opinions that rise to an adequate level that would support

11:25:56  16  their actually being struck, that those can adequately be

11:26:00  17  addressed through vigorous cross-examination.  And I'm

11:26:03  18  going to deny the Plaintiff's motion to strike expert

11:26:06  19  opinions concerning non-infringing alternative --

11:26:10  20  alternatives, Document 135.

11:26:12  21        Now, unless I have missed something, that gives

11:26:19  22  the parties guidance from the Court on all the dispositive

11:26:22  23  motions that have been presented as a part of this

11:26:25  24  pre-trial.  And that would bring us to the next -- that

11:26:29  25  would bring us next to the issue of motions in limine.

11:26:33   1              It's 11:30, according to the clock here on the

11:26:36   2    bench.  We're going to break at this point.  And I want you

11:26:43   3    back at 12:30.  We're going to break for an hour.  Over

11:26:47   4    that period of time, if you have time for lunch, that's

11:26:50   5    fine.  But the main emphasis I want you to pursue is a

11:26:54   6    discussion by way of meet and confer efforts between both

11:26:58   7    sides regarding outstanding motions in limine.

11:27:02   8              And in light of the guidance that you've received

11:27:06   9    concerning and flowing from these dispositive motions, I'd

11:27:09  10    like a report when we reconvene as to which previously

11:27:13  11    disputed motions in limine have now been able to be

11:27:15  12    resolved.  In light of that guidance, there should be

11:27:17  13    significant narrowing of the disputed motions in limine.

11:27:22  14              All right.  With that, we stand in recess until

11:27:24  15    12:30.

11:27:26  16              COURT SECURITY OFFICER:  All rise.

12:41:26  17              (Recess.)

12:41:27  18              COURT SECURITY OFFICER:  All rise.

12:41:28  19              THE COURT:  Be seated, please.

12:41:48  20              Counsel, my understanding is that there's been a

12:41:58  21    material narrowing of the disputed motions in limine.

12:42:06  22    Before we get to those, there apparently are certain agreed

12:42:12  23    motions in limine as reflected on Document 225.

12:42:19  24              Can I get a recognition on the record from both

12:42:22  25    sides that the limine matters set forth in Document 225

12:42:28   1   are, in fact, agreed to by both Plaintiff and Defendant?

12:42:32   2            MR. HASLAM:  Yes, on behalf of Defendants.

12:42:34   3            MS. HENRY:  Yes, Your Honor.

12:42:34   4            THE COURT:  Okay.  Also, I understand certain

12:42:39   5   counsel on Plaintiff's side have an early to mid-afternoon

12:42:44   6   flight to catch; is that correct?

12:42:46   7            MR. MIRZAIE:  That's correct, Your Honor.  Marc

12:42:49   8   Fenster and I do, so...

12:42:49   9            THE COURT:  As long as the issues still before the

12:42:53  10   Court are adequately covered by your co-counsel, that's not

12:42:57  11   a problem.

12:42:57  12            MR. MIRZAIE:  More than adequately covered.

12:42:59  13            THE COURT:  All right.  Counsel, I don't have a

12:43:06  14   composite listing of what you've narrowed.  And I

12:43:11  15   understand some of your agreements may vary from the

12:43:14  16   original suggested motion in limine.

12:43:17  17            So the only way I know to make sure we don't

12:43:21  18   overlook anything is to start at the top and work our way

12:43:24  19   down.  And if along the way we come to a matter that's

12:43:27  20   agreed to, then I'll get a short recital in the record, and

12:43:30  21   we'll move on.

12:43:31  22            So following that approach, let's begin with the

12:43:35  23   proposed motions in limine from the Plaintiff, Solas.  And

12:43:40  24   we'll start with Plaintiff's MIL No. 1, excluding evidence

12:43:46  25   of no longer asserted claims, products, or non-asserted

12:43:50   1   infringement theories.  Do we have a dispute here, or do we

12:43:54   2   have an agreement?

12:43:55   3           MR. MIRZAIE:  We have a substantial narrowing, but

12:43:57   4   we still have a dispute here, Your Honor.

12:43:59   5           THE COURT:  All right.  Go to the podium and tell

12:44:00   6   me what the issue is, then.

12:44:02   7           MR. MIRZAIE:  Thank you, Your Honor.

12:44:03   8           So Solas MIL No. 1 is to exclude evidence of no

12:44:07   9   longer asserted infringement theories, no longer

12:44:11   10  asserted -- no longer accused products, and no longer

12:44:18   11  asserted claims.

12:44:18   12          What we have agreement on, I believe, and -- and

12:44:21   13  my colleagues on the other side can correct me if this is

12:44:25   14  wrong, but on the first item of no non-asserted

12:44:29   15  infringement theories, I believe we have agreement.  No

12:44:32   16  one's going to mention any -- I don't believe there really

12:44:35   17  were any to -- to begin with possibly.

12:44:38   18          On the second piece, no longer accused products,

12:44:41   19  we discussed this issue with Samsung during the break.

12:44:47   20  Solas agrees that we'll drop the argument as to

12:44:53   21  non-infringing alternatives identified in an expert report.

12:44:59   22          But Samsung doesn't want to stop there.  They want

12:45:04   23  to go beyond what's in the expert reports and talk about

12:45:08   24  other dropped products because they claim it is relevant to

12:45:14   25  willfulness.

12:45:16  1          And the argument they made during the break is

12:45:18  2   that no longer accused products and Samsung's continued

12:45:23  3   sale of them is relevant to -- to willfulness because it

12:45:27  4   tends to show no willfulness.  So it's relevant to our

12:45:31  5   willfulness case.

12:45:32  6          Now, that's incorrect.  Our willfulness case is

12:45:34  7   not based on selling unaccused products.  Our willfulness

12:45:38  8   case in part is based on selling accused products only.

12:45:44  9   And there's no law that suggests that the sale of not

12:45:48  10  accused products is -- tends to show no willfulness either.

12:45:52  11  So we don't think that going --

12:45:54  12         THE COURT:  What about the sale of products that

12:45:56  13  are accused and then somewhere in the process along the

12:45:59  14  way, they're dropped and they're no longer accused?  How

12:46:03  15  does the sale of those products impact willfulness?

12:46:07  16         MR. MIRZAIE:  We don't believe it does, Your

12:46:09  17  Honor.  And I think that's going to likely be the remaining

12:46:13  18  dispute on no longer accused products.  We don't believe it

12:46:14  19  does.  Our willfulness case is not based on those.  We've

12:46:17  20  dropped those products, and there's no law to suggest that

12:46:19  21  continued sales of unaccused or no longer accused products

12:46:23  22  shows no willfulness.

12:46:24  23         So we don't believe it's relevant.  Furthermore,

12:46:26  24  going beyond the expert reports to suggest that it is

12:46:29  25  relevant, even if it were, the -- any probative value would

12:46:35  1  be far outweighed by the prejudice of telling the jury that

12:46:38  2  this product was accused in this litigation, and they're no

12:46:42  3  longer accusing it.

12:46:43  4        With the non-infringing alternative, I believe we

12:46:46  5  have agreement with the other side that the experts just

12:46:49  6  refer to that as a non-infringing alternative.  The jury

12:46:52  7  doesn't have to know that it was accused at one point in

12:46:54  8  this litigation before trial and later it became unaccused

12:46:59  9  in the narrowing.

12:46:59  10        With this additional piece that there's a dispute

12:47:04  11  on, I believe that Samsung -- that the only way that they

12:47:07  12  can frame it, and they have suggested they're going to

12:47:10  13  frame it this way to the jury, is that these products were

12:47:13  14  accused, they're no longer accused.  That's a reason why we

12:47:16  15  can't be found willful.

12:47:17  16        And that whole issue is -- it's irrelevant to

12:47:20  17  willfulness, and it actually requires both going beyond the

12:47:23  18  scope of the reports, and it -- and it requires telling the

12:47:26  19  jury that a product used to be accused before we got to

12:47:33  20  trial in this litigation process.  And that's something

12:47:35  21  that -- that non-infringing alternatives doesn't have.

12:47:37  22        And that kind of thing is -- we believe that the

12:47:40  23  Imperium case is squarely on point here, Your Honor.

12:47:44  24  There, the Court held that no longer accused products,

12:47:47  25  products that were dropped from the litigation, are

12:47:49  1   irrelevant, and they were excluded.

12:47:52  2        So we think as to that remaining dispute on

12:47:55  3   accused products, our -- our MIL should be entered.  We're

12:48:01  4   fine with Samsung referring to those same products as,

12:48:07  5   quote, non-infringing alternatives and sticking to the

12:48:08  6   scope of their expert's reports in doing so.

12:48:11  7        THE COURT:  All right.  Let me hear from

12:48:12  8   Defendants.

12:48:13  9        MR. MIRZAIE:  And there's -- just one more issue

12:48:15  10  in our motion in limine, if I may, Your Honor.

12:48:18  11       THE COURT:  All right.  Be brief.

12:48:20  12       MR. MIRZAIE:  Yeah, it's -- it's no longer

12:48:22  13  asserted claims.  So as you noticed yesterday, we have

12:48:27  14  dropped claims, narrowed the -- the claim set

12:48:30  15  substantially.  We've talked to opposing counsel about

12:48:33  16  narrowing it further.

12:48:35  17       And Samsung has mentioned that, for example, with

12:48:38  18  regard to dropped Claim 1, Independent Claim 1, on the '450

12:48:42  19  patent, they still intend to tell the jury that -- talk

12:48:49  20  about that claim, even though it's dropped, and it's no

12:48:51  21  longer asserted.  There's no case or controversy on it.

12:48:55  22  They want to talk about that claim and show the jury Claim

12:48:58  23  1 and let it -- you know, let the jury know that Claim 1 --

12:49:03  24  our expert has no dispute over.

12:49:05  25       Rather than what we offered to them, which is the

12:49:07  1  elements of Claim 1 get worked into the claims that we are

12:49:11  2  asserting before the jury, 4 and 5.  They're all elements

12:49:13  3  of 4 and 5 under the law, obviously.

12:49:16  4       And they're -- they're free to let the jury know

12:49:19  5  that our expert doesn't have any dispute on those elements

12:49:21  6  of Claim 4 or 5.  They want to go a step further and show

12:49:25  7  the jury Claim 1, separate from 5, and we think that's

12:49:28  8  wholly unnecessary, and it could create prejudice, as you

12:49:33  9  suggested yesterday.

12:49:33  10       THE COURT:  All right.  Let me hear from Samsung.

12:49:37  11       MR. LERNER:  Thank you, Your Honor.  Jeff Lerner

12:49:42  12  for Defendants.

12:49:43  13       THE COURT:  Tell me how dropped claims could

12:49:47  14  impact the issue of willful infringement.

12:49:49  15       MR. LERNER:  Your Honor's question was directly on

12:49:55  16  point.  And this is specifically for post-filing

12:49:58  17  willfulness.  The theory for post-filing willfulness is our

12:50:02  18  complaint -- our accusations ought to have led you to stop

12:50:06  19  what you were doing.

12:50:07  20       And we think it's relevant that those accusations

12:50:09  21  were for a wide set of products.  We had a good faith basis

12:50:09  22  to believe they weren't infringing or infringing of our

12:50:14  23  claims.  We continued.  And over the course of the case, it

12:50:17  24  was recognized that many of those products were not

12:50:20  25  infringing.  And for each of these we're talking about, we

12:50:23  1   have non-infringement opinions by our expert.  This

12:50:26  2   actually overlaps, I think, fully with the non-infringing

12:50:29  3   alternatives.

12:50:29  4        So I think it's at -- at the very least,

12:50:32  5   circumstantial evidence to our good faith basis to proceed

12:50:36  6   with sales of the accused products that the mere accusation

12:50:39  7   of those products was not a reason we should have stopped

12:50:43  8   our commercial activity.

12:50:44  9        And we think that's a very important context to

12:50:46  10  give to the jury if the Plaintiff is allowed to argue that

12:50:49  11  the filing of the complaint or the service of contentions

12:50:52  12  should have arrested that activity that we've been engaging

12:51:05  13  in for years.

12:51:06  14       THE COURT:  All right.  Well, I'm going to grant

12:51:09  15  Plaintiff's Motion in Limine No. 1, and I'm going to, by

12:51:12  16  way of limine order, without prior leave of the Court,

12:51:17  17  exclude evidence of no longer asserted claims, products, or

12:51:21  18  infringement theories.

12:51:23  19       Now, to the extent there's a no longer asserted

12:51:32  20  product that forms the basis for a non-infringing

12:51:35  21  alternative, this ruling doesn't preclude the Defendant

12:51:38  22  from presenting that non-infringing alternative.

12:51:39  23       It does preclude the Defendant from characterizing

12:51:42  24  that non-infringing alternative as a previously asserted

12:51:48  25  and now dropped product in the case.  There's nothing

12:51:51  1  probative about whether it is or isn't a non-infringing

12:51:54  2  alternative, that it may have been previously accused and

12:51:57  3  is no longer accused in the case.

12:51:59  4       With regard to the willfulness issue, I'm going to

12:52:07  5  exercise my gatekeeping authority, and that is the

12:52:11  6  assertion of prior claims or products that have been

12:52:18  7  asserted and are now dropped.  I'm going to require prior

12:52:22  8  leave of Court before that's raised with the jury.

12:52:26  9       Quite honestly and candidly, Mr. Lerner, one of

12:52:29  10  the challenges this Court has is getting Plaintiffs to

12:52:34  11  narrow their claims.  If every Plaintiff knows going

12:52:37  12  forward that when they narrow their claims and drop them

12:52:40  13  those are going to be used as a defensive sword against

12:52:43  14  their willfulness claim, it's going to make it harder for

12:52:47  15  any Plaintiff to be convinced to narrow their claims.

12:52:50  16       Now, that's -- that doesn't go to the heart of the

12:52:53  17  substantive issue, but it is a very real practical

12:52:56  18  consideration.

12:52:57  19       Now, there may be a context as we go through the

12:52:59  20  trial where with a request for leave, I will see a way for

12:53:06  21  you to raise what you're wanting to raise in a way that I

12:53:08  22  believe is acceptably prejudicial to the Plaintiff.  But

12:53:13  23  without knowing the exact context in real-time, I'm not

12:53:16  24  prepared to give you unfettered access to asserting before

12:53:21  25  the jury that a certain claim was previously alleged by

12:53:25  1    Plaintiff and has now been dropped.

12:53:27  2          So I hope that's clear.  If you have any question

12:53:29  3    about the scope of my ruling, now is the time for you to

12:53:32  4    raise it with me.

12:53:32  5          MR. LERNER:  I do.  And if Your Honor permits me,

12:53:34  6    I didn't address the no longer asserted claims.  There's a

12:53:39  7    very specific issue we have in mind for this.

12:53:41  8          Mr. Dell, their damages expert, in his -- in his

12:53:44  9    damages analysis -- this is Paragraphs 177 to 178 for the

12:53:50 10    '450 patent, 179 to 181 for the '338 patent.  He -- he says

12:53:59 11    the asserted Independent Claim 1 reads as follows, and then

12:54:03 12    he proceed -- he continues.  He doesn't mention any other

12:54:08 13    claims in his report.

12:54:09 14          And we believe it's a fair set of questions to ask

12:54:13 15    him -- not to say Claim 1 was dropped, but to point to --

12:54:16 16    to examine him that when he was attributing value to the

12:54:19 17    '450 patent, it was on the basis of Claim 1 and that he

12:54:23 18    understands Claim 4 and Claim 5 have additional elements

12:54:27 19    that are narrow -- have been narrowed.

12:54:29 20          It's a construct of the way the report was written

12:54:31 21    that he's addressed claims that are no longer in the case,

12:54:35 22    and we can't rewrite history there.

12:54:37 23          THE COURT:  Well, as I told you, I'm going to need

12:54:39 24    the context of this developing in real-time during the

12:54:42 25    course of the trial.  What you're trying to do is you're

12:54:46  1  trying to give me what you think is going to happen and ask
12:54:48  2  me to rule on it in advance, and I'm not going to do that.
12:54:51  3       I'm going to preserve my gatekeeping role until
12:54:55  4  the time that you believe it's appropriate to seek leave of
12:55:00  5  the Court, and I will have had the development of the case
12:55:03  6  up until that point before me.  I'm not going to do it in
12:55:06  7  isolation now.
12:55:07  8       So I'm -- I'm excluding, in effect, all of what's
12:55:11  9  asked for under MIL -- Plaintiff's MIL No. 1, except prior
12:55:17  10  products that now would form the basis of an alleged
12:55:21  11  non-infringing alternative as long as they're not
12:55:23  12  identified as previously accused products.  And beyond
12:55:28  13  that, leaving open the possibility of the Court granting
12:55:35  14  leave, you're going to need to seek and obtain leave in
12:55:37  15  advance, okay?
12:55:38  16       MR. LERNER:  I understand, Your Honor.
12:55:39  17       THE COURT:  All right.  Let's go, then, to MIL No.
12:55:44  18  2, Plaintiff's MIL No. 2.
12:55:49  19       What's the status of this, counsel?
12:55:51  20       MR. HASLAM:  I think there are some agreements,
12:55:53  21  but there may be still some disputes.
12:55:55  22       This is on background prior art.  As is typical,
12:55:57  23  our expert talks about what the people of ordinary skill in
12:56:01  24  the art would have known.  He uses various text, treatises,
12:56:06  25  and patents.

12:56:07  1         We've agreed that those can be used and shown to

12:56:09  2   the jury, but they will not go back to the jury when they

12:56:13  3   deliberate.

12:56:14  4         THE COURT:  Wait -- wait a minute, Mr. Haslam.

12:56:19  5   I'm -- I'm going to clearly segregate any disputes

12:56:22  6   regarding potential exhibits in the case from the motion in

12:56:26  7   limine practice.

12:56:27  8         MR. HASLAM:  Okay.

12:56:27  9         THE COURT:  I often get motions in limine that are

12:56:30 10   an attack on documents and potential exhibits.  If this is

12:56:33 11   one of those, we'll take it up when we get to exhibit

12:56:36 12   disputes.

12:56:36 13         MR. HASLAM:  Well, this was -- that was -- I

12:56:41 14   understand what the Court's saying.

12:56:42 15         THE COURT:  I'm asking for clarification.

12:56:43 16         MR. HASLAM:  Yeah.  That was something we had

12:56:44 17   agreed to as part of this.

12:56:45 18         But I think the issue is, is that our expert will

12:56:49 19   testify about what people of ordinary skill in the art knew

12:56:52 20   about various things.  My understanding is the dispute

12:56:57 21   is -- and we will not in that -- in that context map a

12:57:02 22   particular piece of background art to a specific claim

12:57:05 23   limitation.  So we've agreed on that.

12:57:07 24         I think the concern is -- and -- as -- as

12:57:12 25   discussed over the lunchtime break, they don't want us, in

| | | |
|---|---|---|
| 12:57:17 | 1 | some fashion, I think, to talk about something that may be |
| 12:57:21 | 2 | a claim limitation.  The example I gave is the PET is -- is |
| 12:57:25 | 3 | a flexible substrate that is used -- is referred to as one |
| 12:57:29 | 4 | of the substrates in the '311 patent. |
| 12:57:32 | 5 | And our expert is going to say that PET was known |
| 12:57:35 | 6 | as a flexible substrate long before the '311 patent came |
| 12:57:39 | 7 | along.  So people knew about that. |
| 12:57:40 | 8 | And my understanding is that that is the touch |
| 12:57:43 | 9 | point of where there may be some concern that he can't say |
| 12:57:46 | 10 | what was in the background prior -- the displays were in |
| 12:57:51 | 11 | the background prior art.  PET, the flexible -- flexible |
| 12:57:54 | 12 | substrates were well-known.  PET, which is mentioned in the |
| 12:57:58 | 13 | patent, was well-known as a flexible substrate. |
| 12:58:02 | 14 | I mean, the way -- the way PET comes up to you |
| 12:58:04 | 15 | it's all rolled up in a little -- maybe a six inch or |
| 12:58:11 | 16 | diameter or radius ball.  You know -- you can just tell |
| 12:58:12 | 17 | from looking at it that it's flexible. |
| 12:58:14 | 18 | THE COURT:  Well, let me say this.  If -- if |
| 12:58:16 | 19 | you're going to offer for admission as a pre-admitted |
| 12:58:18 | 20 | exhibit prior art that doesn't form the basis of your |
| 12:58:22 | 21 | invalidity contentions, then it's not likely I'm going to |
| 12:58:25 | 22 | admit non-asserted prior art as an exhibit in the case. |
| 12:58:29 | 23 | That would be highly confusing, and the jury is going to |
| 12:58:35 | 24 | have the ability to request any of the admitted exhibits |
| 12:58:38 | 25 | during their deliberations.  They're not going to get |

12:58:42 1   demonstratives.  And exhibits are going to have to be

12:58:44 2   requested by the jury.  I'm not going to send a wheelbarrow

12:58:49 3   full of exhibits back with the jury when they initially

12:58:51 4   retire to deliberate.

12:58:53 5        MR. HASLAM:  I understand.

12:58:54 6        THE COURT:  And you're aware of my practice in

12:58:55 7   that regard.

12:58:56 8        MR. HASLAM:  Yes, I understand.  And that's why I

12:59:00 9   prefaced that we're not -- we don't need to get those in,

12:59:03 10  but this really goes to can he testify about what people

12:59:05 11  knew -- what people knew in the ordinary skill in the art.

12:59:08 12  There's a treatise that talks about it --

12:59:11 13       THE COURT:  And as long as it's purely prior

12:59:15 14  background, that's typically acceptable.

12:59:17 15       MR. HASLAM:  That's what I thought, Your Honor.

12:59:18 16       THE COURT:  What's -- what's Plaintiff's position?

12:59:21 17       MR. RUBIN:  So, Your Honor, I think we are very

12:59:23 18  close on this MIL.

12:59:24 19       The concern is that Defendants may cross what we

12:59:30 20  think is -- is an impermissible -- a line to impermissible

12:59:35 21  opinions or -- or arguments concerning obviousness where

12:59:38 22  they take these opinions that are in the report that

12:59:44 23  certain elements -- or certain technical features that

12:59:48 24  aren't claim elements were known in these background art

12:59:51 25  references, which were not charted in their contentions,

12:59:55  1    and invite the jury to find obviousness based on that

12:59:58  2    disclosure.

12:59:58  3             So we think passing references to these -- these

01:00:05  4    things that were known in the art are probably fine, but

01:00:08  5    whereas repetitive or where it forms part of a presentation

01:00:13  6    or argument on obviousness, we think these uncharted

01:00:18  7    references just should not be part of that.

01:00:19  8             THE COURT:  Well, let me ask you this.  I mean,

01:00:22  9    this is going to come in through expert witnesses, and

01:00:27  10   expert witnesses are going to be bound by the parameters of

01:00:29  11   their reports.  And you had an opportunity to move to

01:00:33  12   strike anything out of those reports that you think is

01:00:35  13   improper, irrelevant, unfairly prejudicial, or whatever

01:00:39  14   basis you want to raise.

01:00:40  15            Now you're asking me by way of limine to constrain

01:00:45  16   the expert beyond that report in a way that you haven't

01:00:48  17   particularly addressed in a motion to strike?  I mean, if

01:00:51  18   it's in the expert's report as background on the prior art,

01:00:56  19   if it went too far in the report, you should have moved to

01:00:59  20   strike it.  If you didn't move to strike it, why should I

01:01:02  21   limine it out in light of that?

01:01:04  22            MR. RUBIN:  So, Your Honor --

01:01:06  23            THE COURT:  That's my question.

01:01:09  24            MR. RUBIN:  So the references are described in the

01:01:10  25   reports as background.  And if they're used only for that

01:01:14  1  limited purpose and not in a way that goes beyond that to

01:01:20  2  invite the jury to use them as a basis for obviousness,

01:01:24  3  then that's fine.  The concern that we have is so -- so

01:01:28  4  they -- the expert is not required to present his opinions

01:01:32  5  in the same order as the report.

01:01:36  6         THE COURT:  True.

01:01:36  7         MR. RUBIN:  And so if an opinion that's presented

01:01:41  8  in a report for background is instead used to suggest to

01:01:45  9  the jury an obviousness combination, we think that would be

01:01:48 10  inappropriate.

01:01:49 11         THE COURT:  Well, in light of this discussion and

01:01:57 12  in light of the fact that Plaintiffs could have challenged

01:02:00 13  any portion of the expert's reports they think went beyond

01:02:04 14  mere background information with regard to items that are

01:02:11 15  unasserted prior art, I'm going to deny Plaintiff's Motion

01:02:15 16  in Limine No. 2.

01:02:16 17         Now, if as Plaintiff fears Defendant is going to

01:02:22 18  go beyond the scope of those expert reports and they're

01:02:24 19  going to try and have some backdoor obviousness combination

01:02:29 20  and camouflage it within the -- as -- as part of the

01:02:34 21  background of the prior art, you can certainly raise that

01:02:37 22  if it gets to that point.

01:02:39 23         And if -- if, in effect, your objection is

01:02:42 24  Plaintiff's asserting an uncharted, unaccused obviousness

01:02:48 25  combination by way of this, quote, background, then that's

01:02:51  1   improper.  And if it really is that, I'll exclude it.

01:02:54  2          But I have -- I have faith in Mr. Haslam.  When he

01:02:57  3   tells me it's going to be purely background, it's going to

01:03:00  4   be purely background.  And I don't see any reason to grant

01:03:05  5   a limine order presuming that that's an unreliable

01:03:11  6   representation, especially when if it's so egregious in the

01:03:15  7   report, you should have challenged it as a motion to

01:03:18  8   strike, and that obviously didn't happen.

01:03:19  9          So if, in fact, there's some kind of backdoor

01:03:27 10   obviousness combination that's raised as a surprise, I'm

01:03:29 11   certainly going to stop that.  But that's an extreme

01:03:32 12   example.  And it's typically permissible for a Defendant to

01:03:35 13   outline the background of the art as a part of their

01:03:38 14   expert's testimony.

01:03:39 15          As long as this is -- is that, then it shouldn't

01:03:43 16   be subject to a limine order.  So Plaintiff's -- with that

01:03:51 17   explanation, Plaintiff's Limine -- Motion in Limine No. 2

01:03:54 18   is denied.

01:03:55 19          What about Plaintiff's Motion in Limine No. 3?

01:03:58 20          MR. RUBIN:  So, Your Honor, I can address that, as

01:04:01 21   well.

01:04:01 22          THE COURT:  I was hoping you could since you

01:04:04 23   stayed at the podium.

01:04:05 24          MR. RUBIN:  All right.  So Samsung has on its

01:04:07 25   exhibit list dozens of -- or at least numerous Samsung

01:04:14  1  patents and patent applications.  And we think it's

01:04:22  2  improp -- we -- Samsung should not be permitted to argue to

01:04:27  3  the jury that -- or to suggest to the jury -- to confuse

01:04:33  4  the jury with these Samsung patents to suggest that it

01:04:38  5  could not be infringing our patents because it itself has

01:04:42  6  patents on the same -- or on the technology used in its

01:04:45  7  products.

01:04:45  8       In Samsung's opposition, they point to several

01:04:53  9  exhibits that Dr. Fontecchio discusses, which they suggest

01:04:57  10  are appropriate exhibits to enter -- or to present to the

01:05:02  11  jury.

01:05:02  12       There may have been an -- an error in drafting

01:05:07  13  this because actually I think most of the exhibits that

01:05:10  14  they cite to are patents from Casio, a prior assignee of

01:05:15  15  two of the asserted patents in the case.

01:05:19  16       But one of the exhibits they point to, which is

01:05:22  17  DTX-431, illustrates the issue clearly.

01:05:27  18       The report from Dr. Fontecchio --

01:05:30  19       THE COURT:  Let me stop you a minute, Mr. Rubin.

01:05:33  20  I made it clear just three minutes ago when Mr. Haslam was

01:05:36  21  at the podium that the Court doesn't intend to deal with

01:05:40  22  what are, in essence, exhibit disputes as a part of the

01:05:43  23  limine practice.

01:05:44  24       If these are patent applications or Samsung

01:05:51  25  patents that are going to be offered by Samsung as exhibits

01:05:54   1   to be pre-admitted and you have a basis to object to them,

01:05:59   2   whether it's relevance, probative value, or confusion to

01:06:03   3   the jury, that ought to be hashed out during the exhibit

01:06:06   4   processes.

01:06:06   5        To have exhibit disputes masquerading as motions

01:06:10   6   in limine is not, in my view, the proper way to go about

01:06:12   7   this.  I'm not saying we won't do it, but that's not what

01:06:16   8   traditional limine practice is for.

01:06:19   9        MR. RUBIN:  So, Your Honor, I was talking about

01:06:21   10  exhibits because that's what they pointed to in their

01:06:24   11  opposition, but the -- the real issue here concerns the

01:06:27   12  argument that they want to make.

01:06:33   13       So Dr. Fontecchio has a paragraph in his report

01:06:36   14  where he says:  This Samsung patent shows the

01:06:40   15  seven-transistor circuit that they use in their products.

01:06:43   16  He then goes on to cite 20 Samsung -- Samsung internal

01:06:48   17  technical documents that also show that seven-transistor

01:06:51   18  circuit.  So he doesn't need the Samsung patent to show how

01:06:55   19  the products work.  The prod -- the documents that actually

01:06:57   20  describe the products show how the products work.

01:07:00   21       The reason that he refers to the Samsung patent is

01:07:06   22  to make a point, which we think will be confusing for the

01:07:08   23  jury and prejudicial, that Samsung has a patent on that

01:07:11   24  seven-transistor circuit.

01:07:15   25       Frankly, it's irrelevant to any issue in this case

01:07:19  1  whether Samsung has a -- has a patent that may cover its

01:07:21  2  products.  And the only reason for them to point that out

01:07:30  3  to the jury is to confuse the jury and to invite the jury

01:07:34  4  to draw the inference that they can't be infringing our

01:07:38  5  patent because they themselves got a patent.

01:07:41  6              THE COURT:  So in light of that, tell me why this

01:07:44  7  wasn't raised as a Daubert motion or a motion to strike.

01:07:47  8  If it's in the report, if it's a backdoor way to waive

01:07:51  9  Samsung's patents on seven-transistor products in front of

01:07:54  10  the jury to undermine your infringement theories, why

01:07:57  11  didn't you challenge the expert's report under Daubert?

01:08:01  12              MR. RUBIN:  Well, Your Honor, the actual opinions

01:08:03  13  that are offered concerning the seven-transistor circuit

01:08:10  14  which don't really rely on the Samsung patent, we don't

01:08:14  15  have any objection to.  Everybody agrees that the

01:08:20  16  seven-transistor circuit is used in the products.

01:08:22  17              So we didn't see this as a -- a challenge to the

01:08:27  18  sufficiency or reliability of the opinions.  This is an

01:08:29  19  issue of -- of prejudice, which we -- we didn't feel --

01:08:34  20              THE COURT:  Well, let me say this -- let me say

01:08:37  21  this.  I don't expect the Defendant to get up before this

01:08:40  22  jury and tout its patent portfolio that's unrelated to

01:08:47  23  what's asserted in this case, to claim it has thousands of

01:08:52  24  patents, and it's a world class cutting edge IP company and

01:08:55  25  basically try to bolster its position with regard to

01:08:59  1    unasserted patents that relate to unasserted technology.

01:09:02  2         There's not going to be this kind of we have more

01:09:04  3    patents than you have, so we're the good guys, and you're

01:09:06  4    the bad guys.  We're not going to -- we're not going to

01:09:09  5    create damages by counting the number of patents.  We're

01:09:12  6    not going to create liability issues on who has more

01:09:17  7    patents and who doesn't have that many patents.

01:09:20  8         Now, that's improper.  If that's what you're

01:09:29  9    getting at, that's not clear to me.  If you're trying to,

01:09:33  10   on the other hand, tell me that there's a provision in

01:09:34  11   their expert's report where he talks about Samsung patents

01:09:39  12   and applications in a way that's improper, my question is

01:09:42  13   why didn't you challenge that expert's report?

01:09:45  14        I really -- I really am not sure what you're

01:09:47  15   trying to get to here, counsel.  Maybe you could clarify

01:09:50  16   that for me.

01:09:51  17        MR. RUBIN:  Well, Your Honor, we are -- we do have

01:09:55  18   a concern, which is the one that you just pointed to about

01:10:02  19   showing a large number of Samsung patents.  And so we

01:10:09  20   think --

01:10:09  21        THE COURT:  There's -- there's nothing wrong with

01:10:11  22   Samsung saying they own patents.

01:10:13  23        MR. RUBIN:  No, Your Honor.

01:10:14  24        THE COURT:  But we're not going to talk about how

01:10:16  25   many they have versus how many you have.  This is not a

01:10:19  1  schoolyard fight where my brother's bigger than your

01:10:26  2  brother, and, therefore, we're going to win the tussle on

01:10:28  3  the playground.  That's not how this is going to get tried.

01:10:31  4       MR. RUBIN:  So, Your Honor, the reason that I was

01:10:33  5  talking about DTX-431 is this is the one example of a

01:10:38  6  Samsung patent that they point to in opposing our motion in

01:10:40  7  limine.  So I was trying to respond to the arguments that

01:10:46  8  they made in their brief and to show how it actually --

01:10:51  9  what they cited in their brief helps to illustrate the

01:10:54  10 problem that -- that we're concerned about.

01:10:58  11       THE COURT:  Let me do this, Mr. Rubin, let me hear

01:11:00  12 from Samsung on this.  Maybe that will give me some

01:11:03  13 clarity.

01:11:10  14       MR. HASLAM:  The one thing we're not going to do

01:11:12  15 is count patents and say we have more patents than they do.

01:11:16  16 This relates to --

01:11:17  17       THE COURT:  Tell me what you do want to do, and

01:11:19  18 then I'll determine whether it's appropriate or not.

01:11:21  19       MR. HASLAM:  Just as a preface, as we cited in our

01:11:23  20 briefs, our patents may be relevant and are relevant, we

01:11:31  21 believe, to the issue of willfulness.

01:11:32  22       The patents -- and it's a handful of them.  It

01:11:35  23 will be four or five at most, either for our expert or for

01:11:38  24 crossing their experts.  One set of patents deals with --

01:11:46  25 and it -- it's -- the filing dates on these predate the

01:11:49  1   dates of the relevant patents.

01:11:52  2          So for the '311, one of the non-infringement

01:11:54  3   arguments we have in this case is we do not have a

01:12:00  4   substrate that has a touch sensor which is configured to

01:12:03  5   wrap around a display.  It's disputed.  We -- we put the

01:12:10  6   touch sensor directly on the display with no substrate.

01:12:13  7          Now, it's a disputed issue as to whether what it's

01:12:16  8   on is part of the display or a separate substrate.  We have

01:12:20  9   patents that deal with integrating the touch sensor

01:12:25 10   directly into the display.  And it is relevant to show our

01:12:30 11   good faith that we thought what we were doing was

01:12:34 12   different.

01:12:34 13          The jury may disagree with us because that issue

01:12:36 14   is going to go to the jury.  Likewise, on the '2 -- on the

01:12:42 15   '338, predating the '338 patent, we began working -- going

01:12:48 16   from a two or a three-transistor, such as the '450 and the

01:12:55 17   '338, to begin moving towards a multiple transistor

01:13:00 18   embodiment, including what we now have as the

01:13:03 19   seven-transistor embodiment.

01:13:04 20          So it is focused, targeted, and it -- it is going

01:13:08 21   to be argued not that we don't infringe or that because we

01:13:13 22   have a patent we don't infringe, but that it goes to our

01:13:17 23   good faith.

01:13:17 24          And -- and I will just add, I think it's relevant

01:13:23 25   because in numerous mock juries that I have listened to,

01:13:27  1  the panel almost always asks, well, if this is different,

01:13:33  2  where is their patent?  And I think it's relevant for us to

01:13:37  3  see here's -- we thought these differences were significant

01:13:43  4  enough to try to get a patent on it.

01:13:44  5        And we're not going to argue that that's the be

01:13:47  6  all and end all, forget it.  But it is show -- does show

01:13:50  7  that we believe enough that we were different than what was

01:13:53  8  in the prior art that we went ahead and patented what we

01:13:58  9  thought was novel, which was integrating the touch sensor

01:14:02  10  with a display or going to a seven-transistor

01:14:06  11  implementation.

01:14:08  12        And that's --

01:14:09  13        THE COURT:  Well, certainly, Mr. Haslam, the

01:14:13  14  Defendant can explain to the jury the history of its

01:14:19  15  products and how it got there.  And I don't see any reason

01:14:35  16  why you can't present a narrative about the ark of your

01:14:43  17  products.  However, I think there -- I think there needs to

01:14:51  18  be some gatekeeping as to what you say as regards to your

01:14:56  19  prior patents.

01:15:00  20        I'm not telling you that there may not be a

01:15:03  21  context in which that's relevant.  I am telling you that

01:15:09  22  it's hard enough to keep the jury focused on the three

01:15:12  23  asserted patents in this case without additional extraneous

01:15:17  24  patents flying around left and right.  And there is very

01:15:20  25  real risk of confusion here.

01:15:22   1          I'm much of the same mind as I was earlier, that
01:15:27   2   as you present your narrative from the Defendants'
01:15:29   3   standpoint, if there's a place in that process where it
01:15:35   4   makes sense to mention that you have patented protection on
01:15:40   5   a certain aspect of it, you can certainly approach and ask
01:15:43   6   for leave.
01:15:44   7          But I'm not prepared to say you can talk about as
01:15:47   8   many different additional Samsung patents as you want to.
01:15:50   9   I just think that opens the door to confusion.  And as I
01:15:58  10   say, the focus of this trial needs to be on the asserted
01:16:00  11   claims of the three asserted patents.  And I -- I feel part
01:16:05  12   of my responsibility is try to avoid any confusion and keep
01:16:08  13   the jury focused on the issues here.
01:16:11  14          I'm not telling you I'm not going to let you
01:16:13  15   mention what you've said.  But I'm going to have to hear
01:16:16  16   that narrative from you and have the context of how it's
01:16:21  17   presented, and then let you make your request.  Is that
01:16:24  18   understood?
01:16:24  19          MR. HASLAM:  I understand, Your Honor.  And
01:16:27  20   just -- I never intended to, and clearly won't, I don't
01:16:31  21   intend to try to go through the drawings and the claims of
01:16:33  22   those patents.  Essentially, I think the title or one
01:16:38  23   figure may be enough to just say we had a patent on this,
01:16:40  24   or we have a patent on that, and that's about it.
01:16:42  25          THE COURT:  There again, I'll be in a better

01:16:45   1   position to know when I've heard everything, and then you

01:16:47   2   tell me exactly what you do or don't want to show the jury.

01:16:50   3            MR. HASLAM:  Understood.

01:16:51   4            THE COURT:  So to enforce the Court's gatekeeping

01:16:57   5   role and to carry out what I've just said in the record,

01:17:00   6   I'm going to grant Plaintiff's Motion in Limine No. 3.

01:17:03   7            And I'll carry any requests for leave to go into

01:17:09   8   Defendants' patents as indicated in the context of the

01:17:14   9   real-time presentation of the evidence.

01:17:16   10           All right.  Next is Plaintiff's Motion in Limine

01:17:19   11   No. 4.

01:17:20   12           What is the status of this, counsel?

01:17:23   13           MS. HENRY:  I'm happy to report that we have an

01:17:29   14   agreement on 4, 5, 6, and 7.  I'm happy -- well, I say I

01:17:33   15   have an agreement on 4, 5, and 7.  We're going to drop 6,

01:17:37   16   so that takes care of the next four.  I'm happy to read

01:17:41   17   those agreements into the record.

01:17:42   18           THE COURT:  Tell me -- let's start with

01:17:43   19   Plaintiff's MIL No. 4, Ms. Henry.

01:17:45   20           MS. HENRY:  No. 4, the agreed MIL is Defendants

01:17:48   21   will not present evidence or argument regarding Russ August

01:17:50   22   & Kabat's involvement in Solas's acquisition of the

01:17:52   23   patents-in-suit, including any contingent fee agreement,

01:17:56   24   possible role as buyer, or ownership interest.

01:17:59   25           Defendants, however, may present evidence and

01:18:01   1   argument that Solas was represented by experienced patent

01:18:03   2   counsel in the patent acquisition process.

01:18:05   3           THE COURT:  Is that agreed to by the Defendant,

01:18:08   4   Mr. Haslam?

01:18:08   5           MR. HASLAM:  Yes, it is, Your Honor.

01:18:10   6           THE COURT:  Then I'll order Plaintiff's MIL No. 4

01:18:13   7   granted as agreed to and as recited into the record.

01:18:17   8           And in a little bit slower fashion, Ms. Henry,

01:18:21   9   tell me what the agreement on No. 5 is.

01:18:23   10           MS. HENRY:  Yes, Your Honor.

01:18:24   11           The agreement on MIL 5 is Defendants agree to not

01:18:27   12   introduce evidence or argument calling Magnetar Capital or

01:18:32   13   any entity involved with Solas a hedge fund or similar

01:18:36   14   investment vehicle, e.g., private equity or investor fund.

01:18:41   15   References of this type will be redacted from pre-admitted

01:18:45   16   documents and deposition designations.  This does not

01:18:47   17   preclude Defendants from introducing evidence that Solas

01:18:50   18   has investors and/or partners generally.

01:18:53   19           THE COURT:  Do Defendants agree with that

01:18:56   20   representation?

01:18:56   21           MR. HASLAM:  Yes, Your Honor.

01:18:57   22           THE COURT:  All right.  Based on the agreement of

01:18:58   23   the parties, I'll grant Plaintiff's Motion in Limine No. 5

01:19:03   24   as announced into the record.

01:19:04   25           And do I understand, Ms. Henry, the Plaintiffs are

01:19:10  1  withdrawing the requested Motion in Limine No. 6?

01:19:12  2          MS. HENRY:  That's correct, Your Honor.

01:19:13  3          THE COURT:  Then it's withdrawn.

01:19:14  4          That brings us to Plaintiff's Motion in Limine No.

01:19:17  5  7.

01:19:18  6          What's the potential agreement here?

01:19:19  7          MS. HENRY:  Our agreement is that Defendants will

01:19:21  8  agree not to use the terms "troll," "pirate," "NPE,"

01:19:28  9  "non-practicing entity," or "patent assertion entity" to

01:19:30 10  refer to Solas.  Defendants are not precluded from raising

01:19:33 11  any argument, evidence, or testimony that Solas does not

01:19:37 12  manufacture or sell products.  Defendants are also not

01:19:40 13  precluded from disclosing Solas's business -- discussing

01:19:44 14  Solas's business model.

01:19:46 15          THE COURT:  All right.  Is there agreement on this

01:19:48 16  from the Defendants?

01:19:49 17          MR. HASLAM:  Yes, Your Honor.

01:19:49 18          THE COURT:  Then pursuant to the parties'

01:19:53 19  agreement, the Court grants Plaintiff's Motion in Limine

01:19:55 20  No. 7 as announced into the record.

01:19:57 21          That brings us to Plaintiff's Motion in Limine

01:20:00 22  No. 8.

01:20:01 23          Where are we on this, counsel?

01:20:03 24          MS. HENRY:  We have an agreement on that one, as

01:20:05 25  well, Your Honor.

01:20:05   1          THE COURT:  Let me hear from you then.

01:20:06   2          MS. HENRY:  The agreement is that that MIL will be

01:20:09   3   granted.  Samsung will redact the lump-sum amounts from the

01:20:13   4   licenses referenced in that motion in limine.  And Solas

01:20:15   5   will not insinuate those lump-sum amounts were large.

01:20:20   6          I apologize.  That one is not quite as eloquent.

01:20:25   7   It was an agreement made over the lunch hour.

01:20:26   8          THE COURT:  All right.  Is there any concern or

01:20:28   9   question about exactly which agreements and which numbers

01:20:31  10   in those agreements we're talking about?  Both -- both

01:20:34  11   sides --

01:20:34  12          MS. HENRY:  I don't believe so, Your Honor.

01:20:35  13          THE COURT:  Are both sides on the same --

01:20:37  14          MS. HENRY:  I'll left Defendant --

01:20:38  15          MR. HASLAM:  Yes.  We will redact the amounts, but

01:20:40  16   the licenses will come in simply to show that they were

01:20:44  17   lump-sum licenses without the amounts.

01:20:47  18          THE COURT:  All right.  Based on the parties'

01:20:51  19   agreement as stated into the record, I'll grant Plaintiff's

01:20:53  20   Motion in Limine No. 8.

01:20:54  21          What about Plaintiff's No. 9?

01:20:57  22          MS. HENRY:  That one is also resolved, Your Honor.

01:20:59  23   The parties agree that that motion in limine should be

01:21:01  24   granted based on the Court's earlier rulings on the

01:21:04  25   dispositive motions.

01:21:05  1                THE COURT:  Defendants concur with that

01:21:07  2    representation?

01:21:07  3                MR. HASLAM:  Yes, Your Honor.

01:21:09  4                THE COURT:  Then Plaintiff's Motion in Limine No.

01:21:11  5    9 is granted.

01:21:12  6                What about Plaintiff's Motion in Limine No. 10?

01:21:17  7                MS. HENRY:  Solas withdraws -- excuse me, Motion

01:21:21  8    in Limine No. 10.

01:21:21  9                THE COURT:  Plaintiff's No. 10 is withdrawn.

01:21:25  10               What about Plaintiff's No. 11?

01:21:27  11               MS. HENRY:  We have an agreement, Your Honor.

01:21:29  12   That one was included in the joint filing.  I do have it if

01:21:32  13   you'd like me to read it into the record to be a hundred

01:21:36  14   percent clear.

01:21:36  15               THE COURT:  I'd like it in the record to be a

01:21:38  16   hundred percent clear.

01:21:47  17               MS. HENRY:  This language is -- was included in

01:21:50  18   the parties' joint filing that was filed on the 7th.  I

01:21:50  19   apologize.  I don't have the document number.  But that

01:21:56  20   agreement is Defendants will not present evidence or

01:21:57  21   testimony before the jury related solely to any of their

01:22:00  22   equitable defenses.

01:22:03  23               THE COURT:  Defendants concur with that as agreed

01:22:05  24   to?

01:22:05  25               MR. HASLAM:  Yes, Your Honor.

01:22:06  1            THE COURT:  Then Plaintiff's Motion in Limine No.
01:22:09  2  11 is granted as agreed and as announced into the record.
01:22:14  3            All right.  Are you aware of any other disputed
01:22:18  4  motions in limine urged by the Plaintiff that haven't been
01:22:20  5  addressed by the Court, Ms. Henry?
01:22:21  6            MS. HENRY:  No, Your Honor.
01:22:22  7            THE COURT:  All right.  Then let's move to
01:22:24  8  Defendants' motions in limine, beginning with Defendants'
01:22:29  9  Motion in Limine No. 1.
01:22:30 10            What's the status of this?
01:22:39 11            MS. HENRY:  That one is not mine, Your Honor.  So
01:22:41 12  I'm just going to say I -- I'm not sure.  I don't think we
01:22:44 13  have an agreement on Motion in Limine -- Defendants' Motion
01:22:47 14  in Limine No. 1, I don't believe.
01:22:49 15            MR. LERNER:  That's right.
01:22:50 16            THE COURT:  Then let me hear what Defendants'
01:22:52 17  posture is.
01:22:53 18            MR. LERNER:  Your Honor, in this motion, we're
01:22:57 19  seeking to preclude any testimony by Mr. Credelle about
01:23:00 20  non-infringing alternatives.  And this is one we had hoped
01:23:02 21  to resolve.
01:23:03 22            He doesn't have opinions in his expert report
01:23:05 23  about non-infringing alternatives.  And there appears to be
01:23:08 24  a dispute about three paragraphs in his report.  Solas
01:23:14 25  cites 182 to '84 where he says he understands Samsung has

01:23:18  1   not identified design-arounds.  He gives a legal standard

01:23:22  2   for non-infringing alternatives.  And then he says in

01:23:26  3   Paragraph 184:  To the extent that Samsung or its experts

01:23:31  4   attempt to argue about the viability of design-arounds or

01:23:34  5   non-infringing alternatives to the asserted patents, I

01:23:36  6   disagree and reserve the right to supplement and to respond

01:23:39  7   to any new arguments Samsung raises.

01:23:41  8        We don't believe that's a -- we just want to

01:23:44  9   confirm that he can't offer opinions about the specific

01:23:48  10  non-infringing alternatives that he hasn't addressed.  He

01:23:50  11  didn't address any of them or give any reasons.

01:23:53  12       And the other part is the -- Solas cites

01:23:58  13  statements in his opening and rebuttal reports about

01:24:01  14  benefits of metal mesh touch sensors over ITO.  That -- we

01:24:07  15  don't take any issue with him testifying to those

01:24:09  16  statements, but they don't get to the issue, which is

01:24:13  17  products that have the ITO were a non-infringing

01:24:13  18  alternative.

01:24:16  19       And the fact that there might be some arguable

01:24:20  20  disadvantages to ITO doesn't get to that issue.  It's -- if

01:24:23  21  he wants to say ITO is not as good as metal mesh,

01:24:28  22  consistent with his report, we -- we see no issue.  It's

01:24:31  23  that he didn't offer an opinion that ITO would be

01:24:38  24  unsuitable for the accused device -- devices.

01:24:38  25       THE COURT:  Well, I don't know how many times I

01:24:40  1  have to say it, but the expert witnesses in this case are

01:24:43  2  going to be constrained to their reports, and they're not

01:24:45  3  going to testify beyond the scope of their reports.

01:24:48  4          And if an expert has rendered a report that says,

01:24:52  5  I reserve the right to supplement it and they have not

01:24:55  6  sought and obtained leave of the Court to submit a

01:24:59  7  supplemental report and that supplemental report has not

01:25:01  8  been presented with the Court's approval, they're not going

01:25:04  9  to supplement it on the fly in real-time as a surprise or

01:25:09 10  an ambush to the other side.

01:25:10 11          I don't know why this should be before me as a

01:25:12 12  motion in limine.  The rules are expert witnesses are

01:25:19 13  constrained and confined to the content of their reports,

01:25:22 14  no more, no less.

01:25:24 15          So if Mr. Credelle attempts to testify beyond the

01:25:29 16  scope of his report, that and that alone should be a basis

01:25:33 17  for the Defendant to object to it.  And if I'm persuaded

01:25:38 18  that that's correct, I'll exclude it.

01:25:39 19          But this, again, gets back to the fact that that

01:25:42 20  process is highly disruptive.  And I've already addressed

01:25:45 21  it earlier in these pre-trial proceedings to make it

01:25:51 22  sure -- make it clear that either party who wants to raise

01:25:54 23  that objection needs to be darned sure they're on solid

01:25:58 24  ground before they do because it's not a simple, you know,

01:26:03 25  sustained or overruled.  It's send out the jury, get the

01:26:06  1   report, go through the process, hear the argument.

01:26:09  2            I will say this to you, and I need to make this

01:26:13  3   clear to both sides.  To the extent over the course of the

01:26:16  4   trial that one party or the other raises an objection that

01:26:20  5   an expert witness is attempting to exceed the scope of

01:26:23  6   their reports and I have to send the jury out and get to

01:26:26  7   the bottom of it like I've indicated, then all the time

01:26:30  8   that it takes to do that is going to be charged to whoever

01:26:34  9   comes out on the short end of that objection.

01:26:36  10           And so you're going to be using trial time.

01:26:39  11  That's -- because, quite honestly, that can take 15 or 20

01:26:43  12  minutes in the middle of an examination of a witness, which

01:26:46  13  is indicative of how -- how highly disruptive it is.

01:26:49  14           Certainly, if it's warranted and it's supported

01:26:52  15  and it's clear that the experts stepped across the line,

01:26:55  16  make the objection.  And the other side will bear the cost

01:26:59  17  of the time that's wasted to confirm that.

01:27:01  18           But I don't know why this should be before me as

01:27:04  19  a -- as a limine matter, Mr. Lerner.

01:27:07  20           MR. LERNER:  It was the reservation of rights,

01:27:10  21  Your Honor.

01:27:10  22           THE COURT:  Can you tell me?

01:27:10  23           MR. LERNER:  And --

01:27:11  24           THE COURT:  It's what?

01:27:12  25           MR. LERNER:  It's the reservation of rights, and

01:27:14    1   we thought that Plaintiffs would have agreed to this, and

01:27:16    2   it was the lack -- maybe we should hear from them -- the

01:27:18    3   lack of agreement that gave us concern.  We recognize we

01:27:21    4   don't want to disrupt trial over these issues that could

01:27:24    5   have been addressed before.

01:27:28    6         But that was why we raised it, Your Honor, to --

01:27:29    7   to confirm that this reservation of rights or this blanket

01:27:32    8   statement to the extent they argue this, I disagree, would

01:27:35    9   not support some later opinions that have not been

01:27:38   10   disclosed.

01:27:39   11         THE COURT:  Well, let me hear from the Plaintiff

01:27:40   12   on this.

01:27:40   13         What's Plaintiff's position, and why am I -- why

01:27:43   14   am I hearing about this now?

01:27:45   15         MR. BUCZKO:  Your Honor, Jacob Buczko for

01:27:47   16   Plaintiff.

01:27:47   17         So the reason why you're hearing about this now is

01:27:51   18   that -- so Samsung moved to exclude Mr. Credelle from

01:27:56   19   testifying with regard to non-infringing alternatives.

01:27:58   20   There are disclosed opinions with regard to non-infringing

01:28:02   21   alternatives in his report.

01:28:03   22         And I can refer to, for example, his rebuttal

01:28:07   23   report where he describes the benefits of the technology

01:28:09   24   covered by the '311 patent in comparison to the alternative

01:28:15   25   ITO sensors.  And he goes on for about 10 paragraphs on

01:28:19  1  that.

01:28:19  2       So that being in his report and being mentioned as

01:28:22  3  an alternative is a fair topic of testimony.

01:28:25  4       THE COURT:  I don't know how to be any clearer.

01:28:27  5  If it's in his report, it's fair game.  If it's not in the

01:28:30  6  report, it's improper.  And -- and both sides ought to be

01:28:33  7  able to read the same report and determine in the same

01:28:36  8  fashion that this is either in or out of the report.

01:28:39  9       MR. BUCZKO:  Thank you, Your Honor.

01:28:40 10       I think Defendants' position is that that

01:28:44 11  testimony in his report has nothing to do with

01:28:46 12  alternatives, even though it talks about alternatives, and

01:28:48 13  it talks about the disclosed Samsung alternative of using

01:28:52 14  the ITO sensor.

01:28:54 15       So I think that's where the confusion is between

01:28:56 16  the parties.  I agree, I don't think that there's a live

01:28:58 17  issue here anymore.

01:29:00 18       THE COURT:  Well, let me -- let me just make it

01:29:01 19  very clear.  Both sides will be well served in examining

01:29:07 20  their experts in the manner that hews as closely as

01:29:11 21  possible to the text of their written reports.

01:29:13 22       I'm going to deny Defendants' Motion in Limine No.

01:29:16 23  1.  This is clearly addressed by the Court's previous

01:29:20 24  directives to ensure that expert witnesses on both sides

01:29:24 25  are constrained by the contents of their reports with

01:29:31   1   regard to their testimony before the jury.

01:29:33   2        All right.  That brings us to Defendants' Motion

01:29:35   3   in Limine No. 2.

01:29:36   4        MR. HASLAM:  That one is withdrawn, Your Honor.

01:29:38   5        THE COURT:  All right.  Defendants' Motion in

01:29:41   6   Limine No. 2 is withdrawn.

01:29:42   7        What about Defendants' Motion in Limine No. 3?

01:29:46   8        MR. CHO:  Good afternoon, Your Honor.  Daniel Cho

01:29:48   9   on behalf of Defendants.  I'm not listed as the arguing

01:29:51  10   attorney on this motion, but with your permission, I'd like

01:29:53  11   to argue it.

01:29:53  12        THE COURT:  You've appeared in the case?

01:29:54  13        MR. CHO:  Yes, I have.

01:29:55  14        THE COURT:  Please proceed.

01:29:56  15        MR. CHO:  Solas should be precluded from offering

01:30:01  16   evidence or argument concerning secondary considerations.

01:30:01  17   There are several reasons for this.

01:30:06  18        First, under the Federal Rules of Civil Procedure,

01:30:06  19   they have not disclosed during fact discovery their factual

01:30:09  20   basis for at least the secondary considerations of copying

01:30:12  21   and praise.

01:30:13  22        We served a contention rog on this early in fact

01:30:17  23   discovery.  We followed up about it.  They never

01:30:19  24   supplemented throughout fact discovery.  This is

01:30:21  25   prejudicial, Your Honor, because we had no notice to

01:30:24   1   prepare our expert report in response to what Defendants --
01:30:28   2   what Solas disclosed on June 22nd in their rebuttal report,
01:30:33   3   the secondary considerations of copying and praise.
01:30:37   4            For copying, in particular, Your Honor, there's no
01:30:42   5   expert opinion from Solas concerning any products or
01:30:43   6   embodiments that practice the asserted patents.  And for
01:30:45   7   the '311 patent, the one that covers the touch sensor -- is
01:30:50   8   directed to the touch sensor, there's some vague
01:30:52   9   accusations as to copying Atmel's samples by Samsung
01:30:56  10   Display, but without any evidence that what Samsung Display
01:30:59  11   received was actually an embodiment of the invention.
01:31:02  12            This is highly confusing to the jury.  It's
01:31:05  13   prejudicial.  And Solas should not be permitted to rely on
01:31:08  14   insinuations of copying when there's simply no record
01:31:11  15   evidence to support it.
01:31:12  16            For various other secondary considerations, Your
01:31:16  17   Honor, Solas's expert -- no opinions about nexus, tying the
01:31:21  18   secondary considerations to the actual claimed invention,
01:31:25  19   particularly to the novel step of the asserted claims.
01:31:30  20            Solas's experts try to offer Defendants' sales of
01:31:36  21   the accused products as evidence of commercial success.
01:31:39  22   But there is no nexus there to the merits of the actual
01:31:44  23   claimed inventions.
01:31:45  24            Defendants phones, as you know, as we've been
01:31:48  25   talking about, have many, many components and features

| | | |
|---|---|---|
| 01:31:52 | 1 | beyond just the OLED display directed by the '338 and '450 |
| 01:31:59 | 2 | patents and the touch sensor for the '311 patent. |
| 01:32:02 | 3 | And for that reason, Your Honor, without tying any |
| 01:32:05 | 4 | of the secondary considerations to what is actually claimed |
| 01:32:05 | 5 | in the -- in the asserted patents, particularly where the |
| 01:32:10 | 6 | claims are not directed to the overall consumer phones that |
| 01:32:13 | 7 | are accused but to smaller components, any discussion or |
| 01:32:17 | 8 | argument will be confusing to the jury and prejudicial. |
| 01:32:19 | 9 | THE COURT:  Let me hear from Solas in response. |
| 01:32:23 | 10 | MR. RUBIN:  Thank you, Your Honor. |
| 01:32:35 | 11 | MIL No. 3 should be rejected for a number of |
| 01:32:40 | 12 | reasons, but probably the most important one is that it -- |
| 01:32:45 | 13 | it is an untimely Daubert motion. |
| 01:32:48 | 14 | The -- most of the briefing on this, about three |
| 01:32:53 | 15 | pages of it, are devoted to arguments concerning the |
| 01:32:56 | 16 | sufficiency or reliability of the opinion -- the expert |
| 01:33:00 | 17 | opinions that they're challenging, whether they've shown -- |
| 01:33:05 | 18 | whether the experts have shown a nexus, whether our damages |
| 01:33:12 | 19 | expert's opinions properly were related to commercial |
| 01:33:14 | 20 | success or instead to Georgia-Pacific Factor 8. |
| 01:33:17 | 21 | These are all the sorts of things that should have |
| 01:33:20 | 22 | been challenged as a Daubert -- the issues that should have |
| 01:33:24 | 23 | been raised in the Daubert motion if they were seeking to |
| 01:33:26 | 24 | exclude the testimony. |
| 01:33:27 | 25 | The same is true of the argument that the |

01:33:34  1  secondary considerations were not disclosed in our

01:33:38  2  discovery responses, but there, in fact, the opinions that

01:33:43  3  the experts offer were fairly disclosed.

01:33:48  4        Our interrogatory response, for example, talks

01:33:51  5  about failure -- failure by others, including Samsung, and

01:34:00  6  Mr. Credelle's opinions in the report that they're seeking

01:34:03  7  to exclude talk about how Samsung failed to develop, for

01:34:14  8  example, certain touch sensor technology and turn to Atmel,

01:34:20  9  a supplier of theirs, for information on how to make their

01:34:25  10  products better.

01:34:25  11        So the secondary -- the -- the opinion that

01:34:31  12  offered was actually disclosed -- or the type of opinion

01:34:36  13  that would be offered was disclosed in the discovery

01:34:39  14  responses.

01:34:40  15        So for those reasons, the MIL should be denied.

01:34:42  16        THE COURT:  All right.  Well, with regard to this

01:34:51  17  matter, the Court's persuaded that this really is a late

01:34:58  18  and improper Daubert motion.  And for that reason, I'm

01:35:05  19  going to deny Defendants' Motion in Limine No. 3.

01:35:07  20        All right.  Defendants' Motion in Limine No. 4.  I

01:35:22  21  assume we have an agreement because we're not going to talk

01:35:24  22  about discovery disputes in front of the jury.

01:35:26  23        MR. GILLAM:  Gil Gillam for Samsung.  I would

01:35:29  24  assume so, as well, Your Honor.

01:35:30  25        The reason we're having some discussion about it

01:35:33  1  is based on the discussions that we had with counsel,

01:35:37  2  particularly this particular area.

01:35:38  3        They indicated that they wanted to perhaps discuss

01:35:42  4  with an expert the fact that Samsung had not produced any

01:35:47  5  documents in support of something.  I said if that's as far

01:35:50  6  as you want to go with it, that's fine.

01:35:52  7        But I said, if you want to say to that expert,

01:35:55  8  Samsung had a duty to provide documents and then Samsung

01:36:00  9  failed to provide those documents, then what they're doing

01:36:03 10  is setting up the duty and the failure to meet that duty

01:36:07 11  which should have been brought to the Court.  So it's a

01:36:09 12  matter of how they present the questions.

01:36:11 13        So, basically, during the lunch hour, I think we

01:36:13 14  arrived at some language which we think would probably

01:36:16 15  cover this, and that would be that there would be no

01:36:21 16  evidence, argument, or suggestion relating to the -- to the

01:36:23 17  parties' discovery obligations, discovery disputes, or

01:36:31 18  discovery deficiencies.  And I thought we had a deal on

01:36:34 19  that, but they seem to be concerned about deficiencies.

01:36:36 20        If they are complaining about deficiencies, again,

01:36:39 21  Your Honor, that should have been brought to the Court.  So

01:36:41 22  that's what the dispute is.

01:36:42 23        THE COURT:  What's the Plaintiff's position?

01:36:45 24        MR. HOFFMAN:  Your Honor, the only concern is that

01:36:52 25  the word "deficiency" not be read to exclude pointing out

| | | |
|---|---|---|
| 01:36:57 | 1 | where -- having the witnesses or the attorneys say there's |
| 01:37:02 | 2 | a lack of evidence or that Defendants produced no evidence |
| 01:37:04 | 3 | on this point.  That could be considered a deficiency. |
| 01:37:07 | 4 | It's not really a discovery dispute.  So we had a concern |
| 01:37:10 | 5 | about the vagueness of the word "deficiency." |
| 01:37:13 | 6 | As long as they agree that the deficiency does not |
| 01:37:15 | 7 | cover that situation, and it's on the record here, then |
| 01:37:19 | 8 | that -- that language is fine. |
| 01:37:20 | 9 | THE COURT:  That's what I thought I heard |
| 01:37:22 | 10 | Mr. Gillam say when he went to the podium. |
| 01:37:24 | 11 | Mr. Gillam, what's your response? |
| 01:37:26 | 12 | MR. GILLAM:  That's correct, Your Honor.  As long |
| 01:37:28 | 13 | as they -- as long as neither side frames it in some way |
| 01:37:34 | 14 | that there was a dispute or deficiency insofar as an |
| 01:37:38 | 15 | obligation of this Court's rules, I'm fine with that. |
| 01:37:42 | 16 | As far as us saying they had no evidence of |
| 01:37:44 | 17 | infringement on this particular patent, we should be able |
| 01:37:45 | 18 | to argue that.  If they want to say they had no evidence |
| 01:37:49 | 19 | with respect to this particular invalidity matter, they |
| 01:37:54 | 20 | should be able to argue that.  We have no problem with |
| 01:37:57 | 21 | that.  It's the discovery disputes. |
| 01:37:58 | 22 | THE COURT:  Read -- read again to me, Mr. Gillam, |
| 01:38:02 | 23 | the language you read earlier. |
| 01:38:03 | 24 | MR. GILLAM:  Yes, Your Honor. |
| 01:38:04 | 25 | No evidence, argument, or suggestion relating to |

01:38:10  1   the parties' discovery obligations, discovery disputes, or

01:38:17  2   discovery deficiencies.

01:38:21  3          THE COURT:  I'm going to grant Defendants' Motion

01:38:23  4   in Limine No. 4 on the basis just read into the record.

01:38:27  5          No. 5.  Do we have a dispute regarding burden of

01:38:34  6   proof?

01:38:34  7          MR. CHO:  Your Honor, we're pleased to report we

01:38:37  8   have an agreement on this MIL.  I'm happy to read it into

01:38:40  9   the record.

01:38:40  10         THE COURT:  Please do.

01:38:41  11         MR. CHO:  It's rather lengthy.

01:38:43  12         THE COURT:  Just read it slowly.

01:38:45  13         MR. CHO:  The parties shall not -- Agreed to

01:38:49  14   Defendants' Motion in Limine No. 5:  The parties shall not

01:38:52  15   make reference to the clear and convincing burden of proof

01:38:58  16   in a different area of the law, e.g., the burden of proof

01:38:58  17   required to commit an individual to an institution, revoke

01:39:03  18   parental rights, or terminate life support during opening,

01:39:06  19   closing, or the presentation of evidence.

01:39:08  20         With respect to voir dire, a party may only

01:39:11  21   inquire whether a potential juror's prior life experience

01:39:15  22   in another area of law would interfere with the ability to

01:39:19  23   apply the clear and convincing evidence standard, as the

01:39:20  24   Court has instructed them, if and only if a party

01:39:24  25   establishes that either, one, a potential juror served as a

01:39:29  1   juror previously and that case involved a clear and

01:39:33  2   convincing standard; or, two, a potential juror has been

01:39:38  3   involved in litigation, i.e., either as a party or as -- as

01:39:41  4   a witness or as a close family member or friend of a party

01:39:46  5   or witness to a litigation that involved the clear and

01:39:48  6   convincing standard.  For the sake of clarity, a party may

01:39:51  7   inquire generally whether members of the panel have

01:39:55  8   experience in cases involving family law, divorce, or civil

01:40:00  9   commitment.  If any member of the panel answers

01:40:01  10  affirmatively, the party may then take up any further

01:40:04  11  inquiry about the nature of the case at the bench with that

01:40:07  12  member and counsel present without potentially tainting

01:40:10  13  anyone else on the panel.

01:40:12  14         THE COURT:  Does that accurately reflect the

01:40:15  15  agreement of the parties as far as the Plaintiff is

01:40:18  16  concerned?

01:40:18  17         MS. HENRY:  Yes, Your Honor.

01:40:19  18         THE COURT:  Well, based on that, I'll grant

01:40:23  19  Defendants' Motion in Limine No. 5 as recited into the

01:40:25  20  record.

01:40:30  21         Although as purely an aside, I'll observe that if

01:40:30  22  you're going to ask this panel has anybody ever been in a

01:40:33  23  family law matter or divorce, you're probably going to get

01:40:36  24  every hand on the panel that's going to go up.  And if you

01:40:39  25  want to spend your entire time pursuing this, that's your

01:40:43  1    choice.

01:40:43  2            But Defendants' Motion in Limine No. 5, as

01:40:46  3    indicated, is granted.

01:40:47  4            MR. CHO:  Thank you, Your Honor.

01:40:48  5            THE COURT:  What about the status of Defendants'

01:40:51  6    Motion in Limine No. 6?

01:40:55  7            Is there an agreement here, or do we have a

01:40:58  8    dispute?

01:40:58  9            MR. LERNER:  Your Honor, Jeff Lerner for

01:41:00  10   Defendants.  There's still a dispute.

01:41:02  11           THE COURT:  Tell me what your position is then.

01:41:04  12           MR. LERNER:  As Your Honor mentioned, this case is

01:41:06  13   already complicated.  Three asserted patents, a number of

01:41:09  14   asserted claims, many accused products.  And what we're

01:41:12  15   trying to exclude through this is evidence and argument

01:41:17  16   about infringement or willful infringement based on things

01:41:21  17   that are not accused products.

01:41:23  18           To give an example, for willfulness, Solas appears

01:41:29  19   to be intending to rely on a claim chart prepared by a

01:41:34  20   patent broker concerning products at LG, not products that

01:41:39  21   contain any parts supplied by Samsung Display or Samsung

01:41:46  22   Electronics, that were provided to Samsung Electronics when

01:41:48  23   the patent broker was seeking to sell that portfolio.

01:41:52  24           These were not in any interrogatory response on

01:41:54  25   willful infringement.  And we asked what would be the

01:41:58  1  factual basis.  They're not in an expert report.  And

01:42:01  2  there's no connection between the LG products and the

01:42:05  3  accused products.  We're trying to avoid these kinds of

01:42:08  4  references to other companies' products that would be

01:42:11  5  highly prejudicial and also would be problematic because

01:42:17  6  they didn't apply the Court's claim constructions.  They

01:42:22  7  rely on technical evidence that won't be available to the

01:42:25  8  jury.  They wouldn't be relevant at all.

01:42:28  9       We believe that to the extent Solas says it would

01:42:29 10  have marginal reference to knowledge of the patents, it

01:42:31 11  would be far outweighed by the undue prejudice.

01:42:33 12       The other materials are part of the infringement

01:42:38 13  case.  As Your Honor has ruled, we cannot seek a judgment

01:42:44 14  of non-infringement of some of the Apple accused products,

01:42:46 15  but Solas has arguments that accused products infringe

01:42:53 16  because they did a teardown of a later Apple product that

01:42:58 17  was never accused on the '450 patent.

01:43:01 18       And like I mentioned, to get into the details and

01:43:05 19  the ins and outs of unaccused products by other companies

01:43:09 20  would be problematic.  This is where what we would -- what

01:43:12 21  we believe would be appropriate is for the Court to

01:43:14 22  exercise its gatekeeping function.

01:43:16 23       To the extent there's any relevance to these, we

01:43:19 24  think it would be far outweighed by the risk of confusion

01:43:22 25  and prejudice because there'd have to be evidence and

01:43:25  1   argument about how non-accused third-party products relate

01:43:29  2   or don't relate to accused products.  And we're trying to

01:43:32  3   avoid that side show through this motion in limine.

01:43:36  4        So that's -- that's the thrust of our argument on

01:43:38  5   this, Your Honor.

01:43:40  6        THE COURT:  Let me hear from the Plaintiff.

01:43:41  7        MR. BUCZKO:  First, Your Honor, with regard to the

01:43:51  8   infringement charts.  So those were documents that were in

01:43:57  9   Samsung's possession, which mentioned the patents-in-suit,

01:43:59  10  the '450 and '338 patents, and mapped the patents to OLED

01:44:06  11  smartphone products.  The accused products in this case are

01:44:08  12  OLED smartphone products.

01:44:11  13       So at the very least, this puts -- and our

01:44:15  14  argument would be under inquiry notice that its products

01:44:18  15  may similarly infringe those patents.

01:44:20  16       Now, this was heavily addressed in the motion for

01:44:23  17  summary judgment with regard to willful infringement that

01:44:25  18  Your Honor denied earlier this morning.  So this is part of

01:44:31  19  the facts, part of the narrative, part of the totality of

01:44:35  20  circumstances that must be taken into account when the jury

01:44:42  21  decides willful infringement.  I heard something about

01:44:44  22  undue prejudice, but I didn't hear what that undue

01:44:48  23  prejudice is.

01:44:48  24       The jury is not going to be confused.  The jury is

01:44:51  25  going to know that those are not Samsung products.  Samsung

01:44:55  1   is -- has its non-infringement arguments in this case.

01:44:58  2   They're going to be shown simply for the fact that Samsung

01:45:01  3   was put on notice of the '338 and '450 patents, and they're

01:45:05  4   relevant to OLED smartphone products.

01:45:10  5          Now, with regard to the iPhone product, this is

01:45:12  6   another situation where this is something that was in

01:45:17  7   Mr. Credelle's opening report on -- in Paragraph 137.  And

01:45:22  8   so what he does is he relies on Samsung testimony and with

01:45:28  9   regard to how the manufacturing lines of certain products

01:45:32  10  relate to each other.

01:45:33  11         And we only -- he only had evidence for that

01:45:36  12  particular point on the iPhone product, but he tied it to

01:45:40  13  the accused product with the Samsung testimony about how

01:45:43  14  they use the same manufacturing line.

01:45:45  15         And so -- and this was a reasoned opinion that was

01:45:48  16  in his report that was not challenged or in the Daubert or

01:45:51  17  motion to strike process.  Again, I heard insistence that

01:45:58  18  there's prejudice, but I don't know what the real prejudice

01:46:01  19  is to Samsung in this regard.  And in any event, they

01:46:04  20  didn't move to strike it or move under Daubert to exclude

01:46:06  21  it.

01:46:11  22         And I think that addresses all of counsel's

01:46:13  23  points.

01:46:14  24         THE COURT:  All right.  Well, I'm not sure that

01:46:16  25  this is not, again, a camouflaged dispute over

01:46:21   1   admissibility of exhibits, but I'm going to address it

01:46:24   2   nonetheless.

01:46:24   3         With regard to the Samsung charts that are mapped

01:46:50   4   to other products, notwithstanding that they may mention

01:46:55   5   one or more of the asserted patents, I just think that

01:47:05   6   under a 403 analysis, the probative value there is

01:47:09   7   outweighed by the prejudicial effect and outweighed by the

01:47:14   8   likelihood of confusion with the jury.

01:47:18   9         For the same reason, we've already talked about

01:47:29  10   other patents that are not asserted in this case, and I've

01:47:32  11   made it clear that there's a high risk of confusion if

01:47:36  12   unasserted patents are made a part of this trial.

01:47:45  13         So now it seems like Solas wants to use some of

01:47:51  14   Samsung's other patent documents to try to show a

01:47:54  15   contradictory position with regard to the claim language

01:47:57  16   regarding edge under the '311 patent.  I think that's -- I

01:48:04  17   think the use of other patents and other patent documents

01:48:06  18   other than the three asserted patents in this case is

01:48:09  19   highly risky and dangerous.  And but for advanced leave

01:48:18  20   having been granted by the Court, I don't see a basis to

01:48:21  21   allow those.

01:48:23  22         The same thing on the Apple and Sony products.

01:48:30  23   The probative value of those seems to me to be minimal.

01:48:38  24   Mr. Credelle uses Samsung products.  I think there's a

01:48:40  25   clear risk of confusion.

01:48:46  1          Long story short, counsel, I'm going to grant
01:48:49  2  Defendants' Motion in Limine No. 6.  If there's a logical
01:48:55  3  and non-confusing and probative basis to seek leave from
01:48:59  4  the Court to go into any of this during the course of the
01:49:03  5  trial when the Court has the benefit of the evidence has
01:49:08  6  been actually presented and developed, you certainly have
01:49:10  7  leave to seek -- you have permission to seek leave from the
01:49:13  8  Court at that time.
01:49:14  9          But without -- without the benefit of that and as
01:49:18 10  I sit here in advance of the trial beginning, I see more
01:49:27 11  prejudice than I do probative value.
01:49:29 12          So on that basis, I'm going to grant Defendants'
01:49:32 13  MIL No. 6.
01:49:33 14          Let's go to Defendants' MIL No. 7.
01:49:36 15          Do we have any agreement here?
01:49:37 16          MR. HASLAM:  No, Your Honor.
01:49:39 17          THE COURT:  Then tell me what your position is,
01:49:42 18  Mr. Haslam.
01:49:42 19          MR. HASLAM:  Yes, sir.  This relates to the
01:49:44 20  relationship between Samsung and Atmel.  It's being offered
01:49:50 21  to go to the issue of copying and willfulness.  And we
01:49:54 22  believe under the caselaw and under 403 that the probative
01:50:02 23  value of what they want to argue is far outweighed by the
01:50:05 24  facts and far outweighed by the prejudice.
01:50:09 25          First of all, there's no evidence that the

01:50:11  1   patent -- the '311 patent, the patent application was ever

01:50:13  2   made known to Samsung or that Atmel ever provided a copy of

01:50:19  3   the issued patent because at the time the patent issued,

01:50:26  4   Atmel had already sold its business.

01:50:28  5        So any dealings with Atmel on other products post

01:50:32  6   the sale of the Atmel business, including the touch sensor

01:50:36  7   business, would be irrelevant.

01:50:39  8        They cite the Liqwd case, and that case, I think,

01:50:45  9   is different.  In that case, somebody -- a competitor

01:50:51  10  entered into an NDA with a patentee, were shown the patent

01:50:54  11  application, had discussions and access to confidential

01:50:59  12  information, and then their product turned out to have one

01:51:03  13  of the key ingredients mentioned in the patent and the

01:51:06  14  technical documents.

01:51:07  15       And in that case, the Court -- the board had found

01:51:10  16  that there was copying, but then ignored it, and that's

01:51:14  17  what the reversal was on.

01:51:15  18       But I think the discussion in that case leading up

01:51:17  19  to its result is very instructive for here.  The vice that

01:51:25  20  the Liqwd Court talked about is we do not want every

01:51:29  21  infringement case to turn into an argument, essentially

01:51:31  22  because you infringe, you must have copied.  And that's

01:51:39  23  essentially what they're trying to argue here.

01:51:40  24       And the reason I don't think it's probative at all

01:51:43  25  is, remember, their invention was a flexible substrate with

01:51:48  1  a touch sensor on it that they said was configured to wrap

01:51:50  2  around the display.

01:51:56  3       Samsung's initial products were ITO, which the

01:51:58  4  patent and the patentee said specifically was what they

01:52:01  5  were trying to avoid.  And then the follow-on products

01:52:06  6  which are accused of infringement, those ITO products are

01:52:09  7  not accused of infringement, the next products are arguably

01:52:17  8  different.  The jury is going to decide, but those are the

01:52:20  9  ones that have the integrated touch sensor directly on the

01:52:22  10 display and do away with the flexible substrate.

01:52:24  11      So there is no copying of anything that Atmel did

01:52:29  12 and --

01:52:30  13      THE COURT:  Doesn't this go to the willfulness

01:52:32  14 issue, to your knowledge, to your understanding of the

01:52:35  15 technology and the art?

01:52:42  16      MR. HASLAM:  But what's the relevance of that

01:52:44  17 since -- since the first products that we came out with

01:52:46  18 after this alleged arrangement with Atmel used the very

01:52:54  19 substance that they were trying to design around, an ITO

01:52:54  20 product?

01:52:58  21      Their patent criticizes ITO.  Says you can't --

01:53:00  22 you really -- you can't use it.  It's not flexible enough,

01:53:03  23 so we're coming up with this flexible substrate.

01:53:07  24      If we had used something that -- of their

01:53:08  25 technology, I might be -- I might not even be making this

01:53:11 1  argument, but we didn't.

01:53:13 2       We have two differences.  The jury may disagree

01:53:16 3  with the second, the later products, but those are so far

01:53:20 4  downstream to think that the -- the relationship with Atmel

01:53:23 5  during the time that Atmel had this technology and owned

01:53:27 6  the patent, which they sold in 2015 for products that came

01:53:31 7  out later, 2018, I think the -- it is extremely tenuous to

01:53:39 8  say that somehow what we did in 2012 and '13 and '14 and

01:53:44 9  maybe '15, somehow we copied it as our second iteration of

01:53:51 10 product which has a patented difference, which is a unitary

01:53:52 11 display touch sensor.

01:53:53 12      THE COURT:  Well, there -- there may be no basis

01:53:55 13 upon which to urge copying, but the knowledge that would

01:54:04 14 open the door to copying is also the knowledge that would

01:54:08 15 go to the state of mind of the Defendant.  I mean, the same

01:54:15 16 evidence can be probative for a valid reason, and it might

01:54:17 17 not be probative for an invalid reason.

01:54:20 18      I'm not saying I disagree with your arguments on

01:54:22 19 copying.  I'm just not sure that for other live issues in

01:54:26 20 the case it's still not probative.

01:54:28 21      MR. HASLAM:  Well, it's -- it's not from knowledge

01:54:30 22 of the patent because they never told us about the patent,

01:54:34 23 as far as I know.  If I'm wrong, they can get up and tell

01:54:36 24 me I'm wrong.  But this was a business relationship.

01:54:39 25 There's -- there's no dispute --

01:54:41   1            THE COURT:  Let me hear from the Plaintiff.

01:54:42   2            MR. HASLAM:  Yeah, okay.

01:54:51   3            THE COURT:  What's Plaintiff's posture?

01:54:53   4            MR. HOFFMAN:  We think Your Honor has it exactly

01:54:55   5    right, and this is basically the motion the Court has

01:54:58   6    already rejected both under their MIL on secondary indicia

01:55:03   7    and on willfulness.

01:55:04   8            These are -- this is a motion to exclude opinions

01:55:07   9    from experts that they didn't move to Daubert on.  And so,

01:55:13  10    for example, Mr. Credelle in his June report has in

01:55:16  11    Paragraph 95 a discussion of inducement and knowledge as it

01:55:20  12    relates to inducement and has a paragraph talking about

01:55:24  13    this Atmel evidence.  And they did not move to exclude

01:55:27  14    that.

01:55:27  15            We already had -- actually had a significant

01:55:31  16    discussion of secondary indicia.  He has several paragraphs

01:55:36  17    talking about this issue that they did not move to exclude.

01:55:40  18    And the -- the Court has rejected their motion to exclude

01:55:44  19    that opinion.

01:55:46  20            Mr. Dell cites that -- that -- these discussions

01:55:51  21    in his report.  And their own expert, Mr. Martinez, talks

01:55:56  22    about this relationship, as well.

01:56:00  23            May I have the document camera?

01:56:11  24            So in Paragraph 43, he talks about this

01:56:13  25    relationship between SDC and Atmel and is using it

01:56:19  1   essentially to disparage the Atmel product or the -- to

01:56:22  2   disparage the -- the product that Atmel put out saying SDC

01:56:26  3   tried it and rejected it.

01:56:28  4        So we have several different experts addressing

01:56:30  5   this issue, including their own, and they should have

01:56:32  6   brought this as a Daubert if they thought that this was an

01:56:35  7   unreasonable position.

01:56:36  8        Secondly, as -- as your Court -- as Your Honor

01:56:39  9   notes, the fact that they -- that the -- this is evidence

01:56:46  10  that they were on notice and knew about this technology.

01:56:51  11  They knew that Atmel was developing this technology.  They

01:56:54  12  had a relationship with Atmel through 2015.

01:56:57  13       They act as if the act then of putting out product

01:57:02  14  that implemented the knowledge that they got from Atmel was

01:57:05  15  some years later is, of course, not true.  The first

01:57:08  16  accused product in this case is 2016.  That's the date of

01:57:11  17  the hypothetical negotiation.  Actually, maybe it's 20 --

01:57:17  18  2017.  Thank you.

01:57:17  19       So we're talking about a two-year difference.

01:57:19  20  And, of course, one can get knowledge from a business

01:57:22  21  relationship.  And the fact that one then goes on to put

01:57:24  22  out -- continue to put out non-copied products for a couple

01:57:27  23  of years and then implements the knowledge that one

01:57:30  24  obtained is not evidence that -- that the evidence of that

01:57:33  25  relationship and how they received information about the

| | | |
|---|---|---|
| 01:57:40 | 1 | Atmel products is not relevant.  It is relevant to |
| 01:57:44 | 2 | willfulness -- it is because -- both because of copying and |
| 01:57:47 | 3 | because it put them on notice that Atmel had technology. |
| 01:57:50 | 4 | Atmel had already applied for the patent during that |
| 01:57:53 | 5 | period.  And so they -- they were on notice that Atmel had |
| 01:57:57 | 6 | both the technology and should have been on notice to -- if |
| 01:58:01 | 7 | they were going to use that technology to have an inquiry |
| 01:58:04 | 8 | notice to make sure they weren't using patented technology. |
| 01:58:06 | 9 | THE COURT:  All right.  I've heard enough. |
| 01:58:11 | 10 | I'm -- I'm going to deny Defendants' Motion in |
| 01:58:14 | 11 | Limine No. 7.  And I do think there is support for the |
| 01:58:18 | 12 | argument that it should have been raised as a part of the |
| 01:58:21 | 13 | Daubert practice.  That's denied. |
| 01:58:26 | 14 | Let's go to Defendants' Motion in Limine No. 8. |
| 01:58:29 | 15 | Let me just make it clear, counsel, nobody is |
| 01:58:29 | 16 | going to present argument to this jury inconsistent with |
| 01:58:37 | 17 | this Court's claim construction opinion. |
| 01:58:37 | 18 | MR. HASLAM:  I was about to withdraw -- |
| 01:58:40 | 19 | THE COURT:  Order in limine or no order in limine, |
| 01:58:42 | 20 | that's not going to happen. |
| 01:58:44 | 21 | MR. HASLAM:  Right.  I was withdrawing that. |
| 01:58:47 | 22 | THE COURT:  All right.  Defendants' No. 8 is |
| 01:58:49 | 23 | withdrawn. |
| 01:58:49 | 24 | What about Defendants' No. 9? |
| 01:58:52 | 25 | MR. LERNER:  Your Honor, Jeff Lerner for |

01:58:54  1   Defendants.

01:58:54  2         This one is still live, although based on the

01:58:57  3   Court's ruling yesterday on the motion to strike on

01:59:00  4   Mr. Dell, it's narrowed.  We're -- we understand the

01:59:04  5   Court's ruling about the 2005 UDC agreement.  And so I'm

01:59:07  6   not going to reargue that.

01:59:09  7         THE COURT:  Tell me what you think is left here,

01:59:11  8   Mr. Lerner.

01:59:11  9         MR. LERNER:  It's the other two -- well, it's the

01:59:18 10   other UDC agreements is what it comes down to.

01:59:20 11         There are the 2011 and 2018 agreements with

01:59:26 12   Samsung Display, and then there are agreements between UDC

01:59:28 13   and other unrelated parties, like universities, Princeton,

01:59:35 14   U.S.C., Michigan.  Some were in licensing.  They were UDC

01:59:38 15   licensing other people's patents.

01:59:42 16         And for all of these, the common thread is there's

01:59:44 17   no technical comparability opinion.  Mr. Credelle --

01:59:51 18   setting aside 2005, he doesn't offer any opinions about the

01:59:56 19   portfolios that were licensed these other agreements.  And

02:00:00 20   without that foundation, these are highly prejudicial.  For

02:00:06 21   the -- the ones with Samsung Display --

02:00:08 22         THE COURT:  Let me ask you this, Mr. Lerner.  To

02:00:10 23   the extent Defendants brought a motion under Daubert with

02:00:17 24   regard to Mr. Dell and the Court considered and ruled on

02:00:21 25   that, why were these things you're now urging not made a

02:00:26  1  part of that motion?  Were they were there, and I just

02:00:29  2  didn't rule on them, or did you fail to include them in the

02:00:32  3  Daubert motion that the Court took up yesterday?

02:00:34  4       MR. LERNER:  We didn't include them because, Your

02:00:36  5  Honor, the opinion that he rendered was based on the 2005

02:00:38  6  agreement, and that was what we moved to strike.

02:00:42  7       There were the two pieces.  The hypothetical

02:00:43  8  negotiation date, he said it was 2008.  And this is a 2011

02:00:47  9  and 2018 license.

02:00:49  10      But mainly it was the UDC, which we argued was

02:00:53  11  non-comparable.  That's the basis for his royalty opinions.

02:00:55  12  That's the only one that has a running royalty.  And these

02:00:58  13  other ones in the other UDC agreements were just in his

02:01:03  14  report as kind of comparators.  And that's part of the

02:01:07  15  prejudice.

02:01:07  16      He says:  My opinions are based on the 2005, and

02:01:11  17  look at these other numbers.  Look at the rates that UDC

02:01:15  18  agreed to with the university and some other unrelated

02:01:19  19  agreement.  Look at this.  Look at that.

02:01:21  20      But that's not the methodology that got to his

02:01:23  21  opinion.  And that, Your Honor, is why this was not in our

02:01:26  22  motion to strike.  We thought the motion to strike would

02:01:28  23  have addressed the opinion.  We understand Your Honor's

02:01:31  24  ruling, but that's why we took these up separately.

02:01:34  25      And we believe that they're highly prejudicial,

02:01:38  1  particularly the ones that don't involve any Defendant in

02:01:41  2  agreement between UDC and U.S.C., a university, in

02:01:47  3  licensing patents.  It doesn't involve any of the same

02:01:49  4  parties.  There's no technical comparability opinion.  It

02:01:52  5  would be highly prejudicial.  So --

02:01:54  6          THE COURT:  All the kind of things that should be

02:01:56  7  urged as a Daubert motion.  I mean, that's how you

02:01:58  8  challenge an expert witness's report as to relevance,

02:02:03  9  probity, prejudice, reliability, proper methodology.  And

02:02:07  10  you brought a Daubert motion, and these things were in his

02:02:11  11  report when you brought them.  You didn't attack them in

02:02:15  12  that motion, and now you want me to address them as a

02:02:18  13  motion in limine.  That's just not proper, Mr. Lerner.

02:02:21  14          This is denied.

02:02:27  15          All right.  Defendants' Motion in Limine -- Limine

02:02:31  16  No. 10.

02:02:31  17          What's the status of this, counsel?

02:02:34  18          MR. CHO:  Daniel Cho on behalf of Defendants, Your

02:02:37  19  Honor.  I'm pleased to report we have agreements on all

02:02:41  20  remaining MILs.  I'm happy to read them into the record.

02:02:41  21          THE COURT:  Well, let's start with No. 10 and let

02:02:43  22  you tell me what those agreements are.

02:02:48  23          MR. CHO:  Motion in Limine No. 10:  Solas will not

02:02:51  24  discuss Defendants' overall size, wealth, number of

02:02:54  25  employees, and the total revenues or profits from

101

02:02:55   1   Defendants' sale of end user mobile phone products that are

02:02:57   2   not accused in this case, including non-accused Galaxy

02:03:02   3   mobile phone products.

02:03:02   4          THE COURT:  Does Plaintiff concur with that

02:03:06   5   representation?

02:03:06   6          MS. HENRY:  Yes, Your Honor.

02:03:07   7          THE COURT:  Then as agreed to on the record by the

02:03:10   8   parties, the Court grants Defendants' Motion in Limine No.

02:03:14   9   10 as announced into the record.

02:03:15   10          What's next, counsel?

02:03:17   11          MR. CHO:  Motion in Limine No. 11:  Solas cannot

02:03:21   12   create any negative inferences or imply that Defendants

02:03:23   13   were willful because they did not obtain an opinion of

02:03:26   14   counsel letter.  Solas cannot present any argument,

02:03:29   15   evidence, testimony, insinuation, reference, or assertion

02:03:33   16   that Defendants had a duty to obtain opinion of counsel but

02:03:36   17   is not precluded from mentioning that Defendants did not

02:03:40   18   seek opinion of counsel.

02:03:41   19          THE COURT:  Do Plaintiffs concur with the accuracy

02:03:43   20   of that representation?

02:03:44   21          MS. HENRY:  Yes, Your Honor.

02:03:45   22          THE COURT:  Then based on the agreement of the

02:03:47   23   parties, the Court grants Defendants' Motion in Limine No.

02:03:51   24   11 as announced into the record.

02:03:54   25          Defendants' Motion in Limine No. 12, what's the

02:03:56  1  status of this, counsel?

02:03:57  2       MR. CHO:  No party shall refer to another as

02:04:00  3  litigious or refer to the number of lawsuits brought by or

02:04:05  4  against any party or any prior jury verdict for or against

02:04:09  5  a party without first approaching the bench.

02:04:12  6       THE COURT:  Do Plaintiffs join in that being

02:04:14  7  offered as an agreed limine?

02:04:17  8       MS. HENRY:  Yes, Your Honor.

02:04:18  9       THE COURT:  Then based on the agreement of the

02:04:19 10  parties, the Court grants Defendants' Motion in Limine No.

02:04:22 11  11 to the extent and as announced into the record.

02:04:24 12       Defendants' No. 13, counsel?

02:04:27 13       MR. CHO:  Solas will not be precluded from

02:04:29 14  mentioning the presumption of validity of issued patents

02:04:33 15  but may not make repetitive references to such presumption.

02:04:38 16       THE COURT:  Do Plaintiffs concur with that as an

02:04:40 17  agreed resolution of Defendants' MIL 13?

02:04:43 18       MS. HENRY:  Yes, Your Honor.

02:04:43 19       THE COURT:  Then based on the agreement of the

02:04:45 20  parties, the Court grants Defendants' Motion in Limine No.

02:04:50 21  13 to the extent and as announced into the record.

02:04:54 22       Are there other motion in limine disputes between

02:04:57 23  the parties that the Court has not heard or otherwise ruled

02:05:00 24  on?  There do not appear to be any others in what I have

02:05:04 25  before me, but I just want to check and make sure I'm not

02:05:08   1   missing anything.

02:05:08   2          MR. HASLAM:  Bob Haslam for Samsung.  None from

02:05:12   3   us, Your Honor.

02:05:12   4          THE COURT:  Anything from Plaintiff?

02:05:13   5          MS. HENRY:  No, Your Honor.

02:05:14   6          THE COURT:  All right.  A couple of questions,

02:05:17   7   counsel.

02:05:20   8          If you will, have a seat, Mr. Haslam.

02:05:23   9          MR. HASLAM:  Yes.

02:05:24  10          THE COURT:  Obviously, the third leg of this stool

02:05:26  11   are the exhibits where there are a material number of

02:05:33  12   disputes.  The parties now have before them the Court's

02:05:36  13   guidance on the dispositive motions and the Court's

02:05:41  14   guidance on the motions in limine.

02:05:43  15          With the benefit of that, you should be able to

02:05:45  16   substantially, if not completely, resolve the disputes on

02:05:48  17   the proposed exhibits to be pre-admitted as a part of this

02:05:54  18   trial.

02:05:54  19          I have on my calendar reserved beginning at 10:00

02:06:02  20   o'clock on Monday the 28th of September a time to take up

02:06:10  21   exhibit disputes if there are any surviving.  I'm going to

02:06:15  22   recess in a few minutes.  I'm going to expect to have you

02:06:21  23   back before me at 10:00 a.m. on September 28th, being a

02:06:27  24   Monday, unless you advise me between now and then that

02:06:29  25   you've resolved all exhibit disputes, in which case you

02:06:33  1  won't need to reappear on the 28th.

02:06:36  2         But against the possibility that that won't

02:06:38  3  happen, you need to reserve that time and be prepared to

02:06:41  4  take up with the Court the issues of admissibility as to

02:06:44  5  any challenged pre-admitted exhibits on the 28th of

02:06:48  6  September.

02:06:49  7         Also, counsel -- I'm not sure we'll be in this

02:07:08  8  courtroom.  We'll be somewhere.  It may be that my

02:07:10  9  Magistrate Judge is using this courtroom that morning,

02:07:13  10  which is why my dutiful courtroom deputy turned and looked

02:07:18  11  at me to remind me I had not mentioned that.  We'll be in

02:07:21  12  this courthouse someplace.  You won't -- you won't have

02:07:24  13  trouble finding us, but reserve the 28th beginning at 10:00

02:07:30  14  o'clock for that purpose.

02:07:31  15         Also, as I read the jointly submitted pre-trial

02:07:34  16  order, all the issues in this case, as they've now been

02:07:38  17  refined and narrowed through the pre-trial process, are

02:07:42  18  appropriate for submission to the jury for resolution.

02:07:46  19  Neither side has requested any argument before the Court by

02:07:51  20  way of a bench trial for any issue that might be required

02:07:55  21  to be tried to the bench.

02:07:56  22         I just want to make sure on the record that that

02:07:59  23  is accurate.  That's my understanding, and I'm not

02:08:01  24  anticipating having any bench trial in association with

02:08:04  25  this jury trial.  If that's not right, somebody let me

02:08:08  1  know.  Again, that's from my reading of your jointly

02:08:13  2  submitted pre-trial order.

02:08:21  3          MR. HASLAM:  Just confer with my co-counsel,

02:08:24  4  please?

02:08:24  5          THE COURT:  Take a -- take a moment.  I want to

02:08:27  6  be -- I want to be sure we're accurate on this.

02:08:31  7          MS. HENRY:  Your Honor, just to confirm, Plaintiff

02:08:34  8  doesn't have any issues that it believes should be tried in

02:08:38  9  front of the bench, but we've obviously waiting to hear if

02:08:42 10  Defendants do.

02:08:43 11          THE COURT:  All right.  Thank you, Ms. Henry.

02:08:45 12          MR. HASLAM:  Your Honor, Bob Haslam for Samsung.

02:08:48 13  We have an inequitable conduct claim that I think

02:08:52 14  we are continuing to evaluate, but I think given the

02:08:56 15  Court's request right now, I think at this point, we're not

02:09:01 16  prepared to drop that.

02:09:04 17          THE COURT:  Are you telling me that this is

02:09:05 18  something you're continuing to evaluate, and you'll reach a

02:09:10 19  final decision before we go to trial --

02:09:12 20          MR. HASLAM:  Yes.

02:09:13 21          THE COURT:  -- before the jury?

02:09:15 22          MR. HASLAM:  Yes, Your Honor, and we'll be

02:09:17 23  conferring with our client about this.

02:09:18 24          THE COURT:  All right.  Well, I'll give you --

02:09:20 25  I'll give you some additional time to do that.  I need to

02:09:24   1   know before we go to trial and pick the jury if I need to

02:09:26   2   deal with a bench trial issue.

02:09:31   3            MR. HASLAM:  Your Honor, I would like --

02:09:32   4            THE COURT:  Let's -- let's say this, Mr. Haslam.

02:09:34   5   I've given you a deadline by which to deliver the juror

02:09:38   6   notebooks to the Court in anticipation of the jury trial.

02:09:40   7   Just consider that the same deadline to let me know yes or

02:09:45   8   no on this inequitable conduct issue.

02:09:47   9            MR. HASLAM:  Will do, Your Honor.

02:09:48  10            THE COURT:  Okay.  All right.

02:09:48  11            MR. HASLAM:  While I'm at -- I'm not sure what the

02:09:51  12   metaphor is to preface what I'm about to request, but I

02:09:55  13   would like to request an opportunity to file a supplemental

02:09:59  14   report within one week, no longer than the length of

02:10:04  15   Mr. Credelle's report on whether or not the '311 patent is

02:10:08  16   reduced to practice.  I raised it with counsel who's now on

02:10:13  17   a plane, so I don't know whether -- I assume he's raised it

02:10:17  18   with someone on their side.

02:10:19  19            THE COURT:  So you're making a spontaneous request

02:10:22  20   to supplement an expert's report at this late date?

02:10:25  21            MR. HASLAM:  Yes, I am, Your Honor.

02:10:28  22            THE COURT:  What's the position of the Plaintiff

02:10:30  23   on this?

02:10:30  24            MR. RUBIN:  Your Honor, the Plaintiff opposes

02:10:35  25   their request, and I'm happy to explain why.

02:10:42    1            THE COURT:  Let's do this.  Put it in writing,
02:10:45    2    Mr. Haslam, and get it filed within 24 hours.  And let me
02:10:50    3    have a response in writing from the Plaintiff, Mr. Rubin,
02:10:54    4    within 24 hours of that time.
02:10:56    5            MR. RUBIN:  Thank you, Your Honor.
02:10:56    6            THE COURT:  And then I'll have the benefit of what
02:10:58    7    you're actually asking for and how you're responding to it,
02:11:02    8    and then I'll get you some guidance.
02:11:04    9            Anything else from either party before we complete
02:11:07   10    the pre-trial process but for exhibit disputes, as I
02:11:10   11    mentioned?
02:11:11   12            MR. HASLAM:  Given -- given what the Court said
02:11:13   13    about the joint pre-trial order that's before the Court
02:11:17   14    setting the parameters, actually, I'm going to raise this
02:11:21   15    even though I think it's something that the Plaintiff
02:11:23   16    should be raising.
02:11:25   17            There are a set number of claims that are listed
02:11:28   18    in the pre-trial order as the ones they're going to trial
02:11:33   19    on.  Yesterday morning, counsel, again, one who has left,
02:11:38   20    informed us that they wanted to add back three claims to
02:11:43   21    the '311 patent, Claims 1, 2, and I forget what the other
02:11:46   22    one --
02:11:47   23            THE COURT:  Claims that had previously been
02:11:48   24    asserted and then dropped or claims that never been
02:11:51   25    asserted?

02:11:52    1          MR. HASLAM:  Previously been asserted that were

02:11:54    2   not in the J -- in the joint pre-trial order.  But we were

02:11:57    3   then told that within 24 or 48 hours of the ruling on the

02:12:02    4   MILs, they would reduce it to four.  So I just want to -- I

02:12:09    5   just want to make sure that we understand at what point in

02:12:12    6   time we're going to know exactly what claims we're going to

02:12:15    7   trial on.

02:12:15    8          THE COURT:  Well, it's time for the moving target

02:12:17    9   to stop moving, both on the claim side and on the

02:12:21   10   invalidating references side.  Those things -- I mean,

02:12:25   11   we're -- we're a matter of a couple weeks away from jury

02:12:30   12   selection, maybe three weeks away from jury selection.  I'm

02:12:39   13   not prepared to grant either side any latitude over and

02:12:42   14   above what's in the pre-trial order unless I'm presented

02:12:44   15   with some compelling reason.

02:12:48   16          If you have something, Mr. Rubin, tell me about

02:12:50   17   it.

02:12:51   18          MR. RUBIN:  Thank you, Your Honor.

02:12:53   19          We just voluntarily and spontaneously reduced the

02:13:01   20   number of claims that we were asserting in the pre-trial

02:13:04   21   order that was submitted last week.  And in a good faith

02:13:09   22   attempt to reduce the issues in the case, we substantially

02:13:11   23   reduced the number of claims that we were asserting.  And

02:13:15   24   we've realized that we would -- we'd like to change the

02:13:21   25   claims that we elected for just the '311 patent.

02:13:26  1          So we reduced from, I think, over a dozen claims

02:13:29  2   down to three, and we'd like to make some adjustments to

02:13:33  3   that.

02:13:33  4          And in addition, we would like to further reduce

02:13:35  5   the total number of claims that are live in the case from

02:13:38  6   the seven that are in the pre-trial order to a total of

02:13:42  7   four, and we're prepared to do that within 48 hours.

02:13:46  8          So -- and I think, you know, any prejudice to

02:13:53  9   Defendants for thinking that it was this seven claims for

02:13:57  10  about a week and then the claims on one of the patents

02:14:01  11  changing a little bit, I think, is really minimal.  And,

02:14:06  12  Your Honor, I think that we've -- we've acted in good faith

02:14:10  13  to really genuinely try to narrow the --

02:14:15  14          THE COURT:  When did the spirit move on this,

02:14:17  15  Mr. Rubin?

02:14:17  16          MR. RUBIN:  So --

02:14:18  17          THE COURT:  I mean, we've been in pre-trial for

02:14:23  18  two days now.  Did this just dawn upon you last night or at

02:14:28  19  lunch today or what?

02:14:29  20          MR. RUBIN:  Your Honor, the issue came up

02:14:31  21  yesterday, and my partner, Mr. Mirzaie, raised the issue

02:14:37  22  with Defendants.  I don't know exactly when that

02:14:39  23  conversation happened, but I think it was quite promptly

02:14:43  24  after we recognized the issue.

02:14:44  25          MR. HASLAM:  It was -- I was informed -- this is

02:14:46  1   Bob Haslam for Samsung.  I was informed yesterday morning
02:14:49  2   about this request.
02:14:50  3           MR. RUBIN:  So it was yesterday morning that we
02:14:53  4   recognized the issue.
02:14:54  5           THE COURT:  Well, let me say this.  To the extent
02:14:56  6   both sides can meet and confer and you're both persuaded
02:15:03  7   that you have something to gain by doing this and you
02:15:05  8   present it to me as an agreed motion, I'm probably not
02:15:08  9   going to say no.
02:15:09  10          But I'm not going to allow this kind of
02:15:14  11  last-minute change in position.  Number one, it's a
02:15:18  12  surprise.
02:15:18  13          Number two, it -- it causes wasted resources by
02:15:26  14  counsel preparing for something that then disappears late,
02:15:30  15  late, late in the process.  It -- it probably isn't here,
02:15:33  16  but in other context, it smacks of gamesmanship.  It's just
02:15:38  17  not a good practice.
02:15:40  18          And there's got to be some finality to the issues
02:15:42  19  before the Court, and traditionally that's when we have the
02:15:46  20  pre-trial hearing so that I can air all the issues with
02:15:51  21  regard to the asserted claims and the asserted prior art
02:15:53  22  references and the Plaintiff's theories and the Defendants'
02:15:56  23  theories, and we can get everything resolved and cleared
02:15:59  24  for trial.
02:16:00  25          I'm just not prepared to say you can of your own

02:16:04  1  accord change your claims at this late date, counsel.

02:16:08  2          MR. RUBIN:  And, Your Honor --

02:16:09  3          THE COURT:  Now, if you can convince the

02:16:10  4  Defendants to join you and you think it's going to be as

02:16:13  5  beneficial to them to reduce the total down to four, have

02:16:18  6  at it as far as discussing it with opposing counsel.

02:16:21  7          But barring an agreement, I'm not likely to grant

02:16:24  8  an opposed motion to change the claims at this date.

02:16:28  9          MR. RUBIN:  Your Honor, the change that we would

02:16:31  10  be making would be replacing one independent claim and its

02:16:35  11  dependence with another independent claim that largely

02:16:38  12  parallels the first but actually has fewer limitations.  So

02:16:40  13  there would be fewer elements that either side would have

02:16:43  14  to prove in their cases.

02:16:44  15          We don't think that it -- it changes at all any of

02:16:46  16  the issues that have been --

02:16:46  17          THE COURT:  Well --

02:16:48  18          MR. LERNER:  -- addressed during pre-trial, but --

02:16:50  19          THE COURT:  -- let me suggest to you -- let me

02:16:52  20  suggest to you that you try to persuade Mr. Haslam and his

02:16:55  21  side that this is beneficial to them, and see if you can

02:16:58  22  reach an agreement.

02:16:59  23          You're welcome to meet and confer with opposing

02:17:03  24  counsel about it.  I am not prepared at this point to grant

02:17:05  25  Plaintiff or Defendant unilateral leave to change the

02:17:08   1   structure of the case, having just completed the pre-trial

02:17:11   2   process or -- or having completed it but for the exhibit

02:17:16   3   disputes -- substantially completed it.

02:17:19   4          We're -- we're not going to move the boundaries of

02:17:21   5   the playing field at this -- you know, the fourth quarter

02:17:24   6   of the game.  But if -- if you and opposing counsel can

02:17:26   7   come to some joint resolution you think is beneficial and

02:17:30   8   both sides are in agreement, I'm happy -- I'm happy to hear

02:17:34   9   any agreements.  It's getting late in the process to hear

02:17:39   10  unilateral disputes, especially when we just substantially

02:17:43   11  completed the pre-trial process.

02:17:44   12         So that's where the Court is.  I will -- I will

02:17:48   13  consider that we're going forward on what I have in the

02:17:50   14  pre-trial order and what I've taken up during the pre-trial

02:17:55   15  hearing, unless I'm presented with something joint to

02:18:00   16  consider, all right?

02:18:01   17         MR. RUBIN:  Understood, Your Honor.

02:18:02   18         THE COURT:  Okay.  Is there anything else?  If

02:18:08   19  there's not, let me encourage you one more time to work

02:18:11   20  diligently to narrow if not completely resolve the exhibit

02:18:16   21  disputes.  You should have adequate guidance from the Court

02:18:19   22  on those issues at this juncture.

02:18:22   23         But barring that complete resolution, I'll reserve

02:18:28   24  the time and the date for further efforts to take up

02:18:31   25  exhibit disputes as I've indicated.

02:18:33   1              All right.  Counsel, that will complete the

02:18:37   2   pre-trial hearing in this matter for today.

02:18:41   3              The Court stands in recess.

02:18:42   4              COURT SECURITY OFFICER:  All rise.

02:18:43   5              (Hearing concluded.)

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                         CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    /S/ Shelly Holmes                        9/23/2020
     SHELLY HOLMES, CSR, TCRR               Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25