09:09:15

```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF TEXAS
 2                          MARSHALL DIVISION

 3   SOLAS OLED LTD.,              )(    CIVIL ACTION NO.
                                   )(    2:19-CV-152-JRG
 4         PLAINTIFF,              )(
                                   )(
 5         VS.                     )(
                                   )(
 6   SAMSUNG DISPLAY CO., LTD.,    )(
     SAMSUNG ELECTRONICS CO.,      )(    MARSHALL, TEXAS
 7   LTD., SAMSUNG ELECTRONICS     )(    MARCH 1, 2021
     AMERICA, INC.,                )(    9:38 A.M.
 8                                 )(
           DEFENDANTS.             )(

 9

10            TRANSCRIPT OF VOIR DIRE OF THE JURY PANEL

11          BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

12               UNITED STATES CHIEF DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE PLAINTIFFS:

16   MR. MARC FENSTER
     MR. REZA MIRZAIE
17   MR. ADAM S. HOFFMAN
     MR. NEIL A. RUBIN
18   MR. JACOB R. BUCZKO
     MR. JAMES S. TSUEI
19   RUSS AUGUST & KABAT
     12424 Wilshire Boulevard, 12th Floor
20   Los Angeles, CA 90025

21   MR. T. JOHN WARD, JR.
     MS. CLAIRE ABERNATHY HENRY
22   MS. ANDREA L. FAIR
     WARD, SMITH & HILL, PLLC
23   1507 Bill Owens Parkway
     Longview, TX 75604

24

25
```

```
 1   FOR THE DEFENDANTS:

 2   MS. MELISSA R. SMITH
     GILLAM & SMITH, LLP
 3   303 South Washington Avenue
     Marshall, TX 75670
 4

 5   MR. JEFFREY H. LERNER
     MR. JARED R. FRISCH
 6   MR. DANIEL E. VALENCIA
     MR. DANIEL W. CHO
 7   MR. TAREK J. AUSTIN
     MR. ERIC T. O'BRIEN
 8   MR. DAVID J. CHO
     MR. JORDAN V. HILL
 9   COVINGTON & BURLING LLP
     One CityCenter
10   850 Tenth Street, NW
     Washington, DC 20001-4956
11

12   MR. ROBERT T. HASLAM
     COVINGTON & BURLING LLP
13   3000 El Camino Real
     5 Palo Alto Square, 10th Floor
14   Palo Alto, CA 94306-2112

15

16

17

18   COURT REPORTER:     Ms. Shelly Holmes, CSR, TCRR
                         Official Court Reporter
19                       United States District Court
                         Eastern District of Texas
20                       Marshall Division
                         100 E. Houston
21                       Marshall, Texas   75670
                         (903) 923-7464
22

23
     (Proceedings recorded by mechanical stenography, transcript
24   produced on a CAT system.)

25
```

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
| 09:25:20 | 1  | P R O C E E D I N G S                                  |
| 09:25:20 | 2  | COURT SECURITY OFFICER:  All rise.                     |
| 09:27:56 | 3  | THE COURT:  Be seated, please.                         |
| 09:38:48 | 4  | Good morning, ladies and gentlemen.  Thank you all     |
| 09:39:05 | 5  | for being here.                                        |
| 09:39:05 | 6  | My name is Rodney Gilstrap, and I am the Chief         |
| 09:39:12 | 7  | United States District Judge for the United States District |
| 09:39:14 | 8  | Court for the Eastern District of Texas.               |
| 09:39:14 | 9  | I have lived in Marshall, Texas, since 1981.  I        |
| 09:39:21 | 10 | practiced law in this area for 30 years.  After 30 years of |
| 09:39:28 | 11 | practicing law, I was nominated by the President to this |
| 09:39:31 | 12 | position, and I was confirmed and became a U.S. District |
| 09:39:36 | 13 | Judge in 2011.                                         |
| 09:39:37 | 14 | I have a confession to make to all of you.  I was     |
| 09:39:41 | 15 | not born in Texas.  But I got here as fast as I could. |
| 09:39:45 | 16 | I was born in Florida, and I came to Texas to go      |
| 09:39:50 | 17 | to law school at Baylor -- to go to college, rather, and |
| 09:39:54 | 18 | then law school at Baylor University.                  |
| 09:39:56 | 19 | And I am married and I have two grown children,       |
| 09:40:04 | 20 | and my wife owns and operates a retail floral business here |
| 09:40:09 | 21 | in Marshall.                                           |
| 09:40:09 | 22 | Now, I tell you all these things about myself         |
| 09:40:11 | 23 | because in a few minutes, I'm going to ask each of you to |
| 09:40:14 | 24 | give me the same kind of information about yourselves, and |
| 09:40:17 | 25 | I think you're entitled to know as much about me as I'm |

09:40:20  1  about to find out from each of you all.

09:40:23  2       We are about to engage in the selection of a jury

09:40:26  3  in a civil case involving allegations of patent

09:40:29  4  infringement.

09:40:31  5       However, before we go any further, I'd like to

09:40:35  6  briefly mention some of the health and safety precautions

09:40:38  7  that we're going to be taking during this trial.  All of

09:40:41  8  you are aware that we're in a national and international

09:40:44  9  pandemic.  That's why I prepared a separate letter to each

09:40:49  10  of you all that went out with your summons outlining

09:40:53  11  generally some of the precautions and procedures that we're

09:40:56  12  going to implement today.

09:40:58  13       There are some additional safeguards that I'll be

09:41:01  14  implementing as we go forward with jury selection and then

09:41:04  15  with the trial of this case, and I'll go over those with

09:41:08  16  you -- some of them now and some of them as we get to them

09:41:12  17  as part of the process.

09:41:13  18       Eight of you are going to be selected to serve as

09:41:16  19  jurors in this case, and each member of the jury, when you

09:41:20  20  appear tomorrow, will have your temperature taken as you

09:41:25  21  enter the courthouse and you'll have your temperature taken

09:41:28  22  each day during the trial as you enter the courthouse.

09:41:31  23       Once the eight of you are seated in the jury box

09:41:35  24  as the jury in this case, I'm going to ask you to consider

09:41:43  25  doing one of two things for me.  I'm going to ask that you

09:41:46  1  consider replacing your masks with a plastic face shield.

09:41:52  2  And if you are uncomfortable with that, we have clear masks

09:41:58  3  to replace the masks that you have on now that you can't

09:42:03  4  see through.

09:42:04  5      Let me explain, ladies and gentlemen, it's very

09:42:06  6  important that the lawyers and the Court be able to see the

09:42:11  7  entirety of your face if you're on this jury.  Every lawyer

09:42:14  8  wants to know if what he or she is trying to get across is

09:42:17  9  hitting home or if it's going over your head.  And when 50

09:42:20  10  percent or more of your face is covered up with a mask,

09:42:25  11  they can't tell.  And so for them to properly try this

09:42:27  12  case, counsel for both of the parties, all the parties,

09:42:31  13  they need a clear view of each juror's face.

09:42:33  14      Understanding, though, that you may not be

09:42:37  15  comfortable having no facial protection, we've acquired

09:42:41  16  either these face shields or clear face masks.  If you'd

09:42:45  17  like to wear both of them, that's fine.  But I'm going to

09:42:48  18  ask the eight of you that are selected as jurors, once

09:42:51  19  you're in the jury box and seated and sworn, that you take

09:42:55  20  whatever kind of masks you've got on now, and I see

09:42:58  21  everything under the rainbow out there, and replace it with

09:43:01  22  something that's clear and see-through so that the jury and

09:43:04  23  the Court can have a -- excuse me, so that the lawyers and

09:43:07  24  the Court can have a clear view of your face as we go

09:43:11  25  through the trial.

09:43:12 | 1          That's part of why I've taken my mask off.  I want

09:43:16 | 2   you to be able to see me as I speak to you.

09:43:18 | 3          And so you'll understand, the rule for counsel in

09:43:20 | 4   this case is they're to remain masked, except when a member

09:43:25 | 5   of a trial team goes to the podium to address you or to

09:43:29 | 6   address me, in which case when they go to the podium,

09:43:32 | 7   they'll remove their mask.

09:43:34 | 8          When they leave the podium, they'll put their mask

09:43:38 | 9   back on.  That way when they're talking to you, you'll see

09:43:41 | 10  their entire face, and when they're talking to me, I'll see

09:43:44 | 11  their entire face.  And, hopefully, we'll see the eight of

09:43:48 | 12  you on the jury the entire trial, see the entirety of your

09:43:51 | 13  faces.  So keep that in mind, if you will.

09:43:53 | 14         Also, when we select the eight of you that will

09:43:57 | 15  serve as the jury, and that selection process is complete,

09:44:01 | 16  we're going to space you in the jury box so that there's a

09:44:04 | 17  vacant chair between you.

09:44:06 | 18         We'll put the first four of you on the front row

09:44:06 | 19  with an empty seat between each of you and the second four

09:44:10 | 20  of you on the back row with an empty seat between each of

09:44:13 | 21  you.  And if you'll stay in those particular places, once

09:44:16 | 22  you get there throughout the trial; in other words, if

09:44:19 | 23  you're the first person on the far end of the front row,

09:44:22 | 24  you should always be the first person on the far end of the

09:44:25 | 25  front row throughout the trial.

09:44:26  1        It's not like assigned seats in grade school, but

09:44:32  2   it's important for me to know that Ms. Jones or Mr. Smith,

09:44:36  3   or whoever you are that's in the first chair, is always the

09:44:39  4   person that's in the first chair.  So stay in those same

09:44:42  5   positions as we go through the process.

09:44:44  6        Also, you need to know that I've ordered that the

09:44:47  7   jury box, the jury room, the restrooms that are adjacent to

09:44:52  8   and a part of the jury room are going to be deep cleaned

09:44:56  9   every evening after we recess for the day.  So those are

09:44:59 10   going to be thoroughly and completely sanitized each day.

09:45:04 11        Also, ladies and gentlemen, those of you that end

09:45:05 12   up on this jury, the Court is going to provide lunches for

09:45:08 13   you each day.  You're not going to be required to leave the

09:45:10 14   courthouse and go find a lunch or bring lunch or worry

09:45:13 15   about that.  The Court's going to provide box lunches for

09:45:17 16   each member of the jury each day during lunch throughout

09:45:21 17   the trial.

09:45:22 18        That will allow us to keep a shorter lunch break

09:45:26 19   and move the trial along more promptly.  It will also

09:45:29 20   ensure that you don't have to get out and move around the

09:45:33 21   community and be worried about coming in contact with

09:45:36 22   anything you shouldn't.  You'll be in this building each

09:45:40 23   day from the time you enter in the morning until the time I

09:45:42 24   release you to go home each night.

09:45:44 25        And don't worry about lunch.  It will be provided

8

09:45:48  1    for you by the Court.

09:45:51  2           Also, you can't see it, but on either side of the

09:45:54  3    courtroom, in this far corner next to the end of the jury

09:45:58  4    box and next to this door on the other wall, there are two

09:46:01  5    new industrial air filter -- air filtration systems,

09:46:07  6    portable air filtration systems that are up and running.

09:46:10  7    They look like small, white refrigerators.  But they are

09:46:14  8    filtering the air throughout the courtroom, and they'll

09:46:17  9    continue to do that throughout the trial.

09:46:18  10          There will probably be some other precautions that

09:46:21  11   I haven't mentioned now, and I'll mention those to you as

09:46:24  12   we go through the rest of the trial.  All of this is so

09:46:28  13   that we can ensure a fair and impartial and a safe trial.

09:46:31  14   But I want to make you aware of these things.

09:46:33  15          Also, ladies and gentlemen, if you'll indulge me

09:46:37  16   for just a minute, at this point, I want to briefly review

09:46:41  17   with each of you how we came to have our American civil

09:46:44  18   jury trial system.

09:46:45  19          If you go back in ancient history and if you turn

09:46:50  20   to the Pentateuch, the first five books in the Old

09:46:53  21   Testament, you'll see that the ancient Hebrew nation

09:46:56  22   empaneled juries to determine questions of property

09:46:59  23   ownership and property value.

09:47:01  24          You'll also find in ancient history that the

09:47:04  25   ancient Greeks used a jury system, and they began using a

09:47:08   1   jury system about 1500 BC.  The Romans used a jury system,

09:47:15   2   which they, like many things, copied from the ancient

09:47:18   3   Greeks, and it was the Romans who brought the jury trial

09:47:22   4   system to what is now England when they conquered that

09:47:26   5   island in the fourth century AD.

09:47:29   6          And from that time forward, a jury trial system

09:47:32   7   was in place on the island that is known as Great Britain

09:47:36   8   or England from that time forward.  And after eight hundred

09:47:42   9   years of use of a jury trial system brought to that island

09:47:46  10   by the Romans, jury trials were used throughout that

09:47:48  11   country.

09:47:49  12          However, in about the 12th century, a tyrannical

09:47:55  13   king came to the throne of Great Britain named King John,

09:48:00  14   and King John set about trying to discontinue and prevent

09:48:03  15   his citizens and nobles from using a jury trial system.

09:48:06  16   And there were many other disputes between King John and

09:48:09  17   his nobles.  And those disputes, including this dispute

09:48:14  18   over the jury trial, led to the verge of the civil war.

09:48:18  19          That civil war, however, was averted by a written

09:48:22  20   agreement compromising and settling all these disputes that

09:48:25  21   the king entered into with his nobles.  It was signed at a

09:48:29  22   place in England known as Runnymede, and the document that

09:48:32  23   resolved these disputes and continued the right to trial by

09:48:39  24   jury in England was known as the Magna Carta.  I'm sure all

09:48:42  25   of you have heard of the Magna Carta.

09:48:44   1        In fact, ladies and gentlemen, you might be

09:48:47   2   interested to know that 28 of our 50 United States have

09:48:53   3   written into their own state constitutions the exact

09:48:57   4   language from the Magna Carta that guarantees the right to

09:49:01   5   trial by jury.

09:49:01   6        So you can see that the right to trial by jury was

09:49:07   7   an established and known right when our founding fathers

09:49:13   8   came to these shores in North America as British colonists,

09:49:19   9   and, in fact, they brought the jury trial system with them

09:49:21  10   from England.  And that jury trial system flourished in

09:49:24  11   this country for over a hundred years.

09:49:26  12        However, along came another tyrannical king to the

09:49:31  13   throne of Great Britain.  This time his name was

09:49:36  14   King George, III.  And to some extent like King John,

09:49:40  15   King George, III, became embroiled in ongoing, wide-ranging

09:49:45  16   disputes with his colonists here in America.  However, this

09:49:50  17   time it did lead to a war.  It led to the American

09:49:54  18   Revolution.

09:49:54  19        In fact, if you look at the Declaration of

09:49:57  20   Independence written by Thomas Jefferson, which outlines

09:50:00  21   the various complaints, disputes, and issues requiring in

09:50:04  22   the minds of our forefathers that they separate from Great

09:50:09  23   Britain, King George, III's attempts to prevent and

09:50:14  24   frustrate the right to trial by jury is spelled out in the

09:50:16  25   Declaration of Independence as one of the reasons

09:50:19  1  necessitating our revolution and our separation from

09:50:23  2  England as a separate and independent country.

09:50:26  3         So it should be no surprise to you that after the

09:50:35  4  American Revolution was ended and we adopted the governing

09:50:39  5  document for our country, the Constitution of the United

09:50:43  6  States, that the right to trial by jury would be a part of

09:50:46  7  that document.

09:50:46  8         And in fact -- excuse me, in fact, ladies and

09:50:50  9  gentlemen, the right to trial by jury in a civil case is

09:50:55  10 protected in our United States Constitution.  It is a part

09:50:58  11 of the first 10 amendments to that Constitution known as

09:51:02  12 the Bill of Rights.

09:51:03  13        It is the Seventh Amendment to the U.S.

09:51:06  14 Constitution which guarantees the right to every American

09:51:09  15 citizen to resolve their disputes in civil matters with a

09:51:12  16 jury, just as we're going to do in this trial.

09:51:14  17        And the Bill of Rights, including the Seventh

09:51:18  18 Amendment, was ratified in 1791.  That means for well over

09:51:23  19 200 years, every American citizen has had this guaranteed

09:51:27  20 constitutional right to resolve their civil disputes

09:51:31  21 through a jury trial such as we're going to have in this

09:51:34  22 case.

09:51:35  23        So by being here this morning, ladies and

09:51:37  24 gentlemen, and part of why I wanted to go through this

09:51:39  25 brief historical review with you, is to let you know that

09:51:42  1   by you being here this morning in a very real and tangible

09:51:46  2   sense, you are doing your part as American citizens to

09:51:51  3   preserve, protect, and defend the rights of our

09:51:56  4   Constitution, in this case, particularly the Seventh

09:51:59  5   Amendment and the right to trial by jury in a civil case.

09:52:01  6           I always tell citizens who appear for jury duty,

09:52:05  7   as you have this morning, that in my personal opinion, jury

09:52:09  8   service is the second highest form of public service that

09:52:13  9   any American citizen can render to our country.  Of course,

09:52:17  10  in my view, the highest form of public service for any

09:52:21  11  American citizen are those young men and women who serve in

09:52:25  12  our armed forces.

09:52:27  13          Now, I want you to understand that when the

09:52:29  14  lawyers address you this morning, and they're going to do

09:52:32  15  that shortly, they're going to ask you various questions.

09:52:36  16  And you should understand that they are not seeking to

09:52:40  17  inquire unduly into your personal affairs.

09:52:43  18          Said another way, ladies and gentlemen, they're

09:52:46  19  not trying to be nosy.  They're trying to gather relevant

09:52:49  20  information for purposes of properly selecting a jury that

09:52:53  21  will be fair and impartial to hear the evidence in this

09:52:56  22  case and to return a verdict.

09:52:57  23          So they're entitled to ask the questions that they

09:53:01  24  will ask you.  But please understand, they're not trying to

09:53:07  25  pry.  They're trying to carry out their required obligation

09:53:10  1   as part of the Court process to secure a fair and an

09:53:13  2   impartial jury.

09:53:14  3           The other thing for you to remember about these

09:53:16  4   questions that will be asked later in the process is that

09:53:21  5   there are no wrong answers, as long as the answers you give

09:53:24  6   to the questions asked are full, complete, and truthful.

09:53:27  7   As long as your response is full, complete, and truthful,

09:53:30  8   there are no wrong answers to any of the questions you'll

09:53:34  9   be asked.

09:53:35  10          I don't know if it will happen today, I want you

09:53:38  11  to know it rarely does, but every once in a great while,

09:53:42  12  somebody on a jury panel is asked a question that they

09:53:45  13  believe in their own minds is so personal or so private

09:53:48  14  that they're not comfortable in answering that before

09:53:52  15  everybody on this panel.

09:53:54  16          If that should occur -- again, I don't think it's

09:53:56  17  likely, it's a rarity -- but if it should occur today, you

09:54:00  18  always have the option of saying in response to that

09:54:02  19  question:  I'd like to discuss that with Judge Gilstrap.

09:54:06  20  And if that's your answer, I'll provide a time and an

09:54:09  21  opportunity to answer that question outside of the presence

09:54:12  22  of everybody else on the panel.

09:54:14  23          But, as I say, ladies and gentlemen, that doesn't

09:54:17  24  come up very often, but I want you to know that it does

09:54:23  25  exist.

09:54:23   1          Excuse me.

09:54:26   2          Now, the trial in this case is going to begin

09:54:29   3     later today after we've selected, sworn, and seated the

09:54:32   4     jury in this case.  And it's my best estimate that it will

09:54:36   5     take all of the rest of this week to try this case.  That

09:54:41   6     would put us from March the 1st through March the 5th.

09:54:46   7          There is a small chance we could possibly go over

09:54:49   8     into Monday of next week, which would be the 8th.  I don't

09:54:53   9     think we will, but it's possible.  These are not

09:54:56   10    guarantees.  These are my best estimates.  But I'm

09:54:58   11    confident that it will take the remainder of this week to

09:55:01   12    try the case.

09:55:02   13         So if any of you have a surgical procedure that

09:55:06   14    you are scheduled to undergo this week or a member of your

09:55:11   15    immediate family that's depending on you has a surgical

09:55:14   16    procedure to be undertaken this week, if you have -- you

09:55:19   17    know, this used to be a common thing pre-pandemic, but I

09:55:23   18    would've used to say if you had prepaid vacation tickets

09:55:27   19    that can't be refunded -- not many of us are taking

09:55:30   20    vacations these days -- but if you have travel plans that

09:55:33   21    are paid and non-refundable, if you have something that is

09:55:36   22    seriously an impediment to you being available to be here

09:55:43   23    for the entirety of this trial over this week, then that's

09:55:45   24    something I need to know about.

09:55:46   25         If that's the case and if that applies to any of

```
09:55:50   1  you, would you raise your hands and let me make a note of
09:55:52   2  it?
09:55:52   3          Okay.  No. 6.
09:55:55   4          Anybody else?  If I see any other hands?  Just
09:55:58   5  that one.
09:55:59   6          Okay.  Thank you.
09:56:01   7          At this time, I'm going to call for announcements
09:56:06   8  in the case of Solas OLED Limited versus Samsung Display
09:56:12   9  Company, Limited; Samsung Electronics Company, Limited; and
09:56:16  10  Samsung Electronics America, Inc.  This is Civil Case No.
09:56:20  11  2:19-CV-152.
09:56:23  12          And, counsel, as you give your announcements from
09:56:26  13  the podium, please identify yourself and the members of
09:56:29  14  your trial team that are present with you.
09:56:31  15          We'll begin with the Plaintiff.  What says the
09:56:33  16  Plaintiff?
09:56:34  17          MR. WARD:  Johnny Ward for the Plaintiff, Solas.
09:56:40  18  And we are ready to proceed.
09:56:41  19          The only other member of our trial team in the
09:56:45  20  courtroom right now is Mr. Marc Fenster.  Do you want me to
09:56:49  21  introduce the other members of my trial team that are not
09:56:53  22  in my courtroom, Your Honor?
09:56:54  23          THE COURT:  Why don't you introduce the other two
09:56:56  24  gentlemen that are at the table with you.
09:56:59  25          MR. WARD:  Sure.  Seated at the table is Mr. Gerry
```

| | | |
|---|---|---|
| 09:57:03 | 1 | Padian.  He's CEO of Solas.  And Mr. Robert Hirschhorn |
| 09:57:06 | 2 | from Argyle, Texas.  He's an attorney helping me with jury |
| 09:57:09 | 3 | selection. |
| 09:57:09 | 4 | THE COURT:  All right.  Thank you, Mr. Ward. |
| 09:57:12 | 5 | What's the announcement from the Defendants? |
| 09:57:14 | 6 | MR. HASLAM:  Good morning, Your Honor.  Bob Haslam |
| 09:57:17 | 7 | for the Samsung Defendants.  With me is Melissa Smith and |
| 09:57:24 | 8 | Allison Wang. |
| 09:57:28 | 9 | THE COURT:  All right. |
| 09:57:28 | 10 | MR. HASLAM:  And we're ready to go. |
| 09:57:30 | 11 | THE COURT:  Thank you, sir. |
| 09:57:30 | 12 | As I've told you, ladies and gentlemen, this is a |
| 09:57:32 | 13 | patent case arising under the patent laws of the United |
| 09:57:37 | 14 | States.  And what the Plaintiff is claiming in this case is |
| 09:57:40 | 15 | that three of its patents were infringed by the Defendants, |
| 09:57:44 | 16 | and it's seeking money damages because of that alleged |
| 09:57:46 | 17 | infringement. |
| 09:57:49 | 18 | The Defendants deny that they infringe any of the |
| 09:57:52 | 19 | Plaintiff's patents, and they contend that two of those |
| 09:57:55 | 20 | three patents are invalid. |
| 09:57:56 | 21 | Now, what I've just told you is a very shorthand, |
| 09:58:01 | 22 | informal layman's version of what's at issue in this case. |
| 09:58:05 | 23 | I know that all of you have seen the video prepared by the |
| 09:58:08 | 24 | Federal Judicial Center on patent cases.  And having seen |
| 09:58:11 | 25 | that, you know more about patent cases than most people do |

09:58:15  1    when they appear for jury service in a case like this.

09:58:17  2         As I mentioned, the lawyers on both sides are

09:58:22  3    going to question the entirety of the panel in a few

09:58:24  4    minutes.  That is so they can gather relevant information,

09:58:28  5    exercise their peremptory challenges as afforded by the

09:58:32  6    Court, and complete the process of selecting eight of you

09:58:35  7    to serve as the jury in this case.

09:58:37  8         Again, ladies and gentlemen, as long as the

09:58:40  9    answers you give to any question you're going to be asked

09:58:42  10   today are full, complete, and truthful, there will be no

09:58:46  11   wrong answers.

09:58:46  12        As I said earlier, the lawyers are entitled to ask

09:58:50  13   the questions that they will ask you for purposes of doing

09:58:54  14   what the law requires them to do.

09:58:56  15        If anyone should ask an improper question in my

09:59:00  16   view, I will certainly stop the lawyer.  But I want you to

09:59:04  17   understand, ladies and gentlemen, these are very

09:59:06  18   experienced trial teams on both sides.  I do not expect

09:59:08  19   that to happen.  They're well familiar with the rules of

09:59:12  20   the Court, the Federal Rules of Civil Procedure, and the

09:59:14  21   other documents governing the trial of this case.  So I do

09:59:17  22   not expect there to be any improper questions that are

09:59:19  23   asked.

09:59:20  24        One thing I do want to call your attention to

09:59:24  25   before the lawyers address you, because it's possible that

| | | |
|---|---|---|
| 09:59:27 | 1 | some of them may ask you about your ability to do this, and |
| 09:59:32 | 2 | that is I want to discuss with you the burden of proof. |
| 09:59:34 | 3 | In a patent case such as this, the jury that's |
| 09:59:39 | 4 | selected will be called upon to apply -- or may be called |
| 09:59:43 | 5 | upon to apply two different burdens of proof. |
| 09:59:47 | 6 | The jury may apply a burden of proof known as the |
| 09:59:50 | 7 | preponderance of the evidence.  And I'll say that again, |
| 09:59:55 | 8 | the preponderance of the evidence.  As well as a second |
| 10:00:00 | 9 | burden of proof known as clear and convincing evidence. |
| 10:00:02 | 10 | And I'll repeat that, clear and convincing evidence. |
| 10:00:08 | 11 | Now, when responding to any lawyer's question |
| 10:00:12 | 12 | about your ability to apply the burden of proof in this |
| 10:00:14 | 13 | case, I need to instruct you that when a party has the |
| 10:00:18 | 14 | burden of proof on any claim or defense by a preponderance |
| 10:00:22 | 15 | of the evidence, it means that the jury must be persuaded |
| 10:00:27 | 16 | by the credible or believable evidence that that claim or |
| 10:00:30 | 17 | defense is more probably true than not true.  Let me say |
| 10:00:36 | 18 | that again, more probably true than not true. |
| 10:00:38 | 19 | Sometimes this is talked about as being the |
| 10:00:43 | 20 | greater weight and degree of credible testimony. |
| 10:00:47 | 21 | Let me give you what I hope will be a helpful |
| 10:00:51 | 22 | example.  I think every one of you in the courtroom can see |
| 10:00:53 | 23 | in front of me and in front of our court reporter a statue |
| 10:00:58 | 24 | of the Lady of Justice.  She's blindfolded.  She holds |
| 10:01:04 | 25 | lowered at her right side the sword of justice.  She holds |

| | | |
|---|---|---|
| 10:01:08 | 1 | raised at her left side the Scales of Justice.  And those |
| 10:01:12 | 2 | scales are balanced equal, identical.  And that's where the |
| 10:01:14 | 3 | parties start off in this case, equal and identical, in the |
| 10:01:20 | 4 | same position. |
| 10:01:22 | 5 | Over the course of the trial, evidence is going to |
| 10:01:24 | 6 | be presented to the jury.  And for purposes of this |
| 10:01:26 | 7 | example, think about the Plaintiff's evidence will go on |
| 10:01:29 | 8 | one side of those scales, and the Defendants' evidence will |
| 10:01:31 | 9 | go on the other side of those scales. |
| 10:01:35 | 10 | And if the party -- after all the evidence has |
| 10:01:38 | 11 | been presented, if the party who has the burden of proof by |
| 10:01:43 | 12 | a preponderance of the evidence, when the jury considers |
| 10:01:47 | 13 | the evidence on both sides of the scale, if the scale tips |
| 10:01:50 | 14 | in favor of the party, if their side has the most evidence |
| 10:01:56 | 15 | even if it tips ever so slightly in their direction, then |
| 10:01:59 | 16 | they've met their burden of proof of a preponderance of the |
| 10:02:01 | 17 | evidence. |
| 10:02:02 | 18 | Remember, more probably true than not true, the |
| 10:02:09 | 19 | greater weight and degree of credible testimony. |
| 10:02:12 | 20 | Now, where a party in a case like this has the |
| 10:02:19 | 21 | second burden of proof, clear and convincing evidence, that |
| 10:02:28 | 22 | means that the jury must have an abiding conviction that |
| 10:02:30 | 23 | the truth of the party's factual contentions are highly |
| 10:02:35 | 24 | probable. |
| 10:02:36 | 25 | Let me say that again.  This applies to clear and |

10:02:39    1   convincing evidence, the other burden of proof I mentioned

10:02:42    2   to you.  In that case, the jury must have an abiding

10:02:46    3   conviction that the truth of the party's factual

10:02:49    4   contentions are highly probable.  That's a higher standard

10:02:55    5   than the first burden of proof, the preponderance of the

10:02:58    6   evidence.

10:02:58    7           If we return to the same example, and throughout

10:03:02    8   the trial the parties start off equal, those scales are

10:03:06    9   balanced, the Plaintiff puts their evidence on one side,

10:03:08   10   the Defendant puts their evidence on the other side, and

10:03:11   11   the jury is asked to determine who is right.

10:03:15   12           If the party who has a burden of proof by clear

10:03:18   13   and convincing evidence has their part of the scale that

10:03:22   14   tips and tips more than ever so slightly, it must

10:03:26   15   definitely tip in their favor, then they've met the burden

10:03:32   16   of clear and convincing evidence.  Clear and convincing

10:03:33   17   evidence is a higher burden of proof than the preponderance

10:03:38   18   of the evidence.

10:03:38   19           However, ladies and gentlemen, you should not

10:03:42   20   confuse either of these two burdens of proof with a third

10:03:47   21   burden of proof that I'm sure you've all heard about on

10:03:51   22   television, in the movies, in the media, and that is what's

10:03:56   23   called beyond a reasonable doubt.

10:03:57   24           Beyond a reasonable doubt is the burden of proof

10:04:00   25   applied in a criminal case.  It has no application

10:04:03  1  whatsoever in a civil case like this.

10:04:06  2        Clear and convincing evidence is not as high a

10:04:11  3  burden as beyond a reasonable doubt, but it is a higher

10:04:15  4  burden of proof than the preponderance of the evidence.

10:04:16  5        I give you these instructions in case some of the

10:04:22  6  lawyers on either side ask you as a part of this jury

10:04:25  7  selection process about your ability to apply both of those

10:04:30  8  burdens of proof, the preponderance of the evidence and

10:04:33  9  clear and convincing evidence, to the evidence and

10:04:36  10 testimony that you will hear in this trial.

10:04:38  11       Now, ladies and gentlemen, before the lawyers

10:04:42  12 address you, I'm going to ask each of you all to give me

10:04:47  13 the same information about yourselves that I gave you about

10:04:49  14 myself when I came out this morning.

10:04:53  15       You should see both on the screens in front of you

10:04:56  16 and you should have copies -- laminated copies there among

10:05:01  17 you -- nine specific questions.  I'd like each of you to

10:05:06  18 answer those nine specific questions out loud for my

10:05:09  19 benefit and for everyone in the courtroom's benefit.

10:05:12  20       Let me explain to you how we're going to do this.

10:05:15  21 These two gentlemen are Court Security Officers.  They'll

10:05:19  22 be in the gallery amongst you with two separate handheld

10:05:22  23 microphones.  Those handheld microphones have been

10:05:26  24 disinfected and cleaned.

10:05:28  25       Whenever we start this process, we'll start

10:05:32  1   with -- we'll start with Panel Member No. 1, Mr. Sellers.

10:05:38  2          And when we do that, they will hand you a handheld

10:05:41  3   microphone, Mr. Sellers.

10:05:44  4          When you get that, I'm going to ask you to stand

10:05:46  5   up.  I'm going to ask you to pull your mask down or take it

10:05:50  6   off so that everyone can see the entirety of your face and

10:05:53  7   then use that handheld microphone and answer the question.

10:05:55  8          Let me remind everybody.  This is a big room with

10:05:59  9   a lot of people in it.  And if you don't hold that

10:06:01 10   microphone close, I will not hear, the lawyers will not

10:06:05 11   hear, the Court staff will not hear your answers to these

10:06:09 12   questions.  So be sure, take advantage of, and use that

10:06:12 13   handheld microphone.

10:06:12 14          Now, after you've finished answering those nine

10:06:16 15   questions, you should hand the microphone back to the Court

10:06:21 16   Security Officer, you should raise your mask, and you

10:06:23 17   should have a seat.

10:06:24 18          And we'll do that with everyone on the panel.

10:06:26 19   You'll stand, you'll be hand -- held -- handed, rather, a

10:06:30 20   handheld microphone.  Take your mask off or lower it,

10:06:33 21   answer the questions, hand the microphone back, raise your

10:06:37 22   mask or put it back on, and have a seat.

10:06:39 23          And, ladies and gentlemen, after we get through

10:06:42 24   going through the entire panel with these nine questions,

10:06:45 25   later in the process, the lawyers are going to have an

| | | |
|---|---|---|
| 10:06:49 | 1 | opportunity to ask you individualized questions.  And if at |
| 10:06:54 | 2 | that point in the process one of the lawyers should ask you |
| 10:06:56 | 3 | a specific question, you'll answer in the very same way. |
| 10:06:59 | 4 | You'll stand up, you'll wait until you get the |
| 10:07:02 | 5 | handheld microphone, don't start answering until we can |
| 10:07:04 | 6 | amplify your voice and everybody can hear it.  Lower your |
| 10:07:08 | 7 | mask, use the handheld microphone, and answer the question, |
| 10:07:11 | 8 | hand the microphone back, raise your mask, and have a seat. |
| 10:07:15 | 9 | The reason we're using two handheld microphones is |
| 10:07:20 | 10 | after everyone -- after anyone uses one microphone, a clean |
| 10:07:25 | 11 | one will be used for the next person, and the first |
| 10:07:28 | 12 | microphone will be wiped down and disinfected again.  That |
| 10:07:31 | 13 | way nobody is going to have held and used a handheld |
| 10:07:36 | 14 | microphone that hasn't been disinfected and cleaned |
| 10:07:40 | 15 | before -- or after anyone else has used it.  And that's why |
| 10:07:43 | 16 | we're using both of them and both gentlemen -- both Court |
| 10:07:46 | 17 | Security Officers are out there among you. |
| 10:07:47 | 18 | So, with that, ladies and gentlemen, we'll start |
| 10:07:49 | 19 | with Mr. Sellers, Panel Member No. 1.  We'll bring you a |
| 10:07:54 | 20 | handheld microphone, Mr. Sellers.  And if you'll stand, |
| 10:07:57 | 21 | remove your mask, use the microphone, and answer those nine |
| 10:08:00 | 22 | questions for us, sir. |
| 10:08:02 | 23 | JUROR SELLERS:  My name is Glen Sellers.  And I |
| 10:08:05 | 24 | live in Harleton, Texas, about 15, 20 miles from here. |
| 10:08:09 | 25 | I've got two boys.  And I retired, but I used to work for |

10:08:18  1   Railserve over in Longview working on locomotives

10:08:23  2   electrically.

10:08:23  3          THE COURT:  What was the name of the company, sir?

10:08:26  4          JUROR SELLERS:  Railserve, Inc.

10:08:29  5          THE COURT:  Thank you.

10:08:29  6          JUROR SELLERS:  I worked there for 12 years, and

10:08:31  7   my educational background, I quit school in the 10th grade

10:08:33  8   but got a GED.

10:08:36  9          My wife's name is Sharon.  She's retired.  She

10:08:42  10  used to work for the forestry service.

10:08:45  11         And I've had small claims court and grand jury

10:08:50  12  duty.

10:08:50  13         THE COURT:  Thank you very much, Mr. Sellers.  If

10:08:53  14  you'll hand the microphone back to the Court Security

10:08:55  15  Officer, raise your mask, and have a seat, and we'll go to

10:08:58  16  Panel Member No. 2, Ms. Hirzel.

10:09:03  17         I hope I said that right.

10:09:05  18         JUROR HIRZEL:  Yes, it's Hirzel.

10:09:08  19         I'm from Queen City.  I have two children.  Place

10:09:15  20  of employment, I am retired, but I have worked for retail

10:09:19  21  for 30 -- 36 years.

10:09:22  22         THE COURT:  Any particular retailer, ma'am?

10:09:24  23         JUROR HIRZEL:  Walmart.

10:09:25  24         THE COURT:  Okay.

10:09:28  25         JUROR HIRZEL:  Have a high school education.

| | | |
|---|---|---|
| 10:09:31 | 1 | My husband's name is John.  And he's retired also |
| 10:09:36 | 2 | from the BOP.  He retired as an associate warden. |
| 10:09:42 | 3 | THE COURT:  BOP means Bureau of Prisons. |
| 10:09:44 | 4 | JUROR HIRZEL:  Bureau of Prisons, sorry. |
| 10:09:48 | 5 | THE COURT:  That's okay. |
| 10:09:51 | 6 | JUROR HIRZEL:  And let's see, he worked there for |
| 10:09:54 | 7 | 35 years. |
| 10:09:54 | 8 | THE COURT:  Have you had any prior jury service? |
| 10:09:56 | 9 | JUROR HIRZEL:  No. |
| 10:09:57 | 10 | THE COURT:  Okay.  Thank you very much, ma'am.  If |
| 10:09:59 | 11 | you'll hand the microphone back, raise your mask, and have |
| 10:10:02 | 12 | a seat, and we'll go to Panel Member No. 3. |
| 10:10:04 | 13 | Mr. Preston. |
| 10:10:05 | 14 | JUROR PRESTON:  Good morning. |
| 10:10:09 | 15 | THE COURT:  Good morning. |
| 10:10:11 | 16 | JUROR PRESTON:  My name is Larry Preston.  I live |
| 10:10:13 | 17 | in Gilmer, Texas.  I have two children.  I work for MSC |
| 10:10:19 | 18 | Industrial Supply Company, outside sales.  Have been there |
| 10:10:24 | 19 | 25 years.  I have a high school education. |
| 10:10:28 | 20 | My spouse's name is Kathy.  Happily married 38 |
| 10:10:33 | 21 | years.  She is retired.  She was an office manager.  She |
| 10:10:38 | 22 | worked there for 11 years. |
| 10:10:41 | 23 | I have been called to jury before, but in both |
| 10:10:45 | 24 | cases, they were settled before we made it to the |
| 10:10:48 | 25 | courtroom. |

| | | |
|---|---|---|
| 10:10:48 | 1 | THE COURT:  And what kind of office did your wife |
| 10:10:50 | 2 | work in as an office manager? |
| 10:10:53 | 3 | JUROR PRESTON:  She worked at an oil agency that |
| 10:10:56 | 4 | reported all the production numbers to the Railroad |
| 10:10:59 | 5 | Commission. |
| 10:10:59 | 6 | THE COURT:  Thank you very much, sir. |
| 10:11:01 | 7 | JUROR PRESTON:  Yes, sir.  Thank you. |
| 10:11:02 | 8 | THE COURT:  All right.  Next is Panel Member |
| 10:11:05 | 9 | No. 44, Ms. Skinner. |
| 10:11:06 | 10 | JUROR SKINNER:  My name is Jennifer Skinner.  I |
| 10:11:15 | 11 | live in Marshall.  I have three kids.  I am the financial |
| 10:11:19 | 12 | secretary at Emmanuel Baptist Church, and I've done that |
| 10:11:23 | 13 | for two years.  I was a high school graduate of Marshall. |
| 10:11:28 | 14 | My spouse's name is Jason, and he is an outside |
| 10:11:32 | 15 | salesman for Tech Line.  He's done that for a year. |
| 10:11:37 | 16 | And I have no prior jury service. |
| 10:11:39 | 17 | THE COURT:  Thank you, Ms. Skinner. |
| 10:11:42 | 18 | Next is Panel Member No. 5, Mr. Walker. |
| 10:11:48 | 19 | JUROR WALKER:  My name is Eric Walker.  I have two |
| 10:11:53 | 20 | children.  I work at Republic Elite for eight years.  I |
| 10:12:02 | 21 | have a high school education. |
| 10:12:03 | 22 | My spouse's name is Camellia Williams.  She worked |
| 10:12:08 | 23 | for Jordan Home Health Service for 12 years. |
| 10:12:11 | 24 | And this is my first time. |
| 10:12:14 | 25 | THE COURT:  Thank you, sir.  If you'll have a |

| | | |
|---|---|---|
| 10:12:19 | 1 | seat, put your mask back up. |
| 10:12:20 | 2 | Mr. Preston, I'm going to have to ask you to put |
| 10:12:23 | 3 | your mask back on. |
| 10:12:24 | 4 | And then we'll go to Panel Member No. 6, |
| 10:12:27 | 5 | Ms. Falls. |
| 10:12:28 | 6 | JUROR FALLS:  My name is Lorie Falls.  I live in |
| 10:12:31 | 7 | rural Jefferson.  I have two grown children.  I've been |
| 10:12:35 | 8 | married for 38 years.  I'm unemployed right now.  I've got |
| 10:12:39 | 9 | a GED. |
| 10:12:41 | 10 | My husband's name is William, and he works at |
| 10:12:44 | 11 | Texarkana Aluminum.  I can't say that.  And he's been there |
| 10:12:48 | 12 | for a year. |
| 10:12:49 | 13 | And I don't have any other experience. |
| 10:12:52 | 14 | THE COURT:  Ma'am, what was your work experience |
| 10:12:54 | 15 | before you became -- |
| 10:12:56 | 16 | JUROR FALLS:  Walmart. |
| 10:12:57 | 17 | THE COURT:  Okay. |
| 10:12:58 | 18 | JUROR FALLS:  Walmart maintenance. |
| 10:12:59 | 19 | THE COURT:  All right.  Thank you.  Please have a |
| 10:13:02 | 20 | seat. |
| 10:13:03 | 21 | That will bring us to Panel Member No. 7, |
| 10:13:06 | 22 | Ms. Titterington. |
| 10:13:07 | 23 | JUROR TITTERINGTON:  Thank you, sir.  And good job |
| 10:13:09 | 24 | on the pronunciation.  Most people muddle that. |
| 10:13:12 | 25 | My name is Katherine Titterington.  And I live in |

| | |
|---|---|
| 10:13:16 | 1 |
| 10:13:19 | 2 |
| 10:13:21 | 3 |
| 10:13:25 | 4 |
| 10:13:31 | 5 |
| 10:13:36 | 6 |
| 10:13:39 | 7 |
| 10:13:44 | 8 |
| 10:13:47 | 9 |
| 10:13:52 | 10 |
| 10:13:53 | 11 |
| 10:13:55 | 12 |
| 10:13:56 | 13 |
| 10:13:57 | 14 |
| 10:14:02 | 15 |
| 10:14:06 | 16 |
| 10:14:09 | 17 |
| 10:14:12 | 18 |
| 10:14:18 | 19 |
| 10:14:23 | 20 |
| 10:14:26 | 21 |
| 10:14:29 | 22 |
| 10:14:36 | 23 |
| 10:14:39 | 24 |
| 10:14:44 | 25 |

Marshall, again, because I actually graduated from Marshall High School and then moved away.

I have two living children, three deceased children.  I work at HCSC, which is a customer service call center, and coming up on three years employment there.  I graduated from Marshall High School, and then I got a liberal arts degree; two years at Panola College with an Associate's of science and then two years at UT Austin for the Bachelor of Arts in history with a minor in music.

I am divorced.

And I have no prior jury service.

THE COURT:  All right.  Thank you very much, ma'am.

Next is Panel Member No. 8, Ms. Carpenter.

JUROR CARPENTER:  Yes, my name is Brenda Carpenter.  I live in Pittsburg, Texas.  I got one daughter.  I'm not working now, but I used to be a housekeeping -- working at cleaning church.  I worked there probably about a year.  High school.  I finished -- I didn't finish school.  11th grade.

My husband's name is Daniel Carpenter.  And my spouse, he works at Pilgrim's.  He's a truck driver.  He's been there one year at the feed mill.

And I haven't served no jury duty.

THE COURT:  No prior jury service.

| | | |
|---|---|---|
| 10:14:46 | 1 | JUROR CARPENTER:  No. |
| 10:14:47 | 2 | THE COURT:  Thank you, ma'am.  If you'll have a |
| 10:14:49 | 3 | seat and replace your mask, we'll go on to Panel Member |
| 10:14:53 | 4 | No. 9. |
| 10:14:53 | 5 | JUROR HUX:  Good morning. |
| 10:14:53 | 6 | THE COURT:  Good morning. |
| 10:14:55 | 7 | JUROR HUX:  I'm Felecia Hux and I'm from Gilmore, |
| 10:15:00 | 8 | Texas.  I have two children, a boy and a girl.  I'm |
| 10:15:02 | 9 | employed at Gilmer National Bank in mortgage lending, and |
| 10:15:06 | 10 | I've been there for 33 years.  I have some college. |
| 10:15:08 | 11 | My spouse's name is Gary Gipson.  He's employed by |
| 10:15:13 | 12 | CDRE, and he does commercial air-conditioning. |
| 10:15:16 | 13 | And I have actually served on jury duty in the |
| 10:15:20 | 14 | federal court about 20 years ago. |
| 10:15:22 | 15 | THE COURT:  20 years ago?  Is that here in this |
| 10:15:24 | 16 | courtroom? |
| 10:15:25 | 17 | JUROR HUX:  It was in this courtroom.  It was a |
| 10:15:28 | 18 | civil case. |
| 10:15:28 | 19 | THE COURT:  Do you remember what the case was |
| 10:15:29 | 20 | about? |
| 10:15:30 | 21 | JUROR HUX:  It was a Workers' Comp. |
| 10:15:31 | 22 | THE COURT:  Okay.  Not a patent case. |
| 10:15:32 | 23 | JUROR HUX:  It was not a patent case, correct. |
| 10:15:34 | 24 | THE COURT:  Thank you, Ms. Hux. |
| 10:15:35 | 25 | All right.  That will bring us to Panel Member |

| | |
|---|---|
| 10:15:37 | 1 |
| 10:15:40 | 2 |
| 10:15:44 | 3 |
| 10:15:48 | 4 |
| 10:15:51 | 5 |
| 10:15:52 | 6 |
| 10:15:58 | 7 |
| 10:16:01 | 8 |
| 10:16:04 | 9 |
| 10:16:06 | 10 |
| 10:16:09 | 11 |
| 10:16:13 | 12 |
| 10:16:16 | 13 |
| 10:16:23 | 14 |
| 10:16:28 | 15 |
| 10:16:32 | 16 |
| 10:16:37 | 17 |
| 10:16:38 | 18 |
| 10:16:39 | 19 |
| 10:16:40 | 20 |
| 10:16:41 | 21 |
| 10:16:47 | 22 |
| 10:16:49 | 23 |
| 10:16:51 | 24 |
| 10:16:53 | 25 |

No. 10, Ms. Anderson.

JUROR ANDERSON:  My name is Shani Anderson.  I live in Lone Star, Texas.  I have three children.  My place of employment is Walmart.  I've been there five months.  I have some college.

My spouse's name is Carl.  He's employed at Worley and he's an electrician, and he's been there 17 years.

And I have zero prior jury services.

THE COURT:  Okay.  Thank you, Ms. Anderson.

Next is Panel Member No. 11, Ms. Stewart.

JUROR STEWART:  Hi, my name is Rose Stewart.  I live in Marshall, Texas.  I have no children.  Three dogs, one cat.  Employed at DFW Airport for 34 years.

THE COURT:  What did you do at DFW Airport, ma'am?

JUROR STEWART:  Passenger service, emergency response, DART, TRE, a little bit of everything, moved around a lot.

THE COURT:  You're retired now?

JUROR STEWART:  Yes.

THE COURT:  Okay.

JUROR STEWART:  Finished college, Bachelor's of Science, social work and history.

THE COURT:  And, ma'am, two things.  Number one, where did you go to college; and, number two, would you hold the mic --

10:16:55  1          JUROR STEWART:  Texas Woman's University.

10:16:57  2          THE COURT:  Hold the microphone a little closer.

10:17:04  3          JUROR STEWART:  Texas Woman's University.

10:17:04  4          THE COURT:  Thank you.

10:17:04  5          JUROR STEWART:  Spouse's name, Anthony.  Worked at

10:17:05  6   Minyard's grocery store in Dallas.  Truck driver for 35

10:17:11  7   years.

10:17:13  8          Prior jury service, yes, criminal court, Dallas.

10:17:20  9   And one case was dismissed.  They came to terms.  And one

10:17:25  10  was found guilty.

10:17:26  11         THE COURT:  All right.  Ever served in a jury in a

10:17:30  12  civil case?

10:17:31  13         JUROR STEWART:  No.

10:17:32  14         THE COURT:  Thank you very much, ma'am.

10:17:33  15         Next is Panel Member No. 12, Mr. Talton.  If

10:17:49  16  you'll take your mask off, please, sir, or pull it down.

10:17:52  17  Thank you.

10:17:52  18         JUROR TALTON:  My name is Ervin Talton.  My home,

10:17:58  19  I live in Douglasville, Texas.  I have two boys, both of

10:18:05  20  them truck drivers.  And I work at Lone Star Steel for 30

10:18:11  21  years, and I was a heavy-duty operator on machinery.

10:18:16  22         THE COURT:  Hold the microphone a little closer,

10:18:18  23  Mr. Talton.

10:18:21  24         JUROR TALTON:  I worked at Lone Star Steel.  I was

10:18:23  25  a heavy-duty operator for 30 years.  And I finished in the

| | | |
|---|---|---|
| 10:18:30 | 1 | 12th grade. |
| 10:18:31 | 2 | And my spouse's name is Diane Talton.  She works |
| 10:18:35 | 3 | for Evergreen Presbyterian where she retrains "underminded" |
| 10:18:43 | 4 | peoples that go back to living on their own. |
| 10:18:47 | 5 | And I served on one jury.  It was concerned a |
| 10:18:55 | 6 | death in a wreck. |
| 10:18:55 | 7 | THE COURT:  Tell me what that jury involved? |
| 10:18:57 | 8 | JUROR TALTON:  Involved a wreck -- a death and a |
| 10:19:03 | 9 | wreck. |
| 10:19:03 | 10 | THE COURT:  A death and a wreck, thank you, sir. |
| 10:19:05 | 11 | And how long has your wife worked at her place of |
| 10:19:09 | 12 | employment? |
| 10:19:10 | 13 | JUROR TALTON:  She worked 25 years. |
| 10:19:11 | 14 | THE COURT:  Thank you very much, Mr. Talton.  If |
| 10:19:13 | 15 | you'll have a seat, sir, pull your mask back up, we'll go |
| 10:19:17 | 16 | to Panel Member No. 13, Mr. Hoover. |
| 10:19:20 | 17 | JUROR HOOVER:  My name is David Hoover.  I live in |
| 10:19:25 | 18 | Harleton, Texas.  I have two daughters and a son.  I work |
| 10:19:28 | 19 | at East Texas Baptist University, and I teach history. |
| 10:19:33 | 20 | I've worked there for -- be 15 years in May.  I graduated |
| 10:19:38 | 21 | from high school in Oklahoma.  Went to Southeastern |
| 10:19:43 | 22 | Oklahoma State for my Bachelor's and Oklahoma State for my |
| 10:19:45 | 23 | Master's and for my Ph.D. |
| 10:19:51 | 24 | My wife's name is Jenny.  She also works at ETBU, |
| 10:19:56 | 25 | also teaches history.  She's worked there full time for six |

| | | |
|---|---|---|
| 10:20:00 | 1 | years now, taught adjunct before that.  And I've never |
| 10:20:03 | 2 | served on a jury. |
| 10:20:04 | 3 | THE COURT:  All right.  Thank you, Dr. Hoover. |
| 10:20:06 | 4 | Next is Panel Member No. 14, Ms. Russell. |
| 10:20:12 | 5 | JUROR RUSSELL:  Okay.  My name is Jill Russell.  I |
| 10:20:15 | 6 | live in Marshall, Texas.  I have two grown children.  I'm |
| 10:20:19 | 7 | semi-retired.  My previous employment was with Canterra |
| 10:20:25 | 8 | Resources as an oil and gas accountant.  Was there over 25 |
| 10:20:30 | 9 | years.  I have a college degree from Stephen F. Austin with |
| 10:20:35 | 10 | graduate work at UT and at ETBU.  I have a CPA certificate. |
| 10:20:41 | 11 | I am divorced. |
| 10:20:43 | 12 | I served on a jury once in the county of Harrison |
| 10:20:47 | 13 | County. |
| 10:20:47 | 14 | THE COURT:  What kind of jury was that, ma'am?  Do |
| 10:20:50 | 15 | you remember anything about the case? |
| 10:20:52 | 16 | JUROR RUSSELL:  It had to do with a car wreck. |
| 10:20:54 | 17 | THE COURT:  All right. |
| 10:20:56 | 18 | JUROR RUSSELL:  And that's all I remember. |
| 10:20:57 | 19 | THE COURT:  Thank you. |
| 10:20:58 | 20 | All right.  Next is Mr. Storey, No. 15. |
| 10:21:03 | 21 | JUROR STOREY:  My name is Richard Storey.  I live |
| 10:21:06 | 22 | in Queen City, Texas.  I have four children.  Employee, I |
| 10:21:10 | 23 | work for Cooper Tire & Rubber Company.  Been there 19 |
| 10:21:14 | 24 | years.  High school graduate. |
| 10:21:19 | 25 | My spouse's name, Charlotte Storey.  She's a nurse |

| | | |
|---|---|---|
| 10:21:25 | 1 | at the jail in Texarkana, state. |
| 10:21:30 | 2 | No prior jury. |
| 10:21:32 | 3 | THE COURT:  All right, sir.  Thank you. |
| 10:21:37 | 4 | All right.  Next is Ms. Caraway, No. 16. |
| 10:21:41 | 5 | JUROR CARAWAY:  Good morning.  My name is Kimberly |
| 10:21:43 | 6 | Caraway.  I have four children.  Three in college.  I |
| 10:21:46 | 7 | currently am self-employed.  I'm a consultant, writer, and |
| 10:21:50 | 8 | publisher.  I have worked in that position, per se, for |
| 10:21:54 | 9 | about three years. |
| 10:21:55 | 10 | I have a double major in writing and |
| 10:22:01 | 11 | communications from Sam Houston State University.  I have |
| 10:22:04 | 12 | two Master's degrees in educational administration and |
| 10:22:11 | 13 | secondary education from Stephen F. Austin, and I also have |
| 10:22:14 | 14 | a doctorate in educational leadership from Stephen F. |
| 10:22:19 | 15 | Austin. |
| 10:22:19 | 16 | My husband's name is Rodney.  And he has worked 16 |
| 10:22:23 | 17 | years in the oil and gas industry in fracturing service. |
| 10:22:26 | 18 | And I have no prior jury experience.  I've never |
| 10:22:30 | 19 | been picked. |
| 10:22:31 | 20 | THE COURT:  All right.  Thank you, Dr. Caraway. |
| 10:22:33 | 21 | Next is No. 17, Mr. Smigiel. |
| 10:22:43 | 22 | JUROR SMIGIEL:  Smigiel, yes, sir. |
| 10:22:43 | 23 | THE COURT:  Smigiel. |
| 10:22:43 | 24 | JUROR SMIGIEL:  My name is William Smigiel.  I've |
| 10:22:46 | 25 | got two boys.  I'm from Gilmer, Texas.  I work for Trinity |

| | | |
|---|---|---|
| 10:22:55 | 1 | Rail.  I'm a supervisor -- a production supervisor.  I've |
| 10:23:00 | 2 | worked there for 23 years.  I graduated high school, got |
| 10:23:03 | 3 | some college. |
| 10:23:04 | 4 | My wife's name is Lala.  She's a nurse for |
| 10:23:08 | 5 | Christus Good -- Good Shepherd Home Health.  And she's |
| 10:23:14 | 6 | worked there for a year. |
| 10:23:15 | 7 | Prior service -- prior jury service, I served on a |
| 10:23:18 | 8 | criminal case in Upshur County. |
| 10:23:20 | 9 | THE COURT:  All right, sir.  How long ago was |
| 10:23:21 | 10 | that? |
| 10:23:23 | 11 | JUROR SMIGIEL:  That would probably be close to |
| 10:23:25 | 12 | about 10 years ago. |
| 10:23:26 | 13 | THE COURT:  Thank you very much, sir. |
| 10:23:27 | 14 | Okay.  Next is No. 18, Mr. Johnson. |
| 10:23:31 | 15 | JUROR DAVID JOHNSON:  My name is David Johnson.  I |
| 10:23:35 | 16 | live in Hallsville, Texas.  I've been there for about four |
| 10:23:40 | 17 | years.  And I have one child.  My place of employment is DJ |
| 10:23:47 | 18 | Johnson Design & Build.  I'm owner and president.  We build |
| 10:23:50 | 19 | custom homes and offices.  I've worked there for a little |
| 10:23:54 | 20 | over 20 years. |
| 10:23:56 | 21 | I have a college degree in industrial design. |
| 10:24:00 | 22 | Went to Kilgore and LeTourneau.  And I have a certificate |
| 10:24:06 | 23 | in aviation for flight lessons.  Not using it anymore. |
| 10:24:09 | 24 | My spouse's name is Jennifer.  And she is my |
| 10:24:12 | 25 | business partner and CFO.  She's been there for about 18 |

| | | |
|---|---|---|
| 10:24:18 | 1 | years. |
| 10:24:18 | 2 | And I have no prior service. |
| 10:24:19 | 3 | THE COURT:  All right.  Thank you, Mr. Johnson. |
| 10:24:21 | 4 | Next is No. 19, Ms. Conley. |
| 10:24:30 | 5 | JUROR CONLEY:  I'm Danielle Conley.  I live in |
| 10:24:35 | 6 | Longview.  I've been there all my life.  I have two |
| 10:24:37 | 7 | children.  I work at School of Little Children in Longview. |
| 10:24:40 | 8 | I work in the nursery.  How long?  I've worked there for |
| 10:24:43 | 9 | about 13 years now.  I have a high school diploma. |
| 10:24:47 | 10 | My husband's name is Michael.  He works at Jet |
| 10:24:50 | 11 | Business Systems.  He's a service technician, and he's been |
| 10:24:54 | 12 | there for about seven years. |
| 10:24:55 | 13 | And I have no prior jury service. |
| 10:24:57 | 14 | THE COURT:  All right.  Thank you, ma'am. |
| 10:24:59 | 15 | Next is No. 20, Mr. Gibson. |
| 10:25:04 | 16 | JUROR GIBSON:  Good morning.  I'm Ricky Gibson, |
| 10:25:06 | 17 | live in Gilmer, Texas.  Got two children.  I worked -- I'm |
| 10:25:11 | 18 | retired from Texas Eastman.  Worked there for 28 years. |
| 10:25:15 | 19 | High school education. |
| 10:25:16 | 20 | I'm divorced.  And I've been on -- served on two |
| 10:25:19 | 21 | juries -- two criminal cases, criminal assault. |
| 10:25:22 | 22 | THE COURT:  Where were those, sir? |
| 10:25:24 | 23 | JUROR GIBSON:  In Gilmer. |
| 10:25:26 | 24 | THE COURT:  How long ago -- best guess? |
| 10:25:28 | 25 | JUROR GIBSON:  Four and probably 10 years. |

10:25:30  1          THE COURT:  All right.  Thank you, Mr. Gibson.

10:25:32  2  Mr. Gibson, do you have a mask, sir?

10:25:34  3          JUROR GIBSON:  No, sir.

10:25:36  4          THE COURT:  Well, we will get you one.  You need

10:25:38  5  to wear one.

10:25:42  6          Can I get one of the Court Security Officers to

10:25:44  7  get a mask?  You're doing that?

10:25:48  8          COURT SECURITY OFFICER:  I just called for one,

10:25:50  9  Judge.

10:25:50  10         THE COURT:  Okay.  Good.  If you'll take it to him

10:25:52  11  as soon as it gets here.

10:25:54  12         In the meantime, we'll go on with Panel Member

10:25:57  13  No. 21, Mr. Wentzell.

10:25:59  14         JUROR WENTZELL:  My name is Robert Wentzell, and I

10:26:02  15  live in Longview, Texas.  I have several grown children.

10:26:05  16  I'm retired and previously over-the-road truck driver, 20

10:26:10  17  years.  I have a high school diploma and some college.

10:26:12  18         Spouse's name is Jeanne.  She's retired also, was

10:26:14  19  an RN.  She was there about 22, 23 years.  And no prior

10:26:23  20  jury service.

10:26:24  21         THE COURT:  All right, sir.  Thank you.

10:26:25  22         Next is Panel Member No. 22, Ms. Howard.

10:26:33  23         JUROR HOWARD:  My name is Kasey Howard.  I live in

10:26:36  24  Hallsville, Texas.  I have one child.  I work at ABC Auto

10:26:41  25  Distribution in Longview.  I've been there for eight

| | | |
|---|---|---|
| 10:26:44 | 1 | months. |
| 10:26:46 | 2 | I never been on a jury duty. |
| 10:26:48 | 3 | THE COURT:  All right, ma'am.  Thank you. |
| 10:26:49 | 4 | Just a minute.  Let's make sure Mr. Gibson gets |
| 10:27:00 | 5 | that mask. |
| 10:27:01 | 6 | And, Mr. Preston, you're going to have to pull |
| 10:27:03 | 7 | that mask up and leave it up.  It doesn't do any good |
| 10:27:07 | 8 | around your neck.  These precautions are for everybody's |
| 10:27:11 | 9 | safety, and everybody's going to have to follow them. |
| 10:27:15 | 10 | All right.  Next is No. 23, Mr. Donley. |
| 10:27:15 | 11 | JUROR DONLEY:  My name is Noah Kyle Donley.  I |
| 10:27:19 | 12 | live in Atlanta, Texas.  I have one child on the way.  My |
| 10:27:23 | 13 | place of employment is Graphic Packaging International. |
| 10:27:25 | 14 | I'm a process manager in power plant operations.  I've |
| 10:27:26 | 15 | worked there for 10 years.  I have a high school education |
| 10:27:30 | 16 | at Queen City High School. |
| 10:27:32 | 17 | I'm not married, but my significant other is |
| 10:27:36 | 18 | Lauren Bean.  Her place of employment is Northeast Texas |
| 10:27:41 | 19 | Community Service in Linden, Texas.  She's worked there for |
| 10:27:45 | 20 | years.  She's a case manager. |
| 10:27:47 | 21 | And I have one prior jury service, and it was |
| 10:27:49 | 22 | grand jury in Linden, Texas, Cass County. |
| 10:27:52 | 23 | THE COURT:  All right.  Thank you, Mr. Donley. |
| 10:27:54 | 24 | Next is No. 24, Mr. Jones. |
| 10:27:57 | 25 | JUROR JONES:  Samuel Jones.  I live here in |

| | | |
|---|---|---|
| 10:28:01 | 1 | Marshall, Texas.  I have four kids.  I work for Trendsetter |
| 10:28:05 | 2 | Construction, been there five years. |
| 10:28:06 | 3 | My wife's name Arnetta.  She works for the State |
| 10:28:10 | 4 | of Texas as a CPS officer.  She's been there two years. |
| 10:28:13 | 5 | And no prior jury service. |
| 10:28:14 | 6 | THE COURT:  All right, Mr. Jones.  Thank you. |
| 10:28:19 | 7 | Next is No. 25, Mr. Davis. |
| 10:28:22 | 8 | JUROR DAVIS:  Good morning. |
| 10:28:22 | 9 | THE COURT:  Good morning. |
| 10:28:23 | 10 | JUROR DAVIS:  My name is Larry Davis.  I live in |
| 10:28:26 | 11 | Gladewater, Texas.  I have two kids.  Currently work for |
| 10:28:29 | 12 | East Texas Machine Works where I'm a customer account |
| 10:28:33 | 13 | manager.  I've been there right at two years now.  I |
| 10:28:35 | 14 | graduated from Longview High School.  And I do have some |
| 10:28:38 | 15 | college courses from Kilgore College, also. |
| 10:28:40 | 16 | My spouse's name is Lynn Davis.  She is retired. |
| 10:28:43 | 17 | She was a Gladewater Independent School teacher, worked |
| 10:28:47 | 18 | there for 45 years. |
| 10:28:50 | 19 | I did serve on a jury service in Gregg County |
| 10:28:52 | 20 | probably about 25 years ago on a criminal case. |
| 10:28:55 | 21 | THE COURT:  In state court? |
| 10:28:58 | 22 | JUROR DAVIS:  Yes, sir. |
| 10:28:59 | 23 | THE COURT:  Thank you, sir. |
| 10:29:01 | 24 | All right.  Next is No. 26, Mr. Hill. |
| 10:29:04 | 25 | MR. HILL:  My name is Phillip Hill.  I live just |

| | | |
|---|---|---|
| 10:29:09 | 1 | outside of Atlanta, Texas.  I have no children.  I'm a |
| 10:29:12 | 2 | shift leader and a lead operator at a biofuel plant in |
| 10:29:16 | 3 | Hooks, Texas, alternative fuel placement.  Been there a |
| 10:29:18 | 4 | little over two years.  I graduated from Queen City High |
| 10:29:21 | 5 | School. |
| 10:29:22 | 6 | Spouse's name is Brittany.  She's a kitchen staff |
| 10:29:25 | 7 | at a nursing home called Golden Villa in Atlanta.  She's |
| 10:29:32 | 8 | been there probably about eight years. |
| 10:29:33 | 9 | And I attended jury selection for a domestic |
| 10:29:36 | 10 | violence case in Linden, Texas, about two years ago, but I |
| 10:29:39 | 11 | was not selected for the jury. |
| 10:29:40 | 12 | THE COURT:  All right.  Thank you, Mr. Hill. |
| 10:29:42 | 13 | Next is No. 27, Ms. Johnson. |
| 10:29:45 | 14 | JUROR DONNA JOHNSON:  My name is Donna Johnson.  I |
| 10:30:00 | 15 | have two children, one living, one deceased.  I work for |
| 10:30:03 | 16 | Edward Jones Investments in Gilmer.  I've worked there for |
| 10:30:09 | 17 | 19 years.  I have an Associate degree from Kilgore College |
| 10:30:19 | 18 | in business administration. |
| 10:30:21 | 19 | My husband's name is Paul Johnson, and we've been |
| 10:30:23 | 20 | married for 34 years.  He works for ETEX Telephone Company, |
| 10:30:30 | 21 | and he is a fiber optics specialist.  He's worked there for |
| 10:30:36 | 22 | 22 years. |
| 10:30:37 | 23 | I have been called for jury duty three times, but |
| 10:30:44 | 24 | I've never been picked for a jury. |
| 10:30:46 | 25 | THE COURT:  And do you live in Gilmer, ma'am? |

| | | |
|---|---|---|
| 10:30:49 | 1 | JUROR DONNA JOHNSON:  Yes, I live in Gilmer.  I'm |
| 10:30:51 | 2 | sorry. |
| 10:30:51 | 3 | THE COURT:  That's all right.  Thank you very |
| 10:30:53 | 4 | much. |
| 10:30:53 | 5 | All right.  Next is Panel Member No. 28, |
| 10:30:59 | 6 | Ms. Rosenbalm. |
| 10:31:00 | 7 | JUROR ROSENBALM:  Good morning.  My name is Tina |
| 10:31:03 | 8 | Rosenbalm.  I live in Gilmer.  I have two adult children. |
| 10:31:09 | 9 | I have several jobs.  First, I work as coordinator of |
| 10:31:14 | 10 | competitive events at the East Texas State Fair in Tyler. |
| 10:31:19 | 11 | I also have rental property that me and my husband manage. |
| 10:31:24 | 12 | And I also grow cut flowers and sell to florists.  So I |
| 10:31:29 | 13 | wanted you to hear that, Judge. |
| 10:31:36 | 14 | Let's see, I've worked at the East Texas State |
| 10:31:40 | 15 | Fair for three years, and we've had rental property for |
| 10:31:46 | 16 | probably 17 years.  I graduated from Tarleton State |
| 10:31:54 | 17 | University with a degree in agriculture education.  And I |
| 10:31:59 | 18 | did used to teach agriculture in the high school level. |
| 10:32:03 | 19 | My spouse's name is Edwin Rosenbalm, and he owns |
| 10:32:08 | 20 | Benchmark Foundation Repair, and has owned that business |
| 10:32:12 | 21 | for 28 years. |
| 10:32:17 | 22 | And I've never served on a jury before. |
| 10:32:20 | 23 | THE COURT:  Thank you, Ms. Rosenbalm. |
| 10:32:22 | 24 | Next is No. 29, Ms. Hawkins. |
| 10:32:27 | 25 | JUROR HAWKINS:  My name is Dara Hawkins, and I |

10:32:30  1   live in Mt. Pleasant, Texas.  I have one child.  And I'm

10:32:34  2   currently unemployed, but I did work for an online gifting

10:32:38  3   company called Gift Services.  I worked there for about two

10:32:42  4   years.  I have a high school diploma and some college.

10:32:48  5          My spouse's name is Isaiah, and he works for Union

10:32:53  6   Pacific Railroad.  He's worked there for about three years.

10:32:56  7   And I have no prior jury service.

10:32:57  8          THE COURT:  All right.  Thank you very much.

10:32:59  9          Next is Panel Member No. 30, Mr. Endsley.

10:33:05 10          JUROR ENDSLEY:  My name is Roger Endsley.  I live

10:33:13 11   in a little place called Bivens, Texas, which is south of

10:33:17 12   Atlanta.  I have two adult children.  And I'm currently

10:33:24 13   working as a transport officer for the Bowie County

10:33:31 14   Sheriff's Office.

10:33:31 15          And I'm also retired from the Federal Bureau of

10:33:36 16   Prisons in Texarkana for 31 years.  I have a high school

10:33:39 17   education and some college.

10:33:41 18          My spouse's name is Diane, and she works for the

10:33:45 19   First National Bank of Hughes Springs as a loan processor,

10:33:50 20   and she's worked there about 28 years.  And I've never been

10:33:55 21   picked for any jury service.

10:33:57 22          THE COURT:  All right.  Thank you, Mr. Endsley.

10:33:59 23          Next is Panel Member No. 31, Ms. Butler.

10:34:06 24          JUROR BUTLER:  My name is Reba Butler, and I live

10:34:09 25   in Linden, Texas.  I have two sons.  And I work for Elara

10:34:17  1   Caring.  It's a skilled home health agency, and I'm a

10:34:20  2   clinical team manager.

10:34:22  3            THE COURT:  What's the name of it again, ma'am?

10:34:26  4            JUROR BUTLER:  Elara Caring.

10:34:26  5            THE COURT:  Okay.

10:34:29  6            JUROR BUTLER:  And I've been there nine years, and

10:34:30  7   have a degree in applied science, certification as a

10:34:33  8   registered nurse.

10:34:36  9            My husband is Kelly Butler, and he works for

10:34:40  10  Windstream Communications, and he's been there for 10

10:34:44  11  years.

10:34:44  12            And no prior jury service.

10:34:46  13            THE COURT:  Thank you, Ms. Butler.

10:34:47  14            Next is Panel Member No. 32, Ms. Kirkpatrick.

10:34:52  15            JUROR KIRKPATRICK:  My name is Debora Kirkpatrick.

10:34:55  16  I live in Pittsburg, Texas.  I have four children, two --

10:34:58  17  two of them are stepkids and two birth kids.  I work at

10:35:02  18  Cardiovascular Associates in Tyler.  I've worked there 26

10:35:08  19  years.  I have a business education, Tyler School of

10:35:11  20  Business.

10:35:11  21            My spouse's name is Donny Kirkpatrick.  He works

10:35:15  22  at Eastex Trucking Company, and he's worked there 30-plus

10:35:20  23  years.

10:35:21  24            And I've had one jury service for age

10:35:23  25  discrimination when I was young.

| | | |
|---|---|---|
| 10:35:25 | 1 | THE COURT:  Where was that, ma'am? |
| 10:35:27 | 2 | JUROR KIRKPATRICK:  Henderson, Texas. |
| 10:35:29 | 3 | THE COURT:  And tell me what you do at |
| 10:35:31 | 4 | Cardiovascular Associates. |
| 10:35:33 | 5 | JUROR HOWARD:  I am the support supervisor over |
| 10:35:36 | 6 | the front office. |
| 10:35:39 | 7 | THE COURT:  All right.  Thank you very much. |
| 10:35:40 | 8 | Next is No. 33, Mr. Moses. |
| 10:35:46 | 9 | JUROR MOSES:  My name is Rocky Moses.  I have six |
| 10:35:50 | 10 | kids, four of my own, two adopted.  I work in Texarkana at |
| 10:35:53 | 11 | Jack Yates Drywall.  Got a GED. |
| 10:35:57 | 12 | My wife's name is Jenice.  She's a stay-at-home |
| 10:36:02 | 13 | mom. |
| 10:36:02 | 14 | And no jury. |
| 10:36:03 | 15 | THE COURT:  What's the name of your employment, |
| 10:36:06 | 16 | sir? |
| 10:36:06 | 17 | JUROR MOSES:  Jack Yates Drywall. |
| 10:36:10 | 18 | THE COURT:  Thank you very much, Mr. Moses. |
| 10:36:12 | 19 | All right.  Next is No. 34, Ms. Whitehead. |
| 10:36:13 | 20 | JUROR WHITEHEAD:  My name is Amy Whitehead.  I |
| 10:36:17 | 21 | have one adult daughter.  I work at Jucy Taco here in |
| 10:36:20 | 22 | Marshall, Texas.  I graduated from Marshall.  Been here all |
| 10:36:24 | 23 | my life. |
| 10:36:24 | 24 | I'm recently separated. |
| 10:36:26 | 25 | And I have no jury experience. |

| | | |
|---|---|---|
| 10:36:28 | 1 | THE COURT:  All right.  Thank you. |
| 10:36:29 | 2 | No. 35 is next, Mr. Spearman. |
| 10:36:29 | 3 | JUROR SPEARMAN:  My name is -- |
| 10:36:39 | 4 | THE COURT:  Will you take -- |
| 10:36:39 | 5 | JUROR SPEARMAN:  -- Charles Spearman. |
| 10:36:39 | 6 | THE COURT:  Will you take that mask down, please, |
| 10:36:41 | 7 | Mr. Spearman?  Thank you. |
| 10:36:43 | 8 | JUROR SPEARMAN:  I'm sorry. |
| 10:36:44 | 9 | THE COURT:  That's all right. |
| 10:36:45 | 10 | JUROR SPEARMAN:  My name is Charles Spearman.  I |
| 10:36:49 | 11 | have no children, and my place of employment is at Elara |
| 10:36:54 | 12 | Caring where I work there as a home health attendant.  I've |
| 10:36:58 | 13 | worked there for five years, and I graduated from DeVry |
| 10:37:03 | 14 | University with a Bachelor's degree in business |
| 10:37:05 | 15 | administration. |
| 10:37:08 | 16 | And I have no spouse. |
| 10:37:09 | 17 | And I did have prior jury service in Marion County |
| 10:37:13 | 18 | back in October of 2018.  It was a child protective -- |
| 10:37:17 | 19 | protection case. |
| 10:37:20 | 20 | THE COURT:  Did you serve on the jury? |
| 10:37:21 | 21 | JUROR SPEARMAN:  Yes, I did. |
| 10:37:22 | 22 | THE COURT:  All right.  Is your place of employer |
| 10:37:25 | 23 | the same place Ms. Butler mentioned earlier? |
| 10:37:29 | 24 | JUROR SPEARMAN:  Yes, sir. |
| 10:37:29 | 25 | THE COURT:  Do you know Ms. Butler? |

```
10:37:31   1            JUROR SPEARMAN:  No, sir.

10:37:32   2            THE COURT:  Okay.  Thank you very much, sir.

10:37:33   3            JUROR SPEARMAN:  You're welcome.

10:37:34   4            THE COURT:  If you'll put your mask back on and

10:37:38   5   have a seat, we'll go next to Mr. Robertson.

10:37:42   6            JUROR ROBERTSON:  All right.  Yes, I'm Richard

10:37:43   7   Robertson, and I'm from Marshall, Texas.  I got five kids.

10:37:48   8   And I worked at Harrison County Road & Bridge for about

10:37:53   9   three years.  And let's see, I finished Marshall High

10:38:02  10   School at 12th grade.

10:38:03  11            And my spouse is LaTonya, and she work at the

10:38:07  12   nursing home here off of Washington.  She's been there

10:38:11  13   about 20 years.

10:38:14  14            And I served a jury, but before we got started,

10:38:17  15   they canceled it.

10:38:20  16            THE COURT:  Where was that, sir?

10:38:23  17            JUROR ROBERTSON:  Here in Marshall.

10:38:24  18            THE COURT:  What do you do at road and bridge

10:38:28  19   department?

10:38:28  20            JUROR ROBERTSON:  Drive trucks and backhoe.

10:38:30  21            THE COURT:  Thank you very much, Mr. Robertson.

10:38:32  22            Next is Panel Member No. 37, Ms. Lange.

10:38:35  23            JUROR LANGE:  Karen Lange, and I live in Gilmer.

10:38:39  24   I have two boys.  I work for Caldwell Banker Real Estate

10:38:46  25   for 10 years.  Graduated from Gilmer High School.
```

| | | |
|---|---|---|
| 10:38:50 | 1 | My husband is Larry, and he works for CNC Oilfield |
| 10:38:58 | 2 | for two years. |
| 10:38:59 | 3 | And no prior jury. |
| 10:39:01 | 4 | THE COURT:  Thank you, Ms. Lange. |
| 10:39:03 | 5 | Next is No. 38, Ms. Hitt. |
| 10:39:05 | 6 | JUROR HITT:  My name is Cynthia Hitt.  I go by |
| 10:39:09 | 7 | Cindy.  I've recently moved to Hallsville.  Prior to that |
| 10:39:13 | 8 | for 18 years, I was outside of Gilmer.  I was also born in |
| 10:39:17 | 9 | Florida, but I got to Texas before you did.  I have no |
| 10:39:19 | 10 | biological kids. |
| 10:39:21 | 11 | I work for Texas Department of Public Safety. |
| 10:39:24 | 12 | I'll be there 21 years next month.  Education, high school |
| 10:39:27 | 13 | and specialty training primarily in police communications, |
| 10:39:34 | 14 | driver's license, and DOT compliance. |
| 10:39:36 | 15 | I'm recently divorced. |
| 10:39:38 | 16 | And I have been called three times but never |
| 10:39:40 | 17 | served on a jury. |
| 10:39:41 | 18 | THE COURT:  All right.  Thank you very much, |
| 10:39:43 | 19 | ma'am. |
| 10:39:43 | 20 | Next is No. 39, Ms. Scott. |
| 10:39:47 | 21 | JUROR SCOTT:  Good morning.  My name is Misty |
| 10:39:49 | 22 | Scott.  I have lived in Marshall for 14 years.  I am the |
| 10:39:53 | 23 | executive director at Mission Marshall, and I've been there |
| 10:39:56 | 24 | about eight and a half years.  I have a Bachelor's degree |
| 10:40:00 | 25 | from East Texas Baptist University. |

| | |
|---|---|
| 10:40:04 | 1 |
| 10:40:09 | 2 |
| 10:40:11 | 3 |
| 10:40:15 | 4 |
| 10:40:16 | 5 |
| 10:40:19 | 6 |
| 10:40:22 | 7 |
| 10:40:23 | 8 |
| 10:40:26 | 9 |
| 10:40:28 | 10 |
| 10:40:36 | 11 |
| 10:40:37 | 12 |
| 10:40:40 | 13 |
| 10:40:41 | 14 |
| 10:40:45 | 15 |
| 10:40:49 | 16 |
| 10:40:52 | 17 |
| 10:40:56 | 18 |
| 10:41:01 | 19 |
| 10:41:06 | 20 |
| 10:41:06 | 21 |
| 10:41:06 | 22 |
| 10:41:11 | 23 |
| 10:41:13 | 24 |
| 10:41:16 | 25 |

My husband is Glenn.  He works at East Texas Baptist University as a system specialist in the IT department.  He has worked there for 14 years, and I have never served before on a jury.

THE COURT:  Ms. Scott, I know what Mission Marshall is, but tell everybody else what Mission Marshall is.

JUROR SCOTT:  We're a non-profit serving Harrison and Marion Counties that operate the local food pantry, as well as do a lot of support services for early childhood literacy in our community and some adult education for job enrichment and financial literacy.

THE COURT:  Thank you.

All right.  Next is Panel Member No. 40, Ms. Pope.

JUROR POPE:  Hi, my name is Rebecca Pope, and I live in Big Sandy, Texas.  I have one adult child.  I work for GE Steam Power for 18 years.  I was acquired.  I recently worked for Alstom, and GE bought them out, like I said, for 18 years.  I have a high school diploma and some college.

My spouse's name is Arthur Pope.  He works for Universal Pressure Company out in Midland, Texas, right now.  He's been there approximately 10 years.

And I have been called several times for jury service, but I've never served.

10:41:18   1          THE COURT:  Thank you very much, ma'am.

10:41:19   2          Thank you, ladies and gentlemen.

10:41:27   3          Now, I need to say a couple more things to you

10:41:31   4   before I turn the questioning over to the lawyers.

10:41:33   5          The jurors that are selected to serve in this case

10:41:38   6   will serve in the role as the judges of the facts, and the

10:41:43   7   jury selected in this case will make the sole determination

10:41:46   8   about what the facts are in this case.

10:41:50   9          My job as the Judge is to rule on questions of

10:41:53  10   law, evidence, and procedure that arise during the trial,

10:41:56  11   to oversee the efficient flow of the evidence, and to

10:41:59  12   maintain the decorum of the courtroom.

10:42:03  13          Also, I want to say a couple things to you about

10:42:06  14   our judicial system that I hope will put things in a proper

10:42:09  15   perspective for you.

10:42:11  16          In every jury trial, besides the parties

10:42:14  17   themselves, there are always three participants, the jury,

10:42:19  18   the judge, and the lawyers.

10:42:21  19          With regard to the lawyers, ladies and gentlemen,

10:42:23  20   I think it's important for you to understand that our

10:42:26  21   judicial system is based on an adversary system, which

10:42:31  22   simply means that during the course of the trial, each of

10:42:34  23   the parties will seek to present their respective cases to

10:42:38  24   the jury in the very best light possible.

10:42:41  25          Now, it's no surprise to any of you that lawyers

10:42:44  1  are often criticized in the media and in the press, but the

10:42:49  2  Court's recognized that, at least to some extent, that's

10:42:54  3  the result of a misunderstanding about our adversary system

10:42:57  4  of justice in which the lawyers act as competing advocates

10:43:03  5  for the parties.

10:43:04  6      As an advocate, a lawyer is ethically and legally

10:43:09  7  obligated to zealously assert his or her client's position

10:43:15  8  under the rules of our adversary system.  And by presenting

10:43:18  9  the best case possible under the rules of our system and on

10:43:21  10  behalf of their clients, the lawyers hopefully will enable

10:43:25  11  the jury to better weigh the relevant evidence, to

10:43:28  12  determine the truth, and arrive at a just verdict based on

10:43:33  13  that evidence.

10:43:33  14      This system of justice, this adversary system of

10:43:37  15  justice has served our nation well for over 200 years, and

10:43:41  16  America's lawyers have always been and will continue to be

10:43:44  17  a part -- an integral part of that process.

10:43:47  18      So as we go forward with the trial in this case,

10:43:51  19  even though I might occasionally roll my eyes or frown or

10:43:56  20  even growl a little bit at the lawyers from time to time,

10:44:00  21  it's simply because I'm trying to make sure that their

10:44:03  22  advocacy doesn't get outside the boundaries of our

10:44:07  23  adversary system.

10:44:08  24      But please keep in mind, they are simply doing

10:44:11  25  their jobs in zealously asserting -- asserting their

10:44:14   1   client's position, and it's important for all of you to

10:44:17   2   understand that as we go forward.

10:44:19   3        Also, ladies and gentlemen, throughout the course

10:44:23   4   of this trial, if you're selected on this jury, I want you

10:44:28   5   to know that I am going to do my very best throughout the

10:44:31   6   trial to make sure that nobody on the jury has any idea

10:44:35   7   about what I think about the evidence, because determining

10:44:40   8   the facts in this case based on the evidence is the jury's

10:44:42   9   job.  It is not my job.  And those of you that are selected

10:44:46  10   to serve on this jury should not take any expressions or

10:44:50  11   comments that you see or hear as coming from me as

10:44:54  12   something for you to consider in determining what the

10:44:57  13   ultimate facts are in this case.

10:44:58  14        But I'm going to do my very best so that you don't

10:45:04  15   have any idea about what I think about the evidence,

10:45:07  16   because, as I say, as the judges of the facts, the jury

10:45:12  17   will decide what the facts are in this case.

10:45:13  18        All right.  At this time, counsel for the

10:45:18  19   competing parties are going to address the panel.

10:45:22  20        Mr. Ward, you may address the panel on behalf of

10:45:24  21   the Plaintiff.  Would you like a warning on your time?

10:45:27  22        MR. WARD:  Yes, sir.  Could I have a five-minute

10:45:30  23   warning?

10:45:30  24        THE COURT:  I'll warn you when you've used 25

10:45:33  25   minutes.

```
10:45:34   1              MR. WARD:  Thank you.

10:45:35   2              THE COURT:  You may proceed.

10:45:35   3              MR. WARD:  May it please the Court.

10:45:50   4          Good morning again.  My name is Johnny Ward.  I

10:45:56   5   live over in Longview, Texas.  I've lived there for about

10:46:00   6   30 years.  I practiced law -- I've been practicing law for

10:46:05   7   26 years.  I've been out in my own firm for about 20 of

10:46:09   8   those years.

10:46:10   9          I graduated from Longview High School, went to

10:46:12  10   undergrad at Oklahoma, and then law school at Texas Tech

10:46:16  11   down in Lubbock.

10:46:17  12          My wife is a school teacher.  We have three

10:46:22  13   children, two in college, one on his way to college.  So

10:46:25  14   we're about to be empty nesters, getting close.

10:46:33  15          She's taught off and on for about four years.

10:46:36  16   She's not teaching right now.

10:46:37  17          And I've had no prior jury service.

10:46:39  18          So now you all know as much about me as I know

10:46:41  19   about y'all.  Although you did fill out jury

10:46:45  20   questionnaires, and those were very helpful, and I'm going

10:46:47  21   to ask some questions and that enables us to find things

10:46:51  22   out in addition to what you've already told us.

10:46:53  23          Before I get into questioning, I'm going to give

10:46:55  24   you a real high level about what Solas, my client, that I

10:46:58  25   represent, along with Mr. Fenster and his firm, tell you
```

10:47:05   1    what this case is about.

10:47:06   2             Three United States patents.  Has anyone ever seen

10:47:10   3    a patent before on the jury panel?  I hadn't either until

10:47:13   4    about 16 years ago when I was in the courtroom and I saw my

10:47:18   5    first patent, and I've been looking at them ever since.

10:47:21   6             These three patents, there's one called the '311.

10:47:24   7    As you learned on the video, the patents are referred to by

10:47:27   8    their last three digits, and you'll get used to those

10:47:28   9    numbers, those of you that make it on the panel.

10:47:29  10             The '311 deals with touch sensor panels, and we

10:47:34  11    contend that the invention in the '311 is what enables

10:47:37  12    Samsung to make these big panels that we all like.  They

10:47:42  13    get bigger and larger and wrap around the edges.

10:47:45  14             The other two patents, the '450 and the '338, deal

10:47:49  15    with something called AMOLED, active-matrix organic

10:47:57  16    light-emitting diode.  Mouthful.  Those that make it on the

10:47:57  17    panel will find out about it.

10:47:58  18             Basically, those patents enable Samsung to make

10:48:01  19    their screens brighter, the colors brighter, the darks

10:48:05  20    darker, the batteries last longer, and the screens last

10:48:09  21    longer.

10:48:10  22             Now, they don't agree with that, and we don't

10:48:12  23    claim to have invented these panels, but -- the screens, we

10:48:17  24    just claim that our inventions have made them better.

10:48:20  25             Now, they dispute all that.  They say they don't

10:48:24  1  trespass on these patents.  They say that two of the

10:48:26  2  patents are invalid.  And there's a big dispute over

10:48:31  3  damages.  Because we say they owe over $88 million for

10:48:37  4  using this property without permission, and they say if

10:48:39  5  they owe anything, it's no more than $1.6 million, which

10:48:44  6  turns out to be what Solas actually purchased these patents

10:48:47  7  for.

10:48:48  8          And I'll talk to you about Solas's business some

10:48:50  9  in a minute.

10:48:51  10         But at a very high level, that's what the dispute

10:48:53  11  is about, and I'm not going to talk to you about any of the

10:48:56  12  evidence, because what I want to do is find out about you

10:48:58  13  all.

10:48:58  14         When you came to court, I assume that you all

10:49:05  15  wanted to be fair.  Does everyone want to be fair?  Nobody

10:49:08  16  wanted to be unfair, surely.  Anybody want to be unfair?

10:49:13  17  When they said I'm going to go to federal court, I'm going

10:49:16  18  to sit on a jury, I'm going really to stick it to somebody.

10:49:16  19  Nobody sitting out there to deliberate right now, right?

10:49:21  20         However, can you all agree that we all have

10:49:22  21  different life experiences, and our life experiences affect

10:49:25  22  us in different ways?  And I'll give you an example.

10:49:28  23         Let's say I got called to jury service and I found

10:49:31  24  out that it was a case against a teacher.  Well, my wife's

10:49:36  25  been involved in teaching for her whole life, works with

| | | |
|---|---|---|
| 10:49:40 | 1 | Longview High School.  I wouldn't be a good juror.  I think |
| 10:49:43 | 2 | I would start out leaning in favor of the teacher. |
| 10:49:47 | 3 | Leaning is okay.  What's not okay is if you lean |
| 10:49:51 | 4 | to such an extent that you couldn't set that aside and |
| 10:49:55 | 5 | decide the case based upon the merits of the case. |
| 10:49:59 | 6 | So that's what we're trying to find out.  Do you |
| 10:50:02 | 7 | lean one way or the other?  And if you lean, tell us.  And |
| 10:50:05 | 8 | let's find out if it's something you can set aside, or will |
| 10:50:10 | 9 | it affect your ability to be a fair juror in this case? |
| 10:50:12 | 10 | Doesn't mean you're not a fair person.  Just means you |
| 10:50:15 | 11 | might not be the right juror for this case. |
| 10:50:17 | 12 | So let me start out by asking if anybody knows |
| 10:50:22 | 13 | Ms. Melissa Smith.  She's an attorney.  She practices here |
| 10:50:24 | 14 | in Marshall.  She lives in Tyler.  Does anybody know |
| 10:50:28 | 15 | Ms. Smith? |
| 10:50:29 | 16 | Anyone know her law partner, Gil Gillam, law firm |
| 10:50:32 | 17 | of Gillam & Smith? |
| 10:50:34 | 18 | Anybody know -- and when I say "know," I'm using |
| 10:50:38 | 19 | the broadest sense of the word; "know" means I recognize -- |
| 10:50:42 | 20 | I recognize the name of the firm, anything like that? |
| 10:50:45 | 21 | Yes, ma'am? |
| 10:50:48 | 22 | JUROR TITTERINGTON:  Can I ask a question? |
| 10:50:50 | 23 | MR. WARD:  Ms. Titterington, you've got to wait on |
| 10:50:52 | 24 | the microphone, but, yes, you can certainly ask a question. |
| 10:50:53 | 25 | THE COURT:  If you'll stand up -- |

| | |
|---|---|
| 10:50:53 | 1 |
| 10:50:55 | 2 |
| 10:50:56 | 3 |
| 10:50:59 | 4 |
| 10:51:00 | 5 |
| 10:51:01 | 6 |
| 10:51:05 | 7 |
| 10:51:05 | 8 |
| 10:51:06 | 9 |
| 10:51:09 | 10 |
| 10:51:10 | 11 |
| 10:51:13 | 12 |
| 10:51:16 | 13 |
| 10:51:19 | 14 |
| 10:51:23 | 15 |
| 10:51:24 | 16 |
| 10:51:27 | 17 |
| 10:51:28 | 18 |
| 10:51:29 | 19 |
| 10:51:29 | 20 |
| 10:51:32 | 21 |
| 10:51:34 | 22 |
| 10:51:37 | 23 |
| 10:51:40 | 24 |
| 10:51:42 | 25 |

JUROR TITTERINGTON:  Can I ask a question?

MR. WARD:  Certainly.

JUROR TITTERINGTON:  Has Ms. Smith ever practiced family law?

MR. WARD:  I don't know if she's practiced family law.  I'll let you ask her -- ask her that question when she's up here asking questions.

JUROR TITTERINGTON:  Okay.

MR. WARD:  But do you recognize her --

JUROR TITTERINGTON:  It's just the only time I've ever been to court was with my divorce, and that was about 10 years ago.  And I did use a lawyer from Longview, so I don't really remember who I used, but she looked slightly familiar when she walked into the room, but I used a female lawyer.

MR. WARD:  So I bet it was not Mrs. Smith.

JUROR TITTERINGTON:  Probably not, but just in case.

MR. WARD:  Okay.  I appreciate you.  That's what I want to know.  If you think you might know somebody, then let me know and let's find out.

So my question is:  Does anybody think they know the law firm of Gillam & Smith, or been exposed to anybody at that firm, have a relative or friend that worked there?  And if you do, just raise your hand.

```
10:51:44   1            The other law firm and lawyer that I think you'll
10:51:46   2   hear a lot from at Samsung is Mr. Bob Haslam.  He's with
10:51:50   3   the law firm of Covington & Burling.  They've got offices
10:51:54   4   all over the country.  So I can't go through all those
10:51:57   5   lawyers.
10:51:57   6            But thank you, Mr. Haslam.
10:51:59   7            What I need to know is if anyone knows or has a
10:52:03   8   relative that works for the law firm of Covington &
10:52:07   9   Burling?  I know it's a long shot, but I've got to ask.
10:52:10  10   Nobody?
10:52:11  11            Let me ask this question.  I want to talk to some
10:52:26  12   of you individually, and if many of you raise your hand, I
10:52:30  13   want to talk to you.  Several of you indicated that you had
10:52:32  14   prior jury service.  Anyone that's had prior jury service,
10:52:37  15   were you the foreperson of the jury, whether it was a
10:52:40  16   criminal case or a civil case?  Anybody?  If you were the
10:52:43  17   foreperson, raise your hand.
10:52:45  18            Okay.  Let me ask some individual questions.  I'm
10:52:48  19   going to start right up here upfront dealing with
10:52:56  20   Ms. Hirzel, Juror No. 2.  You indicated that you had worked
10:52:59  21   for Walmart, I think, for 36 years?
10:53:02  22            JUROR HIRZEL:  36.
10:53:03  23            MR. WARD:  And you retired from Walmart?
10:53:05  24            JUROR HIRZEL:  I retired.
10:53:06  25            MR. WARD:  They were a good employer to you?
```

10:53:07   1           JUROR HIRZEL:  They were excellent to me.

10:53:10   2           MR. WARD:  And what did you do while you were at

10:53:11   3   Walmart?

10:53:13   4           JUROR HIRZEL:  I was a department manager for all

10:53:15   5   36 years.

10:53:16   6           MR. WARD:  You started as a department manager?

10:53:16   7           JUROR HIRZEL:  Yes, and just stayed there.

10:53:17   8           MR. WARD:  Okay.  And was that locally?

10:53:17   9           JUROR HIRZEL:  No.

10:53:18  10           MR. WARD:  Okay.  Where were you located?

10:53:20  11           JUROR HIRZEL:  All over.

10:53:21  12           MR. WARD:  All over.

10:53:22  13           JUROR HIRZEL:  I started in El Paso.  That's where

10:53:25  14   I'm originally from.  But with my husband's job, for him to

10:53:30  15   climb the ladder, we moved to Arizona, Michigan, Austin,

10:53:32  16   Texarkana.

10:53:32  17           MR. WARD:  Moved all over?

10:53:33  18           JUROR HIRZEL:  All over.

10:53:34  19           MR. WARD:  All right.  Thank you, ma'am.

10:53:35  20           And then right next to you, I have to let them

10:53:39  21   give him a microphone, Mr. Preston.

10:53:42  22           I'll start my question -- oh, you've got a

10:53:44  23   microphone already.  You indicated you worked at MSC

10:53:46  24   Outside Sales, and I'm not familiar with MSC.  Tell me what

10:53:50  25   type of sales you were doing.

10:53:52  1          JUROR PRESTON:  It is industrial supplies,
10:53:54  2   everything from hydraulic systems to nuts and bolts.  We
10:53:59  3   carry a little over a million items, all related to the
10:54:03  4   industrial world.
10:54:04  5          MR. WARD:  And do you travel a lot?
10:54:06  6          JUROR PRESTON:  All in northeast Texas, no
10:54:08  7   overnight.
10:54:09  8          MR. WARD:  Okay.  You do any work for Samsung?
10:54:12  9          JUROR PRESTON:  I do not.
10:54:13  10          MR. WARD:  Okay.  Anything about your job that
10:54:15  11   causes you to lean toward Samsung before we get started?
10:54:18  12          JUROR PRESTON:  No.  But if you don't mind me
10:54:20  13   being direct and quite honest, I don't know how impartial I
10:54:27  14   can be toward Samsung.  And the reason that I say that is
10:54:31  15   because I built a home 10 years ago.  I furnished it with
10:54:37  16   Samsung appliances, all high rated.  And, conveniently,
10:54:41  17   they all went out on me right after the warranty went out.
10:54:45  18   I have replaced every piece of Samsung in my house.  And to
10:54:50  19   be quite frank with you, if they sold rocks, I would not
10:54:53  20   buy one.
10:54:53  21          MR. WARD:  All right.  Well, we're -- we're very
10:54:57  22   clear on where you stand.  And I appreciate you.  You're
10:55:00  23   not in trouble at all.
10:55:02  24          And that's a perfect example of what I talked
10:55:04  25   about, right?  You could be a fair person for maybe another

10:55:08    1    jury, but it sounds like you might not be the right juror

10:55:12    2    for Samsung.  Fair enough?

10:55:14    3              JUROR PRESTON:  Right.

10:55:14    4              MR. WARD:  All right.  And that's all we want to

10:55:16    5    find out.  There are no wrong answers.  Mr. Preston is not

10:55:19    6    in trouble.  He'd be in trouble if he sat there and he

10:55:22    7    didn't disclose that information, okay?  So that's what we

10:55:25    8    want to find out.  Thank you, sir.

10:55:26    9              Going right on across to Ms. Skinner.

10:55:29   10              Ms. Skinner, I bet you knew I wanted to talk to

10:55:33   11    you.

10:55:33   12              JUROR SKINNER:  Yes.

10:55:33   13              MR. WARD:  On your questionnaire, you told us

10:55:35   14    about that your husband had filed for, I think, patents

10:55:38   15    related to remote control lights on a hog feeder?

10:55:43   16              JUROR SKINNER:  That's correct.

10:55:44   17              MR. WARD:  I own a remote control light on a hog

10:55:48   18    feeder.  I don't know, did he get a patent?

10:55:50   19              JUROR SKINNER:  He did not.

10:55:50   20              MR. WARD:  Okay.

10:55:51   21              JUROR SKINNER:  They got an attorney in Austin.

10:55:53   22    It was several years back and forth, and they ended up not

10:55:56   23    getting it, I believe, because a piece of their prototype

10:56:01   24    had a patent on it already, and they were not able to get

10:56:07   25    it.

```
10:56:08   1            MR. WARD:  Now, anything about that experience
10:56:09   2   with the Patent and Trademark Office that starts you
10:56:13   3   leaning one way or another before you hear evidence in this
10:56:15   4   case?
10:56:16   5            JUROR SKINNER:  No.  That was him and his buddies,
10:56:18   6   and I didn't really have much to do with it.
10:56:21   7            MR. WARD:  It was -- your deal, you saw the checks
10:56:23   8   going to the lawyer in Austin?
10:56:25   9            JUROR SKINNER:  Exactly.
10:56:26  10            MR. WARD:  And when it was over, you said:  Good,
10:56:29  11   it's over?
10:56:30  12            JUROR SKINNER:  Yes.
10:56:31  13            MR. WARD:  Thank you, ma'am.
10:56:33  14            Ms. Walker, right next, No. 5.  You said you work
10:56:37  15   at Republic Elite.  Is that the cabinet manufacturer?
10:56:42  16            JUROR WALKER:  Yes.
10:56:42  17            MR. WARD:  And what do you do for Republic?
10:56:45  18            JUROR WALKER:  I'm a team lead.
10:56:46  19            MR. WARD:  Okay.  All right.  Thank you.
10:56:47  20            Right next to you, Juror No. 6, Ms. Falls.  I
10:56:51  21   think you indicated you worked at Walmart in maintenance?
10:56:54  22            JUROR FALLS:  Yes, in Mt. Pleasant.
10:56:56  23            MR. WARD:  And how long did you work in
10:56:58  24   maintenance at Walmart?
10:57:00  25            JUROR FALLS:  Four years.
```

| | | |
|---|---|---|
| 10:57:01 | 1 | MR. WARD:  Four years?  All right.  Anything about |
| 10:57:03 | 2 | that that causes you to lean one way or the other in |
| 10:57:05 | 3 | this -- |
| 10:57:05 | 4 | JUROR FALLS:  Other than I didn't get along with |
| 10:57:09 | 5 | some of my management. |
| 10:57:10 | 6 | MR. WARD:  I kind of picked up on that, that maybe |
| 10:57:13 | 7 | it was not the best departure.  But anything about that, |
| 10:57:18 | 8 | not getting along with management, that causes you to lean |
| 10:57:18 | 9 | one way or the other? |
| 10:57:21 | 10 | JUROR FALLS:  No, sir. |
| 10:57:21 | 11 | MR. WARD:  All right.  Thank you, ma'am. |
| 10:57:21 | 12 | THE COURT:  Let me interrupt for just a minute.  I |
| 10:57:22 | 13 | think for everybody's benefit, I'm going to ask everybody |
| 10:57:25 | 14 | to do two things.  Continue to hold that microphone close |
| 10:57:29 | 15 | so that we can hear you clearly.  It's going to be more and |
| 10:57:32 | 16 | more important as we work toward the back of the room. |
| 10:57:35 | 17 | And, also, ladies and gentlemen, please wait for |
| 10:57:37 | 18 | the question to be finished before you start your answer. |
| 10:57:39 | 19 | All right.  Please continue, Mr. Ward. |
| 10:57:42 | 20 | MR. WARD:  All right.  Thank you, Your Honor. |
| 10:57:44 | 21 | Juror No. 11, Ms. Stewart. |
| 10:57:47 | 22 | JUROR STEWART:  Yes. |
| 10:57:47 | 23 | MR. WARD:  You indicated you've been at -- you |
| 10:57:50 | 24 | said you have been at DFW Airport working there for 34 |
| 10:57:56 | 25 | years. |

| | | |
|---|---|---|
| 10:57:56 | 1 | JUROR STEWART:  Yes. |
| 10:57:57 | 2 | MR. WARD:  Doing a little bit of everything? |
| 10:57:59 | 3 | JUROR STEWART:  Yes. |
| 10:57:59 | 4 | MR. WARD:  Are you originally from East Texas and |
| 10:58:01 | 5 | you moved to the Metroplex? |
| 10:58:03 | 6 | JUROR STEWART:  Yes. |
| 10:58:04 | 7 | MR. WARD:  And then you came home? |
| 10:58:05 | 8 | JUROR STEWART:  Yes. |
| 10:58:06 | 9 | MR. WARD:  All right.  Well, welcome back. |
| 10:58:08 | 10 | JUROR STEWART:  Thank you. |
| 10:58:09 | 11 | MR. WARD:  And how long have you been back? |
| 10:58:11 | 12 | JUROR STEWART:  13 years. |
| 10:58:12 | 13 | MR. WARD:  Okay.  And you're retired? |
| 10:58:14 | 14 | JUROR STEWART:  Something like that. |
| 10:58:16 | 15 | MR. WARD:  I'm sorry.  And I just spoke over you, |
| 10:58:18 | 16 | and I'm sorry. |
| 10:58:19 | 17 | JUROR STEWART:  Sorry.  I think it's something |
| 10:58:20 | 18 | like that.  I came -- I retired in '09. |
| 10:58:22 | 19 | MR. WARD:  Okay.  And have you been working any |
| 10:58:24 | 20 | locally since you retired? |
| 10:58:25 | 21 | JUROR STEWART:  No. |
| 10:58:26 | 22 | MR. WARD:  Enjoying the retired life? |
| 10:58:29 | 23 | JUROR STEWART:  Are you kidding?  I'm sorry. |
| 10:58:30 | 24 | MR. WARD:  No problem.  Anything that causes you |
| 10:58:33 | 25 | to lean one way or the other in this case? |

10:58:36  1          JUROR STEWART:  No.  But I have all of those

10:58:38  2  Samsung appliances, too.

10:58:39  3          MR. WARD:  Okay.  Well, and you know what, it

10:58:42  4  might be that you love Samsung so much that you can see

10:58:45  5  them doing no wrong --

10:58:45  6          JUROR STEWART:  Oh, they break, and I still buy

10:58:47  7  them.

10:58:47  8          MR. WARD:  Okay.  Fair enough.

10:58:48  9          Juror No. 14, Ms. Russell.  Ms. Russell, you

10:58:57  10  indicated that -- and I was taking notes down as fast as I

10:59:00  11  could -- an oil and gas company?

10:59:03  12          JUROR RUSSELL:  Yes, sir.

10:59:04  13          MR. WARD:  Is that locally?

10:59:05  14          JUROR RUSSELL:  Yes.

10:59:05  15          MR. WARD:  And you're an accountant for them.

10:59:08  16          JUROR RUSSELL:  I'm retired now.

10:59:10  17          MR. WARD:  You're retired.

10:59:11  18          JUROR RUSSELL:  Well, self-employed, retired part

10:59:12  19  time.

10:59:13  20          MR. WARD:  What are you doing part time?

10:59:16  21          JUROR RUSSELL:  Keeping books, doing accounting.

10:59:18  22          MR. WARD:  And what was the name of the company

10:59:20  23  where you were working before you retired?

10:59:23  24          JUROR RUSSELL:  Camterra Resources.

10:59:25  25          MR. WARD:  And where are they located?

| | | |
|---|---|---|
| 10:59:27 | 1 | JUROR RUSSELL:  In Marshall. |
| 10:59:28 | 2 | MR. WARD:  In Marshall.  Okay.  I didn't pick up |
| 10:59:29 | 3 | on that, so thank you, ma'am. |
| 10:59:31 | 4 | Juror No. 16, Dr. Caraway.  And you're one of |
| 10:59:39 | 5 | those folks who speaks pretty quick, and I was scribbling |
| 10:59:44 | 6 | down as fast as I could.  We got questionnaires from |
| 10:59:47 | 7 | everybody and some we got this morning, and I didn't get to |
| 10:59:49 | 8 | get all the notes of what y'all told us.  So I apologize if |
| 10:59:52 | 9 | you told us. |
| 10:59:53 | 10 | JUROR CARAWAY:  That's all right. |
| 10:59:54 | 11 | MR. WARD:  You said you worked as a consultant in |
| 10:59:56 | 12 | writing and there were a number of things -- |
| 10:59:57 | 13 | JUROR CARAWAY:  Publishing. |
| 10:59:58 | 14 | MR. WARD:  Writing and publishing.  And what area |
| 11:00:00 | 15 | are you writing and publishing in?  Is it multiple areas? |
| 11:00:04 | 16 | JUROR CARAWAY:  It's typically Christian |
| 11:00:06 | 17 | self-help, non-fiction. |
| 11:00:07 | 18 | MR. WARD:  Okay.  And how long you have been doing |
| 11:00:09 | 19 | that? |
| 11:00:10 | 20 | JUROR CARAWAY:  Three years. |
| 11:00:10 | 21 | MR. WARD:  Enjoying it? |
| 11:00:12 | 22 | JUROR CARAWAY:  Yes. |
| 11:00:13 | 23 | MR. WARD:  All right.  All right.  Thank you. |
| 11:00:14 | 24 | And then Juror No. 18, Mr. Johnson.  You're a |
| 11:00:20 | 25 | homebuilder, custom houses and offices now? |

| | | |
|---|---|---|
| 11:00:24 | 1 | JUROR DAVID JOHNSON:  Yes, sir. |
| 11:00:26 | 2 | MR. WARD:  And on your questionnaire, I think you |
| 11:00:28 | 3 | indicated that your uncle has a patent on some method |
| 11:00:30 | 4 | relating to nuclear waste. |
| 11:00:33 | 5 | JUROR DAVID JOHNSON:  Well, my late uncle had a |
| 11:00:35 | 6 | patent.  We don't know anything about it because it was |
| 11:00:39 | 7 | under government protection.  So we just knew it was under |
| 11:00:43 | 8 | nuclear waste of somehow refining nuclear waste into |
| 11:00:47 | 9 | something non-dangerous.  I don't know.  That's about all I |
| 11:00:51 | 10 | know.  I've never seen a patent number or anything like |
| 11:00:53 | 11 | that, and he's deceased. |
| 11:00:55 | 12 | MR. WARD:  All right.  Anything about that that |
| 11:00:56 | 13 | causes you to lean one way or another? |
| 11:00:58 | 14 | JUROR DAVID JOHNSON:  No, I was in high school |
| 11:01:00 | 15 | when I found out about that, and it was kind of a cool |
| 11:01:03 | 16 | thing my uncle did. |
| 11:01:04 | 17 | MR. WARD:  You said that you have a pilot's |
| 11:01:07 | 18 | license.  You were in aeronautical science, but you hadn't |
| 11:01:10 | 19 | used it for a long time. |
| 11:01:10 | 20 | JUROR DAVID JOHNSON:  Yeah, last time I flew is |
| 11:01:14 | 21 | when I worked for Panel Truss.  I was their company pilot |
| 11:01:18 | 22 | and designer.  That's been about 20 years ago. |
| 11:01:18 | 23 | MR. WARD:  I was going to ask you about that |
| 11:01:19 | 24 | because you and I have something in common.  You might know |
| 11:01:23 | 25 | him, Bo Powers is one of my very best friends. |

| | | |
|---|---|---|
| 11:01:25 | 1 | JUROR DAVID JOHNSON:  Yes, I know Bo Powers. |
| 11:01:27 | 2 | MR. WARD:  You know Bo Powers well, don't you? |
| 11:01:29 | 3 | JUROR DAVID JOHNSON:  I was flying one time when |
| 11:01:32 | 4 | the engine went out. |
| 11:01:33 | 5 | MR. WARD:  You were flying one time when he was |
| 11:01:35 | 6 | asleep next to you and the engine sputtered. |
| 11:01:35 | 7 | JUROR DAVID JOHNSON:  That's right. |
| 11:01:37 | 8 | MR. WARD:  And you all had to do an emergency |
| 11:01:37 | 9 | landing. |
| 11:01:37 | 10 | JUROR DAVID JOHNSON:  That's right.  We did. |
| 11:01:37 | 11 | MR. WARD:  Now, some people might not be happy |
| 11:01:39 | 12 | that you saved him, but I am. |
| 11:01:42 | 13 | JUROR DAVID JOHNSON:  We both are.  We were both |
| 11:01:44 | 14 | in the plane, so... |
| 11:01:45 | 15 | MR. WARD:  All right.  Thank you, Mr. Johnson. |
| 11:01:47 | 16 | JUROR DAVID JOHNSON:  Yes, sir. |
| 11:01:47 | 17 | MR. WARD:  All right.  Let's talk about lawsuits. |
| 11:01:55 | 18 | A number of you -- I'll say Mr. Davis, Juror |
| 11:02:00 | 19 | No. 25, you don't need to answer this question.  You were a |
| 11:02:03 | 20 | Defendant in a lawsuit.  If you were, just raise your hand. |
| 11:02:06 | 21 | All right. |
| 11:02:07 | 22 | Is there anybody else on the panel that was |
| 11:02:09 | 23 | ever -- has ever been or currently a Defendant in a |
| 11:02:11 | 24 | lawsuit? |
| 11:02:14 | 25 | Anybody?  Let's see, Ms. Stewart, looked like you |

| | | |
|---|---|---|
| 11:02:20 | 1 | were -- give me the sem -- eye.  Let's -- Juror No. 11. |
| 11:02:24 | 2 | Have you been a Defendant in a lawsuit? |
| 11:02:27 | 3 | JUROR STEWART:  It depends.  A department store |
| 11:02:31 | 4 | sued me for an unpaid bill that wasn't mine. |
| 11:02:34 | 5 | MR. WARD:  Okay.  Anything about that that affects |
| 11:02:38 | 6 | your ability to start out equal in this case? |
| 11:02:40 | 7 | JUROR STEWART:  No. |
| 11:02:41 | 8 | MR. WARD:  Okay.  Thank you. |
| 11:02:42 | 9 | Anybody else? |
| 11:02:46 | 10 | Anybody whose employer has been a Defendant in a |
| 11:02:50 | 11 | lawsuit where you were called upon to offer evidence or |
| 11:02:53 | 12 | give a deposition, anything like that? |
| 11:02:56 | 13 | Yes, sir, Mr. Smigiel, Juror No. 17? |
| 11:03:02 | 14 | JUROR SMIGIEL:  I'm a supervisor over at -- where |
| 11:03:04 | 15 | I work, and I had a couple of unemployment cases that I had |
| 11:03:12 | 16 | worked on. |
| 11:03:12 | 17 | MR. WARD:  That you had to testify for the |
| 11:03:13 | 18 | company? |
| 11:03:14 | 19 | JUROR SMIGIEL:  Yes, sir. |
| 11:03:15 | 20 | MR. WARD:  Anything about that experience that |
| 11:03:17 | 21 | causes you to lean one way or the other in this patent |
| 11:03:20 | 22 | case? |
| 11:03:21 | 23 | JUROR SMIGIEL:  No, no. |
| 11:03:21 | 24 | MR. WARD:  All right.  We start out -- both sides |
| 11:03:23 | 25 | start out equal here. |

| | | |
|---|---|---|
| 11:03:24 | 1 | JUROR SMIGIEL:  Yes. |
| 11:03:25 | 2 | MR. WARD:  All right.  Thank you, sir. |
| 11:03:27 | 3 | Now, a number of you -- we asked a question on the |
| 11:03:35 | 4 | questionnaire about what do you think about lawsuits.  And |
| 11:03:37 | 5 | there were a number of you that said:  I feel like there's |
| 11:03:40 | 6 | too many lawsuits. |
| 11:03:40 | 7 | I'm going to go through the folks that I know.  If |
| 11:03:42 | 8 | I skip you, I'm going to go from left to right, go back |
| 11:03:45 | 9 | about four rows.  If I skip you, please -- please tell me. |
| 11:03:48 | 10 | Let's start with Ms. Hirzel, Juror No. 2. |
| 11:03:54 | 11 | I think you indicated on your questionnaire that |
| 11:03:57 | 12 | you thought there were too many lawsuits. |
| 11:03:59 | 13 | JUROR HIRZEL:  I do. |
| 11:04:00 | 14 | MR. WARD:  Okay.  And tell me where -- why you |
| 11:04:03 | 15 | feel that way. |
| 11:04:04 | 16 | JUROR HIRZEL:  The reason I answered it that way |
| 11:04:06 | 17 | is because working in retail -- I've worked in retail a |
| 11:04:10 | 18 | total of 41 years, 36 with Walmart.  And, you know, it's -- |
| 11:04:14 | 19 | when you've been with a company that long and the money |
| 11:04:19 | 20 | that that company has made, of course, everybody wants a |
| 11:04:22 | 21 | little bit of it.  So, you know, I've seen customers where |
| 11:04:26 | 22 | something would just fall on their foot, well, I'm going to |
| 11:04:29 | 23 | sue, you know.  And going there every day, you got tired of |
| 11:04:33 | 24 | hearing people say that. |
| 11:04:34 | 25 | MR. WARD:  Slip and falls? |

| | | |
|---|---|---|
| 11:04:36 | 1 | JUROR HIRZEL:  Yes. |
| 11:04:36 | 2 | MR. WARD:  Trip and falls? |
| 11:04:38 | 3 | JUROR HIRZEL:  And my husband worked with a |
| 11:04:40 | 4 | gentleman that sued Walmart.  A can fell on his foot.  You |
| 11:04:43 | 5 | know, and I was just like, really?  They happen all the |
| 11:04:47 | 6 | time, you know.  And just like with grapes on the floor, |
| 11:04:50 | 7 | you've got to, you know, be mindful and watch -- watch |
| 11:04:53 | 8 | where you're walking when you're in the produce department. |
| 11:04:56 | 9 | And, you know, if you see something, pick it up.  But a lot |
| 11:04:58 | 10 | of people look at it like, what am I going to get out of |
| 11:05:01 | 11 | this? |
| 11:05:01 | 12 | MR. WARD:  And I understand that.  And that's why |
| 11:05:03 | 13 | I want to ask you, because I know you've been at Walmart, |
| 11:05:05 | 14 | and you've seen a lot, and folks do go up to Walmart. |
| 11:05:09 | 15 | JUROR HIRZEL:  Right. |
| 11:05:10 | 16 | MR. WARD:  And here's my concern for Solas.  Solas |
| 11:05:13 | 17 | obviously had to bring this lawsuit.  They say Samsung is |
| 11:05:16 | 18 | trespassing.  Do you start out leaning in favor of Samsung |
| 11:05:19 | 19 | because you relate to Walmart, having been a Defendant, |
| 11:05:23 | 20 | having seen and have to defend themselves, or do we start |
| 11:05:27 | 21 | out equal? |
| 11:05:28 | 22 | JUROR HIRZEL:  I would say equal. |
| 11:05:29 | 23 | MR. WARD:  Okay. |
| 11:05:30 | 24 | JUROR HIRZEL:  Because, you know, I look at it |
| 11:05:32 | 25 | like really two different things -- |

11:05:33  1           MR. WARD:  Okay.

11:05:34  2           JUROR HIRZEL:  -- is how I look at it.

11:05:35  3           MR. WARD:  And I agree with you, but some folks

11:05:38  4  say, you know what, I've seen too much, and I can't do it.

11:05:43  5  But I appreciate you saying we're going to start out on the

11:05:46  6  same level playing field.

11:05:48  7           JUROR HIRZEL:  Exactly.

11:05:49  8           MR. WARD:  Right next to you, Mr. Preston, I saw

11:05:52  9  you nodding your head while she was talking.  Do you

11:05:54 10  feel some -- do you have some of the same opinions that

11:05:57 11  Ms. Hirzel has about lawsuits?

11:06:00 12           JUROR PRESTON:  I do.  We're not allowed to have

11:06:03 13  accidents in this country anymore.  Someone is always to

11:06:07 14  blame.

11:06:07 15           MR. WARD:  In this case, well, you told me about

11:06:10 16  Samsung.  We might not start out equal here, so let me go

11:06:14 17  on.

11:06:14 18           Ms. Skinner, Juror No. 4, I think you said on your

11:06:18 19  questionnaire that there were too many lawsuits.  You heard

11:06:20 20  my questions to Ms. Hirzel.  Do you share some of her

11:06:26 21  opinions?

11:06:27 22           JUROR SKINNER:  Exactly.  I just think -- and like

11:06:31 23  Mr. Preston said, you're not allowed to have an accident or

11:06:34 24  anything anymore.  Somebody's always at fault for something

11:06:38 25  that happened to you, and they're going to -- somebody is

| | | |
|---|---|---|
| 11:06:41 | 1 | going to pay for it. |
| 11:06:42 | 2 | MR. WARD:  All right.  So that's my question.  Do |
| 11:06:44 | 3 | you feel that way about Solas?  Because Solas is a |
| 11:06:46 | 4 | Plaintiff in this case, they brought this lawsuit saying |
| 11:06:49 | 5 | Samsung is trespassing.  Do you start out leaning in favor |
| 11:06:53 | 6 | of Samsung before you've heard any evidence? |
| 11:06:55 | 7 | JUROR SKINNER:  No. |
| 11:06:55 | 8 | MR. WARD:  We start out on a level playing field? |
| 11:06:59 | 9 | JUROR SKINNER:  Absolutely. |
| 11:06:59 | 10 | MR. WARD:  All right.  Ms. Falls, you worked at |
| 11:07:02 | 11 | Walmart, too.  So I'm going to ask you the same question. |
| 11:07:06 | 12 | You probably saw a number of lawsuits or heard about |
| 11:07:09 | 13 | lawsuits.  Do we start -- |
| 11:07:11 | 14 | JUROR FALLS:  Yes. |
| 11:07:12 | 15 | MR. WARD:  Is that correct? |
| 11:07:13 | 16 | JUROR FALLS:  Yes. |
| 11:07:13 | 17 | MR. WARD:  Do we start out equal, or do you start |
| 11:07:16 | 18 | out leaning in favor of the Defendant because of what |
| 11:07:18 | 19 | happened while you were at Walmart? |
| 11:07:20 | 20 | JUROR FALLS:  Definitely equal. |
| 11:07:21 | 21 | MR. WARD:  All right.  Thank you, ma'am. |
| 11:07:26 | 22 | Ms. Hux, Juror No. 9, same question to you.  I |
| 11:07:32 | 23 | think you indicated there are too many lawsuits. |
| 11:07:33 | 24 | JUROR HUX:  I agree with what everyone else said. |
| 11:07:35 | 25 | And I worked at a bank for 33 years, and we just have to do |

| | | |
|---|---|---|
| 11:07:39 | 1 | so much more documentation of everything than what we used |
| 11:07:42 | 2 | to because of the other financial institutions that have |
| 11:07:47 | 3 | been sued. |
| 11:07:47 | 4 | MR. WARD:  All right.  You've heard my questions. |
| 11:07:48 | 5 | Do we start out behind Samsung before you've heard any |
| 11:07:52 | 6 | evidence, or are we going to get to start out equal? |
| 11:07:55 | 7 | JUROR HUX:  Absolutely equal. |
| 11:07:57 | 8 | MR. WARD:  All right.  Thank you, ma'am. |
| 11:07:59 | 9 | And I don't know of anyone else that turned in a |
| 11:08:04 | 10 | jury questionnaire on the second row that indicated there |
| 11:08:08 | 11 | are too many lawsuits.  If you did, would you raise your |
| 11:08:11 | 12 | hand? |
| 11:08:11 | 13 | All right.  Then I'll go to the third row. |
| 11:08:14 | 14 | Dr. Caraway, I think you had the same answer, that |
| 11:08:16 | 15 | you felt like there were too many lawsuits? |
| 11:08:19 | 16 | JUROR CARAWAY:  I do, but it's based on the |
| 11:08:22 | 17 | premise that it's a slip and fall. |
| 11:08:25 | 18 | MR. WARD:  All right.  This is obviously a |
| 11:08:26 | 19 | property dispute. |
| 11:08:28 | 20 | JUROR CARAWAY:  Right. |
| 11:08:28 | 21 | MR. WARD:  Do we start out equal or we start |
| 11:08:31 | 22 | out -- |
| 11:08:31 | 23 | JUROR CARAWAY:  An intellectual property situation |
| 11:08:33 | 24 | is completely different. |
| 11:08:33 | 25 | MR. WARD:  All right.  Thank you, ma'am. |

| | | |
|---|---|---|
| 11:08:34 | 1 | Let me shift gears a little bit and talk to you |
| 11:08:48 | 2 | about Solas. |
| 11:08:48 | 3 | Solas is in the business -- and Mr. Padian, he'll |
| 11:08:52 | 4 | tell you about this.  He's going to be our first witness. |
| 11:08:55 | 5 | He'll tell you about his practice, his business, and how he |
| 11:08:59 | 6 | got into the business of purchasing patents, licensing |
| 11:09:01 | 7 | those patents, and licensing -- licensing those patents, |
| 11:09:05 | 8 | includes sometimes filing lawsuits and taking folks to |
| 11:09:11 | 9 | Court, like Samsung. |
| 11:09:12 | 10 | So purchasing, licensing, and enforcing.  You want |
| 11:09:17 | 11 | to remember three things about Solas, that's what they do. |
| 11:09:21 | 12 | Here's my question:  Some of you might say, |
| 11:09:24 | 13 | Mr. Ward, that might be perfectly legal, and what |
| 11:09:27 | 14 | Mr. Padian has chosen to do, but just based on what you've |
| 11:09:31 | 15 | told me, I'm leaning away from Solas.  I'm leaning in favor |
| 11:09:35 | 16 | of Samsung. |
| 11:09:35 | 17 | Anybody on the first row have that feeling?  If |
| 11:09:39 | 18 | you do, I want you to raise your hand.  No wrong answers. |
| 11:09:43 | 19 | Just like Mr. Preston told us about his feelings about |
| 11:09:47 | 20 | Samsung, this is your chance to tell me about your feelings |
| 11:09:49 | 21 | about Solas if you have any. |
| 11:09:50 | 22 | Second row?  And let's start with |
| 11:09:55 | 23 | Ms. Titterington, all the way, Carpenter, Hux, Anderson, |
| 11:09:57 | 24 | Stewart, anybody feel that way? |
| 11:09:59 | 25 | All right.  Third row, Ms. Russell's row, anybody |

| | | |
|---|---|---|
| 11:10:05 | 1 | feel that way? |
| 11:10:06 | 2 | Does anybody on the panel work for a business that |
| 11:10:12 | 3 | has been sued for patent infringement? |
| 11:10:23 | 4 | Dr. Caraway, you indicated -- No. 16, you |
| 11:10:26 | 5 | indicated that you owned a number of Samsung products. |
| 11:10:29 | 6 | They make some good products, and they make some that are |
| 11:10:32 | 7 | not so good.  But have you had a good experience with their |
| 11:10:36 | 8 | products? |
| 11:10:39 | 9 | JUROR CARAWAY:  I have had a good experience with |
| 11:10:42 | 10 | Samsung products. |
| 11:10:42 | 11 | MR. WARD:  All right.  And so my question to you |
| 11:10:44 | 12 | is -- I know you have a number of Samsung products -- do |
| 11:10:47 | 13 | you start out leaning in favor of Samsung before you hear |
| 11:10:50 | 14 | any evidence because you like their products? |
| 11:10:52 | 15 | JUROR CARAWAY:  No, no. |
| 11:10:53 | 16 | MR. WARD:  All right.  I know a number of you have |
| 11:10:56 | 17 | Samsung products.  Does anyone feel differently than |
| 11:10:59 | 18 | Dr. Caraway and that you start out leaning in favor of |
| 11:11:01 | 19 | Samsung because you have their products and you like their |
| 11:11:01 | 20 | products? |
| 11:11:02 | 21 | THE COURT:  You have five minutes remaining, |
| 11:11:04 | 22 | Mr. Ward. |
| 11:11:05 | 23 | MR. WARD:  Anybody on the panel own a Samsung -- |
| 11:11:11 | 24 | Samsung stock?  Anybody have stock in Samsung? |
| 11:11:28 | 25 | The evidence in this case will be that Solas paid |

| | | |
|---|---|---|
| 11:11:32 | 1 | under $2 million for these patents.  I told you they seek |
| 11:11:35 | 2 | to recover $88 million from just Samsung.  And the |
| 11:11:40 | 3 | patents -- there were a number of them.  They were over 700 |
| 11:11:44 | 4 | that they purchased.  This lawsuit is about three of them. |
| 11:11:47 | 5 | Without hearing any other evidence, is there |
| 11:11:48 | 6 | anyone sitting there going, you know what, if you only paid |
| 11:11:52 | 7 | less than $2 million for these patents, a family of |
| 11:11:56 | 8 | patents, I could never consider an award of more than you |
| 11:12:00 | 9 | paid for them, I could never consider an award of tens of |
| 11:12:04 | 10 | millions of dollars? |
| 11:12:05 | 11 | Anyone in the first three rows that feels that |
| 11:12:09 | 12 | way? |
| 11:12:09 | 13 | At the end of this case, His Honor is going to |
| 11:12:15 | 14 | instruct you on damages, and I want to find out if you can |
| 11:12:17 | 15 | follow this law relating to damages if you answer that |
| 11:12:20 | 16 | question. |
| 11:12:20 | 17 | Upon a finding of infringement, the Court, could |
| 11:12:25 | 18 | be the jury rendering a verdict, shall award the claimant |
| 11:12:29 | 19 | damages adequate to compensate for the infringement, but in |
| 11:12:32 | 20 | no event less than a reasonable royalty for the use made of |
| 11:12:35 | 21 | the invention -- for the use made of the invention. |
| 11:12:41 | 22 | Is there anybody on the panel who feels like they |
| 11:12:43 | 23 | can't follow that law? |
| 11:12:45 | 24 | Ms. Russell, let me ask you.  You worked in oil |
| 11:12:49 | 25 | and gas for a number of years.  Let me get -- they're going |

| | | |
|---|---|---|
| 11:12:52 | 1 | to bring you a microphone.  Juror No. 14. |
| 11:12:55 | 2 | Did you do a lot of accounting for mineral |
| 11:13:00 | 3 | interest holders where you have to keep track of what |
| 11:13:03 | 4 | interests they had and what property? |
| 11:13:04 | 5 | JUROR RUSSELL:  Yes. |
| 11:13:05 | 6 | MR. WARD:  How are -- how are royalties paid on |
| 11:13:11 | 7 | oil?  Is it on -- per barrel? |
| 11:13:14 | 8 | JUROR RUSSELL:  On the gross amount of sales, yes. |
| 11:13:17 | 9 | MR. WARD:  Okay.  And is there -- however many |
| 11:13:22 | 10 | barrels are produced, if it's a million, if it's 10 |
| 11:13:25 | 11 | million, there's a percent, depending upon what the |
| 11:13:28 | 12 | contract says, that's applied to each one of those barrels |
| 11:13:30 | 13 | of oil, and the landowner gets their percentage, correct? |
| 11:13:34 | 14 | JUROR RUSSELL:  Yes. |
| 11:13:34 | 15 | MR. WARD:  And how long were you in the oil and |
| 11:13:37 | 16 | gas business? |
| 11:13:38 | 17 | JUROR RUSSELL:  30 years. |
| 11:13:39 | 18 | MR. WARD:  All right.  In your 30 years in the oil |
| 11:13:41 | 19 | and gas business, did you ever see either your employer or |
| 11:13:47 | 20 | another oil and gas company say, well, we understand we owe |
| 11:13:52 | 21 | you for maybe a million barrels of oil, but we're only |
| 11:13:55 | 22 | going to pay you for how much you spent to purchase your |
| 11:13:58 | 23 | mineral acres?  Did you ever see that happen? |
| 11:14:01 | 24 | JUROR RUSSELL:  No. |
| 11:14:01 | 25 | MR. WARD:  The oil and gas company had to pay for |

| | | |
|---|---|---|
| 11:14:06 | 1 | how much oil they used, correct? |
| 11:14:09 | 2 | JUROR RUSSELL:  Yes. |
| 11:14:10 | 3 | MR. WARD:  Thank you. |
| 11:14:11 | 4 | I've had to flip through my notes.  Y'all gave us |
| 11:14:18 | 5 | a lot of information.  I'd like to sit up here and I'd talk |
| 11:14:21 | 6 | to every one of you, but I don't have time to do that. |
| 11:14:23 | 7 | You're going to see throughout this trial, His Honor is |
| 11:14:25 | 8 | going to keep us on the clock, and that's why you all get |
| 11:14:28 | 9 | out of here.  We've done a lot of work.  We do a lot of |
| 11:14:32 | 10 | work every night to run this trial smoothly. |
| 11:14:35 | 11 | So here's my last question to you:  Is there |
| 11:14:37 | 12 | anyone sitting there right now that says, if Mr. Ward had |
| 11:14:40 | 13 | only asked me this question, he's hopped around a lot, if |
| 11:14:44 | 14 | he had only asked me one of the questions he asked somebody |
| 11:14:48 | 15 | else or if he asked the right question, he would know that |
| 11:14:53 | 16 | I'm leaning in favor of Samsung before we get started?  Is |
| 11:14:56 | 17 | there anyone sitting there right now -- and if you want to |
| 11:14:58 | 18 | talk privately, we can do it privately, or we can talk |
| 11:14:59 | 19 | right now -- but is there anyone sitting there right now |
| 11:15:01 | 20 | who feels that way?  If you do, just raise your hand. |
| 11:15:07 | 21 | All right.  No hands raised. |
| 11:15:09 | 22 | For those eight of you that are selected for this |
| 11:15:12 | 23 | jury, we look forward to presenting this case.  We waited |
| 11:15:15 | 24 | awhile to do it.  We're looking forward to presenting our |
| 11:15:19 | 25 | evidence, and I thank you for your time. |

```
11:15:28  1        THE COURT:  Ms. Smith, you may address the panel
11:15:30  2   on behalf of the Defendants.
11:15:34  3        Would you like a warning on your time?
11:15:37  4        MS. SMITH:  Your Honor, I'd like five minutes,
11:15:40  5   please.
11:15:40  6        THE COURT:  All right.  I will warn you when you
11:15:41  7   have five minutes remaining.  You may proceed when you're
11:15:44  8   ready.
11:15:44  9        MS. SMITH:  Thank you, Your Honor.
11:15:45  10       Good morning, everybody.  In the way of a
11:15:59  11  reintroduction, my name is Melissa Smith.  And I, along
11:16:03  12  with my co-counsel and frankly, my friends and most
11:16:08  13  importantly, my -- my mentor, as well, I'm joined by
11:16:12  14  Mr. Bob Haslam, and we represent Samsung.
11:16:14  15       I'm going to start where Mr. Ward left off, and
11:16:18  16  that's doing the most important thing I'll do all day, and
11:16:21  17  that's to thank you.  We've been preparing, as Mr. Ward
11:16:25  18  said, for a long time for this case.  And I guess about a
11:16:30  19  week and a half ago, we were preparing in the snow.  And
11:16:33  20  then last night, we were getting ready to -- to finally get
11:16:37  21  to the courthouse, and we had this awesome power outage and
11:16:41  22  rainstorm.
11:16:42  23       So on behalf of Samsung, I can tell you, I know
11:16:45  24  it's not easy to get here.  I know it means time away from
11:16:49  25  your work, from your friends, and from your family, but on
```

11:16:52  1   behalf of Samsung, we appreciate you showing up.  So thank

11:16:55  2   you.

11:16:55  3          Now, I'm going to answer the same questions as

11:17:01  4   Judge answered about himself and Mr. Ward answered, as

11:17:04  5   well.  I went to the University of Texas at Austin

11:17:07  6   undergrad.

11:17:08  7          So, Ms. Titterington, you don't know me from

11:17:11  8   there, but I share that with you.

11:17:14  9          And as well as I share my Baylor Law School degree

11:17:17  10  with the Court.  I also went to Baylor Law School.

11:17:21  11         That was about 24 years ago.  About a week after I

11:17:25  12  graduated from Baylor, I moved down the road to Jefferson,

11:17:30  13  Texas.  I started practicing here on the Marshall

11:17:33  14  Courthouse Square.

11:17:33  15         My now partner Gil Gillam, who Mr. Ward mentioned,

11:17:37  16  was my first boss.  And after about eight years, he made me

11:17:41  17  his partner.  Some of you probably drove by our old yellow

11:17:41  18  house.  It sits right behind the courthouse.  It's called

11:17:44  19  Gillam & Smith.  So we've been together for each of my 24

11:17:47  20  years of practice.

11:17:47  21         Personally, I am married.  We have two children.

11:17:50  22  We have a nine-year-old boy, and a seven-year-old little

11:17:54  23  girl.  So when I'm not working hard at the law, I spend

11:17:59  24  just about every minute I can with those two.

11:18:01  25         Now, it's an easy task -- it's an easy task to

11:18:07  1  introduce the Samsung family of companies.  I mean, they

11:18:09  2  got started back in the tech business doing computers when

11:18:12  3  none of us were thinking about computers.

11:18:15  4       And the first cell phone that Samsung actually

11:18:18  5  released was back in 1988.  And I know I for one didn't

11:18:21  6  have a cell phone back in 1988.

11:18:24  7       Today, you know, Samsung's releasing phones every

11:18:27  8  year, or even more often.  And across the three companies

11:18:31  9  that if you're lucky enough to serve on this jury you'll

11:18:35  10 hear about, Samsung employs tens of thousands of inventors.

11:18:40  11      Now, all day every day Samsung is inventing, it's

11:18:44  12 making products.  It's figuring out what customers want,

11:18:48  13 not just right now, but it's figuring out what customers

11:18:50  14 want next.  And so inventing is what Samsung does.

11:18:55  15      The employees that actually are behind the

11:18:58  16 inventions in this case are going to come a long distance,

11:19:02  17 and they're the employees that, you know, manufactured and

11:19:06  18 came up with the idea for the specific accused devices that

11:19:10  19 we're here to talk about.  And they're going to tell you

11:19:12  20 exactly how those screens came to be.

11:19:15  21      Now, as Mr. Ward did, I'm going to tell you, real

11:19:23  22 briefly, what you're going to hear on the Samsung side of

11:19:27  23 this case and something I already touched on first.

11:19:30  24      Samsung uses new and cutting-edge technology to

11:19:34  25 keep up with how quickly technology is advancing and to

11:19:39   1   remain competitive.

11:19:41   2        Two, what you're going to hear is Samsung does
11:19:45   3   things differently, and they do things differently to be
11:19:49   4   successful.

11:19:51   5        And, most importantly, number three, and
11:19:54   6   Judge Gilstrap hinted at this when he was visiting with
11:19:57   7   you, Samsung's position is that it does not use -- it
11:20:01   8   absolutely does not use the patents that these folks bought
11:20:05   9   and are now using to sue us.

11:20:08  10        Now, Mr. Ward introduced himself and his team.  He
11:20:18  11   practices over in Longview, Texas, at a firm called Ward
11:20:23  12   Smith & Hill.  He practices with his dad, also by the same
11:20:28  13   name, John Ward.  A pretty long list of lawyers over there.
11:20:32  14   Let's see, Claire Henry, Andrea Fair, Chad Everingham, Wes
11:20:38  15   Hill, Brett Miller, and Bruce Smith.

11:20:41  16        Is anybody familiar with any of the lawyers over
11:20:43  17   at Ward Smith & Hill in Longview?

11:20:46  18        I don't see any hands.

11:20:48  19        He's joined by some other lawyers who he
11:20:51  20   introduced from a law firm called Russ August & Kabat, and
11:20:56  21   that's a law firm out of Los Angeles, California.  Does
11:20:59  22   anyone -- I don't think you'll be familiar with that firm,
11:21:03  23   but is anyone familiar with the Russ August & Kabat firm
11:21:05  24   out of Los Angeles, California?

11:21:08  25        I don't see any hands.

```
11:21:09   1          Now, as Mr. Ward kind of hinted at, Solas doesn't
11:21:13   2   make any products, they don't manufacture anything.  So I
11:21:16   3   don't think you would have heard about them.  But has
11:21:19   4   anybody, before coming to the courthouse today, heard of a
11:21:21   5   company called Solas?  I see a lot of heads nodding no.
11:21:26   6   Thank you.
11:21:26   7          Solas -- and the patents that Mr. Ward held up,
11:21:31   8   again, those aren't -- those aren't Solas's inventions.
11:21:34   9   They purchased them from two companies, the first company
11:21:37  10   being Casio.  Has anyone heard of a company called Casio, a
11:21:42  11   tech company?
11:21:42  12          Okay.  Ms. Titterington, Juror No. 7.
11:21:51  13          JUROR TITTERINGTON:  I think they made my
11:21:53  14   calculator for math class a long time ago.
11:21:56  15          MS. SMITH:  Okay.  And you say a long time ago.
11:21:58  16   That's pretty old technology, you'd say?
11:22:01  17          JUROR TITTERINGTON:  My dad was military.  We were
11:22:05  18   stationed overseas, so England was about 50 years behind.
11:22:08  19          MS. SMITH:  All right.  Have you seen any new
11:22:10  20   late-breaking technology come from Casio?
11:22:14  21          JUROR TITTERINGTON:  No, but I watch Stranger
11:22:17  22   Things, and I think they had a Casio calculator on there.
11:22:20  23          MS. SMITH:  Okay.  Thank you, ma'am.  Thank you,
11:22:22  24   ma'am.
11:22:22  25          I believe, as well, Juror No. 21, Mr. Wentzell, do
```

11:22:30  1  you have some experience with Casio?

11:22:31  2          JUROR WENTZELL:  Just calculator, watches, things

11:22:34  3  like that, years ago.

11:22:35  4          MS. SMITH:  Years ago.  So that Casio watch you

11:22:37  5  have, did it look anything like new technology, like an

11:22:40  6  Apple Watch or Samsung watch or anything like that?

11:22:44  7          JUROR WENTZELL:  No, no.  We're talking 40 years

11:22:44  8  ago.

11:22:45  9          MS. SMITH:  We're talking old technology.

11:22:48  10         JUROR WENTZELL:  Yeah.

11:22:49  11         MS. SMITH:  Thank you, sir.

11:22:50  12         Was there someone else, Juror No. 16, I -- I

11:22:55  13  believe?  Dr. Caraway, some experience with Casio?

11:22:59  14         JUROR CARAWAY:  Calculators.

11:23:00  15         MS. SMITH:  Okay.  Recent -- recent experience --

11:23:02  16         JUROR CARAWAY:  Do I have to say how long ago that

11:23:02  17  was?

11:23:05  18         MS. SMITH:  I'm not going to make you.

11:23:05  19         JUROR CARAWAY:  Thank you.

11:23:05  20         MS. SMITH:  You're welcome.

11:23:06  21         JUROR CARAWAY:  It was long, long ago.

11:23:08  22         MS. SMITH:  Understood, Doctor.  Understood.

11:23:11  23  Thank you.

11:23:11  24         Atmel -- Atmel is another company where Plaintiff

11:23:16  25  bought some of their patents.  Has anyone heard of a

11:23:19    1  company called Atmel?

11:23:20    2          I don't see any hands.

11:23:22    3          Now, I want to talk to Juror No. 11.  It's going

11:23:34    4  to be an easy question.

11:23:35    5          Now, you told us that you had been on kind of the

11:23:40    6  wrong side of -- or involved in a disagreement about an

11:23:44    7  unpaid bill; is that correct?

11:23:47    8          JUROR STEWART:  Yes.

11:23:47    9          MS. SMITH:  And you said that you've been accused

11:23:49   10  and wrongly so; is that correct?

11:23:52   11          JUROR STEWART:  Yes.

11:23:53   12          MS. SMITH:  How did that make you feel?

11:23:55   13          JUROR STEWART:  Bad.

11:23:56   14          MS. SMITH:  All right.  And did you feel -- did

11:23:58   15  you tell them:  I didn't do this?

11:24:00   16          JUROR STEWART:  Yes, I took them to court.

11:24:01   17          MS. SMITH:  Okay.  Okay.  And how did that turn

11:24:04   18  out for you?

11:24:04   19          JUROR STEWART:  Great.  I didn't pay the bill.

11:24:06   20          MS. SMITH:  So you understand -- you understand

11:24:10   21  that Samsung is here also not wanting to pay the bill.

11:24:16   22  Samsung is here because we believe in our heart of hearts

11:24:19   23  that we've been wrongly accused of using the patents that

11:24:23   24  these folks had purchased and sued us with.

11:24:25   25          JUROR STEWART:  Yeah, but I was the little company

11:24:27  1  and they were the big company.

11:24:30  2          MS. SMITH:  Let's talk about that.  So

11:24:31  3  Judge Gilstrap showed you Lady Justice, and he said,

11:24:35  4  everyone starts out on even grounds.  Do you think Samsung

11:24:38  5  is going to start out on even ground in this case?

11:24:41  6          JUROR STEWART:  They can start on even ground, but

11:24:44  7  I wasn't on even ground.

11:24:46  8          MS. SMITH:  Okay.

11:24:47  9          JUROR STEWART:  That was a big company that gave

11:24:50  10  advantage to someone, that gave them the wrong information,

11:24:53  11  then accused me, the little person that was not involved in

11:24:57  12  it at all, of something that I didn't do.

11:25:01  13          MS. SMITH:  Well, in this case --

11:25:04  14          JUROR STEWART:  See, that's different.

11:25:05  15          MS. SMITH:  It is a little bit different.  But in

11:25:07  16  this case, what I am looking for is a commitment from you

11:25:13  17  all that no one's going to hold it against Samsung, big or

11:25:18  18  small --

11:25:19  19          JUROR STEWART:  Right.

11:25:19  20          MS. SMITH:  -- for coming in here and defending

11:25:22  21  ourselves for something that we've been wrongly accused of.

11:25:27  22          JUROR STEWART:  That is true.

11:25:28  23          MS. SMITH:  We can have that agreement -- that

11:25:30  24  commitment?

11:25:33  25          JUROR STEWART:  Yes.

11:25:33   1          MS. SMITH:  Thank you, ma'am.

11:25:33   2          Is there anybody who shares a view with Juror

11:25:36   3   No. 11 about the size of the company?

11:25:37   4          So let's go down the road a little bit on that.

11:25:40   5   I'm not here to tell you that Samsung isn't a big company.

11:25:44   6   We're embracing that.  All those inventors I talked about,

11:25:47   7   that's what comes with a big company, lots of innovation,

11:25:53   8   lots of invention.

11:25:54   9          So Samsung is a big company.  And I don't know

11:25:56  10   what we're going to hear about Solas.  They may have an

11:25:59  11   employee.  They may have no employees.  I don't know what

11:26:02  12   the evidence is going to show.  But the companies are not

11:26:04  13   the same size.

11:26:05  14          So there was a question on your questionnaire -- I

11:26:08  15   think it was Question 19, and I appreciate you guys

11:26:11  16   answering those questionnaires.

11:26:13  17          Mr. Sellers, let's -- I want to talk to you a

11:26:16  18   little bit.

11:26:18  19          Juror No. 1, I apologize.

11:26:20  20          Mr. Sellers, I read your questionnaire, and

11:26:26  21   representing Samsung, the bigger company, I got a little

11:26:29  22   bit worried because you said that you strongly kind of

11:26:32  23   agreed with the fact that an individual or a smaller

11:26:35  24   company doesn't have a chance against a bigger company.

11:26:38  25          JUROR SELLERS:  It's been my experience that if

11:26:40  1   you don't have the money and the big money, you're going to

11:26:43  2   lose.  That's the way I've always seen and the way I feel

11:26:47  3   about it.

11:26:47  4        MS. SMITH:  So -- so knowing -- and that's been --

11:26:49  5   you said that's how you've always felt about it -- it's a

11:26:53  6   long-held belief?

11:26:54  7        JUROR SELLERS:  Yes, ma'am.

11:26:55  8        MS. SMITH:  So knowing how you feel, do you think

11:26:58  9   it might be a better fit for a jury where the companies at

11:27:02  10  war with each other are about the same size?

11:27:05  11       JUROR SELLERS:  Yes, definitely.

11:27:06  12       MS. SMITH:  And you think, Mr. Sellers, that

11:27:10  13  Samsung is starting out kind of behind the start line, not

11:27:13  14  in the same place --

11:27:13  15       JUROR SELLERS:  Probably, yes.

11:27:14  16       MS. SMITH:  I appreciate your honesty,

11:27:16  17  Mr. Sellers.  Thank you.

11:27:18  18       Is there anyone else on the first row -- I

11:27:20  19  probably don't need to talk to you, Juror No. 3, but --

11:27:24  20  respectfully, that feels like Mr. Sellers, that, you know,

11:27:27  21  just by virtue of Samsung being a big company, we start out

11:27:31  22  with an advantage or the Plaintiff starts out, you know,

11:27:33  23  with a disadvantage in this case?

11:27:36  24       Anybody agree with Mr. Sellers on

11:27:40  25  Ms. Titterington's row, the second row, all the way across?

11:27:42  1          Anyone on the third row feel that way?

11:27:45  2          Thank you.

11:27:52  3          Now, Mr. Wentzell, you have seven kids; is that

11:27:57  4   correct?

11:27:59  5          JUROR WENTZELL:  Yes, ma'am.

11:28:00  6          MS. SMITH:  This is a perfect, perfect question

11:28:02  7   for you, then.  I think you had more than anyone else.

11:28:05  8          You know, when your kids are growing up -- how old

11:28:07  9   are they now --

11:28:09 10          JUROR BUTLER:  They're all grown now.  My youngest

11:28:11 11   is 19, and they go on up to 40-something.

11:28:13 12          MS. SMITH:  Now, when your kids were growing up, I

11:28:16 13   assume they were like mine, they get in fights sometimes?

11:28:21 14          JUROR WENTZELL:  Sure.  That's children, kids.

11:28:23 15          MS. SMITH:  Right.  And there's something

11:28:25 16   instinctive, whether it's children or whether it's adults,

11:28:28 17   that we want to get the first word in.  Would you agree

11:28:32 18   with that?

11:28:32 19          JUROR WENTZELL:  Repeat that.

11:28:34 20          MS. SMITH:  If there's a fight amongst your kids,

11:28:37 21   they kind of run to you to try to get the first word.

11:28:41 22          JUROR WENTZELL:  Sure.

11:28:42 23          MS. SMITH:  And as a good daddy to seven kids, did

11:28:46 24   you always, you know, hear the story of the first one that

11:28:48 25   reaches you first and tells their side of the story, and

11:28:51  1  did you make a decision?  Or did you wait to hear the other

11:28:54  2  side of the story from the other kiddo?

11:28:56  3          JUROR WENTZELL:  Well, I tried to wait and hear

11:28:57  4  the whole story.

11:28:58  5          MS. SMITH:  And here's where I'm going with this,

11:29:01  6  and we've seen a little bit of this in the courtroom

11:29:03  7  already today, Mr. Ward is going to stand up, and he's

11:29:05  8  going to tell his side of the story, and Samsung always has

11:29:09  9  to wait and go second every time.

11:29:11  10         So can I have a commitment from you that you won't

11:29:14  11 make up your mind after Mr. Ward and his team speak in this

11:29:19  12 trial, but you'll wait to hear the whole story?

11:29:23  13         JUROR WENTZELL:  Sure.

11:29:23  14         MS. SMITH:  Thank you.

11:29:24  15         JUROR WENTZELL:  I think you have to hear both

11:29:26  16 sides.

11:29:27  17         MS. SMITH:  I appreciate that.  Thank you.

11:29:29  18         Is there anyone that disagrees with that?

11:29:32  19 Everyone can commit by a showing of hands that you can wait

11:29:36  20 to hear both sides of the story before making your mind up,

11:29:39  21 if you're lucky enough to serve on this jury?  Showing of

11:29:45  22 hands.  I appreciate it.

11:29:48  23         Let's talk a little bit about Samsung products.

11:29:52  24         Talked to Dr. Caraway.  She was the owner of

11:29:56  25 Samsung products.

11:29:57  1          Who else currently, other than maybe Mr. Preston
11:30:01  2   and Ms. Caraway, owns a Samsung product, by raising your
11:30:06  3   hands?  A lot.
11:30:07  4          All right.  If you have been mostly -- can you
11:30:10  5   keep your hands up?  If you have been mostly satisfied with
11:30:13  6   those Samsung products, will you keep your hand up?
11:30:17  7          Okay.  Thank you.  You can put your hands down.
11:30:19  8          Now, Juror No. 10, we have not heard a lot from
11:30:22  9   you today.  Ms. Anderson.
11:30:25  10         What kind of products do you have?
11:30:28  11         JUROR ANDERSON:  The cell phone.
11:30:30  12         MS. SMITH:  Okay.  Good experience with the cell
11:30:32  13  phone?
11:30:32  14         JUROR ANDERSON:  Uh-huh.
11:30:33  15         MS. SMITH:  When you bought that cell phone, did
11:30:35  16  you buy it because it kind of had the latest, greatest
11:30:40  17  technology?  Or what drove your purchase?
11:30:43  18         JUROR ANDERSON:  I'm team Android.  I don't like
11:30:46  19  iPhone.  So Samsung has been the phone that I chose for the
11:30:49  20  last, I think, 10 years now.
11:30:50  21         MS. SMITH:  And have you found that -- that your
11:30:53  22  phone has, whether it's 4G or 5G and the latest, greatest
11:30:58  23  features and things of that nature?
11:31:00  24         JUROR ANDERSON:  Yeah.
11:31:01  25         MS. SMITH:  If Samsung came up and said, you

| | | |
|---|---|---|
| 11:31:04 | 1 | know -- you know, Ms. Anderson, we're going to put |
| 11:31:09 | 2 | 20-year-old technology in your phone, would that have a |
| 11:31:11 | 3 | whole lot of appeal? |
| 11:31:12 | 4 | JUROR ANDERSON:  No. |
| 11:31:13 | 5 | MS. SMITH:  Okay.  Thank you, ma'am. |
| 11:31:14 | 6 | Again, we've heard Mr. Preston on his experience |
| 11:31:23 | 7 | with Samsung. |
| 11:31:23 | 8 | Does anyone have a similar negative experience |
| 11:31:27 | 9 | with Samsung?  And I -- you know, I smiled at Mr. Preston |
| 11:31:31 | 10 | when he was talking.  I didn't like it, but I wanted to |
| 11:31:33 | 11 | hear it, and I appreciate it. |
| 11:31:34 | 12 | So if anyone shares Mr. Preston's view about |
| 11:31:38 | 13 | either Samsung as a company or they've had an unfortunate |
| 11:31:42 | 14 | experience with a Samsung product, can you let me know now |
| 11:31:45 | 15 | by a showing of hands? |
| 11:31:46 | 16 | All right.  Way in the back.  Yes, sir? |
| 11:32:01 | 17 | JUROR SPEARMAN:  Well, I used to have a Samsung |
| 11:32:05 | 18 | phone a few years ago, and I tried it out, and I found that |
| 11:32:09 | 19 | it doesn't work so well for me because I have to install |
| 11:32:13 | 20 | antivirus software on it, whereas with Apple's phone, it's |
| 11:32:16 | 21 | already pre-installed on there.  So I tend to prefer Apple |
| 11:32:20 | 22 | phones over Samsung phones just because of that security |
| 11:32:23 | 23 | feature. |
| 11:32:23 | 24 | MS. SMITH:  Thank -- thank you, sir.  I appreciate |
| 11:32:25 | 25 | that. |

| | | |
|---|---|---|
| 11:32:25 | 1 | Now, when I was preparing to come visit with you, |
| 11:32:30 | 2 | you might not think lawyers get nervous, but we get nervous |
| 11:32:33 | 3 | because we -- our job is to -- you know, to meet you and |
| 11:32:37 | 4 | understand you and figure out who's the best fit for our |
| 11:32:41 | 5 | panel in a very precious few minutes, in 30 minutes.  So I |
| 11:32:47 | 6 | asked Mr. Haslam, I said:  How am I going to do this?  You |
| 11:32:50 | 7 | know, how am I going to -- how should I visit with them? |
| 11:32:52 | 8 | And he said:  You know, the best way to figure |
| 11:32:55 | 9 | people out is to ask a question about how they see |
| 11:32:58 | 10 | themselves.  I thought, well, I think there may be |
| 11:33:03 | 11 | something to that.  So I have two questions that I want all |
| 11:33:05 | 12 | of you to answer by a showing of hands. |
| 11:33:06 | 13 | There are people in this world that are quick |
| 11:33:08 | 14 | decisionmakers, maybe bad decisions, maybe good decisions |
| 11:33:13 | 15 | but they can make a quick decision.  And then there are |
| 11:33:16 | 16 | people that, you know, take their time, and they give |
| 11:33:19 | 17 | thoughtful consideration to every little detail. |
| 11:33:22 | 18 | So what I'd like to do is divide you into those |
| 11:33:24 | 19 | two camps about how you see yourself.  By a showing of |
| 11:33:28 | 20 | hands, who would describe themselves as a quick |
| 11:33:30 | 21 | decisionmaker? |
| 11:33:32 | 22 | Okay.  Mr. Sellers.  Ms. Hirzel, No. 2.  Got a few |
| 11:33:37 | 23 | in back, No. 38.  I may need my glasses.  And the last |
| 11:33:43 | 24 | juror over there on the right.  Thank you, ma'am. |
| 11:33:45 | 25 | So can I assume by a showing of hands that the |

11:33:48   1   rest of you would describe yourselves as people that take a

11:33:51   2   little time, pay attention to details; is that correct?

11:33:55   3   Thank you.

11:33:56   4         All right.  Some people -- some people look for

11:34:02   5   opportunities to be leaders.  Some people are just the guys

11:34:05   6   and women that are always kind of elected as leaders, but

11:34:08   7   you find yourself in leadership positions.

11:34:12   8         So, again, this is a question about how you see

11:34:16   9   yourself.  Who sees themselves or often finds themselves in

11:34:20   10   a role of a leader, by raising hands?

11:34:23   11         All right.  We've got 1, 2, 3 across the first

11:34:26   12   row.  No. 5.  Ms. Falls, is that -- No. 6?  And the second,

11:34:32   13   Ms. Titterington?  Let's see, Juror No. 17, 18, and No. 25,

11:34:38   14   Mr. Davis.  Thank you.  Thank you.

11:34:40   15         Ms. Skinner, Mr. Ward said that you knew it was

11:34:50   16   coming, and you've got a husband that was trying to get a

11:34:53   17   patent, so I have a few questions for you.

11:34:55   18         You said it was a -- kind of more about the guys.

11:34:58   19   But why, in your view, was your husband interested in

11:35:01   20   getting a patent?

11:35:02   21         JUROR SKINNER:  He just thought it was a way that

11:35:06   22   he could -- he thought he had a good idea, he could make

11:35:11   23   money off of it, and he could help people who were in his

11:35:16   24   same situation.

11:35:16   25         MS. SMITH:  And when you say he could make money

| | | |
|---|---|---|
| 11:35:20 | 1 | off of it, which is certainly fair, did he have plans of |
| 11:35:25 | 2 | maybe making a product, selling it to the Cabelas of the |
| 11:35:28 | 3 | world -- |
| 11:35:29 | 4 | JUROR SKINNER:  Yes. |
| 11:35:29 | 5 | MS. SMITH:  -- something of that nature? |
| 11:35:31 | 6 | JUROR SKINNER:  Yes. |
| 11:35:31 | 7 | MS. SMITH:  Okay.  And helping people -- when you |
| 11:35:32 | 8 | say helping other hunters? |
| 11:35:35 | 9 | JUROR SKINNER:  Yes. |
| 11:35:35 | 10 | MS. SMITH:  Okay.  Did he have any plan as he |
| 11:35:39 | 11 | was -- when he came up with his idea and went through |
| 11:35:42 | 12 | everything to patent it, did he think, gosh, you know, I |
| 11:35:45 | 13 | want to file -- I want to take this and file lawsuits with |
| 11:35:48 | 14 | it? |
| 11:35:49 | 15 | JUROR SKINNER:  No. |
| 11:35:49 | 16 | MS. SMITH:  Is that something you think he'd have |
| 11:35:51 | 17 | the appetite for if someone came and said, well, you know, |
| 11:35:54 | 18 | this might make a good product, but if you give me your |
| 11:35:58 | 19 | patent, we can go file lawsuits and sue people with it?  Do |
| 11:36:02 | 20 | you think he'd have an appetite for that at all? |
| 11:36:04 | 21 | JUROR SKINNER:  I don't guess I understand.  I |
| 11:36:06 | 22 | mean, if somebody -- if he had gotten the patent and then |
| 11:36:10 | 23 | somebody used his idea to do something with his idea, yes, |
| 11:36:15 | 24 | he would have. |
| 11:36:16 | 25 | MS. SMITH:  But his primary goal here was to make |

| | | |
|---|---|---|
| 11:36:20 | 1 | a product? |
| 11:36:21 | 2 | JUROR SKINNER:  Correct. |
| 11:36:22 | 3 | MS. SMITH:  Thank you, ma'am. |
| 11:36:22 | 4 | Now, is there anyone sitting out there -- and |
| 11:36:29 | 5 | we've heard a little bit about the technology you're going |
| 11:36:32 | 6 | to hear about, but is there anybody that's sitting out |
| 11:36:35 | 7 | there that says, you know, I consider myself to have maybe |
| 11:36:40 | 8 | more than the average person's knowledge or some special |
| 11:36:46 | 9 | training or certifications in technology generally, not |
| 11:36:49 | 10 | just cell phone technology, but whether it be software or |
| 11:36:52 | 11 | hardware, does anyone have some special training or |
| 11:36:56 | 12 | knowledge in that area? |
| 11:36:57 | 13 | Nobody?  Lots of heads shaking no. |
| 11:37:02 | 14 | Well, who fixes your phones and who fixes -- who |
| 11:37:06 | 15 | fixes things in your household when it breaks?  Anybody out |
| 11:37:09 | 16 | there that's the go-to in the household? |
| 11:37:13 | 17 | Juror No. 31, yes, ma'am? |
| 11:37:16 | 18 | JUROR BUTLER:  My husband -- oh, I'm sorry. |
| 11:37:18 | 19 | My husband works in telecommunications in IT, so I |
| 11:37:22 | 20 | go to him. |
| 11:37:24 | 21 | MS. SMITH:  You go to him? |
| 11:37:27 | 22 | JUROR BUTLER:  Absolutely. |
| 11:37:29 | 23 | MS. SMITH:  Fair enough.  So you don't have to |
| 11:37:31 | 24 | know anything about technology? |
| 11:37:31 | 25 | JUROR BUTLER:  No. |

| | | |
|---|---|---|
| 11:37:32 | 1 | MS. SMITH:  Okay.  Anybody else that has any |
| 11:37:33 | 2 | special interest, I'll say it that way, any special |
| 11:37:36 | 3 | interest in technology? |
| 11:37:38 | 4 | Ms. Titterington? |
| 11:37:41 | 5 | JUROR TITTERINGTON:  Back when it was cool, I did |
| 11:37:44 | 6 | play video games.  World of Warcraft, I'm sorry. |
| 11:37:51 | 7 | MS. SMITH:  Thank you, ma'am.  Appreciate it. |
| 11:37:53 | 8 | Now, Judge Gilstrap showed you all a video.  And |
| 11:37:56 | 9 | in the video, the judge, who is an actual judge, talked |
| 11:38:00 | 10 | about invalidity.  Was anybody out there surprised to know |
| 11:38:04 | 11 | that your role as a juror in a case like this involved |
| 11:38:10 | 12 | perhaps invalidating a patent, that you had the ability to |
| 11:38:15 | 13 | invalidate a patent that the PTO issued?  Did everybody |
| 11:38:20 | 14 | already know that, or was there anybody that was a little |
| 11:38:23 | 15 | bit surprised about that? |
| 11:38:24 | 16 | We have one person, No. 13, No. 20, and No. 18. |
| 11:38:28 | 17 | You guys know a lot more about patents than I ever did |
| 11:38:30 | 18 | before I got this job, I'll say that. |
| 11:38:31 | 19 | Doctor, No. 13, please. |
| 11:38:36 | 20 | You said you were surprised to learn that a jury |
| 11:38:42 | 21 | could -- could invalidate a patent; is that correct? |
| 11:38:46 | 22 | JUROR HOOVER:  Yes, ma'am. |
| 11:38:48 | 23 | MS. SMITH:  Are you a little hesitant in any way |
| 11:38:50 | 24 | with that role that you might be asked to fill? |
| 11:38:53 | 25 | JUROR HOOVER:  Not if that's our responsibility |

| | | |
|---|---|---|
| 11:38:55 | 1 | and we have the information we need to do it. |
| 11:38:59 | 2 | MS. SMITH:  I appreciate that, Doctor.  Thank you. |
| 11:39:01 | 3 | Juror No. 20, you had raised your hand that you |
| 11:39:05 | 4 | were a little bit surprised that jurors had the ability to |
| 11:39:09 | 5 | invalidate a patent. |
| 11:39:11 | 6 | JUROR GIBSON:  Yes, I was surprised. |
| 11:39:12 | 7 | MS. SMITH:  All right.  Any hesitation at all in |
| 11:39:16 | 8 | your mind that you may or may not be the right person to |
| 11:39:19 | 9 | fulfill that kind of job? |
| 11:39:22 | 10 | JUROR GIBSON:  Not if you'll present the right |
| 11:39:24 | 11 | evidence, I can -- I think I can cipher through it enough. |
| 11:39:27 | 12 | MS. SMITH:  Okay.  I appreciate that. |
| 11:39:28 | 13 | And this is interesting because in this case, I |
| 11:39:31 | 14 | might make it a little bit easier for you, Juror No. 20. |
| 11:39:38 | 15 | JUROR GIBSON:  I'm sorry? |
| 11:39:39 | 16 | MS. SMITH:  I may make it a little bit easier for |
| 11:39:41 | 17 | you because in this case, as you heard in the video, |
| 11:39:45 | 18 | there's times when there's evidence that you as a juror |
| 11:39:48 | 19 | would get, that the PTO examiners never got.  And so you'll |
| 11:39:52 | 20 | actually -- you'll actually get to -- get to sift through |
| 11:39:56 | 21 | evidence and look through evidence that the Patent Office |
| 11:40:03 | 22 | didn't have.  Did you hear that in the video? |
| 11:40:05 | 23 | JUROR GIBSON:  No, I didn't really -- didn't grasp |
| 11:40:08 | 24 | all of it, but -- |
| 11:40:09 | 25 | MS. SMITH:  Well, sometimes people say that that |

11:40:11  1  makes them feel a little bit better about doing the job

11:40:14  2  when they find out that they're not second-guessing the

11:40:16  3  Patent Office, but they're getting entirely different

11:40:19  4  evidence than the Patent Office had.

11:40:20  5       JUROR GIBSON:  Well, yeah.  I didn't figure

11:40:22  6  everything was going to be straight cut across the Patent

11:40:25  7  Office and the lawyers.

11:40:25  8       MS. SMITH:  Thank you, sir.  I appreciate it.

11:40:30  9       And now knowing that many of you have heard about

11:40:35  10  the invalidity process, but knowing that that would be your

11:40:38  11  role if you make it on this panel, is there anybody that's

11:40:43  12  slightly hesitant, anybody on the left side of the

11:40:45  13  courtroom, about taking a patent away or invalidating a

11:40:49  14  patent?  I don't see any hands.

11:40:52  15       On the right side of the room, anyone that would

11:40:56  16  be a little hesitant in that role?

11:40:58  17       THE COURT:  You have five minutes remaining,

11:41:00  18  counsel.

11:41:00  19       MS. SMITH:  Thank you, Your Honor.

11:41:01  20       Now, let's see, Mr. Davis, do you have -- do you

11:41:09  21  have cows or critters or --

11:41:12  22       JUROR DAVIS:  Horses.

11:41:12  23       MS. SMITH:  Horses.  Okay.  All right.

11:41:14  24       JUROR DAVIS:  I have had some cows in the past.

11:41:16  25       MS. SMITH:  Okay.  I'm a horse person, so this --

```
11:41:16   1           JUROR DAVIS:  Good.
11:41:18   2           MS. SMITH:  -- will work.
11:41:19   3           JUROR DAVIS:  Good.
11:41:20   4           MS. SMITH:  This will work.
11:41:21   5           We're going to go to an auction together, okay?
11:41:24   6   And we're sitting at an auction, and they're trotting the
11:41:28   7   horses out -- I actually just went to a horse auction at
11:41:31   8   Billy Bob's, of all places, in Fort Worth, an unusual place
11:41:35   9   to have an auction, but nonetheless.
11:41:37  10           So you and I are sitting there, and we've got the
11:41:40  11   fanciest horse you've ever seen that goes across in front
11:41:43  12   of all the people at that auction, but we've got a
11:41:47  13   high-dollar horse owner sitting on each side of -- of us.
11:41:50  14   What do you think the chances are that we're going to get
11:41:53  15   that fancy, high-dollar horse for next to nothing when we
11:41:56  16   have all these sophisticated horse owners sitting by us?
11:42:00  17           JUROR DAVIS:  Chances are pretty slim.
11:42:03  18           MS. SMITH:  Okay.  All right.  And you and I are
11:42:03  19   still sitting at that auction --
11:42:03  20           JUROR DAVIS:  Okay.
11:42:03  21           MS. SMITH:  -- and we see the mangiest group of
11:42:06  22   horses.  Let's say there's a herd of horses.  There's 700
11:42:09  23   of them.  And they're mangy.  And all these fancy horse
11:42:12  24   owners on both sides of us are sitting on their hands, and
11:42:18  25   they're not bidding.  And you and I look at each other and
```

11:42:22  1  say:  Well, maybe we can buy low and sell high.  Right?

11:42:28  2        JUROR DAVIS:  Yes, correct.

11:42:29  3        MS. SMITH:  We could fatten them up, we could

11:42:33  4  shine them up, and so we bid on them.  And lo and behold,

11:42:34  5  we win.  Okay?  Now, if we aren't able to fatten those

11:42:37  6  horses up and shine them up and resell them at a profit, do

11:42:43  7  you think -- do you think that -- that's just kind of how

11:42:44  8  an auction goes, isn't it?

11:42:45  9        JUROR DAVIS:  That's the chance you take.

11:42:48  10       MS. SMITH:  Yeah, it's the risk you take, right?

11:42:50  11       JUROR DAVIS:  I believe that, yes.

11:42:51  12       MS. SMITH:  And you don't go back.  You can't go

11:42:53  13  sue somebody because the risk you took didn't pan out, can

11:42:56  14  you?

11:42:56  15       JUROR DAVIS:  I believe that's correct.  Uh-huh,

11:42:58  16  correct.

11:42:58  17       MS. SMITH:  Thank you, Mr. Davis.

11:43:01  18       Now, as -- I'm going to probably end the same

11:43:12  19  place that Mr. Ward did.  You know, we -- we work really,

11:43:17  20  really hard to think of every question we could possibly

11:43:21  21  ask you.  Some of you are shaking your head.  But we always

11:43:25  22  miss one.

11:43:26  23       So if there's anybody out there saying, you know,

11:43:29  24  if she would have just asked this one question, I would

11:43:32  25  have told her that I'm not the best fit.  I'm joining

11:43:37  1  Mr. Preston, and I'm not the best fit for this Samsung

11:43:41  2  case?  Is there anyone that has that thought by a showing

11:43:46  3  of hands?

11:43:47  4       Final question:  Is there anything that Mr. Ward

11:43:51  5  said or that you heard in the questioning, you may have a

11:43:58  6  hunch of which direction this case is going, anything that

11:44:01  7  causes you to start out leaning towards Solas and kind of

11:44:06  8  favoring Solas in this case?  Showing of hands.  Anything I

11:44:10  9  need to know about?

11:44:12  10       Well, once again, I'll finish where I started.  On

11:44:19  11  behalf of Samsung and Mr. Haslam and our entire trial team,

11:44:23  12  we thank you for your time this morning.  And for the eight

11:44:26  13  lucky -- eight of you who are very lucky and get chosen to

11:44:31  14  serve on this case, we will get to spend about a week with

11:44:36  15  you, and we look forward to it.  And we thank you in

11:44:39  16  advance for your service.

11:44:40  17       Thank you, Your Honor.

11:44:41  18       THE COURT:  Ladies and gentlemen, at this

11:44:43  19  juncture, there's some certain matters I need to discuss

11:44:45  20  with counsel outside of your presence.  But I can't let you

11:44:52  21  all recess and go outside the courtroom, or we'll destroy

11:44:56  22  the social distancing and the precautions that we've taken

11:44:59  23  great pains to preserve.

11:45:00  24       So I'm going to ask the court reporter, Mr. Ward,

11:45:04  25  and Ms. Smith to meet me in the jury room, and we'll

11:45:07  1   discuss those matters outside of your presence by us

11:45:09  2   leaving the courtroom rather than you leaving the

11:45:12  3   courtroom.

11:45:12  4          Also, while I'm out of the courtroom, I may need

11:45:17  5   to talk to one or more of you individually, and if that's

11:45:20  6   the case, I'll send one of the Court Security Officers into

11:45:24  7   the courtroom to get you and to bring you in one at a time

11:45:27  8   where I can talk with you in the jury room outside of the

11:45:30  9   presence of the rest of the panel.

11:45:31  10          Now, while I'm off the bench, you need to stay

11:45:36  11   where you are.  I am going to ask the Court Security

11:45:40  12   Officers who are here in the courtroom, if anybody needs a

11:45:43  13   restroom break, one at a time they can be escorted in and

11:45:48  14   out of the courtroom, but we can't let people move in big

11:45:52  15   groups for reasons that you all understand.

11:45:53  16          If you need a restroom break while I'm out of the

11:45:56  17   courtroom, let the Court Security Officer know one at a

11:45:59  18   time.  They can try to address that with you.

11:46:01  19          Also, ladies and gentlemen, while I'm out of the

11:46:04  20   courtroom, if you'd like to talk to the person next to you

11:46:07  21   quietly, there's no problem with that.  If you'd like to

11:46:10  22   sit there and not talk to anybody, there's no problem with

11:46:13  23   that either.  If you do elect to have a conversation with

11:46:18  24   anybody while I'm out of the courtroom, don't discuss

11:46:20  25   anything that's happened in the courtroom today.

| | | |
|---|---|---|
| 11:46:23 | 1 | Let me remind all of you, you have not heard any |
| 11:46:26 | 2 | evidence in this case at all at this point. |
| 11:46:30 | 3 | So talk about how you got through the -- I'm |
| 11:46:34 | 4 | hearing people call it Snowmageddon of 2021 and the ice and |
| 11:46:41 | 5 | the snow and the lack of water and the iced-over roads, |
| 11:46:46 | 6 | talk to them about what's happened to all the shrubbery at |
| 11:46:50 | 7 | your house, like mine, where all the leaves are dead and |
| 11:46:51 | 8 | falling off now because it got down below zero.  Talk about |
| 11:46:51 | 9 | your grandchildren, talk about any topic you'd like to talk |
| 11:46:55 | 10 | about, but don't talk about anything that's happened while |
| 11:46:58 | 11 | we've been in the courtroom today because that's -- again, |
| 11:47:01 | 12 | you have not heard any evidence in this case whatsoever. |
| 11:47:04 | 13 | So, with that, Mr. Ward, if you and Ms. Smith will |
| 11:47:09 | 14 | meet me in the jury room along with the court reporter. |
| 11:47:13 | 15 | COURT SECURITY OFFICER:  All rise. |
| 11:47:15 | 16 | (Recess.) |
| 11:48:40 | 17 | (Outside the presence of the venire panel.) |
| 11:48:40 | 18 | THE COURT:  Mr. Ward, do you have any challenges |
| 11:48:45 | 19 | for cause on behalf of Plaintiff? |
| 11:48:48 | 20 | MR. WARD:  I don't, Your Honor.  I have one |
| 11:48:51 | 21 | follow-up based upon the juror questionnaire, and I did |
| 11:48:54 | 22 | want to ask Juror No. 16, Dr. Caraway, on her |
| 11:48:57 | 23 | questionnaire, she -- Question No. 42, she said, I base all |
| 11:49:00 | 24 | decisions on the Word of God, no exceptions.  I want to ask |
| 11:49:04 | 25 | her if she's going to be, you know, praying about this case |

11:49:06   1   and taking what God tells her to do in the case, or is she

11:49:12   2   going to be able to base the decision upon the evidence

11:49:15   3   that she hears.  And I just did not feel comfortable asking

11:49:18   4   that question in front of the panel.  But that's the only

11:49:20   5   juror I want to follow up with.

11:49:22   6        THE COURT:  Well, challenges for cause are a

11:49:33   7   product of the voir dire process with the panel in the

11:49:36   8   courtroom on the record.  I don't think it's appropriate

11:49:40   9   for you to challenge a witness for cause for something you

11:49:43  10   didn't raise with them or didn't discuss with them.  So I

11:49:46  11   don't consider it a challenge for cause.

11:49:48  12        MR. WARD:  It's not a challenge for cause.  I

11:49:49  13   would like to question -- before I tell you whether or not

11:49:51  14   I would challenge her for cause, I would like to question

11:49:54  15   her outside the presence of the jury.  I figured there was

11:49:57  16   going to be some follow-up with a couple of these jurors,

11:50:02  17   and I would like to question her outside the presence of

11:50:04  18   the jury.

11:50:04  19        THE COURT:  Do you have any objection to that,

11:50:06  20   Ms. Smith?

11:50:07  21        MS. SMITH:  No, Your Honor.

11:50:08  22        THE COURT:  All right.  Other than Dr. Caraway, is

11:50:11  23   there anybody else on the panel that you are challenging

11:50:14  24   for cause at this point?

11:50:16  25        MR. WARD:  No, Your Honor.  And I'm not

11:50:18    1    challenging her for cause, just to be clear.  I just wanted

11:50:21    2    you to know that I might.

11:50:23    3             THE COURT:  I understand that.  I understand that.

11:50:26    4             MR. WARD:  Correct.

11:50:26    5             THE COURT:  At this point you're not challenging

11:50:26    6    for cause.

11:50:27    7             MR. WARD:  Correct.

11:50:27    8             THE COURT:  Okay.  Ms. Smith, does Defendant have

11:50:29    9    challenges for cause?

11:50:29   10             MS. SMITH:  No. 1 and No. 3.

11:50:40   11             THE COURT:  All right.  And my notes show that

11:50:45   12    No. 6, Ms. Falls, raised her hand about a scheduling

11:50:49   13    possibility or problem.

11:50:50   14             MS. SMITH:  Yes.

11:50:50   15             THE COURT:  I didn't see anybody other than

11:50:52   16    Ms. Falls.  If either of you did, please tell me.

11:50:54   17             MS. SMITH:  I just had No. 6 down.

11:50:56   18             MR. WARD:  No. 6.

11:50:57   19             THE COURT:  Okay.

11:50:57   20             MR. WARD:  And I don't know if you want a response

11:50:59   21    to 1 or 3 -- I agree, No. 3 is disqualified.

11:51:06   22             MS. SMITH:  I agree with that.

11:51:08   23             THE COURT:  All right.  Without objection from

11:51:11   24    Defendant, I'll excuse No. 3.

11:51:15   25             You're not offering the same agreement with regard

| | | |
|---|---|---|
| 11:51:17 | 1 | to No. 1? |
| 11:51:19 | 2 | MR. WARD:  No, sir.  I do not think he's |
| 11:51:26 | 3 | disqualified for cause. |
| 11:51:27 | 4 | THE COURT:  Okay.  I'll question him in here. |
| 11:51:29 | 5 | MR. WARD:  Okay.  All right. |
| 11:51:31 | 6 | THE COURT:  Anything else from either of you |
| 11:51:33 | 7 | before I bring in the first venire member? |
| 11:51:35 | 8 | MS. SMITH:  No, Your Honor. |
| 11:51:36 | 9 | MR. WARD:  No, Your Honor. |
| 11:51:36 | 10 | THE COURT:  Okay.  Would you ask the Court |
| 11:51:39 | 11 | Security Officer to bring in No. 16, Dr. Caraway? |
| 11:52:30 | 12 | (Juror brought into jury room.) |
| 11:52:30 | 13 | THE COURT:  Please come in, Dr. Caraway.  And |
| 11:52:34 | 14 | please have a seat right there if you don't mind. |
| 11:52:36 | 15 | JUROR CARAWAY:  Sure. |
| 11:52:37 | 16 | THE COURT:  Thank you. |
| 11:52:38 | 17 | JUROR CARAWAY:  Hello. |
| 11:52:39 | 18 | MS. SMITH:  Hello. |
| 11:52:40 | 19 | MR. WARD:  Hello. |
| 11:52:41 | 20 | THE COURT:  Mr. Ward, you had a question for |
| 11:52:44 | 21 | Dr. Caraway? |
| 11:52:45 | 22 | MR. WARD:  I did.  Dr. Caraway, on the |
| 11:52:49 | 23 | questionnaire, I didn't want to ask you this in front of |
| 11:52:50 | 24 | the panel, you indicated that you base all decisions on the |
| 11:52:52 | 25 | Word of God, no exceptions. |

```
11:52:55   1              JUROR CARAWAY:  That's correct.  It wasn't a
11:52:57   2   mistake.
11:52:57   3              MR. WARD:  No, I didn't think it was.  Here's my
11:53:00   4   question, though.  This case obviously is going to have to
11:53:02   5   have decisions based upon the evidence and the evidence
11:53:05   6   will be documents and testimony.  And I met folks that pray
11:53:09   7   about everything, pray about, you know, the decisions that
11:53:13   8   they might make in a lawsuit.
11:53:14   9              What I wonder is will you make this decision based
11:53:18  10   upon the evidence that is presented, or will you base your
11:53:22  11   decision upon what you think God wants you to do?
11:53:26  12              JUROR CARAWAY:  No, it's not a theological
11:53:29  13   argument.  It's -- it's the truth.  It's a right and wrong
11:53:33  14   argument.  And so I believe God reveals right and wrong.
11:53:37  15              MR. WARD:  Okay.  And do you feel like God will
11:53:39  16   reveal to you what's right and wrong outside of the
11:53:42  17   evidence that you are presented?  You think you might
11:53:44  18   have some --
11:53:44  19              JUROR CARAWAY:  No, I think that the law is of a
11:53:48  20   nature that God allows us to see things within the auspices
11:53:53  21   of the law.
11:53:53  22              MR. WARD:  Okay.  And so will you base your
11:53:55  23   decision upon the evidence and --
11:53:59  24              JUROR CARAWAY:  Yes --
11:53:59  25              MR. WARD:  -- only the evidence.
```

| | | |
|---|---|---|
| 11:54:02 | 1 | JUROR CARAWAY:  -- yes. |
| 11:54:03 | 2 | THE COURT:  Ms. Smith, do you have any questions? |
| 11:54:04 | 3 | MS. SMITH:  I don't. |
| 11:54:05 | 4 | JUROR CARAWAY:  Okay. |
| 11:54:06 | 5 | THE COURT:  Dr. Caraway, thank you very much. |
| 11:54:09 | 6 | JUROR CARAWAY:  Absolutely. |
| 11:54:10 | 7 | THE COURT:  I'm going to let you take your seat |
| 11:54:10 | 8 | back in the courtroom. |
| 11:54:10 | 9 | Don't discuss anything we talked about in here. |
| 11:54:13 | 10 | JUROR CARAWAY:  They said I could use the restroom |
| 11:54:16 | 11 | back here.  Is that correct?  Or do you want me to go back |
| 11:54:18 | 12 | out there?  I don't mind going back out there. |
| 11:54:21 | 13 | THE COURT:  Just let the Court Security Officer |
| 11:54:23 | 14 | know that you need a restroom break, please. |
| 11:54:27 | 15 | JUROR CARAWAY:  Okay.  Thank you. |
| 11:54:28 | 16 | THE COURT:  Thank you. |
| 11:54:28 | 17 | (Juror excused to return to courtroom.) |
| 11:54:28 | 18 | THE COURT:  I'm not going to excuse Dr. Caraway. |
| 11:54:34 | 19 | You haven't challenged her yet.  Do you challenge her? |
| 11:54:38 | 20 | MR. WARD:  No, I'm not challenging. |
| 11:54:40 | 21 | THE COURT:  Okay.  So she's not challenged, and |
| 11:54:48 | 22 | she stays on the panel. |
| 11:54:50 | 23 | Okay.  Let's bring in Panel Member No. 1, |
| 11:54:58 | 24 | Mr. Sellers, please. |
| 11:55:09 | 25 | Let's go off the record. |

11:55:15    1            (Off-the-record discussion.)

11:55:20    2            THE COURT:  Let's go back on the record.

11:55:43    3            (Juror brought into jury room.)

11:55:43    4            THE COURT:  Hello, Mr. Sellers.  Would you come on

11:55:49    5   in and have a seat right there, please?

11:55:51    6            How are you, sir?  Are you all right today?

11:55:56    7            JUROR SELLERS:  Yes, sir.  Cold weather bothers

11:56:00    8   me.

11:56:00    9            THE COURT:  Let me ask a question, Mr. Sellers,

11:56:03   10   and then I'm going to let these lawyers ask you a

11:56:06   11   follow-up.

11:56:07   12            I have in my notes, while they were asking you

11:56:09   13   questions out there or asking everybody questions out

11:56:11   14   there, that you believe Samsung was starting out a little

11:56:15   15   bit behind Solas here just because Samsung is a big global

11:56:22   16   company and Solas is not.  Did I understand you correctly?

11:56:24   17            JUROR SELLERS:  Yes, sir.

11:56:27   18            THE COURT:  So you're telling me that if you're

11:56:29   19   selected to serve on this jury, the Plaintiff and the

11:56:32   20   Defendant won't be starting out at the same place?  The

11:56:34   21   Plaintiff will be a little bit ahead and the Defendant will

11:56:37   22   be a little bit behind because that's the way you look at

11:56:40   23   these things?

11:56:41   24            JUROR SELLERS:  Yes, sir, probably.

11:56:42   25            THE COURT:  Okay.

11:56:42  1          JUROR SELLERS:  I'll be honest and say that --

11:56:44  2   that's the way I am.

11:56:45  3          THE COURT:  I want you to be honest.  That's fine.

11:56:49  4   And, again, I just need to know how you feel and what

11:56:51  5   you're willing to tell the Court what you will do and can

11:56:57  6   do and can't do.

11:56:58  7          Ms. Smith, do you have questions for Mr. Sellers?

11:57:01  8          MS. SMITH:  Mr. -- do you want the mask on or off?

11:57:04  9          THE COURT:  Whichever you prefer as long as we can

11:57:08 10   hear each other.

11:57:09 11          MS. SMITH:  Thank you.  Mr. Sellers, the beliefs

11:57:13 12   you just shared with Judge Gilstrap, those are long-held

11:57:18 13   beliefs, are they not?

11:57:19 14          JUROR SELLERS:  Yes, ma'am.

11:57:20 15          MS. SMITH:  And it's not a situation where a judge

11:57:20 16   could give you some type of instruction and tell you not to

11:57:20 17   think that way and have you, you know, do an about-face; is

11:57:26 18   that correct?

11:57:26 19          JUROR SELLERS:  No, ma'am.  I would be

11:57:28 20   hard-pressed to change anything.

11:57:28 21          MS. SMITH:  Okay.

11:57:30 22          JUROR SELLERS:  I went in the military at 17 years

11:57:32 23   old, put 20 in, and retired, and I was told not to do this,

11:57:38 24   do that, and it's a very deep, built-in habit of what I've

11:57:41 25   seen.  It's --

```
11:57:41   1              MS. SMITH:  And no doubt in your mind.

11:57:43   2              JUROR SELLERS:  That's probably the way I feel,

11:57:45   3    and I'll probably feel that way whenever I die.

11:57:47   4              MS. SMITH:  Thank you, sir.

11:57:47   5              THE COURT:  Mr. Ward, do you have any questions?

11:57:49   6              MR. WARD:  I do.

11:57:49   7              Mr. Sellers, you've heard nothing about the size

11:57:52   8    of Solas, have you?  You don't know if they're a

11:57:55   9    billion-dollar company or --

11:57:56   10             JUROR SELLERS:  Not right offhand, no, sir.

11:58:00   11             MR. WARD:  All right.  That's your -- it's your

11:58:00   12   speculation that they're a small company.

11:58:02   13             JUROR SELLERS:  From what I've heard in there,

11:58:04   14   yes.

11:58:04   15             MR. WARD:  All right.

11:58:04   16             JUROR SELLERS:  If I was in -- y'all would tell me

11:58:07   17   later in court, and if it turned out that way, I feel like

11:58:12   18   I would be in the wrong for being there.  That's why I

11:58:14   19   spoke up.

11:58:15   20             MR. WARD:  And there's no wrong answers.  If

11:58:19   21   His Honor were to instruct you that all parties are to be

11:58:21   22   treated equally in your courtroom, regardless of the size,

11:58:25   23   and you think Samsung is big, but you don't know how big or

11:58:30   24   small Solas is, do you, sir?

11:58:32   25             JUROR SELLERS:  No, sir.
```

```
11:58:34   1            MR. WARD:  If His Honor were to instruct you that
11:58:36   2   all parties are to be treated equal regardless of the size,
11:58:40   3   are you telling Judge Gilstrap and me that you would be
11:58:42   4   unable to follow that instruction?
11:58:43   5            JUROR SELLERS:  In this particular situation?
11:58:46   6            MR. WARD:  Yes, sir.
11:58:47   7            JUROR SELLERS:  Not until I found out different if
11:58:47   8   they were smaller than Samsung.  That would be the
11:58:53   9   difference.
11:58:53  10            MR. WARD:  Okay.
11:58:53  11            JUROR SELLERS:  And I'd already be involved
11:58:53  12   because we ain't been told that information yet.
11:58:53  13            MR. WARD:  So if it's not -- if they're not the
11:58:54  14   same size as Samsung, we're not going to start out the
11:58:57  15   same?
11:58:58  16            JUROR SELLERS:  Probably not.  That's just --
11:59:00  17            MR. WARD:  I appreciate it.
11:59:01  18            JUROR SELLERS:  Like I say, I'd rather say it now
11:59:03  19   than be sitting in there with that jury of eight and find
11:59:07  20   out, oops.
11:59:07  21            MR. WARD:  I agree with you.  That's the right
11:59:09  22   thing to do.  So thank you.
11:59:10  23            MS. SMITH:  Thank you, sir.
11:59:11  24            THE COURT:  Where in Harleton do you live,
11:59:14  25   Mr. Sellers?
```

| | | |
|---|---|---|
| 11:59:15 | 1 | JUROR SELLERS:  On Oscar Reagan Road, almost at |
| 11:59:18 | 2 | the end of it. |
| 11:59:19 | 3 | THE COURT:  Yes, sir.  I know right where it is. |
| 11:59:21 | 4 | JUROR SELLERS:  Bought the old JD -- what's the |
| 11:59:24 | 5 | last name?  I can't remember the last name.  Anyway, it's |
| 11:59:30 | 6 | the last -- it's almost at the end of Oscar Road. |
| 11:59:30 | 7 | THE COURT:  Okay.  That's pretty country up there. |
| 11:59:35 | 8 | JUROR SELLERS:  JD Ray place. |
| 11:59:35 | 9 | THE COURT:  Yes, sir. |
| 11:59:38 | 10 | JUROR SELLERS:  That's what it was. |
| 11:59:39 | 11 | THE COURT:  Okay.  I'm going to let you rejoin the |
| 11:59:41 | 12 | group in the courtroom, Mr. Sellers.  Just don't discuss |
| 11:59:44 | 13 | anything we've talked about in here, okay? |
| 11:59:47 | 14 | JUROR SELLERS:  Thank you. |
| 11:59:48 | 15 | THE COURT:  Thank you very much. |
| 11:59:49 | 16 | (Juror excused to return to courtroom.) |
| 11:59:49 | 17 | THE COURT:  I'm going to excuse Mr. Sellers. |
| 11:59:54 | 18 | MS. SMITH:  Thank you, Your Honor. |
| 11:59:54 | 19 | THE COURT:  Because he's going to find out Solas |
| 11:59:57 | 20 | and Samsung are drastically different in size. |
| 11:59:59 | 21 | Okay.  Let's bring in No. 6, please. |
| 12:00:39 | 22 | MR. WARD:  Are we off the record? |
| 12:00:41 | 23 | THE COURT:  Off the record. |
| 12:00:43 | 24 | (Off-the-record discussion.) |
| 12:00:45 | 25 | THE COURT:  Now we're back on the record. |

| | | |
|---|---|---|
| 12:00:53 | 1 | (Juror brought into jury room.) |
| 12:00:53 | 2 | THE COURT:  Come in, Ms. Falls.  If you'd have a |
| 12:00:57 | 3 | seat right there, please, ma'am. |
| 12:00:58 | 4 | JUROR FALLS:  Sure. |
| 12:01:00 | 5 | THE COURT:  Thank you. |
| 12:01:00 | 6 | When we started out today, Ms. Falls, I talked |
| 12:01:03 | 7 | about the fact that we were going to pick the jury today |
| 12:01:05 | 8 | and start the trial today and would go straight through |
| 12:01:08 | 9 | until we finished, and I thought it would take -- I thought |
| 12:01:11 | 10 | we'd be through by the end of the week.  There was an |
| 12:01:13 | 11 | outside chance -- small chance we might go over into the |
| 12:01:17 | 12 | following Monday, but I thought we could get the case tried |
| 12:01:20 | 13 | and finished this week.  And I asked if there were any |
| 12:01:23 | 14 | members out there who potentially had a problem being |
| 12:01:25 | 15 | available to be here if they were selected during that |
| 12:01:27 | 16 | entire time, and you raised your hand. |
| 12:01:29 | 17 | JUROR FALLS:  Yes. |
| 12:01:30 | 18 | THE COURT:  Tell me what you had in your mind when |
| 12:01:33 | 19 | you raised your hand. |
| 12:01:33 | 20 | JUROR FALLS:  My husband works the night shift |
| 12:01:35 | 21 | this week, and he starts his shift tomorrow.  We have one |
| 12:01:38 | 22 | car.  I don't know how I'd get here. |
| 12:01:40 | 23 | THE COURT:  Okay.  And did you say you lived in |
| 12:01:48 | 24 | rural Jefferson? |
| 12:01:50 | 25 | JUROR FALLS:  Yes. |

12:01:51  1          THE COURT:  I understand what that means.  How far

12:01:53  2   out of the city of Jefferson do you live?

12:01:56  3          JUROR FALLS:  Four miles west and about two miles

12:01:59  4   in on a private road.

12:01:59  5          THE COURT:  Okay.

12:02:01  6          JUROR FALLS:  You can imagine what that was like

12:02:04  7   during the Snowmageddon.

12:02:06  8          THE COURT:  Yes, ma'am.  Yes, ma'am.  Remind me

12:02:08  9   who your husband works for.

12:02:10 10          JUROR FALLS:  Texarkana Aluminum.  I can't say

12:02:14 11   that word.

12:02:15 12          THE COURT:  Okay.  When you say he starts the

12:02:17 13   night shift, when would he be leaving and when would he be

12:02:21 14   coming --

12:02:21 15          JUROR FALLS:  He would have to leave at 4:00.

12:02:24 16          THE COURT:  And when would he get home?

12:02:27 17          JUROR FALLS:  7:00 in the morning.

12:02:28 18          THE COURT:  Okay.

12:02:29 19          JUROR FALLS:  It takes him about two and a half

12:02:30 20   hours to get there.  And if he has to stop for anything,

12:02:34 21   you know, gas, whatever.

12:02:35 22          THE COURT:  Now, you don't know this yet because I

12:02:38 23   haven't told everybody, but except for today, once we

12:02:43 24   recess this evening and start back Tuesday morning, I'm

12:02:46 25   going to tell the jury that's selected to be here and be

| | | |
|---|---|---|
| 12:02:50 | 1 | ready to go by 8:30. |
| 12:02:52 | 2 | Now, if he gets home at 7:00 in the morning, I |
| 12:02:55 | 3 | would assume it's about a 25, 30-minute drive from your |
| 12:02:59 | 4 | house to the courthouse? |
| 12:03:00 | 5 | JUROR FALLS:  Right. |
| 12:03:01 | 6 | THE COURT:  Would you have a problem being able to |
| 12:03:03 | 7 | take the car and get here by 8:30? |
| 12:03:05 | 8 | JUROR FALLS:  If I was out of here in time to get |
| 12:03:07 | 9 | home at 4:00. |
| 12:03:11 | 10 | THE COURT:  Ah, that's true.  We're not going to |
| 12:03:16 | 11 | be out of here at 4:00.  We're going to be probably 5:30 |
| 12:03:20 | 12 | and some days 6:00 o'clock getting out of here. |
| 12:03:25 | 13 | Okay.  So we've got to worry about you coming and |
| 12:03:28 | 14 | going, not just you getting here.  I see that.  Okay. |
| 12:03:31 | 15 | And I assume there's not a neighbor with an extra |
| 12:03:36 | 16 | vehicle or some other way you could easily fill the gap |
| 12:03:39 | 17 | here that you haven't told me about. |
| 12:03:41 | 18 | JUROR FALLS:  I don't even know the neighbors. |
| 12:03:43 | 19 | THE COURT:  Okay. |
| 12:03:44 | 20 | JUROR FALLS:  We're just recently here, you know. |
| 12:03:46 | 21 | THE COURT:  Right.  All right.  I think you've |
| 12:03:47 | 22 | told me everything I need to know, Ms. Falls.  I'm going to |
| 12:03:50 | 23 | let you rejoin everybody in the courtroom. |
| 12:03:53 | 24 | JUROR FALLS:  Thank you. |
| 12:03:53 | 25 | THE COURT:  Just don't discuss anything we've |

```
12:03:55   1   talked about in here.
12:03:56   2              JUROR FALLS:  Sure.
12:03:57   3              THE COURT:  Thank you, ma'am.
12:03:57   4              (Juror excused to return to courtroom.)
12:03:57   5              THE COURT:  I'm going to excuse Ms. Falls.  I
12:04:08   6   don't see how she can make that work with her husband.
12:04:10   7              In almost 10 years, I've never had anybody tell me
12:04:17   8   they've only had one vehicle.  First time that's ever
12:04:20   9   happened.
12:04:21  10              Okay.  I'm excusing No. 1, No. 3, and No. 6.  And
12:04:25  11   there are no other challenges that have been raised.  So
12:04:29  12   that means we're going to seat eight jurors, four strikes
12:04:34  13   per side.
12:04:36  14              MR. WARD:  Go to 19.
12:04:37  15              THE COURT:  16, 17, 18, strike through 19?
12:04:40  16              MR. WARD:  I believe so.
12:04:42  17              THE COURT:  All right.  Five minutes after 12:00.
12:04:49  18   I'll give y'all 20 minutes to strike your list.
12:04:52  19              Let's go back in the courtroom, and then I'll
12:04:54  20   instruct you from there on the record.
12:04:55  21              MR. WARD:  Okay.
12:04:56  22              MS. SMITH:  Thank you.
12:04:58  23              Can one team use this room, Your Honor, and the
12:05:02  24   other the attorney conference room?
12:05:03  25              THE COURT:  I think that's fine.
```

| | | |
|---|---|---|
| 12:05:05 | 1 | MS. SMITH:  Thank you. |
| 12:05:05 | 2 | (Recess.) |
| 12:05:05 | 3 | (Proceedings in the courtroom, venire panel. |
| 12:05:09 | 4 | present.) |
| 12:05:09 | 5 | COURT SECURITY OFFICER:  All rise. |
| 12:06:18 | 6 | THE COURT:  Ladies and gentlemen, I thank you for |
| 12:06:20 | 7 | your cooperation and patience while I took care of that |
| 12:06:24 | 8 | outside of your presence. |
| 12:06:25 | 9 | I'm now going to need to give the attorneys in the |
| 12:06:28 | 10 | case about 25 minutes or so -- 20 minutes or so to strike |
| 12:06:32 | 11 | their lists and turn in their peremptory challenges.  I'll |
| 12:06:37 | 12 | also need some time to go over those and compare them and |
| 12:06:40 | 13 | make sure they're completely accurate and what they should |
| 12:06:44 | 14 | be so that there's no question about which of the eight of |
| 12:06:47 | 15 | you have been selected to serve on this jury. |
| 12:06:49 | 16 | While I'm out of the courtroom and while counsel |
| 12:06:54 | 17 | are out of the courtroom, I'm going to ask you to stay |
| 12:06:56 | 18 | seated.  Again, if you need a restroom break, raise your |
| 12:06:59 | 19 | hand, motion to one of these two Court Security Officers, |
| 12:07:02 | 20 | and they'll come to you, and you can ask them to |
| 12:07:04 | 21 | accommodate you in that regard.  We'll just have to do that |
| 12:07:07 | 22 | one at a time or in small groups. |
| 12:07:09 | 23 | Also, I know we're past the noon hour by just a |
| 12:07:13 | 24 | little bit now.  I'm going to ask the clerk's office to |
| 12:07:16 | 25 | bring in some bottled water, and I think there are peanut |

12:07:22    1   butter crackers, something to nibble on.

12:07:27    2          And any of you -- and most of you don't know me,

12:07:30    3   but it's a real stretch for me to let people bring water

12:07:33    4   and crackers to eat into a courtroom, but I'm not going to

12:07:37    5   make you sit here past the noon hour and not have something

12:07:40    6   to drink and something in your stomach.

12:07:43    7          So the clerk's office will bring those in.  If you

12:07:45    8   want some of that, either water, crackers, or both, raise

12:07:49    9   your hand, let the clerk's office know, and they'll make

12:07:51   10   that available to you.

12:07:52   11          Again, feel free to have a quiet, discreet

12:07:56   12   discussion with your neighbors if you want to.  But don't

12:08:01   13   talk about anything that's happened today since you got to

12:08:03   14   the courthouse here in Marshall.  Again, you haven't heard

12:08:05   15   any evidence in this case whatsoever.

12:08:08   16          But with those instructions, counsel, I'm going to

12:08:11   17   afford you -- it's eight minutes after 12:00, I'll give you

12:08:14   18   until 12:30 to turn in your strike lists to the courtroom

12:08:18   19   deputy.

12:08:18   20          And the Court will stand in recess until I'm back

12:08:22   21   after those have been turned in.

12:08:23   22          The Court's in recess.

12:08:25   23          COURT SECURITY OFFICER:  All rise.

12:08:25   24          (Recess.)

12:35:50   25          (Venire panel in.)

| | | |
|---|---|---|
| 12:36:00 | 1 | COURT SECURITY OFFICER:  All rise. |
| 12:36:01 | 2 | THE COURT:  Be seated, please. |
| 12:37:03 | 3 | Ladies and gentlemen, if you will listen carefully |
| 12:37:16 | 4 | as your name is called.  And if your name is called, if |
| 12:37:19 | 5 | you'll come forward and take a seat in the jury box. |
| 12:37:23 | 6 | I'm going to ask that the first person called go |
| 12:37:29 | 7 | down to the end of the front row, the first row on the jury |
| 12:37:33 | 8 | box.  And if you will, there may be something in that |
| 12:37:41 | 9 | furthest seat.  There may be a mask or a face shield or |
| 12:37:44 | 10 | something.  Pick that up or stand in front of that.  I'm |
| 12:37:47 | 11 | going to have everybody in the box before I seat you. |
| 12:37:49 | 12 | But if the first person will stand in front of the |
| 12:37:52 | 13 | furthest chair on the front row, the one closest to you |
| 12:37:55 | 14 | all, and then the second person will leave a vacant chair |
| 12:38:00 | 15 | and stand in front of the next one, and the third person |
| 12:38:03 | 16 | will leave vacant chair and stand in front of the next |
| 12:38:06 | 17 | one, and the fourth person leave a vacant chair, and that |
| 12:38:09 | 18 | will put them on the end of the first row closest to me. |
| 12:38:12 | 19 | Then on the second row, whoever is going to be |
| 12:38:16 | 20 | Juror No. 5, if you will leave the last chair on the second |
| 12:38:20 | 21 | row closest to the gallery where you are vacant and stand |
| 12:38:24 | 22 | in front of the second chair.  And then the next one, |
| 12:38:29 | 23 | No. 6, will leave a vacant chair and stand in front of the |
| 12:38:33 | 24 | next one.  That way the four of you on the back row will be |
| 12:38:37 | 25 | looking across the vacant chair of the person on the front |

12:38:40  1  row, and you won't be directly behind each other, and there

12:38:44  2  won't be any risk that somebody short sitting in front of

12:38:49  3  somebody tall will have problem seeing things over the

12:38:53  4  course of the trial.  I hope that's clear.

12:38:56  5         So with those instructions, I'm going to ask

12:38:58  6  Ms. Lockhart to call the names of the eight members of the

12:39:02  7  panel that have been selected to serve as jurors in this

12:39:05  8  case.

12:39:06  9         COURTROOM DEPUTY:  Linda Hirzel, Eric Walker,

12:39:19  10  Brenda Carpenter, Felicia Hux, Shani Anderson, Ervin

12:39:52  11  Talton, Richard Storey, and William Smigiel -- Smigiel.

12:40:29  12         Sorry about that.

12:40:40  13         THE COURT:  Thank you, ladies and gentlemen.

12:40:50  14         If you would make sure there's a seat vacant

12:40:53  15  between you and the closest person to you, and then if you

12:40:55  16  would pick up anything that's in the seat directly behind

12:40:59  17  you, and then have a seat, please.

12:41:00  18         All right.  Those of you that were not selected to

12:41:17  19  serve in this case, I'm about to excuse you, but I'd like

12:41:23  20  to -- before I formally excuse you, I'd like to tell you

12:41:28  21  very sincerely how much the Court appreciates your presence

12:41:32  22  here this morning -- your presence here this morning, your

12:41:36  23  willingness to serve.

12:41:37  24         I am well aware, ladies and gentlemen, that every

12:41:40  25  one of you had other places to be today and other things to

12:41:43  1  do this morning that were important and significant in your

12:41:47  2  lives, and you set those aside, and you made the sacrifice

12:41:51  3  to be here as summoned and present yourself for jury duty.

12:41:56  4      That is a very real and important public service,

12:41:59  5  notwithstanding the fact that you were not actually

12:42:02  6  selected to serve on this jury.  And the Court wants to

12:42:04  7  thank you publicly and acknowledge the importance of what

12:42:08  8  you've done by being here this morning.

12:42:10  9      Let me make it clear, the Court could not

12:42:12  10  discharge its obligations under the Constitution if

12:42:17  11  ordinary citizens, such as yourselves, did not come

12:42:20  12  forward, as you have, and present yourself when summonsed

12:42:23  13  to appear for jury duty.

12:42:24  14      Even though you weren't selected, you have

12:42:27  15  performed a very real and important public service.  You

12:42:31  16  have helped protect, defend -- protect, preserve, and

12:42:35  17  defend our Constitution by being here.  It is no small

12:42:38  18  thing, ladies and gentlemen.  And I want you to know, I am

12:42:41  19  well aware of that.  These lawyers on both sides are well

12:42:44  20  aware of that.  Everyone thanks you for the sacrifices

12:42:47  21  you've made by being here this morning and presenting

12:42:50  22  yourselves.

12:42:50  23      I'm going to excuse you in just a second.  As I

12:42:55  24  do, if you would exit through the double doors in the back

12:42:58  25  of the courtroom.  If you will make sure you see the

12:43:00  1  clerk's office as you turn to the right and go out.  If you

12:43:03  2  need a restroom and you didn't get a chance earlier, take a

12:43:06  3  left going outside those double doors, and right around the

12:43:10  4  corner are the public restrooms for men and women.

12:43:13  5          If you're ready to leave the building, if you'll

12:43:16  6  turn to the right going out these double doors, you'll go

12:43:19  7  right past the clerk's office and the main entrance to the

12:43:23  8  courthouse.

12:43:23  9          Please stop at the clerk's office.  Make sure they

12:43:28  10 get these very expensive numbers you've been wearing on

12:43:30  11 your garments' back.  We like to keep those.  Those are not

12:43:35  12 souvenirs.

12:43:36  13         Also, if you have any questions or you need any

12:43:37  14 documentation for an employer of where you've been this

12:43:40  15 morning, the clerk's office will be more than happy to help

12:43:44  16 you.  If you have any questions at all, please present them

12:43:46  17 to the clerk's office as you leave the building.

12:43:50  18         Again, ladies and gentlemen, thank you so much for

12:43:52  19 your presence, for your willingness to serve, and for what

12:43:55  20 you've done by being good citizens to be here this morning.

12:43:59  21         With that, those of you not selected to serve on

12:44:02  22 this jury are now excused.

12:44:03  23         COURT SECURITY OFFICER:  All rise.

12:44:07  24         (Unselected venire panel members out.)

12:44:31  25         THE COURT:  I'm going to ask everybody but the

12:45:17   1   jury to be seated, please.

12:45:19   2          Ladies and gentlemen of the jury, if you'd remain

12:45:22   3   standing.

12:45:22   4          And at this time, I'm going to ask Ms. Lockhart,

12:45:25   5   our courtroom deputy, to administer the oath to the members

12:45:29   6   of the jury.

12:45:30   7          (Jurors sworn.)

12:45:34   8          THE COURT:  Please be seated.

12:45:46   9          Ladies and gentlemen, I'm about to excuse you for

12:45:56   10  a late lunch, and it should be waiting for you in the jury

12:46:00   11  room when I release you in just a few minutes.  But before

12:46:04   12  I do, I need to cover a couple important instructions to

12:46:07   13  you.

12:46:08   14         You've found either in your chair or the chair

12:46:12   15  next to you a plastic face shield and a plastic mask that's

12:46:17   16  clear and transparent.  Take those with you when you go to

12:46:20   17  the jury room for lunch.  And if you will, look at them,

12:46:23   18  decide which of those or both of them you'd like to use,

12:46:27   19  but if you would replace your existing masks over the lunch

12:46:30   20  break with either the face shield or the plastic mask or

12:46:34   21  both.  But if you would, don't open them now, just take

12:46:39   22  them with you when you go to lunch.

12:46:40   23         And one thing I will tell you from past experience

12:46:43   24  with regard to these, there's film on the front that you

12:46:47   25  have to peel off.  Otherwise, if you do like I did and put

12:46:51  1  it on without that, everything looks blurry.  So make sure

12:46:54  2  if you're going to use the face shield, that you peel off

12:46:56  3  the plastic film, and then you'll have a clear

12:46:59  4  line-of-sight through that.

12:47:00  5       But make that decision, if you will, over the

12:47:03  6  lunch break.  And when you come back in after lunch, if you

12:47:06  7  would have either or both that you're comfortable with

12:47:11  8  wearing in lieu of those obstructive masks that we can't

12:47:16  9  see around now that you all have on.

12:47:18  10      Also, ladies and gentlemen, I told everybody that

12:47:20  11  I wanted everybody to keep their same seats throughout the

12:47:24  12  process, but I'm going to change that rule just a little

12:47:26  13  bit because I didn't understand Mr. Talton had a cane and

12:47:30  14  had some difficulty walking.

12:47:32  15      So I'm going to ask Mr. Smigiel and Mr. Talton to

12:47:38  16  switch over the lunch hour, so that when you come back,

12:47:41  17  Mr. Smigiel will be in the middle of the back row and

12:47:44  18  Mr. Talton will be on the end, and that will make it easier

12:47:46  19  for him, and then we'll just keep that order throughout the

12:47:48  20  process as we go forward, all right?

12:47:50  21      Now, let me give you a few instructions on the

12:47:54  22  record that are very important.  I'll try to go through

12:47:57  23  these quickly and then let you go to lunch.

12:47:59  24      While you're over -- while you're having a lunch

12:48:03  25  break, I'm going to ask Ms. Clendening or her staff in the

12:48:07  1  clerk's office to come in and check on you.  When they do,

12:48:10  2  please give the clerk's office a good working cell phone

12:48:13  3  number for each of you.

12:48:15  4      It is possible over the course of this trial that

12:48:18  5  we might need to reach you after-hours while you're away

12:48:22  6  from the courthouse.  And given the world in which we live,

12:48:25  7  the best way to do that is if you would give a good,

12:48:29  8  accurate cell phone number to the clerk's office so they

12:48:31  9  can write that down and have it.

12:48:33  10      It probably won't happen, but just as a

12:48:37  11  precaution, please make sure when they check on you over

12:48:41  12  the lunch break that you give the clerk's office a good

12:48:43  13  working cell phone number for you.

12:48:45  14      Also, speaking of cell phones, over the course of

12:48:48  15  the trial, you're going to see these lawyers out here with

12:48:51  16  laptops and iPads and smartphones and all kinds of

12:48:56  17  electronic devices.  Those are now the legal pads and pens

12:49:01  18  that we used to use when I got out of law school.  They're

12:49:06  19  tools of the trade and they're entitled to have them and

12:49:07  20  they're entitled to use them throughout the trial process.

12:49:10  21      However, they're under strict requirements of me

12:49:14  22  to keep them silent and not to allow them make any kind of

12:49:17  23  noise or distract from the proceeding.

12:49:19  24      However, I'm going to ask with regard to the eight

12:49:21  25  of you that if you have a smartphone or any kind of

12:49:25  1   electronic tablet that you usually carry with you, that you

12:49:29  2   either leave that at home or you leave it in your vehicle

12:49:32  3   when you come back tomorrow.  If you have it with you now,

12:49:37  4   leave it in the court -- in the jury room and don't bring

12:49:41  5   it back into the courtroom.

12:49:43  6        There are two reasons for this.  Number one,

12:49:46  7   invariably, if you're like me, you think it's on silent and

12:49:48  8   it's not and it rings in the middle of something important

12:49:50  9   going on and creates a very negative distraction.

12:49:54  10        But also, ladies and gentlemen, one of the things

12:49:57  11   I'm going to tell you about your job as jurors during this

12:50:00  12   trial is that you are not to research anything about this

12:50:04  13   case.  You're not to have any outside information about

12:50:07  14   this process.

12:50:09  15        And as we all know, smartphones, whether it's an

12:50:13  16   Apple phone or an Android phone, they are basically small

12:50:16  17   computers that you carry with you.  And the temptation to

12:50:19  18   do a online search about one of these lawyers or one of

12:50:23  19   these products you're going to hear about or one of these

12:50:26  20   parties or anything related to this trial, sometimes is

12:50:29  21   tempting.  And I don't want you to be tempted to do

12:50:33  22   anything that would violate the instructions I'm going to

12:50:35  23   give you.

12:50:35  24        So, please, don't bring your cell phones back into

12:50:40  25   the courtroom.  Leave them in the jury room if you have

12:50:43  1   them with you today.  And starting tomorrow, either leave

12:50:45  2   them in your car, and if you need to check an important

12:50:48  3   email or something related to your work, there will be

12:50:53  4   recesses and lunch breaks where you can run to your vehicle

12:50:57  5   and do that, if that's important.  But either leave them in

12:51:00  6   your vehicle or leave them at home and don't bring them

12:51:03  7   back to the courthouse tomorrow.

12:51:04  8           Also, ladies and gentlemen, and this may be the

12:51:06  9   most important instruction I give you throughout the entire

12:51:09  10  trial.  They're all important, but this one, at least in my

12:51:12  11  view, is right up there at the top.  Do not communicate

12:51:15  12  with anyone about this case.  Do not discuss this case with

12:51:18  13  anyone.

12:51:20  14          Once you've heard all the evidence -- and the

12:51:23  15  evidence in this case will be the sworn testimony that's

12:51:25  16  presented under oath and subject to cross-examination by

12:51:30  17  the witnesses from the witness stand and the documents and

12:51:33  18  other tangible things that the Court has already reviewed

12:51:36  19  and examined and has determined comply with the Rules of

12:51:41  20  Evidence and are fully admissible as exhibits.  Those two

12:51:45  21  categories of information are the only information that you

12:51:49  22  should have before you as a part of this trial and at the

12:51:53  23  time that I instruct you to retire to the jury room to

12:51:57  24  consider the questions set forth in the verdict form and to

12:52:00  25  render your verdict in this case.

12:52:02  1          It must be at that point, when I ask you to answer

12:52:07  2   those questions that are in the verdict form after the

12:52:09  3   trial is at an end and you've heard all the evidence in

12:52:12  4   this case, that the sole universe of the information you

12:52:16  5   have to draw on must be limited to and confined to the

12:52:21  6   sworn testimony that's presented in court and the exhibits

12:52:24  7   that I have introduced and I have permitted to be

12:52:28  8   introduced into evidence.  That's it.  It can't be anything

12:52:31  9   else.

12:52:31  10         And if there is any outside information that is

12:52:36  11  before you other than the sworn testimony of the witnesses

12:52:40  12  and the admitted -- the admitted exhibits in the case, then

12:52:45  13  it jeopardizes the entire process, and it may very well

12:52:49  14  require me to start the entire trial over with a brand-new

12:52:53  15  jury and waste hundreds and thousands of hours of work and

12:52:58  16  thousands and thousands of dollars of expense and a lot of

12:53:01  17  your time and attention and energy.

12:53:04  18         So, please, it is a fundamental rule that you must

12:53:08  19  not communicate with anyone about this case, you must not

12:53:12  20  discuss this case in any way.

12:53:15  21         And I will tell you, as I tell every jury, unless

12:53:18  22  you live alone, when you get home tonight, I don't care

12:53:22  23  where it is or who you live with, whoever is there to meet

12:53:26  24  you when you walk in the door, the first question out of

12:53:29  25  their mouth is going to be:  Well, what happened in federal

12:53:32  1   court in Marshall today?

12:53:34  2          Don't even try to answer that question.  Just

12:53:37  3   smile and say, that very stern Federal Judge told me not to

12:53:42  4   talk about the case with anyone until the trial was over

12:53:45  5   and he had released me as being a juror in the case, and I

12:53:50  6   can't discuss it now.

12:53:52  7          Just make sure you give that answer, because if

12:53:54  8   you even try to answer the question, and you will get the

12:53:57  9   question unless you live alone, you're going to almost

12:54:00 10   invariably violate the instruction I've given you.

12:54:02 11          And when I say, ladies and gentlemen, don't --

12:54:06 12   don't communicate about the case in any way, that means not

12:54:10 13   only speaking back and forth to another human, that means

12:54:16 14   for any of you that are users of social media and social

12:54:20 15   media platforms, do not post on Facebook, do not tweet on

12:54:26 16   Twitter, do not use Instagram or any of the other myriad of

12:54:31 17   social networks -- social media networks out there or other

12:54:36 18   electronic means of communication.  Those are just as much

12:54:38 19   communication as you talking to whoever meets you at home

12:54:42 20   and asks you about your day in Marshall today.  Do not

12:54:45 21   discuss the case with anyone in any way.

12:54:48 22          Also, when I say, don't discuss the case with

12:54:53 23   anyone, I also mean the eight of you.  When you're at

12:54:56 24   lunch, when you're on a recess, when you're coming and

12:54:59 25   going, certainly be friendly, speak to each other, but

12:55:02  1   don't discuss the testimony, the exhibits, the evidence,

12:55:04  2   the arguments.  Don't discuss anything that's happened with

12:55:08  3   this trial.

12:55:10  4        That is reserved until all the evidence is in and

12:55:16  5   you've heard the Plaintiff's evidence, you've heard the

12:55:19  6   Defendants' evidence, and you've heard any rebuttal

12:55:20  7   evidence the Plaintiff may put on.  That's what the rules

12:55:23  8   of procedure allow.

12:55:24  9        And when all the evidence has been presented, then

12:55:28  10  I will instruct you to retire to the jury room after I've

12:55:32  11  given you specific instructions on how to answer the

12:55:35  12  verdict form and the questions set forth in it.

12:55:39  13       And when that happens, ladies and gentlemen, when

12:55:42  14  you've heard all the evidence and I've instructed you to

12:55:45  15  retire to the jury room and consider your verdict, then the

12:55:49  16  light switches, and everything turns 180 degrees.  Then you

12:55:54  17  go from you are prohibited from discussing the case with

12:55:56  18  each other to you are required to discuss the case with

12:56:00  19  each other and discuss the evidence and discuss the

12:56:04  20  evidence in light of the instructions I've given you and

12:56:07  21  the questions that are in the verdict form for you to

12:56:10  22  answer so that you can answer those questions, and answer

12:56:16  23  them unanimously.

12:56:17  24       So until all the evidence has been presented and I

12:56:19  25  tell you to retire and deliberate on your verdict, you must

12:56:21   1   not discuss the case among the eight of yourselves, and you

12:56:24   2   must not discuss or communicate in any way with anyone

12:56:28   3   about this case.

12:56:30   4        But once you've heard all the evidence, once I've

12:56:33   5   given you my final instructions on the law to apply, once

12:56:36   6   counsel have presented their closing arguments to you, and

12:56:40   7   I say, ladies and gentlemen, you may now retire to the jury

12:56:44   8   room to consider and act upon your verdict, at that point,

12:56:48   9   that magic point, you go from being prohibited to discuss

12:56:52   10   the case among each other to required to discuss the

12:56:55   11   evidence and the case amongst each other in an attempt to

12:56:59   12   answer those questions in that verdict form in a unanimous

12:57:03   13   fashion.

12:57:03   14        So don't discuss the case with anyone.  Don't

12:57:07   15   communicate about the case with anyone.  Don't post on any

12:57:11   16   electronic media.  Don't email.  Don't text.  Don't instant

12:57:16   17   message.

12:57:16   18        Also, don't do any research about anything.  Don't

12:57:19   19   go home on your family computer and Google Solas or Samsung

12:57:24   20   or anything about any of these lawyers or me or anything

12:57:29   21   about this case.  Don't do any outside research whatsoever

12:57:34   22   of any kind, whether it's at home on your computer or in

12:57:37   23   the public library with an encyclopedia.  Just don't do any

12:57:41   24   outside research of any kind.

12:57:42   25        Again, the fundamental foundational rule is that

12:57:47   1   you must base the decisions you make in this case solely

12:57:51   2   and only on the evidence that comes in during the trial

12:57:56   3   under oath from the witnesses subject to cross-examination

12:58:00   4   and the exhibits that the Court and only the Court has

12:58:04   5   admitted into evidence.  That is the entirety, the sole

12:58:08   6   universe of the information that you must have before you.

12:58:12   7   And if you have any other information from any other

12:58:14   8   source, it jeopardizes the entire process.

12:58:17   9        So that's why I say this may be the most important

12:58:21  10   instruction I give you.  They're all important.  I expect

12:58:24  11   you to follow all of them.  But I start with this one

12:58:26  12   because it is so significant.

12:58:28  13        As a matter of fact, ladies and gentlemen, anybody

12:58:32  14   that's been in a trial with me before will tell you it's so

12:58:38  15   important that I'm going to probably, just out of habit,

12:58:42  16   instruct you again and again and again on this.  Pretty

12:58:45  17   much any time you get out of those chairs and you walk to

12:58:48  18   this jury room, whether it's for a recess or a lunch break

12:58:51  19   or to go home at the end of the day, you're going to hear

12:58:54  20   me say, do not discuss or communicate with anyone about

12:58:57  21   this case in any way.  You're going to hear it over and

12:59:00  22   over -- you're going to be tired of hearing it by the time

12:59:03  23   this trial is over.

12:59:04  24        But it is absolutely fundamental, and it is

12:59:08  25   critically important, and that's why I'm going to

12:59:10   1   repetitively remind you of this instruction throughout the

12:59:13   2   process.

12:59:14   3          Also, ladies and gentlemen, I don't think this is

12:59:18   4   likely to happen, but I want you to understand there is a

12:59:22   5   lot on the line for both the Plaintiffs and the Defendants

12:59:24   6   in this case.  And there are no small cases that get to

12:59:28   7   trial before a jury in a United States District Court.

12:59:32   8   This is an important trial.

12:59:33   9          It is possible -- I don't think it's likely, but

12:59:37  10   it is possible some outside source might try to contact you

12:59:42  11   during the trial of this case and approach you about how

12:59:46  12   you will vote to decide the issues in this case.

12:59:49  13          That is absolutely improper.  It is in almost

12:59:55  14   every circumstance a crime, and I don't think it will

12:59:58  15   happen.  But if it should, because this is an important

01:00:02  16   trial, if you are approached by anyone in any way during

01:00:07  17   your service as jurors that you feel the least bit awkward

01:00:11  18   about or it seems out of place or not right in any way,

01:00:16  19   then you should immediately tell Ms. Clendening in the

01:00:19  20   clerk's office, she will tell me, and the Court will

01:00:22  21   address it.

01:00:23  22          I don't think it's likely, but I have to tell you

01:00:26  23   it's within the realm of possibility.  So be aware of that

01:00:32  24   as we go forward.

01:00:32  25          Also, over the course of the trial, you'll be

01:00:37   1   coming in in the mornings and leaving in the evenings,

01:00:41   2   there'll be breaks for lunch, et cetera.  There may well be

01:00:45   3   times that you pass one or more of these lawyers or

01:00:48   4   witnesses or company representatives on the sidewalk out

01:00:52   5   front, on the stairs, somewhere in the public spaces in and

01:00:56   6   around this courthouse.

01:00:56   7          I want you to understand when you do, they're not

01:00:59   8   going to talk to you.  They're not going to say, good

01:01:02   9   morning, how are you?  Did you have a good night?  They're

01:01:05  10   not going to be friendly and outgoing and gregarious as we

01:01:09  11   always are in East Texas because I have instructed them not

01:01:13  12   to, because the only communication that you should have

01:01:16  13   before you when you decide this case is the sworn testimony

01:01:21  14   from the witness stand and the exhibits admitted over the

01:01:23  15   course of the trial by the Court.

01:01:24  16          So if that happens, or I should say when that

01:01:29  17   happens, and one of the lawyers, one of the witnesses, one

01:01:32  18   of the people associated with either or both sides of this

01:01:34  19   case walks right by you on the front sidewalk or steps,

01:01:38  20   right past you on the stairs, and they don't speak and

01:01:42  21   they're not friendly, don't hold that against them.  They

01:01:46  22   are not being rude.  They are not being unfriendly.  They

01:01:49  23   are simply doing what the Court instructs them to do.

01:01:52  24          Also, ladies and gentlemen, I want you to have

01:01:57  25   some general idea of how the trial is going to run over the

01:02:00  1    course of this week.

01:02:03  2         It has been my experience on the bench, and it

01:02:05  3    will soon be 10 years that I've been a United States

01:02:10  4    District Judge, it has been my experience over my entire

01:02:13  5    time on the bench that jurors in East Texas tell me over

01:02:16  6    and over again, we would rather start early and go late and

01:02:19  7    be away from our homes, our work, and our family a shorter

01:02:24  8    and fewer number of days than if we started late and quit

01:02:27  9    early and were away from our homes and our work and our

01:02:31  10   families a longer number of days.

01:02:32  11        So we will typically start each morning about

01:02:36  12   8:30.  And I'm going to ask you each day to be in the jury

01:02:40  13   room, assembled, and ready to go in advance of 8:30.  You

01:02:44  14   don't need to be getting here any later than about 8:15 or

01:02:49  15   8:20.

01:02:50  16        And there will be coffee and there will be snacks

01:02:52  17   provided for you in the jury room before we start each day.

01:02:55  18   But be prepared to come into the courtroom and start at

01:02:58  19   8:30 each morning.

01:02:59  20        Now, that said, you may have to wait on me some

01:03:04  21   mornings.  There are things that come up that I might not

01:03:07  22   expect that I may have to take up with the lawyers outside

01:03:09  23   of yours presence.

01:03:11  24        So I won't promise you that 8:30 on the dot the

01:03:16  25   door is going to open and you're going to come in and we'll

01:03:19  1  start.  But I need you there so that we can start that

01:03:22  2  early unless there's a reason not to.

01:03:24  3      Trials are not science.  They're not predictable

01:03:30  4  in every regard.  And there are sometimes things that arise

01:03:34  5  that I have to deal with that you're not aware of.

01:03:36  6      But I promise you, unless there's a reason not to

01:03:39  7  start right on time at 8:30, I will bring you in, and we'll

01:03:41  8  start at 8:30.

01:03:42  9      We'll take a recess each morning.  We'll take two

01:03:46 10  recesses each afternoon.  We'll take a lunch break usually

01:03:52 11  about 45 minutes because lunch is going to be on the table

01:03:55 12  waiting for you as soon as you leave this room and go into

01:03:59 13  the jury room.

01:03:59 14      And that's the general time frame.  You should

01:04:01 15  know, we're not going to stop at 5:00 o'clock.  I'm looking

01:04:07 16  at Juror No. 4.  We're not going to operate on bankers'

01:04:11 17  hours here, as they say.  And I know bankers work a lot

01:04:15 18  more hours when the bank's closed than they do when the

01:04:20 19  bank is open.  But we'll probably go each day at least to

01:04:24 20  5:30, maybe to 6:00 o'clock.  I want you to understand

01:04:28 21  trials are not a precise thing.

01:04:34 22      For example, some of these witnesses may be on the

01:04:37 23  witness stand 20 minutes, and they're off.  Some of them

01:04:40 24  may be on the witness stand two hours or longer, and then

01:04:42 25  they're off.  If we have a witness on the witness stand

01:04:45  1  who's finishing or close to finishing their testimony and

01:04:47  2  it's 5:45 and there's another 20 minutes or 30 minutes to

01:04:54  3  go, I may let that witness finish and let that be the place

01:04:57  4  we stop for the day.

01:04:58  5        If there's a witness that's going to be on there

01:05:00  6  three hours and the witness before steps off the witness

01:05:04  7  stand about 5:45, I'm not going to put a three-hour witness

01:05:09  8  on at 5:45 in the afternoon.

01:05:12  9        So it's not a perfect science.  I'm going to have

01:05:14  10  the best calls that I can, but you should not plan on

01:05:18  11  leaving here at 4:30 or 5:00 o'clock.  I hope we won't be

01:05:22  12  much later than 6:00 during the week.  We might.  But

01:05:25  13  somewhere in that 5:30 to 6:30 hour range, it's -- that's

01:05:30  14  usually where we stop for the day.

01:05:32  15        And, again, I do that because I don't want to

01:05:34  16  bring you back next week, and I don't want you to have to

01:05:37  17  go longer than a week to hear all this evidence and be away

01:05:40  18  from your homes and your work and your family more days

01:05:44  19  than it will take for us to get this case tried.

01:05:48  20        So plan on roughly 8:30 to about 5:30 or 6:00

01:05:53  21  o'clock in general terms.  And, remember, it's not an exact

01:05:56  22  science, but that's my best estimate so you'll have some

01:05:59  23  idea about how to plan your travel each day back and forth

01:06:02  24  to the courthouse.

01:06:03  25        All right.  Ladies and gentlemen, I'm going --

01:06:06    1    with those instructions, I'm going to excuse you for lunch.

01:06:09    2    It should be either in there or right with you shortly in

01:06:14    3    the jury room.

01:06:15    4           It is -- I've got about five minutes after 1:00.

01:06:19    5    We'll start -- I'll start about 2:00 o'clock, which should

01:06:25    6    give you 55 minutes.  Use that time, as I mentioned, to

01:06:29    7    make sure the clerk's office has a good cell phone number.

01:06:32    8           Decide which of these devices so that I can see

01:06:34    9    your faces and the lawyers can see your faces you want to

01:06:38    10   use during the trial.  And open them up and figure that out

01:06:42    11   over the course of the lunch break.  Enjoy your lunch.

01:06:44    12          Follow all the instructions I've given you,

01:06:46    13   including, of course, not to discuss the case with each

01:06:48    14   other.  And we'll have you back about 2:00 o'clock to

01:06:52    15   continue.

01:06:53    16          With that, the jury's excused for lunch.

01:06:56    17          COURT SECURITY OFFICER:  All rise.

01:06:58    18          (Jury out.)

01:06:58    19          THE COURT:  The Court stands in recess.

01:08:06    20          (Recess.)

            21

            22

            23

            24

            25

1                         CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /S/ Shelly Holmes                      3/1/2021
     SHELLY HOLMES, CSR, TCRR                Date
10   FEDERAL OFFICIAL REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25