```
1                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF TEXAS
2                        MARSHALL DIVISION

3   SOLAS OLED LTD.,              )(   CIVIL ACTION NO.
                                  )(   2:19-CV-152-JRG
4        PLAINTIFF,               )(
                                  )(
5        VS.                      )(
                                  )(
6   SAMSUNG DISPLAY CO., LTD.,    )(
    SAMSUNG ELECTRONICS CO.,      )(   MARSHALL, TEXAS
7   LTD., SAMSUNG ELECTRONICS     )(   MARCH 5, 2021
    AMERICA, INC.,                )(   8:23 A.M. - 5:26 P.M.
8                                 )(
         DEFENDANTS.              )(
9
```

10                   TRANSCRIPT OF JURY TRIAL

11        BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

12             UNITED STATES CHIEF DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE PLAINTIFFS:

16   MR. MARC FENSTER
     MR. REZA MIRZAIE
17   MR. ADAM S. HOFFMAN
     MR. NEIL A. RUBIN
18   MR. JACOB R. BUCZKO
     MR. JAMES S. TSUEI
19   RUSS AUGUST & KABAT
     12424 Wilshire Boulevard, 12th Floor
20   Los Angeles, CA 90025

21   MR. T. JOHN WARD, JR.
     MS. CLAIRE ABERNATHY HENRY
22   MS. ANDREA L. FAIR
     WARD, SMITH & HILL, PLLC
23   1507 Bill Owens Parkway
     Longview, TX 75604

24

25

```
 1  FOR THE DEFENDANTS:

 2  MS. MELISSA R. SMITH
    GILLAM & SMITH, LLP
 3  303 South Washington Avenue
    Marshall, TX 75670

 4

 5  MR. JEFFREY H. LERNER
    MR. JARED R. FRISCH
 6  MR. DANIEL E. VALENCIA
    MR. DANIEL W. CHO
 7  MR. TAREK J. AUSTIN
    MR. ERIC T. O'BRIEN
 8  MR. DAVID J. CHO
    MR. JORDAN V. HILL
 9  COVINGTON & BURLING LLP
    One CityCenter
10  850 Tenth Street, NW
    Washington, DC 20001-4956

11

12  MR. ROBERT T. HASLAM
    COVINGTON & BURLING LLP
13  3000 El Camino Real
    5 Palo Alto Square, 10th Floor
14  Palo Alto, CA 94306-2112

15

16

17

18  COURT REPORTER:    Ms. Shelly Holmes, CSR, TCRR
                       Official Court Reporter
19                     United States District Court
                       Eastern District of Texas
20                     Marshall Division
                       100 E. Houston
21                     Marshall, Texas  75670
                       (903) 923-7464

22

23
    (Proceedings recorded by mechanical stenography, transcript
24  produced on a CAT system.)

25
```

|   |   |
|---|---|
| | 1 |
| 08:23:44 | 2 |
| 08:23:44 | 3 |
| 08:23:45 | 4 |
| 08:24:12 | 5 |
| 08:24:18 | 6 |
| 08:24:22 | 7 |
| 08:24:24 | 8 |
| 08:24:30 | 9 |
| 08:24:34 | 10 |
| 08:24:38 | 11 |
| 08:24:38 | 12 |
| 08:24:40 | 13 |
| 08:24:41 | 14 |
| 08:24:41 | 15 |
| 08:24:45 | 16 |
| 08:24:45 | 17 |
| 08:24:59 | 18 |
| 08:25:19 | 19 |
| 08:25:39 | 20 |
| 08:25:58 | 21 |
| 08:26:01 | 22 |
| 08:26:06 | 23 |
| 08:26:11 | 24 |
| 08:26:13 | 25 |

1                    P R O C E E D I N G S

2              (Jury out.)

3              COURT SECURITY OFFICER:  All rise.

4              THE COURT:  Be seated, please.

5              Are the parties prepared to read into the record

6   those items from the list of pre-admitted exhibits used

7   during yesterday's portion of the trial?

8              MS. HENRY:  Good morning, Your Honor.  Plaintiff

9   did not use any exhibits yesterday that had not already

10  been entered into the record.  So we do not have a list to

11  read this morning.

12             THE COURT:  All right.  Is there something to

13  offer from Defendants?

14             MR. HILL:  Good morning, Your Honor.  Yes.

15  Defendants have a number of exhibits to read into the

16  record.

17             DTX-1, DTX-2, 3, 110, 163, 167, 169, 327, 328,

18  471, 633, 669, 677, 699, 706, 710, 719, 732, 740, 749, 775,

19  789, 805, 989, 993, 995, 997, 998, 999, 1045, 1046, 1047,

20  1048, 1049, 1050, 1306, 1307, 1311, 1572, 1573, 1574, 1575,

21  1576, and 1577.

22             THE COURT:  Thank you, Mr. Hill.

23             Is there any objection, Ms. Henry, from Plaintiff?

24             MS. HENRY:  No objection, Your Honor.

25             THE COURT:  Thank you, counsel.

08:26:13  1          Plaintiff -- excuse me, Defendant, who do you
08:26:15  2   intend as your next witness?
08:26:17  3          MR. LERNER:  Mr. Yongseog Kim of Samsung Display.
08:26:22  4          THE COURT:  And he'll be examined with the aid of
08:26:26  5   the same interpreter that we used with the last
08:26:30  6   non-English-speaking witness?
08:26:31  7          MR. LERNER:  Yes, Your Honor.
08:26:31  8          THE COURT:  Both the witness and the interpreter
08:26:35  9   are present and available?
08:26:35  10          MR. LERNER:  They should be, yes.
08:26:36  11          MR. FENSTER:  Your Honor, may I ask for leave to
08:26:38  12   be excused from the counsel table this morning?
08:26:40  13          THE COURT:  Yes, Mr. Fenster, as I've previously
08:26:45  14   given leave to Mr. Haslam.
08:26:48  15          MR. FENSTER:  Thank you.
08:26:50  16          THE COURT:  All right.  Let's bring in the jury.
08:26:52  17          COURT SECURITY OFFICER:  All rise.
08:26:53  18          (Jury in.)
08:26:54  19          THE COURT:  Good morning, ladies and gentlemen.
08:27:17  20   Welcome back.  Please have a seat.
08:27:19  21          Defendants, call your next witness.
08:27:24  22          MR. LERNER:  Your Honor, Defendants call
08:27:28  23   Mr. Yongseog Kim of Samsung Display.
08:27:31  24          THE COURT:  All right.  If the witness will come
08:27:32  25   forward along with the interpreter.

08:27:34   1          Ladies and gentlemen, this witness will testify

08:27:36   2    using the aid of an interpreter.  As with an earlier

08:27:40   3    witness you've already seen in the trial, we're using the

08:27:43   4    same interpreter who's previously been sworn.

08:27:45   5          (Witness sworn.)

08:29:44   6          MR. LERNER:  Your Honor, may we approach?

08:29:48   7          THE COURT:  You may pass out the binders.

08:29:51   8          All right.  Mr. Lerner, you may proceed.

08:29:54   9          MR. LERNER:  Thank you, Your Honor.

08:29:54  10          <u>YONGSEOG KIM, DEFENDANT'S WITNESS, SWORN</u>

08:29:54  11                      <u>(INTERPRETED)</u>

08:29:54  12                   <u>DIRECT EXAMINATION</u>

08:29:58  13   BY MR. LERNER:

08:29:58  14   Q.  Mr. Kim, will you please introduce yourself to the

08:30:02  15   jury?

08:30:03  16   A.  Good morning, everyone.  My name is Yongseog Kim, and I

08:30:13  17   am working at IP, or Internet Protocol, team at Samsung

08:30:17  18   Display.

08:30:17  19   Q.  How long you have worked at Samsung Display?

08:30:28  20   A.  Including the time that I spent at a former entity

08:30:32  21   called SDI, it has been 17 years.

08:30:35  22          THE COURT:  Let me ask if the interpreter will

08:30:37  23   move the mic between you and the witness, and if you'll

08:30:40  24   speak into the mic --

08:30:41  25          THE INTERPRETER:  Oh, okay, sir.

08:30:43  1          THE COURT:  -- when you give the English

08:30:45  2   translation, please.  Thank you.

08:30:49  3          Please ask your next witness, counsel.

08:30:52  4          MR. LERNER:  Thank you, Your Honor.

08:30:55  5   Q.  (By Mr. Lerner)  As part of your role at Samsung

08:30:57  6   Display, have you been involved in licensing?

08:30:59  7   A.  Yes.

08:31:03  8   Q.  Does Samsung Display have patents of its own?

08:31:06  9   A.  Yes.

08:31:10  10  Q.  Has Samsung Display licensed any of its patents to

08:31:13  11  other companies?

08:31:14  12  A.  Yes.

08:31:21  13  Q.  Does Samsung Display respect the patents of other

08:31:24  14  companies?

08:31:26  15  A.  Yes, of course.

08:31:31  16  Q.  Has Samsung Display licensed any patents from other

08:31:36  17  companies that relate to OLEDs?

08:31:39  18  A.  Yes.

08:31:47  19          MR. LERNER:  Your Honor, we move to seal the

08:31:49  20  courtroom to move into confidential information.

08:31:52  21          THE COURT:  Based on counsel's request, I'll order

08:31:54  22  the courtroom sealed and direct that anyone present who is

08:31:58  23  not subject to the protective order in this case should

08:32:00  24  excuse themselves and remain outside the courtroom until

08:32:03  25  it's reopened and unsealed.

| | | |
|---|---|---|
| 08:32:06 | 1 | (Courtroom sealed.) |
| 08:32:06 | 2 | (This portion of the transcript is sealed |
| 08:32:06 | 3 | and filed under separate cover as |
| 08:32:06 | 4 | Sealed Portion No. 20.) |
| 09:59:46 | 5 | (Courtroom unsealed.) |
| 09:59:46 | 6 | THE COURT:  And having ordered the courtroom |
| 09:59:50 | 7 | unsealed, the ladies and gentlemen of the jury are excused |
| 09:59:52 | 8 | for recess. |
| 09:59:53 | 9 | COURT SECURITY OFFICER:  All rise. |
| 09:59:54 | 10 | (Jury out.) |
| 09:59:54 | 11 | THE COURT:  The Court stands in recess. |
| 10:11:45 | 12 | (Recess.) |
| 10:11:50 | 13 | (Jury out.) |
| 10:11:50 | 14 | COURT SECURITY OFFICER:  All rise. |
| 10:11:51 | 15 | THE COURT:  Be seated, please. |
| 10:12:08 | 16 | Defendants, are you prepared to call your next |
| 10:12:15 | 17 | witness? |
| 10:12:16 | 18 | MS. SMITH:  We are, Your Honor. |
| 10:12:18 | 19 | THE COURT:  All right.  Let's bring in the jury, |
| 10:12:20 | 20 | please, Mr. Johnston. |
| 10:12:31 | 21 | COURT SECURITY OFFICER:  All rise. |
| 10:12:33 | 22 | (Jury in.) |
| 10:12:36 | 23 | THE COURT:  I said 10 minutes.  It's 12 minutes. |
| 10:12:58 | 24 | It's pretty close. |
| 10:12:59 | 25 | Y'all have a seat. |

| | | |
|---|---|---|
| 10:13:01 | 1 | Defendants, call your next witness. |
| 10:13:03 | 2 | MS. SMITH:  Your Honor, Defendants call Mr. Chris |
| 10:13:08 | 3 | Martinez. |
| 10:13:09 | 4 | THE COURT:  All right.  Mr. Martinez, if you'll |
| 10:13:12 | 5 | come forward and be sworn by Ms. Brunson, our courtroom |
| 10:13:18 | 6 | deputy. |
| 10:13:18 | 7 | (Witness sworn.) |
| 10:13:19 | 8 | THE COURT:  Please come around, sir.  Have a seat |
| 10:13:28 | 9 | at the witness stand. |
| 10:13:30 | 10 | MS. SMITH:  Your Honor, may I approach and pass |
| 10:13:31 | 11 | out some binders? |
| 10:13:32 | 12 | THE COURT:  Yes. |
| 10:13:33 | 13 | MS. SMITH:  Thank you. |
| 10:13:58 | 14 | THE COURT:  Ms. Smith, you may proceed with your |
| 10:14:00 | 15 | direct examination. |
| 10:14:02 | 16 | MS. SMITH:  May it please the Court. |
| 10:14:02 | 17 | CHRISTOPHER MARTINEZ, DEFENDANTS' WITNESS, SWORN |
| 10:14:02 | 18 | DIRECT EXAMINATION |
| 10:14:03 | 19 | BY MS. SMITH: |
| 10:14:03 | 20 | Q.  Good morning, Mr. Martinez. |
| 10:14:05 | 21 | A.  Good morning. |
| 10:14:06 | 22 | Q.  If you would, introduce yourself to the Court and the |
| 10:14:09 | 23 | jurors, please. |
| 10:14:11 | 24 | A.  Certainly.  My name is Christopher Martinez.  I am an |
| 10:14:16 | 25 | Austin resident.  I've been in Texas for 21 years in that |

| | | |
|---|---|---|
| 10:14:19 | 1 | area.  I am a partner with the StoneTurn Group. |
| 10:14:24 | 2 | Q.  And you say you're a partner at the StoneTurn Group. |
| 10:14:27 | 3 | What does the StoneTurn Group do? |
| 10:14:28 | 4 | A.  So we are a sort of financial and economic consulting |
| 10:14:35 | 5 | company.  We help, and in particular, I help companies |
| 10:14:39 | 6 | value their intellectual property, including their patents, |
| 10:14:42 | 7 | as well as deal with licensing and, obviously, do the work |
| 10:14:46 | 8 | that you've seen me do here today as an expert witness. |
| 10:14:51 | 9 | MS. SMITH:  Mr. Beall, if I could have you queue |
| 10:14:54 | 10 | up the slide deck, please.  Thank you, sir. |
| 10:14:57 | 11 | Q.  (By Ms. Smith)  Mr. Martinez, can you tell the jury a |
| 10:15:00 | 12 | little bit about your educational background? |
| 10:15:01 | 13 | A.  Certainly.  I have a degree in quantitative economics |
| 10:15:06 | 14 | from Stanford University.  I also have a Master's of |
| 10:15:09 | 15 | business administration with a concentration in finance and |
| 10:15:14 | 16 | accounting from UCLA. |
| 10:15:16 | 17 | Q.  And do you also have any certifications that might be |
| 10:15:20 | 18 | relevant to your work that you've done here, to tell to the |
| 10:15:21 | 19 | jury today? |
| 10:15:21 | 20 | A.  Yes, I do.  I'm a certified public accountant, but |
| 10:15:26 | 21 | please don't ask me any tax questions there.  I'm a |
| 10:15:29 | 22 | certified licensing professional.  I'm also a certified |
| 10:15:32 | 23 | patent valuation analyst. |
| 10:15:33 | 24 | Q.  Now, Mr. Martinez, when Plaintiff's counsel was |
| 10:15:37 | 25 | visiting with Mr. Dell, we saw a picture of a hypothetical |

740

10:15:41  1   negotiation table.  Do you remember that?

10:15:41  2   A.  I do, yes.

10:15:42  3   Q.  Have you actually been at that table in real life?

10:15:46  4   A.  Yes, I have.

10:15:47  5   Q.  And when -- how did you find yourself at that table?

10:15:50  6   A.  So before I founded the StoneTurn Group about 14 -- or

10:15:54  7   17 years ago now, I was vice president and executive

10:15:59  8   director of SBC Knowledge Ventures.

10:16:02  9       SBC, as some of you might know, is the phone

10:16:05  10  company, Southwestern Bell.  They've now changed their name

10:16:10  11  to AT&T.  But in the capacity as the vice president of that

10:16:14  12  entity, I was responsible for negotiating licenses both to

10:16:20  13  acquire rights to patents for the enterprise as well as to

10:16:24  14  license out SBC's patents to other entities.

10:16:29  15  Q.  You do a lot of deals at that table?

10:16:32  16  A.  I do dozens of deals, yes.

10:16:34  17  Q.  And when a deal was made at a table, who signed on the

10:16:38  18  line executing the license?

10:16:39  19  A.  Yeah, I was always looking for someone else to sign,

10:16:42  20  but it was my responsibility to sign, which meant I had to

10:16:46  21  then take it up to my boss and explain why I entered into

10:16:49  22  that type of agreement.

10:16:50  23  Q.  Mr. Martinez, are you being compensated for your time

10:16:53  24  in this case?

10:16:54  25  A.  Yes, I am.

10:16:54   1   Q.  And what's your hourly rate?

10:16:56   2   A.  675.

10:16:58   3   Q.  Is that compensation, that 675, dependent in any way on

10:17:01   4   the outcome of this case?

10:17:02   5   A.  No, it's not.

10:17:03   6   Q.  You've testified before as an expert in trials?

10:17:06   7   A.  Yes, I've testified in about a dozen trials.

10:17:10   8           MS. SMITH:  Your Honor, Defendants respectfully

10:17:14   9   offer Mr. Martinez as an expert on damages in this case.

10:17:16  10           THE COURT:  Is there objection?

10:17:18  11           MR. WARD:  No objection.

10:17:19  12           THE COURT:  Without objection, the Court will

10:17:20  13   recognize this witness as an expert in the designated

10:17:23  14   field.

10:17:23  15           Please proceed.

10:17:24  16           MS. SMITH:  Thank you, Your Honor.

10:17:25  17   Q.  (By Ms. Smith)  Under what circumstances should the

10:17:30  18   jury even be thinking about the issue of damages in this

10:17:32  19   case?

10:17:33  20   A.  So as is illustrated by this slide, I mean, if there's

10:17:37  21   no infringement, if the jury decides there's no

10:17:41  22   infringement, then there's no damages.  And you can

10:17:43  23   completely disregard what I say, like my family typically

10:17:47  24   does.  And, again, if there's -- if the patents are found

10:17:51  25   invalid, there, again, are no damages.

10:17:53  1   Q.  Now, that being said, when you undertook your work in

10:17:56  2   this case, did you have to make some assumption?

10:17:59  3   A.  Yes, as a damages expert, I do make the assumption for

10:18:03  4   purposes of my analysis that the patents are infringed and

10:18:05  5   are valid.

10:18:06  6   Q.  What kind of information, if you could step through

10:18:08  7   some of the information that you considered in formulating

10:18:12  8   your reasonable royalty opinions in this case?

10:18:13  9   A.  So, very broadly, I considered all the information in

10:18:19  10  the record of this case that pertained to financial or

10:18:22  11  damages or license royalties or licensing information.

10:18:29  12        I looked at deposition testimony of various

10:18:32  13  witnesses.  I looked at the law, the same piece of law that

10:18:42  14  Mr. Dell looked at.  I also looked at the caselaw,

10:18:46  15  Georgia-Pacific factors, and the Georgia-Pacific case in

10:18:49  16  the same way that Mr. Dell did.  Obviously, I interpreted

10:18:55  17  them through the lens of my experience and education.

10:18:58  18  Q.  I see at the bottom it says, independent research.

10:19:01  19  Does that mean you didn't only rely upon what the lawyers

10:19:04  20  gave you in this case?

10:19:05  21  A.  I looked at -- I tried to place everything in context,

10:19:09  22  ultimately in my experience, making sure we have context --

10:19:11  23  context helps me determine if I'm doing something

10:19:14  24  reasonable.  If you do something only in a vacuum,

10:19:18  25  sometimes you don't get the results that are reasonable.

10:19:21  1   Q.  Now, Mr. Martinez, you were in the courtroom when

10:19:24  2   Mr. Dell testified, correct?

10:19:24  3   A.  I was, yes.

10:19:26  4   Q.  Do you agree with his overall royalty analysis?

10:19:29  5   A.  I do not, no.

10:19:30  6   Q.  At a high level -- let's start at a high level, what do

10:19:33  7   you see as the main problems with Mr. Dell's analysis?

10:19:37  8   A.  At a high level, Mr. Dell disregards or ignores the

10:19:43  9   real-world, observable, objective indicators of value of

10:19:49  10  the patents-in-suit.  And in so doing and in constructing

10:19:52  11  his hypothetical negotiation, he ignores the real-world

10:19:56  12  relationships between the hypothetical licensor --

10:20:01  13  licensors and the hypothetical licensee here.

10:20:03  14  Q.  Can you -- you mentioned real world twice.  Can you

10:20:07  15  elaborate a little bit on that for the jurors?

10:20:10  16  A.  Sure.  I guess I look at everything through this sort

10:20:13  17  of real-world context.  Even though this is a hypothetical

10:20:16  18  negotiation --

10:20:16  19          THE COURT:  Mr. Martinez, would you slow down a

10:20:19  20  little bit, please?

10:20:21  21          THE WITNESS:  Certainly.

10:20:22  22          THE COURT:  Thank you.

10:20:26  23  A.  Even though it's a hypothetical negotiation, you've got

10:20:28  24  to apply real facts, right?  You don't come up with new

10:20:31  25  facts.  You just have to apply them in this hypothetical

10:20:35   1   scenario.  So it's also important that you look for

10:20:38   2   real-world indicators of value.

10:20:40   3          And, as we know, real transactions that took place

10:20:43   4   create indicators of value.  If you sold your F150 for

10:20:47   5   $4,000 used, that's the value of it.  There's no disputing

10:20:51   6   that.

10:20:51   7          So it's just important to look for those

10:20:53   8   real-world indicators.

10:20:57   9   Q.  (By Ms. Smith)  Do you think that Dell's -- Mr. Dell's

10:20:59   10  opinion is reasonable?

10:21:00   11  A.  I do not, no.

10:21:02   12  Q.  And do you agree with his -- his opinion as to what the

10:21:07   13  smallest salable patent practicing unit is?

10:21:09   14  A.  No, I do not.

10:21:12   15  Q.  And what's your opinion about that -- can I call it the

10:21:16   16  SSPPU for short?

10:21:19   17  A.  Sure.  I'll try not to stumble on that, but, yes.

10:21:24   18  Q.  Thank you, sir.

10:21:25   19  A.  I believe that Mr. Dell is using the wrong SSPPU.  The

10:21:28   20  SSPPU for the '311 patent should be the touch sensor panel.

10:21:34   21  The SSPPU for the '450 and the '338 patents should be

10:21:41   22  the -- the OLED panel and not the entire display panel.

10:21:45   23  Q.  Now, instead of going down Mr. Dell's path, what did

10:21:50   24  you do to determine a reasonable royalty in this case?

10:21:53   25  A.  I, again, looked at the real world.  I tried to look

10:21:59  1  for real indicators of value, indicators that are objective

10:22:03  2  that don't require an expert to sort of figure out, right,

10:22:09  3  the indicators that sort of -- the average person could

10:22:13  4  say, gosh, this makes sense.  Something changed hands, and

10:22:17  5  this is how much money changed hands in exchange for it.

10:22:21  6       So I tried to look at the real world as much as

10:22:23  7  possible.

10:22:23  8  Q.  Did you use the same Georgia-Pacific case analysis that

10:22:29  9  Mr. Dell used in his analysis?

10:22:31  10  A.  Yes, I did.  I looked at and considered all 15 of the

10:22:36  11  factors.  I wrote a very lengthy report on them, as well.

10:22:40  12  Q.  Now, before we dive deeper into that lengthy report

10:22:43  13  that you mentioned, can you give the jury a preview of what

10:22:47  14  your ultimate conclusions were after going through each of

10:22:49  15  those 15 Georgia-Pacific factors?

10:22:51  16  A.  Yes.  Related to the '450 and the '338 patents, we'll

10:22:59  17  call them the Casio patents, it's my opinion that a

10:23:04  18  reasonable royalty would be a lump sum royalty of no more

10:23:07  19  than $1.15 million.

10:23:11  20       And then related to the '311 patent, the Atmel

10:23:14  21  patent, it's my opinion that a reasonable royalty would be

10:23:19  22  a lump sum of no more than $500,000.

10:23:24  23  Q.  And, Mr. Martinez, I heard you mention, and we see up

10:23:27  24  on the screen, the words "lump sum" in two different

10:23:31  25  places.  Can you explain to the jury what you mean by lump

| | | |
|---|---|---|
| 10:23:34 | 1 | sum reasonable royalty? |
| 10:23:35 | 2 | A.   Sure.   A lump sum royalty is just like it sounds.   You |
| 10:23:40 | 3 | pay a fixed amount and you get rights for a fixed term.   In |
| 10:23:46 | 4 | this case, it would be for the term of the patents for as |
| 10:23:49 | 5 | long as the patents are valid.   So you pay a fixed amount, |
| 10:23:53 | 6 | and you get rights until that patent expires. |
| 10:23:56 | 7 | Q.   Mr. Martinez, I'm going to direct your attention now to |
| 10:23:58 | 8 | what we're calling the Casio patents.   Which patents are we |
| 10:24:01 | 9 | talking about when we're talking about the Casio patents? |
| 10:24:03 | 10 | A.   Again, that's the '450 and the '338 patents. |
| 10:24:05 | 11 | Q.   When would the hypothetical negotiation for the Casio |
| 10:24:10 | 12 | patents have taken place? |
| 10:24:11 | 13 | A.   That hypothetical negotiation would have taken place in |
| 10:24:16 | 14 | May of 2013. |
| 10:24:17 | 15 | Q.   And looking at the screen, who is -- who do we see at |
| 10:24:21 | 16 | the table at that negotiation? |
| 10:24:22 | 17 | A.   So at that negotiation would be Casio, the owner -- |
| 10:24:27 | 18 | assignee of those patents at that point in time, as well as |
| 10:24:32 | 19 | Samsung Display as the licensee. |
| 10:24:33 | 20 | Q.   Now, you were here just now for Mr. Kim's testimony; is |
| 10:24:37 | 21 | that correct? |
| 10:24:37 | 22 | A.   I was, yes. |
| 10:24:38 | 23 | Q.   And you heard Mr. Ward talked to Mr. Kim about big |
| 10:24:42 | 24 | companies and small companies and how Samsung deals with |
| 10:24:45 | 25 | each.   Did you hear that testimony? |

10:24:46   1   A.   I did, yes.

10:24:47   2   Q.   Who's at the -- who's at this table, big companies or

10:24:52   3   small companies?

10:24:52   4   A.   These are both objectively large companies, yes.

10:24:56   5   Q.   And so what should the jury be considering in

10:24:59   6   considering the hypothetical negotiation about the size of

10:25:01   7   the companies at the table?

10:25:02   8   A.   Well, I think you just -- you have to put yourself in

10:25:08   9   the position that these are two large companies, two

10:25:11  10   sophisticated technology companies that would be at this

10:25:13  11   negotiating table.

10:25:13  12   Q.   And does Mr. Dell actually agree with you on that

10:25:17  13   point?

10:25:17  14   A.   He does.

10:25:17  15   Q.   Were you also in the courtroom when Mr. Padian

10:25:21  16   testified?

10:25:22  17   A.   I was, yes.

10:25:23  18   Q.   Now, I believe we heard some testimony that -- from

10:25:29  19   Mr. Padian -- Padian, excuse me, and I'll quote:  We don't

10:25:33  20   believe Casio really knew the amount of infringement that

10:25:36  21   was out there or the value of the patents they had.

10:25:38  22        Did you hear that testimony?

10:25:40  23   A.   Yes, I did.

10:25:41  24   Q.   Well, how does that testimony from Mr. Padian fit in at

10:25:45  25   this hypothetical negotiation table?

10:25:47  1    A.   Well, honestly, it's irrelevant what Solas thought.

10:25:53  2    Solas, in May of 2013, hadn't been formed and wouldn't be

10:25:58  3    formed for about three years.  And they wouldn't have been

10:26:00  4    a factor at this negotiation, even if they did exist.

10:26:05  5    Because the law sets this up that it's going to be Casio

10:26:10  6    and Samsung Display.  And there's no dispute about that

10:26:12  7    between Mr. Dell and I.

10:26:13  8    Q.   Little bit later in Mr. Padian's testimony, I believe

10:26:18  9    we heard him call Casio a sophisticated electronics company

10:26:23  10   and an innovator in the OLED space.  Did you hear that

10:26:26  11   testimony?

10:26:27  12   A.   I did, yes.

10:26:28  13   Q.   How on earth does that mesh with the other testimony

10:26:35  14   that we just heard about them not knowing what they had?

10:26:37  15   A.   Yeah, the two don't seem to be consistent.

10:26:42  16   Q.   You ever heard the phrase "talking out of both sides of

10:26:47  17   your mouth"?

10:26:47  18   A.   Yes, I have.

10:26:48  19   Q.   Mr. Martinez, what can you tell the jury about the

10:26:52  20   relationship between -- between the hypothetical licensor,

10:26:56  21   Casio, that we see here on the left, and the hypothetical

10:26:59  22   licensee, Samsung Display?

10:27:01  23   A.   So the two were -- they knew each other.  They were --

10:27:08  24   they had -- they were not competitors.  Actually, Samsung

10:27:12  25   Display had supplied displays for Casio products.  I think

| | | |
|---|---|---|
| 10:27:17 | 1 | it was Mr. Kwak that testified over a million units in the |
| 10:27:22 | 2 | 2010/2011 time frame. |
| 10:27:24 | 3 | And Casio and Samsung had also entered into a |
| 10:27:29 | 4 | number of intellectual property licensing agreements or |
| 10:27:32 | 5 | assignment agreements that related to patents.  So these |
| 10:27:35 | 6 | two parties knew each other, and they were effectively |
| 10:27:39 | 7 | business partners in the market. |
| 10:27:41 | 8 | Q.  Thank you, sir. |
| 10:27:42 | 9 | MS. SMITH:  Your Honor, I believe I'm about to go |
| 10:27:44 | 10 | into some licensing information that's confidential, if I |
| 10:27:48 | 11 | can have leave to seal the courtroom, please. |
| 10:27:49 | 12 | THE COURT:  Based on counsel's request and the |
| 10:27:52 | 13 | representations made, I'm going to order the courtroom |
| 10:27:54 | 14 | sealed. |
| 10:27:55 | 15 | I'm going to direct, pursuant thereto, that those |
| 10:27:59 | 16 | present not subject to the protective order in this case |
| 10:28:01 | 17 | excuse themselves and remain outside the courtroom until it |
| 10:28:06 | 18 | is reopened and unsealed. |
| 10:28:07 | 19 | (Courtroom sealed.) |
| 10:28:07 | 20 | (This portion of the transcript is sealed |
| 10:28:07 | 21 | and filed under separate cover as |
| 10:28:14 | 22 | Sealed Portion No. 21.) |
| 10:46:54 | 23 | (Courtroom unsealed.) |
| 10:46:55 | 24 | THE COURT:  If you'll hand the binder to the Court |
| 10:46:57 | 25 | Security Officer, he'll deliver it to the witness. |

| | | |
|---|---|---|
| 10:47:04 | 1 | Once you've delivered it to the witness, |
| 10:47:06 | 2 | Mr. Johnston, if you'll make sure the backdoors are opened |
| 10:47:10 | 3 | and the public knows they may return. |
| 10:47:13 | 4 | All right.  Counsel, you may proceed with |
| 10:47:48 | 5 | cross-examination. |
| 10:47:49 | 6 | MR. WARD:  Thank you, Your Honor. |
| 10:47:49 | 7 | CROSS-EXAMINATION |
| 10:47:49 | 8 | BY MR. WARD: |
| 10:47:49 | 9 | Q.  Good morning, Mr. Martinez. |
| 10:47:51 | 10 | A.  Good morning, Mr. Ward. |
| 10:47:53 | 11 | Q.  You and I have met before, have we not? |
| 10:47:55 | 12 | A.  We have. |
| 10:47:55 | 13 | Q.  And I was trying to think back, was the last time we |
| 10:47:59 | 14 | saw each other about three and a half years ago in this |
| 10:48:01 | 15 | courtroom? |
| 10:48:01 | 16 | A.  Might have been, yes. |
| 10:48:03 | 17 | Q.  All right.  We can at least agree on what the law is |
| 10:48:06 | 18 | that applies in this case for damages? |
| 10:48:11 | 19 | A.  Well, I'm not a lawyer, so I feel a little bit |
| 10:48:15 | 20 | disadvantaged by that.  So I know what my understanding of |
| 10:48:18 | 21 | my obligations are under the caselaw, at least I think I |
| 10:48:22 | 22 | do. |
| 10:48:22 | 23 | MR. WARD:  Could we see the patent damages |
| 10:48:25 | 24 | statute, Mr. Wietholter? |
| 10:48:29 | 25 | Q.  (By Mr. Ward)  Let's focus on that top paragraph. |

10:48:36   1              You were here for opening statements, weren't you?

10:48:38   2   A.   I was, yes.

10:48:39   3   Q.   And you agree that the jury has to decide what amount

10:48:43   4   to award, if any, the claimant damages adequate to

10:48:48   5   compensate for the infringement, but in no event less than

10:48:51   6   a reasonable royalty for the use made of the invention by

10:48:53   7   the infringer.   Correct?

10:48:54   8   A.   Correct.

10:48:55   9   Q.   And you emphasized reasonable.   It's got to be

10:48:59   10  reasonable, correct?

10:49:00   11  A.   Yes.

10:49:01   12  Q.   But it's also got to be based upon the use made of the

10:49:05   13  invention by the infringer, correct?

10:49:06   14  A.   Absolutely, that's Georgia-Pacific Factor 11.

10:49:09   15  Q.   And in all the slides we just saw you walk through,

10:49:12   16  there wasn't a single citation to the number of infringing

10:49:15   17  units that have been sold by Samsung, correct?

10:49:18   18  A.   That's correct.

10:49:19   19  Q.   And you've got to assume infringement, correct?

10:49:22   20  A.   I do, yes.

10:49:23   21  Q.   And you've got to make sure that the royalty is

10:49:27   22  reasonable for the use made of the invention, correct?

10:49:30   23  A.   Yes, I do.

10:49:32   24  Q.   You didn't count units, and you didn't look at total

10:49:35   25  revenue in any of the slides you just presented to the

| | | |
|---|---|---|
| 10:49:38 | 1 | jury, did you? |
| 10:49:39 | 2 | A.  That's correct. |
| 10:49:39 | 3 | Q.  But you're telling them that you arrived at a |
| 10:49:45 | 4 | reasonable royalty based upon the use by Samsung of the |
| 10:49:48 | 5 | invention? |
| 10:49:49 | 6 | A.  Yes. |
| 10:49:49 | 7 | Q.  And you talked about real world, and you've got to be |
| 10:49:54 | 8 | objective, right? |
| 10:49:55 | 9 | A.  Yes. |
| 10:49:55 | 10 | Q.  As an expert in this case, you're objective, correct? |
| 10:49:59 | 11 | A.  Yes. |
| 10:50:01 | 12 | Q.  Let the chips fall where they may.  You'll follow the |
| 10:50:05 | 13 | evidence.  Doesn't matter who you're working for, the |
| 10:50:08 | 14 | answer is the answer.  Correct? |
| 10:50:09 | 15 | A.  Yes. |
| 10:50:10 | 16 | Q.  And that's what you did in this case? |
| 10:50:11 | 17 | A.  I looked at the record, and I formulated my opinion |
| 10:50:15 | 18 | based on the record. |
| 10:50:16 | 19 | Q.  But unlike anything in the real world -- and you told |
| 10:50:22 | 20 | us you had been at negotiations, correct? |
| 10:50:24 | 21 | A.  Correct. |
| 10:50:24 | 22 | Q.  Did you ever have someone sitting across the table from |
| 10:50:29 | 23 | you ask for a written admission from -- was it Southwestern |
| 10:50:33 | 24 | Bell that you were working for? |
| 10:50:34 | 25 | A.  SBC. |

| | | |
|---|---|---|
| 10:50:35 | 1 | Q.  SBC.  Did they say, Mr. Martinez, will you put in |
| 10:50:39 | 2 | writing that you infringe our patents and that they're all |
| 10:50:42 | 3 | valid? |
| 10:50:43 | 4 | A.  Did anyone ever ask me that? |
| 10:50:45 | 5 | Q.  Yes, sir. |
| 10:50:45 | 6 | A.  No, they didn't. |
| 10:50:46 | 7 | Q.  Would you have done that if you were negotiating on |
| 10:50:48 | 8 | behalf of SBC? |
| 10:50:50 | 9 | A.  It really depends on the context.  I mean, if I had |
| 10:50:53 | 10 | factual basis that my company was, in fact, using the |
| 10:50:56 | 11 | technology, I don't think there's any problem asserting to |
| 10:51:01 | 12 | that. |
| 10:51:01 | 13 | Q.  Well, tell the jury how many times in those real-world |
| 10:51:04 | 14 | negotiations you wrote down on a piece of paper, we |
| 10:51:07 | 15 | infringe your patents that you're asserting, and they're |
| 10:51:10 | 16 | valid, and slid it across the table and said, you can use |
| 10:51:13 | 17 | it against me? |
| 10:51:13 | 18 | A.  That doesn't happen in the real world, and I don't |
| 10:51:16 | 19 | think I ever did that.  But I think I would still -- I have |
| 10:51:20 | 20 | my integrity to think about.  And, you know, if my |
| 10:51:24 | 21 | technical people told me that we were using the technology, |
| 10:51:28 | 22 | we would negotiate with that understanding. |
| 10:51:29 | 23 | Q.  But you'd negotiate; you wouldn't make that admission, |
| 10:51:33 | 24 | correct? |
| 10:51:33 | 25 | A.  I mean, I can't imagine wanting to make that admission, |

10:51:38   1   I give you that.  But, you know, I think you have to go

10:51:41   2   into negotiations in an honest and straightforward way.

10:51:47   3   Q.  But in this courtroom, you have to assume that Samsung

10:51:52   4   Display, Samsung, and Samsung Electronics of America admit

10:51:56   5   that they infringe valid patents to do your analysis, don't

10:51:56   6   you?

10:52:00   7   A.  Yeah, I have to make the assumption, as every damages

10:52:04   8   expert does in every one of these patent cases.  You have

10:52:08   9   to assume that the patents are infringed.

10:52:09   10   Q.  And that's a fundamental assumption, isn't it?

10:52:13   11   A.  Yeah, it's one of the things we have to start with,

10:52:19   12   yes.

10:52:19   13          THE COURT:  Let's both of you try to slow down,

10:52:22   14   please.

10:52:22   15   Q.  (By Mr. Ward)  One of the big areas of disagreement

10:52:24   16   between you and Mr. Dell is he says, apply a running

10:52:27   17   royalty, and you say, no, apply a lump sum, correct?

10:52:30   18   A.  Correct.

10:52:36   19   Q.  And you're telling the jury that you arrived at the

10:52:39   20   lump sum for the '450 and the '338 of 1.15 million,

10:52:44   21   correct?

10:52:44   22   A.  A lump sum of no more than 1.15 million, yes.

10:52:49   23   Q.  No more than.  And that happens to be exactly what

10:52:52   24   Solas paid, correct?

10:52:53   25   A.  Well, again, it's what Solas paid for 724 -- 725

| | | |
|---|---|---|
| 10:52:58 | 1 | patents.  So on a per-patent basis, on average, that's |
| 10:53:01 | 2 | about $1,600.00 per patent. |
| 10:53:03 | 3 | Q.  Okay.  So you're right, it's for all the patents.  And |
| 10:53:08 | 4 | so you -- you're telling the jury that you sat down, you |
| 10:53:12 | 5 | did this analysis.  It took you months, right? |
| 10:53:15 | 6 | A.  Yes. |
| 10:53:15 | 7 | Q.  You went through all the documents, you went through |
| 10:53:18 | 8 | all the depositions, you considered all the evidence, |
| 10:53:22 | 9 | right? |
| 10:53:22 | 10 | A.  Yeah, I tried to, yes. |
| 10:53:24 | 11 | Q.  And just based upon your independent review of all that |
| 10:53:28 | 12 | evidence, the amount of damages you came up to was exactly |
| 10:53:33 | 13 | equal to what they paid for all these patents? |
| 10:53:36 | 14 | A.  Well, that's not a fair characterization of what I did. |
| 10:53:40 | 15 | Q.  Well, it does happen to equal exactly what they paid |
| 10:53:43 | 16 | for the patents, correct? |
| 10:53:44 | 17 | A.  Well, again, they paid 1.15 million for 724 patents. |
| 10:53:51 | 18 | So on average, they paid $1,600.00 per patent.  So what I |
| 10:53:55 | 19 | did was I looked at all the Georgia-Pacific factors, as I'm |
| 10:54:00 | 20 | required to do, and I have a lengthy analysis about it, and |
| 10:54:03 | 21 | I looked at the assumptions I have to make about |
| 10:54:06 | 22 | infringement and validity, which tend to have upward |
| 10:54:09 | 23 | influences, and I looked at the other factors, including |
| 10:54:11 | 24 | the other patents that are required to make the products. |
| 10:54:16 | 25 | And so I looked at all of that, and that's what I |

10:54:20  1  did.  And I came to an opinion that I've already stated.

10:54:23  2  Q.  And so are you telling the jury that it's just a

10:54:26  3  coincidence that that number, 1.15 million, just happened

10:54:30  4  to be what Solas paid for this patent portfolio?

10:54:32  5  A.  No, I'm not -- it's not a coincidence.  Obviously I

10:54:37  6  used that number, the $1.15 million number, because it's a

10:54:41  7  ceiling, right, it's an absolute ceiling.  They paid on

10:54:45  8  average $1,600.00 for these two patents, so they spent

10:54:49  9  $3,200 on average for these two patents.

10:54:51  10        To get a return of the entire payment they paid

10:54:55  11  for all of them is an exceptional return on their

10:54:58  12  investment, and I've considered that.

10:55:00  13        MR. WARD:  Your Honor, I object to everything

10:55:02  14  after, no, it was not a coincidence, as non-responsive.

10:55:08  15        THE COURT:  Sustained.

10:55:08  16        You need to limit your answers to the questions

10:55:11  17  asked, Mr. Martinez.

10:55:12  18        THE WITNESS:  Yes.

10:55:13  19        THE COURT:  Ms. Smith is going to get a chance to

10:55:15  20  ask you more questions, as you well understand.  So limit

10:55:18  21  your answers to the questions asked during

10:55:20  22  cross-examination.

10:55:21  23        Let's continue.

10:55:22  24  Q.  (By Mr. Ward)  And so did you just say that the

10:55:25  25  purchase price was an absolute ceiling for the damages in

| | | |
|---|---|---|
| 10:55:29 | 1 | this case?  Is that what you just said, Mr. Martinez? |
| 10:55:32 | 2 | A.  I did just say that, yes. |
| 10:55:35 | 3 | Q.  So that absolute ceiling would also apply, in your |
| 10:55:41 | 4 | opinion, to your damages analysis of the '311 patent, |
| 10:55:45 | 5 | correct? |
| 10:55:45 | 6 | A.  Yeah, my logic is consistent between the two sets of |
| 10:55:50 | 7 | patents. |
| 10:55:50 | 8 | Q.  You applied the purchase price as a ceiling for damages |
| 10:55:55 | 9 | for both the '450 and the '338 and the '311, correct? |
| 10:56:04 | 10 | A.  No. |
| 10:56:05 | 11 | Q.  Now, is it correct that you work for Plaintiffs and |
| 10:56:11 | 12 | Defendants about 50 percent -- 50/50? |
| 10:56:14 | 13 | A.  Yeah, approximately, yes. |
| 10:56:15 | 14 | Q.  And you apply the same approach regardless of who |
| 10:56:21 | 15 | you're working for, correct? |
| 10:56:22 | 16 | A.  Yes.  I look at the facts consistent with the |
| 10:56:25 | 17 | particular circumstances of each case, and I apply the |
| 10:56:29 | 18 | Georgia-Pacific factor, as well as this 35 U.S.C. 284 code. |
| 10:56:35 | 19 | Q.  And I think you said you've testified about a dozen |
| 10:56:38 | 20 | times? |
| 10:56:39 | 21 | A.  Approximately, yes. |
| 10:56:40 | 22 | Q.  And isn't it true that you've testified that, generally |
| 10:56:46 | 23 | speaking, a lump sum is more efficient; both parties know |
| 10:56:51 | 24 | the certainty at the outset of the arrangement exactly what |
| 10:56:53 | 25 | the license fee is?  Does that sound familiar? |

| | | |
|---|---|---|
| 10:56:59 | 1 | A.  It wouldn't surprise me if I said that, because that's |
| 10:57:03 | 2 | true. |
| 10:57:03 | 3 | Q.  And you were working for a Defendant in a case called |
| 10:57:06 | 4 | LifeNet Health versus Lifecell Corporation.  Do you |
| 10:57:10 | 5 | remember that? |
| 10:57:10 | 6 | A.  Barely.  I know I worked on that case, but I don't -- |
| 10:57:13 | 7 | yeah. |
| 10:57:13 | 8 | Q.  Okay.  But that's -- sounds like something you'd say? |
| 10:57:16 | 9 | A.  Yeah, I believe that.  I believe that they're -- you |
| 10:57:17 | 10 | just stated one of the benefits of a lump sum. |
| 10:57:19 | 11 | Q.  And you -- you believe, generally speaking, a lump sum |
| 10:57:22 | 12 | is more efficient, correct? |
| 10:57:24 | 13 | A.  It depends on the facts and circumstances, but, yes, a |
| 10:57:30 | 14 | lump sum does not require a lot of the other monitoring |
| 10:57:33 | 15 | that a running royalty requires. |
| 10:57:34 | 16 | Q.  If you would -- I want you to refresh your |
| 10:57:38 | 17 | recollection.  If you'd look in your binder there, there's |
| 10:57:40 | 18 | a transcript from the LifeNet Health versus LifeCell |
| 10:57:45 | 19 | Corporation, and you can go to Page 1419, Lines 19 through |
| 10:57:50 | 20 | 20.  And then I'll ask you that question again. |
| 10:57:51 | 21 | A.  I'm sorry, could you repeat the page? |
| 10:57:54 | 22 | Q.  Sure.  1419, 1-4-1-9. |
| 10:58:00 | 23 | THE COURT:  And, Mr. Ward, there's no need to |
| 10:58:02 | 24 | specify the parties in that prior litigation.  Just say the |
| 10:58:05 | 25 | prior lawsuit. |

| | | |
|---|---|---|
| 10:58:06 | 1 | MR. WARD:  Okay. |
| 10:58:08 | 2 | Q.  (By Mr. Ward)   The prior lawsuit. |
| 10:58:09 | 3 | A.  Okay.  1419? |
| 10:58:11 | 4 | Q.  Yes, sir. |
| 10:58:15 | 5 | A.  I'm sorry, which lines did you want me to look at? |
| 10:58:19 | 6 | Q.  You can look at the question and then the answer.  Your |
| 10:58:22 | 7 | answer goes on for a couple of pages, but I was focused on |
| 10:58:25 | 8 | 19 to 20 -- I'm sorry, 19 to 21.  But we can read anything |
| 10:58:31 | 9 | you want to read, if you want to put it in context. |
| 10:58:34 | 10 | A.  Okay. |
| 10:58:35 | 11 | Q.  Does that refresh your recollection? |
| 10:58:38 | 12 | A.  I'm sorry, I just haven't -- I barely got through the |
| 10:58:41 | 13 | question. |
| 10:58:42 | 14 | Q.  I'm sorry. |
| 10:58:53 | 15 | A.  Yes, it does. |
| 10:58:54 | 16 | Q.  And then if you go on to the next page, you described |
| 10:58:58 | 17 | it as very eloquent in its simplicity, talking about the |
| 10:59:06 | 18 | lump sum, correct? |
| 10:59:07 | 19 | A.  Yes. |
| 10:59:08 | 20 | Q.  Generally speaking, it's much easier.  There's no |
| 10:59:12 | 21 | monitoring that has to go on during the course of the |
| 10:59:14 | 22 | arrangement.  It's very eloquent.  Correct? |
| 10:59:17 | 23 | A.  Yes. |
| 10:59:17 | 24 | Q.  And you're speaking about the lump sum approach there, |
| 10:59:20 | 25 | correct? |

| | | |
|---|---|---|
| 10:59:20 | 1 | A.  Yes, I am. |
| 10:59:21 | 2 | Q.  And you were working for the Defendant in that case, |
| 10:59:25 | 3 | correct? |
| 10:59:25 | 4 | A.  Yes, I was. |
| 10:59:25 | 5 | Q.  Now, when we met three and a half years ago in this |
| 10:59:33 | 6 | courtroom, you were working for the Plaintiff, correct? |
| 10:59:35 | 7 | A.  That's correct. |
| 10:59:35 | 8 | Q.  And, actually, my partner, Wes Hill, was the one who |
| 10:59:41 | 9 | questioned you during that case, correct? |
| 10:59:43 | 10 | A.  Yeah, we were working together with your firm, yes. |
| 10:59:45 | 11 | Q.  You were working together.  Did you get a chance to |
| 10:59:49 | 12 | review the Elbit transcript before you came to testify |
| 10:59:52 | 13 | today? |
| 10:59:52 | 14 | A.  I did not, no. |
| 10:59:53 | 15 | Q.  Do you recall testifying that the use of a running |
| 11:00:07 | 16 | royalty -- |
| 11:00:07 | 17 | MS. SMITH:  Objection, Your Honor.  This is an |
| 11:00:09 | 18 | improper use of a prior legal proceeding, it violates a |
| 11:00:13 | 19 | MIL, and he's not using it as impeachment. |
| 11:00:16 | 20 | THE COURT:  What's your response, Mr. Ward? |
| 11:00:17 | 21 | MR. WARD:  Your Honor, the MIL reaches litigation |
| 11:00:19 | 22 | involving the parties.  This is a prior statement by this |
| 11:00:23 | 23 | witness that is directly inconsistent with what he's |
| 11:00:26 | 24 | testified to, and I just want to ask him about it. |
| 11:00:28 | 25 | THE COURT:  Well, it is in the nature of |

| | | |
|---|---|---|
| 11:00:33 | 1 | impeachment as a prior inconsistent statement, or I assume |
| 11:00:38 | 2 | it will be. |
| 11:00:39 | 3 | You can continue, Mr. Ward.  There's no need to |
| 11:00:45 | 4 | specify the prior lawsuit from which it came.  Just make it |
| 11:00:49 | 5 | clear to the jury that an earlier time while under oath |
| 11:00:53 | 6 | this was a statement that this witness made. |
| 11:00:55 | 7 | MS. SMITH:  Thank you, Your Honor. |
| 11:00:55 | 8 | THE COURT:  It's a direct impeachment as an |
| 11:00:59 | 9 | inconsistent statement in that context, and there's no need |
| 11:01:01 | 10 | to be more specific. |
| 11:01:02 | 11 | MR. WARD:  Okay. |
| 11:01:02 | 12 | THE COURT:  The objection is overruled. |
| 11:01:04 | 13 | Q.  (By Mr. Ward)  And, Mr. Martinez, if you want to |
| 11:01:09 | 14 | refresh your recollection, I know it's been a little while. |
| 11:01:13 | 15 | You can go to Page 72 of that transcript and read Lines 8 |
| 11:01:17 | 16 | to 21. |
| 11:01:49 | 17 | A.  Yeah, I've read Line 21.  I'm sorry. |
| 11:01:52 | 18 | Q.  Okay.  And so am I correct that you previously |
| 11:01:55 | 19 | testified that when using the unit rate -- and that's |
| 11:01:59 | 20 | running royalty, correct? |
| 11:02:00 | 21 | A.  Yes, a unit rate is a running -- form of running |
| 11:02:03 | 22 | royalty. |
| 11:02:03 | 23 | Q.  That's sort of the eloquence of a unit rate, correct? |
| 11:02:13 | 24 | Line 13? |
| 11:02:14 | 25 | A.  Oh, I'm sorry, I was reading the wrong line then.  I |

11:02:18  1  thought you were looking at Line 21.  Yes, that's right.

11:02:22  2  Q.  You sort of pay as you go, you don't pay for units you

11:02:26  3  don't sell, and you just pay for the units you do sell,

11:02:30  4  right?

11:02:30  5  A.  Yes, in this context, yes, this is appropriate, yes.

11:02:34  6  Q.  And you said, so if a company is wildly successful and

11:02:37  7  sells 5 million units or 3.7 million units, typically

11:02:42  8  they're not averse to paying their fair share to the

11:02:47  9  technology owners.  So what I'm using is the unit rate.

11:02:49  10  I'm not really comparing it to the overall payments on this

11:02:56  11  agreement.

11:02:56  12        Is that what you said?

11:02:57  13  A.  Yes, that's what you said.

11:02:59  14  Q.  So is it fair to summarize that testimony that when you

11:03:07  15  testified for the Defendant, the lump sum was the eloquent

11:03:12  16  approach, and then when you testified for the Plaintiff,

11:03:14  17  the running royalty was the eloquent approach?  Fair?

11:03:18  18  A.  Well, yes, I used those words, but your

11:03:21  19  characterization is not fair.

11:03:22  20  Q.  Now, in your report --

11:03:29  21        MR. WARD:  You can take that down, Mr. Wietholter.

11:03:31  22  Q.  (By Mr. Ward)  In your report, you actually summarized

11:03:34  23  some of the advantages that you found that were associated

11:03:36  24  with a lump sum, correct?

11:03:38  25  A.  Yes.

11:03:41  1      MR. WARD:  And if we could see Paragraph 206 --
11:03:52  2  Q.  (By Mr. Ward)  And we don't have to read through all of
11:03:55  3  this, but these are some of the advantages of a lump-sum
11:03:59  4  royalty that you explained in your report, correct?
11:04:00  5  A.  I assume so.  Looks like my report.  But I don't have
11:04:04  6  my report in front of me.
11:04:07  7  Q.  I'll give you one.  Hold on.
11:04:10  8      MR. WARD:  May I approach, Your Honor?
11:04:11  9      THE COURT:  You may.
11:04:14  10      THE WITNESS:  Thank you.
11:04:23  11      MS. SMITH:  Your Honor, that's hearsay.  He's not
11:04:25  12  using it for impeachment, and the report is not an exhibit.
11:04:29  13  I believe previously in this case you made a similar ruling
11:04:33  14  when Mr. Haslam was trying to use the report with his
11:04:36  15  witness.
11:04:36  16      MR. WARD:  Your Honor, I'm just familiarizing
11:04:38  17  himself with this report.
11:04:39  18      THE COURT:  I haven't seen how it's going to be
11:04:41  19  used.  You may reurge your objection when we see more of
11:04:44  20  what's actually going to be offered.  But at this point,
11:04:47  21  it's premature.
11:04:48  22      MS. SMITH:  Thank you, Your Honor.
11:04:49  23  Q.  (By Mr. Ward)  And so you laid out some of the
11:04:53  24  advantages of a lump sum royalty in your report, correct?
11:04:55  25  A.  Correct.

| | | |
|---|---|---|
| 11:04:56 | 1 | Q.  And the citation there is at Footnote 357. |
| 11:05:00 | 2 | MR. WARD:  Could you pull up Footnote 357? |
| 11:05:04 | 3 | Q.  (By Mr. Ward)  And I don't know how you pronounce this |
| 11:05:08 | 4 | last name.  Is it Razgaitis? |
| 11:05:13 | 5 | A.  That's a good try.  I think.  That's the way I'd try. |
| 11:05:14 | 6 | Q.  Close enough.  Is that a book you're familiar with? |
| 11:05:17 | 7 | A.  Yes, this is an older edition, but, yes, I'm familiar |
| 11:05:21 | 8 | with it. |
| 11:05:21 | 9 | Q.  It's reliable? |
| 11:05:23 | 10 | A.  Generally speaking, it talks about patent licensing and |
| 11:05:26 | 11 | whatnot. |
| 11:05:27 | 12 | Q.  I wouldn't assume you'd cite something in your report |
| 11:05:30 | 13 | that you found to be unreliable? |
| 11:05:32 | 14 | A.  Yeah, this particular passage, yes, I found reliable. |
| 11:05:35 | 15 | Q.  There's other passages in that book, though, too, |
| 11:05:39 | 16 | aren't there? |
| 11:05:39 | 17 | A.  There are. |
| 11:05:40 | 18 | MR. WARD:  Mr. Wietholter, would you pull up the |
| 11:05:42 | 19 | cover of that book. |
| 11:05:44 | 20 | Q.  (By Mr. Ward)  That look about like the book we're |
| 11:05:46 | 21 | talking about Valuation and Dealmaking of Technology-Based |
| 11:05:54 | 22 | Intellectual Property? |
| 11:05:54 | 23 | A.  That's the title of the book.  I don't recall the |
| 11:05:56 | 24 | cover, but yes. |
| 11:05:56 | 25 | Q.  Okay. |

| | | |
|---|---|---|
| 11:05:57 | 1 | MR. WARD:  Let's jump ahead, Mr. Wietholter. |
| 11:06:07 | 2 | Q.  (By Mr. Ward)  And you see Mr. Razgaitis is talking |
| 11:06:13 | 3 | about the advantages of royalties in some previous |
| 11:06:18 | 4 | chapters.  Do you see that? |
| 11:06:20 | 5 | A.  Yes. |
| 11:06:20 | 6 | Q.  It says:  They provide an opportunity for the seller to |
| 11:06:23 | 7 | receive more than the parties would have expected because |
| 11:06:27 | 8 | the outcome of the license has been greater than expected. |
| 11:06:31 | 9 | That's talking about running royalties, correct? |
| 11:06:32 | 10 | A.  That would be my presumption, yes. |
| 11:06:36 | 11 | Q.  Right. |
| 11:06:37 | 12 | MR. WARD:  And scroll up, Mr. Wietholter.  You're |
| 11:06:49 | 13 | making this tough on me. |
| 11:07:06 | 14 | I tell you what, I can use the document camera, |
| 11:07:16 | 15 | Your Honor. |
| 11:07:16 | 16 | Q.  (By Mr. Ward)  So there can be an opportunity for |
| 11:07:27 | 17 | sellers to receive more than the parties would have or |
| 11:07:30 | 18 | could have expected to, because the outcome of the license |
| 11:07:32 | 19 | has been greater than expected.  We saw that, correct? |
| 11:07:34 | 20 | A.  Yes. |
| 11:07:35 | 21 | Q.  And the seller in this case is the licensor, or Solas |
| 11:07:41 | 22 | in our case, correct? |
| 11:07:42 | 23 | A.  I'm sorry, the licensor is either Casio or Atmel. |
| 11:07:49 | 24 | Solas is not at the negotiation. |
| 11:07:50 | 25 | Q.  I'm sorry.  Casio. |

11:07:54   1   A.   Yes.

11:07:54   2   Q.   And then it says:  Likewise, they can be an advantage

11:07:57   3   to the buyer if the market turns out to be much smaller

11:08:00   4   than expected.

11:08:02   5   A.   That's correct.

11:08:02   6   Q.   With royalty structure, it is more likely that both

11:08:07   7   parties will feel that they got a fair deal years later.

11:08:10   8           Is that what he wrote in his book?

11:08:13   9   A.   That's what he wrote about this, yes.

11:08:15  10   Q.   You didn't cite that section in your report, did you?

11:08:19  11   A.   I didn't, no.

11:08:20  12   Q.   Now, did you just tell the jury that we could do some

11:08:35  13   division as a reasonableness check, divide the number of --

11:08:40  14   divide the purchase price by the number of patents and come

11:08:43  15   up to a per-patent price?

11:08:45  16   A.   I didn't cite that as a reasonableness check.  What I

11:08:51  17   cited that was in response to one of your questions to say

11:08:54  18   that they were only getting back as the royalty what the

11:08:58  19   patents had been sold for.  And I was trying to make the

11:09:01  20   point that patent -- you know, when they sold 724 patents

11:09:05  21   for 1.15 million, it's very different than equating that to

11:09:09  22   the royalty for two non-exclusive licenses for that same

11:09:14  23   1.15 million.

11:09:15  24           MR. WARD:  Objection, nonresponsive.

11:09:16  25           THE COURT:  Sustained.

| | | |
|---|---|---|
| 11:09:21 | 1 | When you said, "I didn't cite that as I |
| 11:09:23 | 2 | reasonableness check," Mr. Martinez, you completely |
| 11:09:25 | 3 | answered the question.  And the six or seven or eight lines |
| 11:09:28 | 4 | that you gave after that were beyond the answer called for. |
| 11:09:32 | 5 | I know that this is not your first time to testify |
| 11:09:33 | 6 | in federal court.  I'm going to insist that you limit your |
| 11:09:36 | 7 | answers to the questions asked. |
| 11:09:38 | 8 | THE WITNESS:  Yes, Your Honor. |
| 11:09:39 | 9 | THE COURT:  All right.  Let's continue. |
| 11:09:44 | 10 | Q.  (By Mr. Ward)  You know that's an inappropriate way to |
| 11:09:46 | 11 | calculate reasonable royalty damages, isn't it? |
| 11:09:49 | 12 | A.  Doing simple division is not a thorough analysis that's |
| 11:09:57 | 13 | required to do damages. |
| 11:09:58 | 14 | Q.  You could never get on the stand and say, I added up |
| 11:10:01 | 15 | the number of patents, I took the purchase price and |
| 11:10:04 | 16 | divided it, and figured out that each patent is worth this |
| 11:10:07 | 17 | amount of money?  That would be entirely inappropriate, |
| 11:10:11 | 18 | correct? |
| 11:10:11 | 19 | A.  That wouldn't take into account, again, depending on |
| 11:10:14 | 20 | the facts and circumstances, all the caselaw that's |
| 11:10:16 | 21 | required, that's true. |
| 11:10:17 | 22 | Q.  But you've been present in Court when Mr. Padian was |
| 11:10:20 | 23 | being cross-examined where he was asked about the price per |
| 11:10:24 | 24 | patent if you took the purchase price and divided it by the |
| 11:10:26 | 25 | number of patents?  Weren't you present for that? |

| | | |
|---|---|---|
| 11:10:31 | 1 | A.  I was present during his testimony.  I don't know that |
| 11:10:33 | 2 | I precisely recall that, but, yes, I was present for all of |
| 11:10:37 | 3 | his testimony. |
| 11:10:37 | 4 | MR. WARD:  Mr. Wietholter, can we see Slides 11 |
| 11:10:40 | 5 | and 12? |
| 11:10:41 | 6 | Q.  (By Mr. Ward)  Do you recall this question and answer |
| 11:10:43 | 7 | now that I've shown it to you?  This is from the |
| 11:10:48 | 8 | cross-examination of Mr. Padian. |
| 11:10:50 | 9 | A.  Yes. |
| 11:10:50 | 10 | Q.  And that's not appropriate.  As a damages expert, you |
| 11:10:54 | 11 | couldn't do this, correct? |
| 11:10:54 | 12 | A.  Well, I could do it.  If that was my sole basis of my |
| 11:11:00 | 13 | opinion, then I think that I would not -- that would not |
| 11:11:05 | 14 | meet the standard. |
| 11:11:07 | 15 | Q.  Well, wouldn't you agree that one of the important |
| 11:11:10 | 16 | things to remember about patents is that just because you |
| 11:11:13 | 17 | have 10 or 20 or a hundred, it doesn't represent value. |
| 11:11:17 | 18 | Would you agree with that statement? |
| 11:11:19 | 19 | A.  Yeah.  Yes, I would. |
| 11:11:21 | 20 | Q.  And value comes from the technology being used, right? |
| 11:11:25 | 21 | A.  Right.  Value does come from the specific technology. |
| 11:11:31 | 22 | Q.  And so any one patent, let's say an Apple or Google |
| 11:11:37 | 23 | owns, that have never been licensed may be worth more than, |
| 11:11:42 | 24 | you know, all the other patents out there. |
| 11:11:44 | 25 | Do you agree with that statement? |

| | | |
|---|---|---|
| 11:11:46 | 1 | A.  I do, yes. |
| 11:11:47 | 2 | Q.  So just the number of patents has no bearing on value. |
| 11:11:51 | 3 | You agree with that statement? |
| 11:11:52 | 4 | A.  I do, yes. |
| 11:11:53 | 5 | Q.  That's what you testified to, correct?  You've |
| 11:11:57 | 6 | testified to that in the past? |
| 11:11:58 | 7 | A.  It sounds spot on, so probably, yeah. |
| 11:12:01 | 8 | Q.  Yeah, the number of patents has no relationship to |
| 11:12:04 | 9 | value, correct? |
| 11:12:04 | 10 | A.  Yeah, the number -- there are many patents -- yes, yes. |
| 11:12:18 | 11 |         MR. WARD:  Let's look at the UDC agreement, |
| 11:12:21 | 12 | Martinez Slide 2, Mr. Wietholter. |
| 11:12:24 | 13 | Q.  (By Mr. Ward)  You agree that right across the top of |
| 11:12:28 | 14 | the UDC/SDC or Samsung agreement, it says:  OLED Patent |
| 11:12:35 | 15 | License Agreement, right? |
| 11:12:36 | 16 | A.  Yes. |
| 11:12:37 | 17 | Q.  No doubt that it deals with OLED technology, correct? |
| 11:12:41 | 18 | A.  Again, the title says OLED in it, but I'm not in a |
| 11:12:46 | 19 | position to assess the technology. |
| 11:12:48 | 20 | Q.  Okay. |
| 11:12:48 | 21 |         MR. WARD:  Let's go to the next slide.  No -- the |
| 11:12:51 | 22 | summary -- No. 1. |
| 11:12:53 | 23 | Q.  (By Mr. Ward)  You know that that agreement has been |
| 11:12:56 | 24 | extended, renewed, whatever you want to call it, all the |
| 11:12:59 | 25 | way up to January 2018, correct? |

| | | |
|---|---|---|
| 11:13:03 | 1 | A.  Yes. |
| 11:13:03 | 2 | Q.  And it was renewed in July of 2010 and again in August |
| 11:13:08 | 3 | of 2011, correct? |
| 11:13:09 | 4 | A.  I believe July of 2010 was an amendment to the 2005 |
| 11:13:12 | 5 | agreement.  But, yes, that was again renewed in 2011. |
| 11:13:17 | 6 | MR. WARD:  You can take that down, Mr. Wietholter. |
| 11:13:19 | 7 | Q.  (By Mr. Ward)  And -- and -- but you said the right |
| 11:13:21 | 8 | agreement to look at is the Casio/Samsung license, correct, |
| 11:13:27 | 9 | of 2012? |
| 11:13:28 | 10 | A.  Well, I said that there's -- there's both a license in |
| 11:13:31 | 11 | 2012 and a sale of patents in 2012 that are relevant |
| 11:13:36 | 12 | because it puts -- it's related and it involve both parties |
| 11:13:39 | 13 | to the hypothetical. |
| 11:13:41 | 14 | Q.  And you said that Casio made no products that embodied |
| 11:13:47 | 15 | OLED technology.  They didn't make them, that's what you |
| 11:13:51 | 16 | testified to in 2012, correct? |
| 11:13:52 | 17 | A.  It's my understanding that Casio didn't. |
| 11:13:54 | 18 | Q.  And that there was no successful commercialization by |
| 11:13:58 | 19 | Cisco of anything that used these patents, the '450 and the |
| 11:14:01 | 20 | '338, that you were aware of? |
| 11:14:03 | 21 | A.  I'm sorry, did you say "Cisco"? |
| 11:14:05 | 22 | Q.  I might have.  I meant Casio. |
| 11:14:08 | 23 | A.  Okay. |
| 11:14:09 | 24 | Q.  I misspoke, I'm sorry. |
| 11:14:10 | 25 | A.  Sure, no problem. |

| | | |
|---|---|---|
| 11:14:11 | 1 | Q.  No evidence that Casio was making products that used |
| 11:14:15 | 2 | the '450 or the '338 in 2012, right? |
| 11:14:19 | 3 | A.  Yeah, it's my understanding they didn't make products |
| 11:14:22 | 4 | that use those patents. |
| 11:14:24 | 5 | Q.  And you did an extensive review in this case, right? |
| 11:14:28 | 6 | A.  I tried to, yes. |
| 11:14:29 | 7 | Q.  Who is Toppan? |
| 11:14:31 | 8 | A.  I think Toppan is an entity that's involved in some |
| 11:14:39 | 9 | patent licensing. |
| 11:14:41 | 10 | MR. WARD:  Your Honor, may I approach my binder? |
| 11:14:43 | 11 | THE COURT:  You may. |
| 11:14:44 | 12 | Q.  (By Mr. Ward)  Did you ever cite any reference to |
| 11:14:55 | 13 | Toppan in your report? |
| 11:14:58 | 14 | A.  You know, I -- it wouldn't -- I don't know, I guess, is |
| 11:15:04 | 15 | the correct answer. |
| 11:15:05 | 16 | Q.  Don't you know that Toppan and Casio joined forces back |
| 11:15:17 | 17 | in 2010? |
| 11:15:19 | 18 | A.  That sounds familiar, but it's not a fact that I have |
| 11:15:25 | 19 | on the top of my head. |
| 11:15:27 | 20 | Q.  And they were seeking the early commercialization of |
| 11:15:31 | 21 | Organic Light-Emitting Diode, OLED, displays jointly |
| 11:15:37 | 22 | developed by the company named Toppan.  The two companies |
| 11:15:40 | 23 | decided that collaboration would be the best for the small |
| 11:15:44 | 24 | and medium display business. |
| 11:15:45 | 25 | Are you familiar with that occurring in 2010? |

| | | |
|---|---|---|
| 11:15:47 | 1 | A.  I don't have firsthand knowledge, but that sounds like |
| 11:15:50 | 2 | something I learned, yes. |
| 11:15:51 | 3 | Q.  You did learn that? |
| 11:15:53 | 4 | A.  It sounds like something I might have learned, yes. |
| 11:15:57 | 5 | Q.  So Casio sets up a company, they join forces with |
| 11:16:01 | 6 | Toppan to develop OLED products in 2010. |
| 11:16:04 | 7 | You were aware of that when you wrote your report? |
| 11:16:05 | 8 | A.  Again, it's not something that I remember, but if it's |
| 11:16:09 | 9 | written in my report, then I would have been aware of it, |
| 11:16:12 | 10 | yes. |
| 11:16:12 | 11 | Q.  It's not written in your report, Mr. Martinez.  Let me |
| 11:16:15 | 12 | show you what I'm reading from. |
| 11:16:31 | 13 | See there, it's Casio Annual Report 2010.  Do you |
| 11:16:40 | 14 | see that? |
| 11:16:40 | 15 | A.  I do, yes. |
| 11:16:42 | 16 | Q.  And if we go to Page 45 of the report, do you see, |
| 11:16:53 | 17 | right down here, No. 3?  Did I read that correctly to you? |
| 11:16:59 | 18 | A.  Looks like you did, yes. |
| 11:17:00 | 19 | Q.  So you've got Casio entering this business to develop |
| 11:17:07 | 20 | OLED technologies, correct? |
| 11:17:10 | 21 | A.  Yes. |
| 11:17:11 | 22 | Q.  It might not be wanting to sell its patents in 2012 |
| 11:17:17 | 23 | that relate to OLED technology, correct? |
| 11:17:21 | 24 | A.  I don't know what they would have wanted to do.  I |
| 11:17:24 | 25 | don't know their strategy. |

| | | |
|---|---|---|
| 11:17:25 | 1 | Q.  But if they were not successful in business five or six |
| 11:17:34 | 2 | years later, they might want to sell those patents, |
| 11:17:38 | 3 | correct? |
| 11:17:38 | 4 | A.  That's certainly possible, yes, and we know that they |
| 11:17:43 | 5 | did sell those patents. |
| 11:17:44 | 6 | Q.  And you described the patents that were covered in the |
| 11:17:52 | 7 | 2012 agreement as OLED and LCD display patents, correct? |
| 11:17:57 | 8 | A.  I think I characterized them based on the language in |
| 11:18:01 | 9 | the license, yes. |
| 11:18:03 | 10 | MR. WARD:  And if we could look at Table 6, the |
| 11:18:06 | 11 | summary from Mr. Martinez's report. |
| 11:18:11 | 12 | Q.  (By Mr. Ward)  Do you see right here:  SMD licensee, |
| 11:18:22 | 13 | LCD/OLED displays.  That's how you characterized them in |
| 11:18:27 | 14 | your report, correct? |
| 11:18:28 | 15 | A.  That's correct. |
| 11:18:34 | 16 | MR. WARD:  You can take that down.  Thank you, |
| 11:18:36 | 17 | Mr. Wietholter. |
| 11:18:45 | 18 | Q.  (By Mr. Ward)  Let's jump ahead to Clairvolex.  You |
| 11:18:47 | 19 | talked about that Clairvolex document.  Remember that, |
| 11:18:51 | 20 | Clairvolex's ratings? |
| 11:18:52 | 21 | A.  Yes, I remember mentioning Clairvolex in my direct |
| 11:18:55 | 22 | testimony. |
| 11:18:55 | 23 | Q.  And you -- I think you told the jury that you wanted to |
| 11:18:58 | 24 | give a fair assessment and a clear picture of what was |
| 11:19:02 | 25 | happening in this case, right? |

11:19:04   1   A.   What I -- my testimony was, is that I think, Clairvolex

11:19:08   2   and Houlihan Lokey, the advisors for Casio, were trying to

11:19:12   3   give the parties to the negotiation -- the parties that

11:19:16   4   were possibly buying these patents or -- a clear picture.

11:19:21   5         So it wasn't -- I wasn't trying to give them a

11:19:24   6   clear picture.  I think it was Clairvolex that was trying

11:19:26   7   to give them a clear picture.

11:19:29   8   Q.   Are you trying to be fair and clear with the jury,

11:19:31   9   though?

11:19:31  10   A.   Yes, I'd like to be.

11:19:33  11         MR. WARD:  Let's look at DDX-7.0019.

11:19:37  12   Q.   (By Mr. Ward)  Now, did you say on direct that this was

11:19:39  13   some of the feedback?

11:19:40  14   A.   I believe I did, yes.

11:19:41  15   Q.   Because there's -- one, two -- three magnifying glasses

11:19:47  16   there, correct?

11:19:48  17   A.   That's correct.

11:19:48  18   Q.   Did you see a different slide during opening?

11:19:51  19   A.   I just don't know.  Is this a memory test?  I just

11:19:59  20   don't know.

11:20:01  21         MR. WARD:  Let's see the Defendants' opening slide

11:20:04  22   DDX-1.018.

11:20:07  23   Q.   (By Mr. Ward)  Something changed.  Isn't there

11:20:10  24   something that changed?

11:20:11  25   A.   The position of the magnifying glasses changed.  I

| | | |
|---|---|---|
| 11:20:18 | 1 | think the position of Clairvolex changed. |
| 11:20:22 | 2 | Q.  No, there's a name up there in the top left corner.  Do |
| 11:20:25 | 3 | you see that? |
| 11:20:26 | 4 | A.  Oh, yes, I do see that. |
| 11:20:27 | 5 | Q.  Sagacious IP. |
| 11:20:31 | 6 | And now let's go to your slide.  It's not there? |
| 11:20:35 | 7 | A.  No, it's not there. |
| 11:20:36 | 8 | Q.  Did you remove it? |
| 11:20:37 | 9 | A.  No, I didn't. |
| 11:20:38 | 10 | Q.  Don't know who removed it? |
| 11:20:40 | 11 | A.  Well, I did my slides.  I didn't refer to Sagacious in |
| 11:20:46 | 12 | my report, so I'm trying to stay within the bounds of my |
| 11:20:52 | 13 | report. |
| 11:20:52 | 14 | Q.  Well, but in opening statement, Samsung referred to |
| 11:20:55 | 15 | Sagacious, didn't they? |
| 11:20:56 | 16 | A.  I know I heard the term "Sagacious," yes. |
| 11:21:00 | 17 | MR. WARD:  Let's go back to the opening slide. |
| 11:21:02 | 18 | Q.  (By Mr. Ward)  So you didn't have any involvement with |
| 11:21:05 | 19 | the slide from opening? |
| 11:21:06 | 20 | A.  No. |
| 11:21:07 | 21 | Q.  But you did have involvement with the next slide.  This |
| 11:21:10 | 22 | is your slide? |
| 11:21:11 | 23 | A.  Yes. |
| 11:21:11 | 24 | Q.  And Sagacious is actually referenced in the Clairvolex |
| 11:21:18 | 25 | document, isn't it, 1301? |

11:21:20  1    A.  Yeah, it wouldn't surprise me, and I'm happy to

11:21:26  2    elaborate.

11:21:26  3    Q.  Well, let's -- let's go look at 1301 at Page 7, Line

11:21:34  4    156.  This is a spreadsheet, and these are all those

11:21:36  5    rankings, right?  We saw some of these during your direct,

11:21:41  6    didn't we?

11:21:41  7    A.  Right.  These are the data that Clairvolex put

11:21:44  8    together, and you can see they did an extensive job, and

11:21:47  9    it's obviously hard to read on this screen.

11:21:49  10   Q.  It's hard to read, isn't it?

11:21:51  11   A.  Yes.

11:21:52  12        MR. WARD:  Let's zoom in to see how they ranked

11:21:55  13   the '311 patent.

11:21:57  14   Q.  (By Mr. Ward)  All right.  So you see Row 156, '311.

11:22:05  15        MR. WARD:  And can we move over to see where

11:22:08  16   Sagacious or Sagacious's ranking here is.

11:22:14  17   Q.  (By Mr. Ward)  And this is 461 patent assets, right?

11:22:18  18   A.  This is, yeah, part of the XSense portfolio.  I can't

11:22:24  19   remember the exact number, but this is the XSense portfolio

11:22:26  20   we were looking at, I believe.

11:22:30  21   Q.  And do you see right there, '311 rank in Sagacious

11:22:35  22   list, No. 8 on short list out of the 461 patents?

11:22:39  23   A.  Yes, I do see that.

11:22:40  24   Q.  Were you able to see it when you were preparing your

11:22:43  25   report?

11:22:43  1   A.  I don't recall seeing this when I was preparing my
11:22:47  2   report, but I certainly looked at this document.  I didn't
11:22:50  3   reference Sagacious in my report.
11:22:52  4   Q.  But given a fair and clear picture, for some reason,
11:22:57  5   Sagacious dropped off of the slide from opening, to your
11:22:59  6   presentation, right?
11:23:00  7   A.  Again, I didn't have anything to do with the opening
11:23:05  8   slides, so...
11:23:06  9   Q.  It disappeared.  Someone took it off, right?  Not you?
11:23:11  10  A.  Well, I didn't take it off because I wasn't dealing
11:23:14  11  with the slides.  But, generally, my slides represent what
11:23:17  12  I did in my report, and I didn't talk about Sagacious in my
11:23:20  13  report.
11:23:20  14  Q.  No, sir, you didn't, but they had a different opinion
11:23:23  15  than Clairvolex and Houlihan Lokey, correct?
11:23:25  16  A.  Right, they had a different opinion.  They ranked it
11:23:29  17  No. 8 out of the 12.  I think, that -- the 12 patents that
11:23:33  18  were actually sold to Solas.
11:23:35  19  Q.  So not everyone thought it was a mangy horse, did they?
11:23:40  20  A.  Well, I mean, it's all relative.  But certainly 8 out
11:23:46  21  of 12.
11:23:49  22  Q.  Now, did you look at what Clairvolex was charging for
11:23:52  23  these services of ranking these 461 patents?
11:23:56  24  A.  I don't -- I don't know precisely.  I think they were
11:24:01  25  paid a percentage or paid a fee.

| | | |
|---|---|---|
| 11:24:02 | 1 | Q.  You ever heard the saying "you get what you pay for"? |
| 11:24:06 | 2 | A.  I have heard that, yes. |
| 11:24:08 | 3 | MR. WARD:  All right.  Let's look at DTX-249. |
| 11:24:15 | 4 | Q.  (By Mr. Ward)  And if you look at the top, this is the |
| 11:24:21 | 5 | Master Service Agreement between Clairvolex and -- I'm |
| 11:24:30 | 6 | trying to find the client here -- oh, it says "client"? |
| 11:24:37 | 7 | MR. WARD:  Let's jump ahead to Exhibit A, Page 1 |
| 11:24:40 | 8 | and 2 of this.  It looks like this is their general |
| 11:24:44 | 9 | agreement -- go back to the first page, please, |
| 11:24:47 | 10 | Mr. Wietholter.  I'm sorry. |
| 11:24:49 | 11 | Q.  (By Mr. Ward)  It looks like this is their form |
| 11:24:54 | 12 | agreement, does it not?  Because there's no name, it says |
| 11:25:00 | 13 | "between company and Clairvolex, Inc."? |
| 11:25:02 | 14 | A.  Sure, I'll take your word for that. |
| 11:25:05 | 15 | MR. WARD:  And if we go to Exhibit A, Page 2. |
| 11:25:14 | 16 | Q.  (By Mr. Ward)  For Phase 1 -- |
| 11:25:17 | 17 | MR. WARD:  You can blow that up, please, |
| 11:25:20 | 18 | Mr. Wietholter. |
| 11:25:21 | 19 | Q.  (By Mr. Ward) -- it takes four to six weeks, and they |
| 11:25:24 | 20 | charge $75 per asset.  Do you see that? |
| 11:25:27 | 21 | A.  I do see that, yes. |
| 11:25:34 | 22 | MR. WARD:  And can we find where -- all the |
| 11:25:36 | 23 | services that you get for $75, Mr. Wietholter?  Yeah. |
| 11:25:44 | 24 | Q.  (By Mr. Ward)  And for $75, Clairvolex says they're |
| 11:25:47 | 25 | going to look at the probability of prior art, whether the |

11:25:51  1  concept is fundamental, relationship to specific markets,

11:25:56  2  all these things they're going to do for you for $75 per

11:26:00  3  patent, correct?

11:26:01  4  A.  Yeah, I see product teardown.  I see a number of things

11:26:04  5  that were --

11:26:05  6  Q.  That they say they're going to do for $75?

11:26:08  7  A.  Yes, they said they were going to do product teardown

11:26:11  8  for $75.

11:26:12  9  Q.  That's quite the deal, isn't it, Mr. Martinez?

11:26:15  10  A.  Yes, it is.

11:26:17  11  Q.  All right.  All right.  Let's talk about the smallest

11:26:28  12  salable patent unit -- patent practicing unit.

11:26:29  13         You said that Mr. Dell got it wrong when he used

11:26:32  14  the OLED display module for the '311 patent, correct?

11:26:36  15  A.  Correct.

11:26:37  16  Q.  He should have just used the touch sensor, correct?

11:26:40  17  A.  Correct.

11:26:40  18  Q.  Who told you that the touch sensor practices Claim 7 of

11:26:44  19  the '311 patent?

11:26:44  20  A.  Dr. Sierros.

11:26:48  21  Q.  Dr. Sierros told you that the touch sensor alone would

11:26:51  22  practice Claim 7 of the '311 patent?

11:26:55  23  A.  Well, actually, let me put it -- let me rephrase.  I

11:26:58  24  understand and I have to assume infringement.  So I

11:27:04  25  understand Dr. Sierros believes it doesn't infringe, but I

| | | |
|---|---|---|
| 11:27:07 | 1 | have to make that assumption. |
| 11:27:08 | 2 | So I didn't evaluate -- I'm not a lawyer.  I'm not |
| 11:27:12 | 3 | a patent lawyer.  I didn't look at the claims.  I don't |
| 11:27:14 | 4 | quite understand them.  I assume infringement. |
| 11:27:18 | 5 | Q.  But you looked at a touch sensor pad? |
| 11:27:20 | 6 | A.  You mean, I physically looked at a touch sensor pad? |
| 11:27:24 | 7 | Q.  Or looked at it in the documents to see what they cost, |
| 11:27:28 | 8 | correct? |
| 11:27:28 | 9 | A.  Right.  I looked at the record and I understand -- for |
| 11:27:31 | 10 | instance, I have an understanding based on the record of |
| 11:27:34 | 11 | what they costs. |
| 11:27:35 | 12 | MR. WARD:  Let's look at Plaintiff's Exhibit |
| 11:27:37 | 13 | No. 3. |
| 11:27:38 | 14 | Q.  (By Mr. Ward)  This is the '311 patent.  And let's -- |
| 11:27:42 | 15 | you see that? |
| 11:27:42 | 16 | A.  I do, yeah. |
| 11:27:43 | 17 | MR. WARD:  And jump to Claim 7. |
| 11:27:53 | 18 | Q.  (By Mr. Ward)  Now, neither one of us are lawyers that |
| 11:27:56 | 19 | practice before the Patent and Trademark Office, are we, |
| 11:27:58 | 20 | Mr. Martinez? |
| 11:27:58 | 21 | A.  I know I am not. |
| 11:28:00 | 22 | Q.  But you can look down here and read that one of the |
| 11:28:02 | 23 | limitations, the last one of Claim 7 says:  One or more |
| 11:28:07 | 24 | computer-readable non-transitory storage media embodying |
| 11:28:10 | 25 | logic that is configured when executed to control the touch |

11:28:13  1   sensor.

11:28:13  2        Correct?

11:28:14  3   A.  That's how it reads, yes.

11:28:16  4   Q.  And the touch sensor panel that you looked at did not

11:28:20  5   include hardware and software for running the touch sensor,

11:28:25  6   did it?

11:28:29  7   A.  I can't say that I looked at anything.  I was

11:28:36  8   evaluating what Mr. Dell did, so I didn't make an

11:28:39  9   independent assessment other than evaluating his analysis,

11:28:41  10  and it didn't have anything specifically to do with the

11:28:44  11  physical product.

11:28:44  12  Q.  The smallest salable patent practicing unit, right?

11:28:49  13  It's got to patent the practice to account for the SSPPU,

11:28:54  14  correct?

11:28:54  15  A.  Yes, smallest salable patent practicing unit.

11:28:57  16  Q.  So whatever you look at has got to include hardware and

11:29:02  17  software, does it not, Mr. Martinez?

11:29:04  18  A.  Again, I think this is out of my area of expertise.  I

11:29:12  19  mean, I don't -- I feel for the jury, and I appreciate that

11:29:15  20  these are hard to -- I'm not exactly sure what this means,

11:29:19  21  and I would hate to impose my lay judgment on a legal

11:29:22  22  issue.

11:29:22  23  Q.  All right.  You also said he didn't do -- use the right

11:29:28  24  SSPPU for the '450 and the '338, that he should not have

11:29:32  25  used the entire OLED display module, correct?

11:29:37  1   A.  Correct.

11:29:37  2   Q.  What was he supposed to strip out?  What pieces did he

11:29:41  3   need to strip out to get to the SSPPU?

11:29:43  4   A.  Again, my understanding is that the OLED panel itself,

11:29:46  5   not the whole OLED display, that's the appropriate SSPPU

11:29:50  6   for the Casio patents.

11:29:51  7   Q.  All right.  So what's the price difference between

11:29:53  8   those two?  Since he used the wrong one, what's the right

11:29:57  9   price?

11:29:57  10  A.  Well, we heard -- well, I don't know the right price

11:30:01  11  because I don't believe that that's the appropriate remedy

11:30:04  12  with the cost savings.

11:30:05  13  Q.  So you're just here to tell the jury that Mr. Dell got

11:30:08  14  it wrong, but you're not going to tell them what the right

11:30:11  15  number is for the smallest salable patent practicing unit,

11:30:16  16  correct?  You don't have an opinion as to what the correct

11:30:18  17  price is for the SSPPU, do you?

11:30:20  18  A.  No, I don't, but it's not relevant to my analysis or --

11:30:27  19  or -- it's not relevant.

11:30:34  20        MR. WARD:  Your Honor, I'm now going to go into

11:30:37  21  confidential information.  Request that the courtroom be

11:30:41  22  sealed.

11:30:42  23        THE COURT:  I'll order the courtroom to be sealed.

11:30:45  24  Those present and not subject to the protective order in

11:30:48  25  this case should exit and remain outside until the

| | | |
|---|---|---|
| 11:30:55 | 1 | courtroom is reopened and unsealed. |
| 11:30:58 | 2 | (Courtroom sealed.) |
| 11:30:58 | 3 | (This portion of the transcript is sealed |
| 11:30:58 | 4 | and filed under separate cover as |
| 12:00:30 | 5 | Sealed Portion No. 22.) |
| 12:00:30 | 6 | (Courtroom unsealed.) |
| 12:00:30 | 7 | THE COURT:  Ladies and gentlemen, you have now |
| 12:00:32 | 8 | heard all the evidence in this case.  There are several |
| 12:00:38 | 9 | things that I need to take up with counsel that have to be |
| 12:00:42 | 10 | dealt with outside of your presence before I will be in a |
| 12:00:45 | 11 | position to give you my final instructions and ask you to |
| 12:00:50 | 12 | then hear closing arguments from the attorneys and after |
| 12:00:55 | 13 | that retire to the jury room and deliberate on the verdict. |
| 12:00:57 | 14 | I hope to be in a position to start with my final |
| 12:01:00 | 15 | instructions to you in the early to midpart of this |
| 12:01:04 | 16 | afternoon.  That's my best guess. |
| 12:01:07 | 17 | It's 12:00 o'clock now.  I'm advised by |
| 12:01:09 | 18 | Ms. Clendening that your lunch is waiting for you in the |
| 12:01:12 | 19 | jury room.  I'm going to simply ask that you be available |
| 12:01:23 | 20 | and not away from the courthouse anytime after 2:00 |
| 12:01:40 | 21 | o'clock. |
| 12:01:40 | 22 | Now, this is not science; this is art.  I'm |
| 12:01:42 | 23 | guessing as to when I'm going to be ready.  You may have to |
| 12:01:46 | 24 | wait on me when you get here at 2:00 o'clock.  I may be |
| 12:01:50 | 25 | ready to go and be waiting on you. |

|          |    |                                                                     |
|----------|----|---------------------------------------------------------------------|
| 12:01:51 | 1  | But I'm basically going to give you your own time                   |
| 12:01:54 | 2  | back from now until 2:00 o'clock.  And at such point as              |
| 12:02:00 | 3  | you're here and I'm ready, I will bring you back into the            |
| 12:02:02 | 4  | courtroom and give you my final instructions on the law,            |
| 12:02:05 | 5  | you'll hear closing arguments from counsel for both of the          |
| 12:02:08 | 6  | parties, and then I'll direct you to retire and deliberate          |
| 12:02:11 | 7  | on your verdict in this case.                                        |
| 12:02:13 | 8  | We are coming to the end of the process.  It is                     |
| 12:02:19 | 9  | more important now than when we started that you follow             |
| 12:02:22 | 10 | every instruction I've given you about your conduct.  Don't         |
| 12:02:27 | 11 | discuss this case with anyone.  Don't discuss this case             |
| 12:02:31 | 12 | with each other.  Don't do any research.  Don't do any of           |
| 12:02:35 | 13 | the things I've told you not to do.  Reflect upon and make          |
| 12:02:39 | 14 | sure that you're scrupulously following my instructions            |
| 12:02:42 | 15 | about your conduct.                                                  |
| 12:02:44 | 16 | It would be a travesty to have a problem this late                  |
| 12:02:47 | 17 | in the process.  And I'm confident that you'll do that.  I          |
| 12:02:50 | 18 | just want to remind you one last time.                              |
| 12:02:52 | 19 | I would suggest you take your notebooks with you                    |
| 12:02:57 | 20 | to the jury room over the lunch break, and what you do              |
| 12:03:01 | 21 | between now and 2:00 o'clock, I'll leave to your good               |
| 12:03:04 | 22 | judgment.  Just be available and in the jury room ready by          |
| 12:03:08 | 23 | 2:00 p.m.                                                            |
| 12:03:10 | 24 | Again, I'm not sure if I'll be ready, I'm not sure                  |
| 12:03:13 | 25 | if you'll have to wait on me, we'll just play it by ear.            |

| | | |
|---|---|---|
| 12:03:18 | 1 | But as soon as I'm prepared to give you my final |
| 12:03:20 | 2 | instructions and you're assembled and ready, we will get |
| 12:03:24 | 3 | that done. |
| 12:03:25 | 4 | With that, ladies and gentlemen, you're excused |
| 12:03:27 | 5 | for lunch and until 2:00 p.m. |
| 12:03:29 | 6 | COURT SECURITY OFFICER:  All rise. |
| 12:03:31 | 7 | (Jury out.) |
| 12:03:33 | 8 | THE COURT:  Be seated, please. |
| 12:04:03 | 9 | Mr. Martinez, you may step down, sir. |
| 12:04:06 | 10 | THE WITNESS:  Thank you. |
| 12:04:08 | 11 | THE COURT:  Counsel, it's my intention to take a |
| 12:04:12 | 12 | lunch break, and I'd like to have those of each trial team |
| 12:04:21 | 13 | back in the courtroom at or around 12:45, at which time I |
| 12:04:27 | 14 | plan to be back on the bench to take up motions either |
| 12:04:31 | 15 | party would care to offer under Rule 50(a). |
| 12:04:34 | 16 | I think having heard all the evidence, the Court |
| 12:04:37 | 17 | is in a position to have a good grasp on what Plaintiff may |
| 12:04:42 | 18 | move for and what Defendant may move for under Rule 50(a). |
| 12:04:45 | 19 | I don't need 30-page briefs.  I need an |
| 12:04:50 | 20 | identification of the topics you want to move on and a |
| 12:04:54 | 21 | succinct explanation of the reasons why you believe the |
| 12:04:57 | 22 | record that's fresh before all of us would support that. |
| 12:05:00 | 23 | I'll hear targeted argument, and then I'll give |
| 12:05:02 | 24 | you rulings on your motions. |
| 12:05:03 | 25 | After we've completed the 50(a) practice portion |

12:05:11  1  of the proceedings, then I'll conduct an informal charge

12:05:16  2  conference, and I'll do that here in the courtroom off the

12:05:19  3  record and informally.  I invite every member of each trial

12:05:24  4  team to be present.

12:05:25  5          By the same token, those of you that are going to

12:05:28  6  present closing arguments later today, you're certainly

12:05:34  7  excused at this point forward over the 50(a) practice and

12:05:38  8  over the informal charge conference portion of the day and

12:05:41  9  through the formal charge conference that will follow the

12:05:44  10  informal charge conference so that you can use that time to

12:05:48  11  prepare for closing arguments later this afternoon.

12:05:51  12          Are there questions from either side at this

12:05:55  13  juncture?

12:05:56  14          MR. FENSTER:  Your Honor, may I just inquire, when

12:05:58  15  we come back at 12:45, is it your intention to address the

12:06:01  16  50(a)s first and then the charge?

12:06:04  17          THE COURT:  Yes.

12:06:04  18          MR. FENSTER:  Thank you, Your Honor.

12:06:05  19          THE COURT:  Any questions from Defendants?

12:06:08  20          MS. SMITH:  No, Your Honor.

12:06:08  21          THE COURT:  All right.  You're excused until

12:06:14  22  12:45.

12:06:14  23          The Court stands in recess.

12:06:15  24          COURT SECURITY OFFICER:  All rise.

12:06:16  25          (Recess.)

| | | |
|---|---|---|
| 12:53:53 | 1 | (Jury out.) |
| 12:53:53 | 2 | COURT SECURITY OFFICER:  All rise. |
| 12:53:55 | 3 | THE COURT:  Be seated, please. |
| 12:57:27 | 4 | Let me ask this, counsel, are both sides prepared |
| 12:57:33 | 5 | at this point to read into the record any exhibits that |
| 12:57:36 | 6 | were used during today's portion of the trial?  We're going |
| 12:57:39 | 7 | to have to get that done before I bring the jury back in. |
| 12:57:44 | 8 | If you're ready to do that, let's just get that |
| 12:57:47 | 9 | checked off our list.  If you're not, I'll come back to it |
| 12:57:50 | 10 | later. |
| 12:57:51 | 11 | MS. HENRY:  My apologies, Your Honor, I have not |
| 12:57:56 | 12 | thought of that.  So we are not, but we'll hurry up and |
| 12:58:01 | 13 | make sure that we're ready to do it before you give your |
| 12:58:04 | 14 | charge to the jury. |
| 12:58:06 | 15 | THE COURT:  All right.  We'll come back to that. |
| 12:58:07 | 16 | All right.  Counsel, having heard all of the |
| 12:58:16 | 17 | evidence in the case, the Court is prepared at this time to |
| 12:58:18 | 18 | take up motions from either Plaintiff or Defendants under |
| 12:58:23 | 19 | Rule 50(a) of the Federal Rules of Civil Procedure. |
| 12:58:25 | 20 | What I would request from both sides as a starting |
| 12:58:29 | 21 | place is for a single spokesman from each side to go to the |
| 12:58:34 | 22 | podium and give me a list of the substantive topics on |
| 12:58:37 | 23 | which you want to move under Rule 50(a). |
| 12:58:41 | 24 | It is common that there is often a motion on both |
| 12:58:46 | 25 | sides that's diametrically opposed to the other, and I can |

12:58:50  1   effectively hear argument on that same topic from both

12:58:54  2   sides concurrently.

12:58:55  3        And knowing what the topics are, allows me to

12:59:00  4   focus the argument better and more efficiently that way.

12:59:03  5        So, with that, let me ask a representative of the

12:59:07  6   Plaintiff to go to the podium and identify the topics.  I

12:59:14  7   don't want argument.  I just want an identification

12:59:16  8   substantively.

12:59:17  9        MR. UDICK:  Thank you, Your Honor.  Steve Udick

12:59:20  10  for Plaintiff.

12:59:21  11       The Plaintiff intends to move on -- 50(a) on

12:59:27  12  infringement, on invalidity -- or on validity of the '311

12:59:32  13  patent over Chen, on validity of the '450 patent, on

12:59:39  14  willfulness.

12:59:42  15       THE COURT:  On which particular patent or patents?

12:59:46  16       MR. UDICK:  Willfulness with regard to the '311

12:59:49  17  patent against all Defendants, and on damages.

12:59:56  18       THE COURT:  All right.  Let me hear a similar

12:59:58  19  identification from Defendants.

01:00:01  20       MR. DANIEL CHO:  Good afternoon, Your Honor.

01:00:03  21  Daniel Cho on behalf of Defendants.

01:00:05  22       Defendants intend to move for judgment as a matter

01:00:08  23  of law on non-infringement of the asserted claims of the

01:00:11  24  '450, the '338, and the '311 patents; and judgment as a

01:00:16  25  matter of law of no indirect infringement of the asserted

01:00:19  1  claims of the '450, '338, and '311 patents; no willful

01:00:23  2  infringement of the '311 patent; invalidity of the asserted

01:00:27  3  claims of the '450 and '311 patents; and a JMOL of no

01:00:33  4  damages.  And, in the alternative, damages to be limited to

01:00:36  5  no more than a fully paid-up lump sum of 1,650,000.

01:00:42  6       Thank you, Your Honor.

01:00:43  7       THE COURT:  All right.  Thank you.

01:00:44  8       As I suspected, there are some areas where both

01:00:52  9  parties are moving in opposite directions that are

01:00:54  10  diametrically opposed but they cover the same substantive

01:00:59  11  areas of the case, and I can efficiently hear argument

01:01:03  12  grouped around those areas.

01:01:05  13       So let's start with the

01:01:09  14  infringement/non-infringement arguments.  And let me hear

01:01:12  15  Plaintiff's position, followed by Defendants.

01:01:21  16       And as I mentioned before we recessed for lunch,

01:01:27  17  the Court would appreciate as succinct and targeted an

01:01:31  18  argument from each side as possible.  We have a lot to

01:01:33  19  cover today, and I'm clearly aware of the evidence, having

01:01:37  20  just sat through all of it, and there's no need to go back

01:01:42  21  and refresh my recollection.

01:01:44  22       But go ahead, counsel.

01:01:47  23       MR. BUCZKO:  Good afternoon, Your Honor.  Jacob

01:01:48  24  Buczko for Plaintiff.

01:01:50  25       So proposed under Rule 50 for a verdict of literal

| | | |
|---|---|---|
| 01:01:51 | 1 | infringement against Samsung, Solas has proven that |
| 01:01:51 | 2 | beginning in 2013 and continuing through the present, |
| 01:01:56 | 3 | Samsung has made, used, sold, offered to sale -- |
| 01:01:59 | 4 | THE COURT:  Slow down, please. |
| 01:02:01 | 5 | MR. BUCZKO:  Yes. |
| 01:02:02 | 6 | -- or imported into the United States the accused |
| 01:02:04 | 7 | products without Solas's permission.  Solas has |
| 01:02:06 | 8 | demonstrated this through the testimony of at least its |
| 01:02:09 | 9 | expert, Mr. Credelle, Mr. Repice, and through Mr. Kwak. |
| 01:02:14 | 10 | In addition, Mr. Repice has admitted that it |
| 01:02:18 | 11 | imports the accused products in the United States and would |
| 01:02:20 | 12 | be liable if Solas has shown the accused devices infringe |
| 01:02:25 | 13 | the asserted claims of the patents. |
| 01:02:25 | 14 | Defendant has not introduced any contrary |
| 01:02:27 | 15 | testimony or any other evidence and a reasonable juror |
| 01:02:30 | 16 | cannot find otherwise. |
| 01:02:31 | 17 | Solas has proven, at least through Mr. Credelle's |
| 01:02:36 | 18 | testimony, its expert, Dr. Fontecchio, and Mr. Kwak's |
| 01:02:38 | 19 | admissions that every element of Claims 4 and 5 of the '450 |
| 01:02:42 | 20 | patent -- |
| 01:02:42 | 21 | THE COURT:  Counsel, you're obviously reading, and |
| 01:02:46 | 22 | you're going much too fast for me to follow you, please |
| 01:02:50 | 23 | slow down.  Even if you're reading, take your time, slow |
| 01:02:53 | 24 | down. |
| 01:02:53 | 25 | MR. BUCZKO:  Yes, Your Honor. |

01:02:55  1        -- is literally found in the Galaxy Note 3, Galaxy

01:02:58  2   Note 4, Galaxy Note 4 Edge, Galaxy Note 5, Galaxy Note 8,

01:03:05  3   Galaxy S4, Galaxy S5, Galaxy S7, Galaxy S7 Edge, Galaxy S8,

01:03:14  4   and Galaxy S8 Plus devices.

01:03:17  5        Solas has also proven, at least through

01:03:20  6   Mr. Credelle's testimony and Dr. Fontecchio's and

01:03:24  7   Mr. Kwak's admissions, that every element of Claims 5 and 9

01:03:27  8   of the '338 patent is literally found in the Galaxy Note 3,

01:03:30  9   Galaxy Note 4, Galaxy Note 4 Edge, Galaxy Note 5, Galaxy

01:03:36  10  Note 8, Galaxy Note 9, Galaxy S4, Galaxy S5, Galaxy S6 Edge

01:03:46  11  Plus, Galaxy S8, Galaxy S8 Plus, Galaxy S9, and Galaxy S9

01:03:54  12  Plus.

01:03:55  13       Solas has further proven, at least through

01:03:59  14  Mr. Credelle's testimony and Dr. Fontecchio's and

01:04:02  15  Mr. Kwak's admissions, that every element of Claims 7 and

01:04:05  16  12 of the '311 patent is literally found in the Galaxy

01:04:08  17  Note 9, Galaxy Note 10, Galaxy Note 10 Plus, Galaxy S8,

01:04:16  18  Galaxy S9, Galaxy S9 Plus, Galaxy S10, Galaxy S10 Plus,

01:04:20  19  Galaxy S10 5G, Galaxy S20, Galaxy S20 Plus, Galaxy S20

01:04:28  20  Ultra, and Galaxy Z Flip.

01:04:30  21       Mr. Credelle presented hours of testimony

01:04:34  22  detailing infringement of each element of the asserted

01:04:36  23  claims of the asserted -- each of the asserted patents

01:04:39  24  using Samsung's own documents and sworn testimony from

01:04:42  25  Samsung's witnesses and referred to exhibits including:

| | | |
|---|---|---|
| 01:04:46 | 1 | PTX-95, PTX-160, PTX-123, PTX-131, PTX-163, PTX-135, |
| 01:04:57 | 2 | PTX-16, PTX-117, PTX-142, DTX-892, DTX-989, DTX-993, |
| 01:05:08 | 3 | DTX-1208, and DTX-681 as just examples. |
| 01:05:13 | 4 | Samsung did not even attempt to provide evidence |
| 01:05:16 | 5 | for the majority of the asserted claim elements.  A |
| 01:05:20 | 6 | reasonable juror cannot find otherwise.  If there was any |
| 01:05:24 | 7 | contrary testimony about the evidence from Solas's |
| 01:05:26 | 8 | witnesses, Dr. Fontecchio -- |
| 01:05:29 | 9 | THE COURT:  Counsel, speak up so I can hear you, |
| 01:05:31 | 10 | and slow down a little bit more. |
| 01:05:33 | 11 | MR. BUCZKO:  -- Mr. Kwak impermissibly conflicts |
| 01:05:37 | 12 | with this Court's Markman and summary judgment orders. |
| 01:05:40 | 13 | Furthermore, based on the evidence presented, |
| 01:05:42 | 14 | Solas has also shown indirect infringement of the asserted |
| 01:05:45 | 15 | claims through at least Mr. Kwak's and Mr. Kim's and |
| 01:05:51 | 16 | Mr. Repice's admissions that Samsung is a global company |
| 01:05:55 | 17 | and a global leader in the smartphones and sells its |
| 01:05:59 | 18 | products worldwide. |
| 01:06:02 | 19 | In addition, we heard testimony that Samsung files |
| 01:06:07 | 20 | consolidated financial statements and with SEC being the |
| 01:06:13 | 21 | parent and owning all of SEA and having a display arm being |
| 01:06:19 | 22 | SDC. |
| 01:06:20 | 23 | Solas has proven that it owns the '450, '338, and |
| 01:06:24 | 24 | '311 patents through at least the testimony of Mr. Gerry |
| 01:06:29 | 25 | Padian and Exhibits PTX-550 and PTX-549. |

01:06:32   1         Defendants have not introduced any contrary
01:06:34   2    testimony or other evidence, and a reasonable juror cannot
01:06:38   3    find otherwise.
01:06:39   4         THE COURT:  All right.  Let me hear Defendants'
01:06:40   5    response.  And I'd like to hear Defendants' arguments on
01:06:47   6    both literal and indirect infringement.
01:06:49   7         MR. AUSTIN:  Your Honor, Tarek Austin for
01:07:03   8    Defendants.
01:07:03   9         THE COURT:  Counsel, would you remove your mask?
01:07:07  10    I'll hear you a lot clearer if we don't have to listen
01:07:11  11    through the material.
01:07:12  12         MR. AUSTIN:  Thank you, Your Honor.
01:07:13  13         I'll address the motion for the judgment as a
01:07:15  14    matter of law on the non-infringement of the '450 and the
01:07:18  15    '338 patents, and then I'll hand over to my colleague
01:07:21  16    for -- to address the '311.
01:07:22  17         THE COURT:  That's fine.
01:07:24  18         MR. AUSTIN:  We would submit, Your Honor, that as
01:07:27  19    for non-infringement of the '450 patent, Solas has failed
01:07:32  20    to provide sufficient evidence that Samsung's products meet
01:07:36  21    the following limitations:
01:07:38  22         First, the first electrode connected to the drive
01:07:42  23    transistor and selection transistor.  In the accused
01:07:46  24    products, as we -- as we heard, the alleged drive
01:07:52  25    transistor is T1, the alleged selection transistor is T3.

01:07:57   1          The testimony from both Mr. Credelle and

01:08:03   2   Dr. Fontecchio made clear that it's undisputed that there's

01:08:06   3   an intervening transistor, T6, between the alleged drive

01:08:13   4   transistor and alleged selection transistor.

01:08:16   5          We would also submit that Dr. Fontecchio's

01:08:19   6   testimony established that the claims require a physical

01:08:23   7   connection as opposed to an electrical connection, as

01:08:30   8   Mr. Credelle testified.

01:08:31   9          We also submit that Samsung's products fail to

01:08:38   10  meet the limitation of an electroluminescent material

01:08:42   11  formed so as to cover the transistors.  In this respect, we

01:08:49   12  would submit that Mr. -- that Solas failed to provide

01:08:53   13  adequate proof of infringement, insofar as Mr. Credelle

01:08:59   14  himself testified during cross-examination that he did not

01:09:03   15  know the precise boundaries of where the electroluminescent

01:09:08   16  material lays; and, therefore, his testimony that the

01:09:19   17  electroluminescent material necessarily covers the

01:09:22   18  transistors is unreliable.

01:09:25   19         Finally, Your Honor, with respect to the '450, we

01:09:31   20  would submit that Solas has failed to provide

01:09:34   21  particularized product-specific evidence of infringement.

01:09:41   22         In Mr. Credelle's direct examination, Mr. Credelle

01:09:47   23  provided exemplary -- showed to the jury exemplary products

01:10:02   24  and then, at the very end of his presentation, identified

01:10:06   25  the exhibits he was relying on, but that he did not

01:10:10   1   actually show the GDS files for every single product,

01:10:16   2   which, in our view, is necessary for the jury to assess on

01:10:19   3   infringement.

01:10:19   4        With respect to the '338 patent, Your Honor, we

01:10:26   5   would also submit that Solas has failed to provide

01:10:29   6   sufficient evidence that Samsung's products meet the

01:10:32   7   following limitations.  There are four of them, three are

01:10:37   8   common to all products.  The last one is only for certain

01:10:43   9   accused products.

01:10:43  10        First, Solas has failed to show the limitation of

01:10:50  11   a driving transistor, one of the source and the drain of

01:10:52  12   which is connected to the pixel electrode, is met in any of

01:10:56  13   the accused products.

01:10:59  14        Similarly, to -- as I was explaining for the --

01:11:04  15   arguing for the '450 patent, there is an intervening

01:11:07  16   transistor, T6.  Both experts agree to that point, both

01:11:13  17   Mr. Credelle and Dr. Fontecchio.

01:11:18  18        Again, we believe Dr. Fontecchio's testimony

01:11:20  19   established that the connection between the source or the

01:11:28  20   drain of the driving transistor and the pixel electrode

01:11:32  21   must be physical.

01:11:35  22        And with respect to the '338 patent, in

01:11:38  23   particular, we believe Mr. Credelle's theory that the

01:11:44  24   connection can be electrical is clearly inconsistent with

01:11:50  25   the claim language, which specifies that only one of the

01:11:53   1   source and the drain of the transistor can be connected.

01:11:59   2        If we were talking about electrical connection

01:12:00   3   here, then either none or both of the source and drain of

01:12:07   4   T1 would be connected.

01:12:12   5        Second, Your Honor, with respect to the '338

01:12:14   6   patent, we believe the switch transistor, which makes a

01:12:20   7   write current flow, that limitation is not met in any of

01:12:24   8   the accused products.

01:12:25   9        The reason is that, as Dr. Fontecchio's testimony

01:12:30  10   established, Samsung's seven-transistor circuit has a

01:12:36  11   push-in current.  The current is not pulled out of the

01:12:38  12   circuit.

01:12:41  13        Dr. Fontecchio and Mr. Kwak both testified that

01:12:46  14   current does not flow through a capacitor and, therefore,

01:12:50  15   cannot be pulled out of the accused products' circuits.

01:13:01  16        We would also submit that the accused products do

01:13:02  17   not meet the holding transistor between the -- the holding

01:13:07  18   transistor that holds a voltage between the gate and source

01:13:10  19   of the driving transistor limitation.

01:13:14  20        Dr. Fontecchio's testimony established that the

01:13:18  21   alleged holding transistor for the '338 patent, which is

01:13:23  22   T3, holds a voltage between a gate and the drain of the

01:13:28  23   driving transistor, T1, not between the gate and the

01:13:32  24   source.

01:13:32  25        We believe that Mr. Credelle's -- Mr. Credelle did

01:13:36  1  not offer the specific opinion that T3 holds a voltage

01:13:44  2  between the gate and the drain of T1.  Mr. Credelle offered

01:13:50  3  a slightly different but materially different opinion,

01:13:53  4  which is that when T3 is off, the capacitor in the circuit

01:14:00  5  holds a voltage between the source of T1 and the gate of

01:14:07  6  T1.

01:14:07  7        Finally, Your Honor, we submit that with respect

01:14:11  8  to a subset of the accused products, specifically the

01:14:17  9  Galaxy Note 8, Note 9, S8, S8 Plus, S9, and S9 Plus, these

01:14:25  10  products do not have the required interconnections.

01:14:30  11        And the reason for that is Dr. Fontecchio

01:14:33  12  testified that a person of ordinary skill in the art would

01:14:37  13  understand, in view of the patent specification, that the

01:14:43  14  claim language "interconnections" means interconnects that

01:14:49  15  supply electrical signal to the pixel electrode.

01:14:51  16        And for the products that I just listed, there is

01:14:55  17  no dispute, Mr. Credelle did not argue to the contrary,

01:14:59  18  that the wavy lines identified by Mr. Credelle as the

01:15:06  19  alleged interconnects do not electric -- electrically

01:15:12  20  connect to the pixel electrode.

01:15:13  21        For these reasons, Your Honor, we would -- we move

01:15:19  22  that the Court enter judgment as a matter of law of

01:15:26  23  non-infringement by all the accused products of the '450

01:15:29  24  and '338 patents.

01:15:31  25        I'll turn it over to my colleague --

01:15:34   1                THE COURT:  All right.

01:15:36   2                MR. AUSTIN:  -- to address the '311.

01:15:39   3                THE COURT:  Let me hear your arguments on

01:15:42   4    non-infringement as to the '311 patent.

01:15:43   5                MR. DANIEL CHO:  Yes, Your Honor.  And before I

01:15:44   6    begin, I just wanted to note for the record, just maybe

01:15:48   7    minutes before your direction earlier this afternoon that

01:15:51   8    you would not like to see written positions on our

01:15:56   9    judgment -- motions for judgment as a matter of law, we did

01:16:01   10   file a 27-page brief that laid out our positions.

01:16:05   11               We apologize for that, Your Honor.  I understand

01:16:07   12   your practice in that regard now, but we just submit that

01:16:10   13   the positions are in the brief.  It's Docket No. 335.  But

01:16:14   14   to speed up this process, I'd like to hit just a couple

01:16:18   15   high-level points.

01:16:19   16               THE COURT:  That's fine.  I'm not going to delay

01:16:23   17   instructing this jury or submitting the case to the jury so

01:16:26   18   that I can go read and digest a 27-page brief on a 50(a)

01:16:33   19   motion.

01:16:34   20               That may well be why those that wrote the rule

01:16:38   21   provided for 50(b) and the opportunity under 50(b) to fully

01:16:44   22   brief at whatever page limits the particular Court might

01:16:48   23   have.  But I don't find it feasible or fair to the jury to

01:16:52   24   delay them and have them sit for hours while I read

01:16:57   25   competing briefing of that magnitude.

01:17:00  1      I am happy to hear your targeted arguments.  I'm
01:17:04  2  happy for you to reference what you believe the evidentiary
01:17:06  3  record created through the trial shows to support your
01:17:11  4  position.
01:17:12  5      As noted, I've listened carefully to all the
01:17:15  6  evidence throughout the trial, and I'm prepared to hear
01:17:18  7  your arguments and consider them.  But you need to present
01:17:21  8  them orally and succinctly and --
01:17:24  9      MR. DANIEL CHO:  Yes, Your Honor, thank you.
01:17:28  10      THE COURT:  -- that's -- that's where I am.  Go
01:17:31  11  ahead.  Let me hear from you on the '311.
01:17:33  12      MR. DANIEL CHO:  Thank you.
01:17:33  13      Defendants move for judgment as a matter of law of
01:17:35  14  non-infringement of the '311 patent.  At trial, Solas
01:17:38  15  asserted infringement of Claim 7 and 12 of the '311 patent.
01:17:44  16      Among other limitations, Claim 7 recites the
01:17:47  17  substantially flexible substrate and touch sensor
01:17:49  18  configured to wrap around one or more edges of a display.
01:17:52  19      Solas failed to certify its burden of proof of
01:17:56  20  proof of infringement on the 13 accused products for two
01:18:02  21  different reasons.
01:18:08  22      The '311 accused products do not satisfy the
01:18:10  23  substantially flexible substrate configured to wrap around
01:18:14  24  one or more edges of a display limitation.
01:18:17  25      There's no dispute that Claim 7 requires the

01:18:21  1   mentioned display as a limitation.  And the recited

01:18:22  2   substantially flexible substrate to be satisfied by an

01:18:24  3   accused product, the required substrate must be a separate

01:18:30  4   and distinct element from the display.

01:18:31  5          We heard from Mr. Credelle, who points to the

01:18:36  6   thin-film encapsulation, or TFE layer, that includes a

01:18:39  7   lower CVD layer, TFE monomer, an upper CVD layer as a

01:18:43  8   substantially flexible substrate required by Claim 7.

01:18:47  9          This TFE layer, as shown by these documents

01:18:52  10  DTX-633, DTX-677, DTX-669, exemplary documents, show that

01:18:59  11  this TFE layer is part of the display.

01:19:02  12         There's no dispute that the TFE layer is required

01:19:05  13  for a functioning display, as shown by the testimony of at

01:19:10  14  least Mr. Kwak, Dr. Sierros, and also testimony from

01:19:14  15  Mr. Credelle.

01:19:14  16         The TFE layer thus constitutes a part of the

01:19:19  17  display.  And, accordingly, the TFE layer that Solas has

01:19:21  18  pointed to is part of the display and cannot be the claimed

01:19:24  19  substrate that must be distinct and separate from the

01:19:28  20  referenced display, the language in the claims.

01:19:30  21         The TFE does not satisfy the limitation that we

01:19:34  22  were just talking about, substantially flexible substrate

01:19:37  23  configured to wrap around one or more edges of the display.

01:19:40  24         In terms of the Galaxy Z Flip, when it's folded,

01:19:48  25  the display panel of the Z Flip wraps around the touch

01:19:53  1   sensor, while the claims in the patent -- Claims 7 and 12

01:19:55  2   that are asserted against Defendants require wrapping the

01:19:58  3   other way around.

01:19:59  4        And we heard this from the testimony of

01:20:03  5   Dr. Sierros and also shown in documents, at least DTX-749.

01:20:08  6        And we submit that no reasonable jury would

01:20:11  7   conclude that the Galaxy Z Flip infringes Claims 7 and 12

01:20:15  8   for the reasons I just discussed.

01:20:16  9        As for some other accused products, Solas

01:20:19  10  generally pointed to the curvature in the accused products

01:20:21  11  to satisfy this limitation, but the evidence, however,

01:20:24  12  shows that argument is not supported.

01:20:29  13       The '311 accused products do not have the required

01:20:33  14  intersection between two or more surfaces of a display in

01:20:37  15  which the intersection is wrapped around by the claimed

01:20:41  16  touch sensor.

01:20:41  17       Those products have only a surface that curves

01:20:45  18  towards an edge, and thus cannot be ratified by the

01:20:47  19  asserted claims.  And this is shown in documents, at least

01:20:49  20  DTX-989, DTX-1045, DTX-995, DTX-1049, and we also heard

01:20:59  21  testimony from Dr. Sierros in this regard.

01:21:01  22       For this reason, Defendants move for judgment as a

01:21:05  23  matter of law on infringement for the asserted claims of

01:21:07  24  the '311 patent.

01:21:08  25       THE COURT:  All right.  Thank you, counsel.

01:21:10   1          Let's move next -- I'd like to hear competing

01:21:15   2   arguments on the issues of validity and invalidity.

01:21:22   3          And it's apparent that there is not an invalidity

01:21:25   4   challenge to the '338 patent, correct?

01:21:31   5          MR. TSUEI:  That's correct, Your Honor.

01:21:34   6          MR. DANIEL CHO:  That's correct, Your Honor.

01:21:35   7          THE COURT:  Okay.  Let me hear your arguments

01:21:37   8   competing with regard to the issue of validity on the '450

01:21:40   9   and the '311 patents.

01:21:44   10          And let me say this, counsel:  I have a scheduled

01:21:48   11   phone call to take at 1:30 or shortly thereafter.  That's

01:21:52   12   why this is one of the rare times I have my cell phone on

01:21:55   13   the bench, and I promise you it's muted.  But if that call

01:21:59   14   comes through, I'll have to recess and take that call, and

01:22:02   15   then I'll be back shortly.

01:22:04   16          Go ahead.

01:22:04   17          MR. TSUEI:  Okay.  Thank you, Your Honor.  May it

01:22:06   18   please the Court.

01:22:06   19          My name is James Tsuei.  I'll be presenting

01:22:10   20   Solas's motion for judgment as a matter of law on the '311

01:22:13   21   patent issues related to invalidity, and my colleague,

01:22:16   22   Mr. Rubin, will be presenting Solas's arguments on

01:22:20   23   invalidity related to the '450 patent.

01:22:20   24          THE COURT:  Give me your name again, please.

01:22:23   25          MR. TSUEI:  James Tsuei, Your Honor.

| | | |
|---|---|---|
| 01:22:24 | 1 | THE COURT:  Thank you.  Go ahead, Mr. Tsuei. |
| 01:22:28 | 2 | MR. TSUEI:  So Solas moves for judgment as a |
| 01:22:29 | 3 | matter of law for no invalidity based on Chen because the |
| 01:22:30 | 4 | record establishes that Chen is not prior art.  We |
| 01:22:34 | 5 | satisfied our burden of production under the Federal |
| 01:22:37 | 6 | Circuit's burden-shifting framework for antedation claims |
| 01:22:41 | 7 | in district court. |
| 01:22:42 | 8 | That framework is set forth, for the record, in |
| 01:22:47 | 9 | Technologies Licensing Corp. versus Videotek, Incorporated, |
| 01:22:50 | 10 | 545 F.3d 1316, Federal Circuit opinion from 2008. |
| 01:22:56 | 11 | Solas satisfied its burden of production under |
| 01:23:00 | 12 | that burden-shifting framework by producing unrebutted |
| 01:23:07 | 13 | evidence and expert and testimony that the invention of the |
| 01:23:10 | 14 | '311 patent predates by six months the July 19th, 2011, |
| 01:23:14 | 15 | effective date of the Chen reference. |
| 01:23:16 | 16 | We also provided unrebutted evidence and expert |
| 01:23:20 | 17 | opinion that the invention of the '311 patent was actually |
| 01:23:23 | 18 | reduced to practice on July 8th, 2011, before the effective |
| 01:23:29 | 19 | date of the Chen reference. |
| 01:23:30 | 20 | That evidence includes, as the Court is well |
| 01:23:36 | 21 | aware, the voluminous documentary evidence, as well as the |
| 01:23:38 | 22 | testimonies of Mr. Yilmaz and Mr. Shaikh, named inventors, |
| 01:23:41 | 23 | as well as the expert opinion of Mr. Credelle. |
| 01:23:44 | 24 | In doing so, Solas shifted the burden back on to |
| 01:23:49 | 25 | Samsung, who under the proper framework, bears the ultimate |

01:23:54  1  burden of persuasion that they have to prove with clear and

01:23:56  2  convincing evidence that Chen is prior art.  They failed to

01:24:01  3  rebut any of Solas's testimony or evidence on this point.

01:24:05  4       For example, as Your Honor may remember,

01:24:08  5  Dr. Sierros yesterday admitted he had no opinions rebutting

01:24:12  6  Solas's claims of earlier invention and reduction to

01:24:15  7  practice, despite having every opportunity to have done so.

01:24:19  8       In sum, as the record contains no factual disputes

01:24:23  9  regarding the invention and reduction to practice story as

01:24:27  10  presented by Solas in this case, we submit to Your Honor

01:24:30  11  that no reasonable juror could find that Samsung satisfied

01:24:35  12  its burden of persuasion to clearly and convincingly show

01:24:40  13  that Chen is prior art.

01:24:42  14       Your Honor, Solas also moves for no anticipation

01:24:47  15  by Chen on an element-by-element basis.

01:24:50  16       The basis of our argument under this motion for

01:24:56  17  judgment as a matter of law is that during his testimony on

01:24:59  18  direct examination, Dr. Sierros admitted in response to

01:25:02  19  questioning from Samsung's counsel no fewer than three

01:25:06  20  separate times, in context of Dr. Sierros's opinions

01:25:11  21  presented -- presented on screen to the jury, that Chen did

01:25:16  22  not anticipate.  Chen did not anticipate.  It does not

01:25:18  23  anticipate.  He does not anticipate.

01:25:21  24       THE COURT:  No need to repeat, counsel.  I was

01:25:24  25  here.

805

01:25:25  1          MR. TSUEI:  Thank you, Your Honor.

01:25:25  2          For those two reasons and on those two grounds,

01:25:30  3   Solas moves under Rule 50(a) for no invalidity of the '311

01:25:36  4   patent asserted claims based on Chen.

01:25:37  5          And, Your Honor, my colleague, Mr. Udick may have

01:25:42  6   neglected to mention, we are moving for JMOL for no

01:25:46  7   obviousness based on the sole asserted combination, and

01:25:49  8   I'll just briefly explain why.

01:25:50  9          Yesterday, during cross-examination of Samsung's

01:25:53  10  technical expert on this issue, Dr. Sierros admitted he

01:25:56  11  actually did not apply the Court's claim construction to

01:26:00  12  determine where the missing element and the primary

01:26:04  13  reference [7d] was actually found in the Joo reference.

01:26:07  14  And, for the record, that citation is the sealed transcript

01:26:11  15  from Day 4, 147, Lines 23 to 25.

01:26:15  16         Without having actually applied this Court's claim

01:26:22  17  construction of "edge," Dr. Sierros admitted essentially

01:26:25  18  that he actually could not proffer a competent opinion that

01:26:29  19  the references could be combined in a way to meet the

01:26:32  20  limitations of the asserted claims.

01:26:34  21         So for these reasons, Your Honor, Solas believes

01:26:38  22  that Samsung has failed to meet their burden of proving

01:26:42  23  invalidity under either anticipation or obviousness grounds

01:26:45  24  by clear and convincing evidence of the asserted claims of

01:26:49  25  the '311 patent.

01:26:50   1          THE COURT:  All right.  Thank you.

01:27:00   2          Let me hear competing argument, please.

01:27:04   3          MR. VALENCIA:  Good afternoon, Your Honor.  Daniel

01:27:06   4  Valencia on behalf of Defendants.  I can address the '311

01:27:08   5  patent issues that were just raised.  There were two that

01:27:12   6  were raised.

01:27:12   7          One is that Chen isn't prior art.  I'll take that

01:27:16   8  one up first, and then I'll talk about the anticipation

01:27:19   9  point.

01:27:19  10          On -- with respect to Chen, there's been a lot of

01:27:23  11  motion practice in this case concerning what is proper

01:27:26  12  evidence of corroboration for invention.  And I thought I

01:27:29  13  heard my colleague, Mr. Tsuei, say that there are no

01:27:33  14  factual disputes.

01:27:35  15          There absolutely are factual disputes, and one of

01:27:38  16  the things you'll hear about in discussion of the jury

01:27:41  17  instructions is that we don't think that there's adequate

01:27:45  18  corroboration of the date of invention by -- or the alleged

01:27:48  19  date of invention by Mr. Yilmaz and Mr. Shaikh and others.

01:27:51  20          As a matter of law, inventor testimony -- inventor

01:27:55  21  documents cannot suffice to establish an earlier date of

01:27:59  22  invention than the date Chen was prior art.

01:28:03  23          And so it's our position that the jury should get

01:28:05  24  to consider what they claim is evidence of conception and

01:28:08  25  reduction to practice in light of the cross-examination

807

01:28:11  1  that was made of Mr. Shaikh, Mr. Yilmaz, and Mr. Credelle.

01:28:15  2      So that's Point 1.

01:28:20  3      On the anticipation argument, I was not in the

01:28:22  4  courtroom, but I understand that during cross-examination,

01:28:29  5  opposing counsel -- sorry, counsel for Solas actually

01:28:31  6  revisited the issue of anticipation and opened the door.

01:28:35  7      And while Mr. -- or, excuse me, Dr. Sierros did

01:28:40  8  testify and did have some difficulties formulating his

01:28:45  9  opinion on anticipation, Mr. Haslam got up and asked him

01:28:48 10  some questions about whether the elements in the claims

01:28:51 11  were satisfied, and he did testify indeed that they were.

01:28:53 12      THE COURT:  He did have some difficulty.

01:28:57 13      MR. VALENCIA:  Candidly, he did.

01:28:59 14      But we -- it's our position, it's our view, that

01:29:03 15  on redirect examination by Defendants' counsel, we were

01:29:06 16  able to rehabilitate Dr. Sierros and get him to clearly

01:29:13 17  articulate his opinion, which is contrary to the motion

01:29:15 18  that Solas has just made.

01:29:17 19      THE COURT:  All right.  What else do you have?

01:29:19 20      MR. VALENCIA:  I'm going to turn it over to my

01:29:21 21  colleague to handle the third issue.

01:29:24 22      THE COURT:  All right.

01:29:31 23      MR. VALENCIA:  Thank you.

01:29:32 24      THE COURT:  Go ahead, Mr. Cho.

01:29:34 25      MR. DANIEL CHO:  Thank you, Your Honor.  Daniel

01:29:38  1  Cho on behalf of Defendants.

01:29:39  2       We also argue that Solas has failed to put forward

01:29:42  3  evidence to establish that Chen is not a prior art.  We

01:29:42  4  submit, Your Honor, that there was a failure of

01:29:44  5  corroboration, where Solas had burden to prove the

01:29:47  6  invention date based on at least some corroborating

01:29:50  7  evidence that did not come from the inventors.

01:29:54  8       Solas relied on inventor testimony and inventor

01:29:58  9  documents, but Solas failed to corroborate the authorship

01:30:02  10  and date in a manner that is dependent from the inventors.

01:30:05  11       There is also a failure of reduction to practice.

01:30:10  12  There was no evidence that was shown to the jury regarding

01:30:12  13  the prototypes that met the wraparound limitation that's

01:30:15  14  been discussed, no evidence showing any prototype of the

01:30:18  15  wraparound which was successfully made, Your Honor.

01:30:20  16       And for that reason, we submit that there was

01:30:23  17  insufficient evidence put forward to establish Chen is not

01:30:26  18  prior art.

01:30:27  19       THE COURT:  Thank you.

01:30:28  20       All right.  Let's move on.  Let me hear arguments

01:30:32  21  from the competing parties regarding willfulness related to

01:30:38  22  the '311 patent.

01:30:41  23       MR. RUBIN:  Your Honor.

01:30:43  24       THE COURT:  Yes.

01:30:44  25       MR. RUBIN:  There is still -- Neil Rubin for

| | | |
|---|---|---|
| 01:30:45 | 1 | Solas.  There is still an issue on invalidity that we |
| 01:30:46 | 2 | haven't addressed.  We addressed invalidity for the '311 |
| 01:30:52 | 3 | patent, but, as Mr. Tsuei indicated, I'm going to be |
| 01:30:55 | 4 | addressing invalidity for the '450 patent. |
| 01:30:56 | 5 | THE COURT:  Well, I thought when you didn't get up |
| 01:30:58 | 6 | and the defense counsel went to the podium, you had decided |
| 01:31:03 | 7 | not to present, but I'll let you do it now. |
| 01:31:07 | 8 | MR. RUBIN:  Thank you, Your Honor. |
| 01:31:08 | 9 | THE COURT:  Please try to be brief. |
| 01:31:11 | 10 | MR. RUBIN:  Thank you, Your Honor. |
| 01:31:13 | 11 | Your Honor, Solas moves for judgment as a matter |
| 01:31:17 | 12 | of law of no invalidity of the '450 patent -- |
| 01:31:19 | 13 | THE COURT:  Mr. Rubin, I could hear you better if |
| 01:31:23 | 14 | you'd remove your mask just while you're at the podium. |
| 01:31:27 | 15 | Thank you. |
| 01:31:27 | 16 | MR. RUBIN:  Thank you, Your Honor. |
| 01:31:27 | 17 | Samsung has failed to present clear and convincing |
| 01:31:30 | 18 | evidence, or any evidence, showing that the sole reference |
| 01:31:31 | 19 | that they rely upon, Utsugi, discloses or renders obvious |
| 01:31:35 | 20 | every element of the '450 patent claims at issue in this |
| 01:31:39 | 21 | trial. |
| 01:31:40 | 22 | Samsung's expert, Dr. Fontecchio, failed to cite |
| 01:31:43 | 23 | any statement or figure in Utsugi that expressly discloses |
| 01:31:47 | 24 | or renders obvious an insulation film formed over said |
| 01:31:52 | 25 | substrate so as to cover both active elements as required |

01:31:56  1   by Claim [1c].

01:31:58  2        Relevant testimony from Dr. Fontecchio showing

01:32:00  3   this can be found at yesterday's transcript on Pages 625,

01:32:06  4   Line 15, through 628, Line 23.

01:32:10  5        Dr. Fontecchio also failed to cite any statement

01:32:14  6   or figure in Utsugi that expressly discloses a first

01:32:19  7   electrode connected to both active elements through said at

01:32:23  8   least one contact hole as required by Claim Element [1d],

01:32:30  9   and further failed to present any opinion that this

01:32:32  10  limitation would have been obvious.

01:32:35  11       And relevant testimony on this point is from

01:32:38  12  yesterday, Page 624, Lines 1 through 25, and Page 628,

01:32:46  13  Line 24, through 632, Line 1.

01:32:49  14       As Utsugi is the sole prior art relied upon by

01:32:54  15  Samsung for this '450 patent and as expert testimony is

01:32:58  16  required to establish prior art maps on the claims for the

01:33:03  17  purposes of anticipation or obviousness, no reasonable jury

01:33:07  18  could find that the '450 patent claims are invalid, and

01:33:12  19  Solas is entitled to judgment as a matter of law on this

01:33:14  20  issue.

01:33:14  21       THE COURT:  All right.  Thank you, counsel.

01:33:22  22       Anything further before we move on to the issue of

01:33:25  23  willfulness?

01:33:26  24       MR. RUBIN:  Not on -- or not on invalidity from

01:33:28  25  Plaintiff, Your Honor.

01:33:29  1          THE COURT:  All right.

01:33:35  2          MR. AUSTIN:  Your Honor, Defendants -- Defendants

01:33:39  3    disagree with my colleague's presentation just now, and we

01:33:43  4    would submit that Defendants have provided clear and

01:33:46  5    convincing evidence that the '450 patent is anticipated or,

01:33:53  6    in the alternative, rendered obvious by Utsugi and that

01:33:57  7    there is no evidence from which a jury could reasonably

01:34:00  8    conclude otherwise.

01:34:03  9          THE COURT:  No legally sufficient evidence, I

01:34:05  10   believe the rule says.

01:34:07  11         MR. AUSTIN:  Your Honor is correct.

01:34:10  12         THE COURT:  All right.

01:34:11  13         MR. AUSTIN:  Legally sufficient evidence to

01:34:12  14   conclude otherwise.

01:34:13  15         Your Honor, Dr. Fontecchio, in his direct

01:34:16  16   examination, specifically pinpointed where each and every

01:34:20  17   limitation of this patent is disclosed in Utsugi.  We would

01:34:26  18   emphasize that his testimony was unrebutted at trial.

01:34:32  19         With specific respect to the two limitations

01:34:35  20   identified by my colleague, starting with [1c], the

01:34:41  21   insulation layer covering both transistors, Dr. Fontecchio

01:34:46  22   testified that a person of ordinary skill in the art would

01:34:52  23   understand from Utsugi's directive to let grow an

01:34:58  24   insulation layer.  After the transistors have already been

01:35:03  25   formed, that the insulation layer would be deposited over

01:35:09  1  the entire surface.

01:35:10  2          And, therefore, even though the selection

01:35:14  3  transistor of Utsugi is not specifically -- expressly shown

01:35:20  4  in Figure 5 nor expressly identified in the corresponding

01:35:30  5  text cited by Dr. Fontecchio during his presentation, a

01:35:33  6  person of ordinary skill in the art would understand that

01:35:38  7  the insulation layer was deposited across the entire

01:35:43  8  surface and only removed over the contact holes, as

01:35:47  9  expressly directed by Utsugi.

01:35:49  10         With respect to Limitation [1d], Your Honor, we --

01:35:59  11  again, the testimony provided by Dr. Fontecchio is

01:36:02  12  unrebutted, and that testimony was that both transistors

01:36:08  13  would be covered by the electrode and connected to that

01:36:13  14  electrode through a contact hole.

01:36:19  15         Your Honor, even if there were reasonable doubt

01:36:22  16  about anticipation of these limitations, we submit that

01:36:27  17  Dr. Fontecchio, again, provided unrebutted testimony that a

01:36:32  18  person of ordinary skill in the art would consider it

01:36:34  19  obvious to deposit -- to keep the layer that has already

01:36:42  20  been -- the insulation layer that has already been

01:36:46  21  deposited over the entire surface and not remove it over

01:36:48  22  the selection transistor.

01:36:53  23         Solas has identified no reason why a person of

01:36:56  24  ordinary skill would be motivated to do so; and, therefore,

01:37:02  25  we would submit that, at a minimum, we've provided clear

813

01:37:07  1   and convincing evidence of obviousness.

01:37:09  2          THE COURT:  All right.  Thank you, counsel.

01:37:11  3          I'd like to now hear competing arguments on the

01:37:17  4   issue of willfulness regarding the '311 patent.

01:37:20  5          Let me hear from the Plaintiff first.

01:37:22  6          MR. UDICK:  Thank you, Your Honor.  Steve Udick

01:37:27  7   for Plaintiffs.

01:37:28  8          Plaintiff Solas moves for JMOL of willfulness of

01:37:32  9   the '311 patent by Defendants Samsung Display Corporation,

01:37:35  10  Samsung Electronics Corporation, and Samsung Electronics

01:37:38  11  America.

01:37:38  12         First, as a predicate matter, willful infringement

01:37:43  13  is proper because the Plaintiff, Solas, has shown, at least

01:37:46  14  through our JMOL on non -- or on infringement, that we've

01:37:51  15  established infringement as a matter of law.

01:37:54  16         We have also established that that infringement

01:37:57  17  has been willful.

01:37:58  18         First, with respect to Samsung Display

01:38:02  19  Corporation, the testimony is unrebutted at trial this week

01:38:05  20  that Samsung Display was aware of the '311 patent, it was

01:38:09  21  aware of the development of the technology that led to --

01:38:13  22  to the '311 patent before it arrived.  Within a month of

01:38:18  23  the filing of the '311 patent, Samsung was aware of the

01:38:21  24  issuance of the '311 patent.

01:38:22  25         And to that extent, knowledge and intent going

01:38:26  1   forward is the willful conduct here, as well as the conduct

01:38:32  2   that I'll describe below.

01:38:35  3        But as to Samsung Electronics and Samsung --

01:38:38  4   Samsung Electronics America and Samsung Electronics

01:38:41  5   Corporation, their infringement is willful, as well,

01:38:46  6   because of their reckless disregard for Solas's patent

01:38:49  7   rights shown by the compartmentalization of the entities,

01:38:54  8   their deliberate attempts to avoid the knowledge of each

01:38:57  9   other's -- of the risk associated that other entities may

01:39:01  10  know, particularly where Samsung Display is an

01:39:06  11  80-percent-owned subsidiary of Samsung Electronics

01:39:08  12  Corporation.

01:39:09  13       We've also heard testimony from Mr. Kim that the

01:39:13  14  size of bargaining parties between the entities is at least

01:39:17  15  one reason as to whether or not they take a license.

01:39:21  16       This is not grounded on the issues of whether they

01:39:24  17  use the technology or not, but is a conscious disregard to

01:39:29  18  the technology and a play towards the bargaining position

01:39:32  19  of the parties.

01:39:33  20       And even if that is not met, Samsung Electronics

01:39:36  21  America, Samsung Electronics Corporation, and Samsung

01:39:42  22  Display all are willful infringers, at least because of the

01:39:45  23  post-suit conduct of the '311 patent.

01:39:46  24       First, they continued the pursuit of baseless

01:39:51  25  grounds.  Their sole ground for invalidity was presented by

01:39:54   1   an expert witness who -- whose testimony reminded us that

01:39:59   2   sometimes the truth cannot help but escape.  And we heard

01:40:03   3   their testimony of what their expert believed the validity

01:40:06   4   of the patent was, and yet they've continued that defense

01:40:10   5   throughout trial.  And so --

01:40:12   6            THE COURT:  Let me ask you, counsel, in light of

01:40:15   7   the clear guidance from the Supreme Court, and I'm thinking

01:40:18   8   of the Halo case that makes it clear, this is a totality of

01:40:22   9   all the circumstances-type analysis.

01:40:25  10            Are you telling me there's nothing that would push

01:40:28  11   back on the issue of willfulness and all the evidence is

01:40:31  12   clear that it occurred in a willful and egregious manner

01:40:35  13   such to support a grant at this stage under Rule 50(a)?

01:40:40  14            And the Defendants can ask -- can anticipate I'm

01:40:44  15   going to ask them the same question.

01:40:46  16            MR. UDICK:  Your Honor, first, with respect to

01:40:51  17   Samsung Display Corporation --

01:40:53  18            THE COURT:  You're entitled to make the motion,

01:40:54  19   but the guidance this Court operates under from higher

01:41:00  20   Courts is that I have -- we have to look at everything,

01:41:03  21   everything, not just this discreet area or that discreet

01:41:08  22   area.

01:41:08  23            And discharging that obligation, are you telling

01:41:12  24   me there's nothing that would counter or be taken into

01:41:15  25   consideration in opposition to your position on

01:41:17   1   willfulness?

01:41:19   2           MR. UDICK:  I believe there -- there will be

01:41:22   3   evidence that could be offered as a suggestion to the

01:41:25   4   contrary in opposition.  We maintain the position, though,

01:41:28   5   that within the totality of the circumstances, JMOL is

01:41:31   6   still appropriate, at least because of the knowing conduct

01:41:39   7   of Samsung Display.

01:41:39   8           THE COURT:  Okay.  See if you can finish up your

01:41:42   9   argument for me.

01:41:44  10           MR. UDICK:  I am finished, Your Honor.

01:41:46  11           THE COURT:  All right.  Let me hear a response

01:41:47  12   from the Defendants, then.

01:41:48  13           MR. DANIEL CHO:  Daniel Cho.

01:41:51  14           THE COURT:  I'll ask the same question, counsel.

01:41:53  15           MR. DANIEL CHO:  Daniel Cho on behalf of

01:41:54  16   Defendants.

01:41:55  17           Your Honor, we submit that, under the Supreme

01:41:57  18   Court's guidance under Halo, that -- first of all, we

01:42:00  19   disagree with the points made by my colleague there, that

01:42:04  20   our conduct was willful, that Defendants' conduct was

01:42:09  21   willful.

01:42:09  22           The Supreme Court has said in Halo that conduct

01:42:12  23   that rises to the level of wanton, malicious, bad faith,

01:42:15  24   deliberate disregard is the standard.  It's a higher burden

01:42:18  25   that the Plaintiff has to show willful infringement.  And I

01:42:21  1    can --

01:42:21  2         THE COURT:  So let me ask you:  Given that I

01:42:23  3    obviously have read Halo and don't need to you recite to me

01:42:28  4    what it says, do you think there's absolutely no evidence

01:42:33  5    that would support a finding of willfulness here such that

01:42:37  6    the totality of everything would support a grant of no

01:42:42  7    willfulness under 50(a)?

01:42:43  8         MR. DANIEL CHO:  Yes, Your Honor.  We believe that

01:42:45  9    there was --

01:42:45 10         THE COURT:  Give me the succinct reasons for it as

01:42:50 11    quickly as you can, then, please.

01:42:51 12         MR. DANIEL CHO:  Sure.

01:42:53 13         Your Honor, there was no adequate showing of

01:42:54 14    pre-suit notice.  And my colleague talked about the

01:42:58 15    distinct Samsung entities, but there was testimony given by

01:43:02 16    witnesses from Samsung Display and a corporate witness from

01:43:05 17    Samsung Electronics Co. and Samsung Electronics America

01:43:09 18    showing how the corporate entities are distinguishable and

01:43:12 19    they don't have shared knowledge, even within the

01:43:15 20    corporation.

01:43:16 21         And as for SEA, there's no showing of any pre-suit

01:43:20 22    knowledge, other than trying to suggest that SEA, because

01:43:23 23    they're a subsidiary of SEC, would have all the knowledge

01:43:26 24    that SEC has, and that's simply not true given what we've

01:43:31 25    heard in Court.

01:43:32   1          As for SDC, they point to some generalized lists

01:43:36   2   of -- long lists of patents and spreadsheets that identify

01:43:41   3   the patent number for the '311 patent, but there's

01:43:45   4   sufficient caselaw, we submit, that shows long portfolios

01:43:49   5   or lists of patents are legally insufficient to show

01:43:53   6   pre-suit notice.

01:43:54   7          They also pointed to evidence of patents cited in

01:44:04   8   prosecution history or other patent documents that use.  As

01:44:07   9   references cited, one of the patents was a '311 patent, and

01:44:11   10  there's, again, caselaw there showing that that does not

01:44:14   11  rise to the level of legally-sufficient showing of pre-suit

01:44:17   12  knowledge.

01:44:18   13         We also submit that the Plaintiff has failed to

01:44:21   14  show egregiousness, which is required for showing willful

01:44:25   15  infringement.  There was testimony and evidence shown that

01:44:29   16  Samsung Display, through their business dealings with

01:44:32   17  Atmel, they did not use -- Samsung Display did not use

01:44:37   18  Atmel's confidential information.

01:44:40   19         Samsung Display was innovating its own metal mesh

01:44:44   20  technology that was -- it was an integrated touch sensor,

01:44:49   21  very different from Atmel.

01:44:52   22         In fact, we heard testimony from at least Mr. Kwak

01:44:55   23  who testified that the external metal mesh sensors were

01:44:58   24  unacceptable for use in their products.

01:45:01   25         So for those reasons we submit, Your Honor, that a

01:45:04  1  finding of no willful infringement as a matter of law is

01:45:09  2  appropriate at this stage.

01:45:10  3          THE COURT:  Thank you, counsel.

01:45:11  4          Let me hear the parties' competing arguments on

01:45:15  5  damages.

01:45:15  6          We'll begin with the Plaintiff.

01:45:16  7          MS. HENRY:  Good afternoon, Your Honor.  Claire

01:45:21  8  Henry on behalf of Solas.

01:45:22  9          Solas moves for Rule 50(a) motion on the purpose

01:45:27  10  of damages -- on the subject of damages.  We believe we've

01:45:31  11  proven clearly that the appropriate form of damages for the

01:45:35  12  '450 patent is $25,824,919.  For the '338 patent, it's

01:45:42  13  $27,326,497.  And for the '311 patent, it is $35,412,046.

01:45:54  14          Your Honor, specifically for this, we rely on the

01:45:57  15  testimony of Mr. Dell and his evidence of use -- of

01:46:03  16  Samsung's use of the patents and comparable licenses.

01:46:07  17  PTX-746, 747, PTX-509, and PTX-128 and 522.

01:46:16  18          Mr. Martinez admitted on cross that he had not

01:46:18  19  considered either unit sales or revenues at all in his

01:46:21  20  number, and he also admitted in cross that he believed, and

01:46:24  21  I quote -- excuse me, he believed the purchase prices, and

01:46:28  22  I quote, an absolute ceiling for the damages.

01:46:32  23          We believe he clearly has not applied the proper

01:46:34  24  foundation, and, therefore, the only proper evidence in

01:46:36  25  front of the jury from which any reasonable juror could

| | | |
|---|---|---|
| 01:46:40 | 1 | find is the opinions provided by Mr. Dell. |
| 01:46:43 | 2 | Thank you, Your Honor. |
| 01:46:44 | 3 | THE COURT:  Thank you, Ms. Henry. |
| 01:46:45 | 4 | Let me hear the competing arguments from |
| 01:46:47 | 5 | Defendants. |
| 01:46:48 | 6 | MR. DANIEL CHO:  Daniel Cho on behalf of |
| 01:46:49 | 7 | Defendants, Your Honor. |
| 01:46:49 | 8 | We believe that Solas has not put forward |
| 01:46:52 | 9 | sufficient evidence of damages to any asserted claim of the |
| 01:46:55 | 10 | asserted patents. |
| 01:46:56 | 11 | And for that reason, we'd move under Rule 50(a) |
| 01:47:01 | 12 | judgment as a matter of law of no damages, or in the |
| 01:47:04 | 13 | alternative, maximum damages of total $1.65 million. |
| 01:47:08 | 14 | The reasons for that are that Mr. Dell, Solas's |
| 01:47:12 | 15 | damages expert, relied on a number of non-comparable |
| 01:47:17 | 16 | licenses, and Mr. Credelle failed to lay the proper |
| 01:47:21 | 17 | foundation as to the technical comparability for at least |
| 01:47:24 | 18 | the license agreements involving Universal Display. |
| 01:47:28 | 19 | As for the non- -- the license agreement between |
| 01:47:33 | 20 | Atmel and Uni-Pixel, which Mr. Dell testified as somehow |
| 01:47:37 | 21 | being comparable to the hypothetical negotiation for the |
| 01:47:41 | 22 | '311 patent, there was no -- there was insufficient showing |
| 01:47:44 | 23 | of a factual foundation for a technical comparability of |
| 01:47:48 | 24 | any of the patents in the Atmel portfolio to the '311 |
| 01:47:54 | 25 | patent that's asserted against the Defendants for, at least |

01:47:57  1   the reason that at the time of the license agreement's

01:48:01  2   execution, the '311 patent had not at all been issued.

01:48:04  3        Mr. Martinez provided sufficient testimony,

01:48:09  4   particularly with respect to the Casio/Samsung business

01:48:13  5   relationship, as to why the two hypothetical licensor and

01:48:17  6   the hypothetical licensee would have agreed to a lump sum

01:48:21  7   payment structure for the hypothetical license and also why

01:48:26  8   Atmel and Samsung, with respect to the '311 patent -- '311

01:48:29  9   patent, would have also been a lump sum structure instead

01:48:32  10  of a running royalty.

01:48:33  11       As for the smallest salable patent practicing

01:48:38  12  unit, Your Honor, we have testimony from Mr. Martinez and

01:48:42  13  also Dr. Sierros who talked about why the smallest salable

01:48:48  14  patent practicing unit for the '311 patent cannot be the

01:48:51  15  overall display module, which Samsung Display sells to at

01:48:55  16  least its customer SEC, and why a need to apportion down to

01:49:00  17  the practicing unit, which is the touch sensor.

01:49:02  18       Mr. Dell's cost savings analysis we've shown

01:49:05  19  through our witnesses and the evidence to be unreliable and

01:49:08  20  unsupported by the facts.

01:49:10  21       The comparison that he was drawing was faulty, and

01:49:13  22  we heard Mr. Martinez a few hours ago explaining why the

01:49:17  23  comparison between the external metal mesh touch sensors

01:49:20  24  that were never used in any of the accused products against

01:49:23  25  ITO sensors is not the proper comparison to draw in the

01:49:28   1   cost savings benefit determinations with respect to the

01:49:31   2   '311 patent.

01:49:31   3          And, lastly, Your Honor, on the UDC agreement,

01:49:35   4   Mr. Dell testified that the starting place for the running

01:49:40   5   royalty rate that he drew from the 2005 UDC SDI agreement,

01:49:47   6   which was PTX-509, would be a range of 0.5 to 1.0 percent,

01:49:52   7   and he did -- he testified to some apportionment

01:49:55   8   calculation that he did off of that.

01:49:56   9          But we heard testimony, Your Honor, from Mr. Kim,

01:50:01   10   Samsung Display's witness, who testified that at the

01:50:03   11   relevant time period of the 2005 UDC license, that Samsung

01:50:08   12   Display was only using one -- producing one color using

01:50:12   13   UDC's phosphorescent materials, and, therefore, the

01:50:15   14   applicable royalty rate would have been .5 percent.

01:50:18   15          So Mr. Dell's royalty rate analysis clearly is

01:50:22   16   starting from the wrong starting point.

01:50:25   17          And we submit, Your Honor, that that's not the

01:50:27   18   reliable way to determine reasonable royalty.

01:50:31   19          THE COURT:  Thank you, counsel.

01:50:31   20          With regard to the motions offered by both

01:50:36   21   Plaintiff and Defendant for judgment as a matter of law

01:50:38   22   pursuant to Rule 50(a) of the Federal Rules of Civil

01:50:42   23   Procedure, with regard to the issue of infringement versus

01:50:46   24   non-infringement, both literal and indirect, those motions

01:50:50   25   are denied.

01:50:51  1        With regard to the issue of validity or invalidity

01:50:54  2  regarding the '450 patent and the '311 patent, those issues

01:50:58  3  are denied.

01:50:58  4        With regard to the issue of willful infringement

01:51:03  5  concerning the '311 patent, those motions competing are

01:51:08  6  denied.

01:51:08  7        And with regard to the issue of damages raised by

01:51:11  8  both parties in competing fashion, those motions are also

01:51:15  9  denied.

01:51:15  10       This completes practice under Rule 50(a), counsel.

01:51:19  11       I will be back shortly to begin an informal charge

01:51:23  12  conference here in the courtroom.

01:51:24  13       Please advise any of your respective trial teams

01:51:27  14  that aren't present that wish to participate in that

01:51:30  15  process to be here over the next few minutes.

01:51:33  16       In the meantime, the Court stands in recess.

01:51:37  17       COURT SECURITY OFFICER:  All rise.

01:51:39  18       (Recess.)

01:51:41  19       (Jury out.)

01:51:41  20       COURT SECURITY OFFICER:  All rise.

01:51:42  21       THE COURT:  Be seated, please.

04:36:15  22       Mr. Latham, would you bring in the jury, please?

04:36:31  23       COURT SECURITY OFFICER:  All rise.

04:36:33  24       THE COURT:

04:36:33  25       (Jury in.)

04:36:36   1              THE COURT:  Please be seated.

04:37:08   2              Ladies and gentlemen of the jury, I hope you

04:37:17   3    remember the part when I let you go for lunch where I said

04:37:20   4    this is not an exact science.  We have been working

04:37:24   5    diligently ever since you left the courtroom, and I'm not

04:37:28   6    going to go through all the steps that have to be done

04:37:31   7    pursuant to the rules of procedure and the precedent that

04:37:34   8    binds the Court.  I'm simply going to say it's taken longer

04:37:39   9    than I thought.

04:37:40   10             There is probably another hour's worth of work

04:37:46   11   before I'm in a position or would be in a position to give

04:37:50   12   you my final instructions and then have counsel for

04:37:53   13   Plaintiff and Defendant present their arguments.

04:37:57   14             Having done this more than once before, I can tell

04:38:01   15   you that when I start giving you my final instructions,

04:38:05   16   from that point until the point where the lawyers are going

04:38:07   17   to finish their arguments and I send you to the jury room

04:38:10   18   to deliberate on your verdict, it's going to be roughly two

04:38:13   19   hours.  I'm not going to keep you up here on a Friday

04:38:18   20   evening for that to be done today.

04:38:20   21             I apologize for you being at loose ends since

04:38:28   22   midafternoon until now.  I realistically thought we could

04:38:35   23   get there, but despite my best efforts -- and I'm not

04:38:39   24   casting blame.  The lawyers have been working with me as

04:38:42   25   diligently as I've been working.  There's just a lot to

04:38:46   1   cover.  And as I told you early on, this is not a simple

04:38:49   2   case.

04:38:51   3           So all that said, I'm going to release you for the

04:38:53   4   evening.  I'll ask you to take your notebooks and leave

04:38:57   5   them closed on the table in the jury room.  I'll remind you

04:39:02   6   one more time to follow all the instructions that I've

04:39:05   7   given you about your conduct during the trial, including at

04:39:10   8   the top of that list, not to discuss the case in any way

04:39:14   9   with anyone, including the eight of yourselves.

04:39:17   10          I'm also going to ask you this, I'm going to ask

04:39:21   11  you to leave your homes a little early Monday and be here

04:39:21   12  and be prepared to go at 8:00 o'clock.  The rest of us are

04:39:25   13  going to stay up here as long as it takes tonight so that

04:39:27   14  everything is finished and wrapped up with a pretty bow on

04:39:30   15  top, and the only thing I have to do Monday morning is walk

04:39:33   16  up here, look at the -- look at the seven of you and start

04:39:40   17  giving you my final instructions.

04:39:42   18          So if you'll be here Monday so that you can start

04:39:46   19  at 8:00 o'clock, I'll be prepared to start at 8:00 o'clock.

04:39:49   20  And, hopefully, by midmorning, I'll be instructing you to

04:39:53   21  retire and deliberate on your verdict, and we'll have

04:39:56   22  whatever time it takes Monday for that process to be

04:40:01   23  completed.

04:40:02   24          I apologize again.  I had hoped that we could get

04:40:05   25  this to you and in your hands today, but despite

04:40:08  1   everybody's best efforts, it's just not practical.  And I

04:40:14  2   finally reached a point I don't see any sense keeping you

04:40:16  3   on hold any longer.

04:40:18  4        So with those instruction, you're excused for the

04:40:22  5   evening and the weekend.  Please don't forget to come back

04:40:26  6   at 8:00 o'clock Monday morning.  And I'll see you at 8:00

04:40:26  7   o'clock.  Travel safely.

04:40:32  8        The jury is excused.

04:40:33  9        COURT SECURITY OFFICER:  All rise.

04:40:58  10        (Jury out.)

04:40:58  11        THE COURT:  All right.  Be seated, please.

04:41:00  12        Counsel, I've given both sides in chambers two

04:41:04  13   copies of the final jury instructions and one copy of the

04:41:06  14   verdict form.  These are the documents produced after the

04:41:10  15   benefit of the fulsome and informal charge conference I

04:41:15  16   held with you off the record here in the courtroom.

04:41:17  17        I'm going to give you an additional 15 minutes to

04:41:21  18   review those.  Then it's my intention to be back on the

04:41:25  19   record and conduct a formal charge conference.  And I've

04:41:29  20   already described to you the mechanics of how I anticipate

04:41:33  21   that will be held.

04:41:33  22        Once the final charge conference is complete, then

04:41:37  23   I anticipate releasing you for the weekend, and I will do

04:41:42  24   the document production that needs to be done in my

04:41:46  25   chambers so that Monday morning at 8:00 o'clock we can

04:41:49    1   start.

04:41:49    2           I am hopeful and trusting there won't be

04:41:53    3   demonstrative disputes or other problems with regard to

04:41:56    4   closing arguments that I'll need to hear Monday morning.

04:41:59    5   But if there are, I will be in chambers no later than 7:30.

04:42:03    6   We will get through those in 30 minutes, and we will get

04:42:06    7   started.

04:42:06    8           In that regard, continue to meet and confer as

04:42:11    9   diligently as you have last evening and today, in hopes

04:42:16   10   that that won't be necessary.  But if it is, follow all the

04:42:21   11   instructions I've given you about keeping the Court

04:42:24   12   informed on any such possible disputes.

04:42:26   13           I do not -- having just done what I did and having

04:42:30   14   just told the jury what I've told them, we will start at

04:42:33   15   8:00 o'clock Monday morning.

04:42:35   16           All right.  Are there questions from Plaintiff?

04:42:37   17           MR. FENSTER:  No, Your Honor.

04:42:38   18           THE COURT:  Any questions from Defendant?

04:42:41   19           MR. LERNER:  No, Your Honor.

04:42:42   20           THE COURT:  All right.  I'll be back in 15

04:42:44   21   minutes, and we'll conduct a formal charge conference on

04:42:47   22   the record at that time.

04:42:49   23           The Court stands in recess.

04:42:51   24           COURT SECURITY OFFICER:  All rise.

04:42:53   25           (Recess.)

| | | |
|---|---|---|
| 05:01:57 | 1 | (Jury out.) |
| 05:02:26 | 2 | COURT SECURITY OFFICER:  All rise. |
| 05:02:29 | 3 | THE COURT:  Be seated, please. |
| 05:02:31 | 4 | All right.  As I mentioned at the time I let the |
| 05:02:42 | 5 | jury recess for the evening and weekend, the Court has |
| 05:02:47 | 6 | conducted this afternoon a fulsome informal charge |
| 05:02:52 | 7 | conference with counsel for all the parties.  We've |
| 05:02:56 | 8 | reviewed the current version of the proposed final jury |
| 05:03:02 | 9 | instructions and verdict form, which have gone through |
| 05:03:05 | 10 | several iterations, both before and during the trial. |
| 05:03:10 | 11 | The Court took an opportunity to receive direct |
| 05:03:14 | 12 | and helpful input on an informal basis from various counsel |
| 05:03:18 | 13 | on both sides of the case with regard to those areas in |
| 05:03:23 | 14 | these documents where the parties have a difference of |
| 05:03:28 | 15 | opinion. |
| 05:03:28 | 16 | The Court's considered all that input.  The Court |
| 05:03:32 | 17 | has generated a current version of the final jury |
| 05:03:39 | 18 | instructions and verdict form that it believes comports |
| 05:03:42 | 19 | with that input, as well as the law and precedent. |
| 05:03:46 | 20 | The Court has made duplicate copies of those |
| 05:03:50 | 21 | documents available to both sides for an adequate length of |
| 05:03:53 | 22 | time to review and consider the same. |
| 05:03:56 | 23 | And we'll now proceed to hold and conduct a formal |
| 05:03:59 | 24 | charge conference on the record with regard to the final |
| 05:04:02 | 25 | jury instructions and verdict form. |

05:04:03   1            As I mentioned earlier to counsel, I believe

05:04:08   2    during the informal charge conference, at this point,

05:04:11   3    during the formal charge conference, I would request that

05:04:15   4    there be a single representative of both sides who will go

05:04:18   5    to the podium, remain at the podium.

05:04:21   6            And as we go through these documents on a

05:04:23   7    page-by-page basis, if there are objections, I will hear

05:04:27   8    them.  If not, then I'll get an indication from counsel

05:04:30   9    that there are not any objections, and then we'll move on

05:04:34  10    to the next page.

05:04:35  11            And we will cover these, beginning with the final

05:04:37  12    jury instructions and then moving on to the verdict form,

05:04:40  13    on a page-by-page basis so that we don't overlook anything.

05:04:44  14            So, with that, if counsel for Plaintiff and

05:04:51  15    counsel for Defendants who are going to represent the

05:04:53  16    parties during the formal charge conference will go to the

05:04:55  17    podium, please.

05:04:56  18            All right.  We'll begin with the final jury

05:05:02  19    instructions.

05:05:04  20            Let me ask both -- both of you gentlemen, are

05:05:08  21    there objections from either Plaintiff or Defendant to

05:05:11  22    anything on Page 1 of the final jury instructions?

05:05:14  23            MR. UDICK:  None from the Plaintiff, Your Honor.

05:05:16  24            MR. LERNER:  None from Defendants.

05:05:18  25            THE COURT:  Turning then to Page 2, are there

| | | |
|---|---|---|
| 05:05:20 | 1 | objections here from either party? |
| 05:05:22 | 2 | MR. UDICK:  None from the Plaintiff. |
| 05:05:23 | 3 | MR. LERNER:  Not from Defendants. |
| 05:05:24 | 4 | THE COURT:  Page 3, are there objections from |
| 05:05:27 | 5 | either party? |
| 05:05:28 | 6 | MR. UDICK:  None from the Plaintiff. |
| 05:05:29 | 7 | MR. LERNER:  None from Defendants. |
| 05:05:31 | 8 | THE COURT:  Turning to Page 4, are there |
| 05:05:35 | 9 | objections here from either party? |
| 05:05:37 | 10 | MR. UDICK:  None from the Plaintiff. |
| 05:05:38 | 11 | MR. LERNER:  None from Defendants. |
| 05:05:40 | 12 | THE COURT:  Turning then to Page 5, are there |
| 05:05:52 | 13 | objections here from either party? |
| 05:05:57 | 14 | MR. UDICK:  None from the Plaintiff. |
| 05:05:58 | 15 | MR. LERNER:  Not from the Defendants. |
| 05:05:59 | 16 | THE COURT:  Turning then to Page 6, are there |
| 05:06:03 | 17 | objections here from either party? |
| 05:06:06 | 18 | MR. UDICK:  Nothing from the Plaintiff. |
| 05:06:07 | 19 | MR. LERNER:  None from Defendants. |
| 05:06:10 | 20 | THE COURT:  All right.  Page 7, are there |
| 05:06:12 | 21 | objections from either party? |
| 05:06:13 | 22 | MR. UDICK:  None from the Plaintiff. |
| 05:06:14 | 23 | MR. LERNER:  None from Defendants. |
| 05:06:16 | 24 | THE COURT:  Turning next to Page 8, are there |
| 05:06:21 | 25 | objections from either party? |

| | | |
|---|---|---|
| 05:06:23 | 1 | MR. UDICK:  Your Honor, technically objection.  We |
| 05:06:24 | 2 | had notice of a typographical error that was certainly a |
| 05:06:31 | 3 | result of the parties here and not the Court's more |
| 05:06:33 | 4 | diligent staff.  It is the -- |
| 05:06:33 | 5 | THE COURT:  Point that out to me, please. |
| 05:06:35 | 6 | MR. UDICK:  -- fourth paragraph.  It says "the |
| 05:06:37 | 7 | validity of the '388," and it should be the '338. |
| 05:06:41 | 8 | THE COURT:  Yes, it should.  Thank you.  I'll make |
| 05:06:44 | 9 | that typographical correction -- I'll change that |
| 05:06:47 | 10 | typographical correction. |
| 05:06:50 | 11 | Is there anything else from either Plaintiff or |
| 05:06:51 | 12 | Defendant on Page 8 of the final jury instructions? |
| 05:06:51 | 13 | MR. UDICK:  Not for the Plaintiff, Your Honor. |
| 05:06:53 | 14 | MR. LERNER:  Nothing from Defendants. |
| 05:06:54 | 15 | THE COURT:  All right.  Next is Page 9, is there |
| 05:06:56 | 16 | objection here from either party? |
| 05:06:57 | 17 | MR. UDICK:  Not from the Plaintiff. |
| 05:06:59 | 18 | MR. LERNER:  Not from Defendants. |
| 05:07:00 | 19 | THE COURT:  Page 10, is there objection from |
| 05:07:03 | 20 | either party? |
| 05:07:04 | 21 | MR. UDICK:  No, Your Honor, not from Plaintiff. |
| 05:07:07 | 22 | MR. LERNER:  Not from Defendants. |
| 05:07:08 | 23 | THE COURT:  Page 11, is there objection from |
| 05:07:11 | 24 | either party? |
| 05:07:12 | 25 | MR. UDICK:  Not from the Plaintiff. |

| | | |
|---|---|---|
| 05:07:14 | 1 | MR. LERNER:  Not from Defendants. |
| 05:07:16 | 2 | THE COURT:  Page 12, is there objection from |
| 05:07:19 | 3 | either party? |
| 05:07:20 | 4 | MR. UDICK:  None from the Plaintiff. |
| 05:07:21 | 5 | MR. LERNER:  None from Defendants. |
| 05:07:23 | 6 | THE COURT:  Page 13, is there objection from |
| 05:07:26 | 7 | either party? |
| 05:07:27 | 8 | MR. UDICK:  None from the Plaintiff. |
| 05:07:28 | 9 | MR. LERNER:  There is an objection from |
| 05:07:30 | 10 | Defendants, Your Honor. |
| 05:07:31 | 11 | THE COURT:  Please state your objection. |
| 05:07:32 | 12 | MR. LERNER:  In the paragraph with the No. 2 that |
| 05:07:36 | 13 | begins "SDC and SEC took action during the time the |
| 05:07:40 | 14 | asserted patents were in force intending infringing acts by |
| 05:07:44 | 15 | SEA," we're concerned that's not a correct statement of |
| 05:07:47 | 16 | law.  We think it needs to be clarified that the intent is |
| 05:07:50 | 17 | to cause infringement, not an intent to cause acts that |
| 05:07:54 | 18 | happen to be infringing. |
| 05:07:56 | 19 | THE COURT:  Do you have a proposed modification? |
| 05:08:11 | 20 | Intending to cause infringement by SEA? |
| 05:08:13 | 21 | MR. LERNER:  I think that would work, Your Honor. |
| 05:08:15 | 22 | THE COURT:  Would Plaintiff have an objection to |
| 05:08:16 | 23 | that modification? |
| 05:08:17 | 24 | MR. UDICK:  Your Honor, we would. |
| 05:08:21 | 25 | THE COURT:  What would your objection be? |

```
05:08:24   1        MR. UDICK:  I believe that's still -- I believe
05:08:26   2   the verb -- the law is correctly stated in 2.  It is
05:08:32   3   their -- it is the infringing acts, and the concern here
05:08:35   4   could be among -- if it's just infringement, it might be a
05:08:39   5   product versus infringing acts.  It could be an action,
05:08:45   6   importing, for example.
05:08:45   7        THE COURT:  Well, the preceding Paragraph 1 says
05:09:01   8   "alleged infringing acts."  So that -- 2 is consistent with
05:09:05   9   the use of the word "acts."
05:09:22  10        MR. UDICK:  And, Your Honor, the use of the word
05:09:24  11   "acts" carries through that paragraph, as well, so the --
05:09:27  12   yeah.
05:09:28  13        MR. LERNER:  Right.  The issue is the distinction
05:09:30  14   the law draws between intending to cause something that --
05:09:35  15   intending to cause infringement and intending to cause an
05:09:37  16   action that happens to infringe without intending it to be
05:09:40  17   infringing.  And that would be the specific intent
05:09:46  18   requirement for inducement.
05:09:49  19        THE COURT:  All right.  In light of this
05:09:57  20   discussion, I'm going to change Subparagraph 2 -- or this
05:10:05  21   paragraph marked with 2 in parentheses to read:  SDC and
05:10:11  22   SEC took action during the time the asserted patents were
05:10:15  23   in force intending to cause infringing acts by SEA.
05:10:19  24        Is there objection to that from Plaintiff?
05:10:21  25        MR. UDICK:  None from the Plaintiff.
```

05:10:23  1          THE COURT:  Is there objection to that from the

05:10:25  2  Defendant?

05:10:25  3          MR. LERNER:  Your Honor, I think it still leaves

05:10:28  4  the same ambiguity, unfortunately.

05:10:32  5          THE COURT:  I thought you told me, Mr. Lerner,

05:10:34  6  that would be satisfactory.  Did I misunderstand you?

05:10:37  7          MR. LERNER:  I may not have been articulate.

05:10:40  8          THE COURT:  If you were writing it, how would you

05:10:42  9  write it, counsel?

05:10:44 10          MR. LERNER:  Took action during the time the

05:10:51 11  asserted patents were in force intending to cause

05:10:53 12  infringement by SEA.

05:11:00 13          THE COURT:  So the difference is between intending

05:11:03 14  to cause infringing acts, as opposed to intending to cause

05:11:06 15  infringement?

05:11:07 16          MR. LERNER:  It is.  And I understand, Your Honor,

05:11:10 17  it's a subtle difference, but I think it would be clearer

05:11:14 18  and more consonant with the legal standard.

05:11:20 19          THE COURT:  All right.  I'm going to overrule that

05:11:23 20  objection by the Defendant, and I will leave it as stated,

05:11:28 21  which I've modified slightly from the form you have before

05:11:33 22  you now.

05:11:36 23          Again, this portion of paragraph marked 2 on

05:11:40 24  Page 13 will read:  SDC and SEC took action during the time

05:11:46 25  the asserted patents were in force intending to cause

05:11:48  1    infringing acts by SEA.

05:11:51  2            Are there other objections on Page 13?

05:11:55  3            MR. LERNER:  None from Defendants.

05:11:56  4            MR. UDICK:  And none from Plaintiff.

05:11:57  5            THE COURT:  All right.  Then let's move forward to

05:11:59  6    Page 14.  Are there objections here from either party?

05:12:02  7            MR. UDICK:  None from the Plaintiff.

05:12:03  8            MR. LERNER:  There is one objection from

05:12:05  9    Defendants to the third paragraph.  To the inclusion of "if

05:12:14  10   the Defendant acted in reckless disregard of or with

05:12:19  11   deliberate indifference to Solas's patent rights," which we

05:12:22  12   believe does not -- it goes beyond -- it does not impose

05:12:30  13   the requirement for willful infringement.  Willful

05:12:32  14   infringement requires more than reckless disregard of or

05:12:38  15   deliberate indifference to patent rights.

05:12:39  16           THE COURT:  All right.  That objection is

05:12:43  17   overruled.

05:12:44  18           Is there anything further on Page 14?

05:12:47  19           MR. LERNER:  No, Your Honor.

05:12:47  20           MR. UDICK:  And none from the Plaintiff.

05:12:49  21           THE COURT:  Moving then to Page 15, is there

05:12:52  22   objection here from either party?

05:12:54  23           MR. UDICK:  None from the Plaintiffs, Your Honor.

05:12:55  24           MR. LERNER:  One from Defendants, Your Honor.

05:12:58  25   It's to the omission of an instruction that the jury should

| | | |
|---|---|---|
| 05:13:01 | 1 | consider whether prior art has been presented which was not |
| 05:13:04 | 2 | before the Patent and Trademark Office. |
| 05:13:10 | 3 | THE COURT:  It's my understanding that that issue |
| 05:13:13 | 4 | is addressed in these instructions, but if you want to |
| 05:13:17 | 5 | lodge an objection as to Page 15 specifically, that's fine. |
| 05:13:21 | 6 | MR. LERNER:  Thank you, Your Honor. |
| 05:13:21 | 7 | THE COURT:  That objection is overruled. |
| 05:13:24 | 8 | Anything else on Page 15 from either party? |
| 05:13:26 | 9 | MR. UDICK:  None from the Plaintiff. |
| 05:13:28 | 10 | MR. LERNER:  Not from Defendants. |
| 05:13:29 | 11 | THE COURT:  All right.  Next is Page 16.  Is there |
| 05:13:32 | 12 | any objection here from either party? |
| 05:13:35 | 13 | MR. UDICK:  None from the Plaintiffs. |
| 05:13:36 | 14 | MR. LERNER:  Nothing from Defendants. |
| 05:13:37 | 15 | THE COURT:  Turning then to Page 17, is there |
| 05:13:40 | 16 | objection here from either party? |
| 05:13:41 | 17 | MR. UDICK:  None from the Plaintiff. |
| 05:13:42 | 18 | MR. LERNER:  There is an objection from Defendants |
| 05:13:45 | 19 | to the instruction as to the evidence for establishing |
| 05:13:49 | 20 | earlier conception and reduction to practice, and |
| 05:13:54 | 21 | specifically to the instructions not clarifying that the |
| 05:14:01 | 22 | independent corroboration must be documents that are |
| 05:14:04 | 23 | independent of the inventor and not dependent on the |
| 05:14:07 | 24 | inventor's testimony. |
| 05:14:09 | 25 | THE COURT:  Can you call the Court's attention to |

05:14:11   1   a specific statement or group of words on Page 17 that you

05:14:15   2   believe are flawed in some way?

05:14:18   3        MR. LERNER:  I believe it would be in the second

05:14:24   4   full paragraph, the last sentence, "circumstantial evidence

05:14:28   5   of an independent nature, as well as testimony from someone

05:14:31   6   other than the inventors, may also be considered."

05:14:42   7        And then in the next paragraph, the second

05:14:44   8   sentence -- I'm sorry, "in deciding whether the inventor's

05:14:54   9   testimony has been sufficiently corroborated, you must" --

05:14:57  10   I think it's -- it's the circumstantial evidence without

05:15:02  11   the clarification that what's in the independent nature is

05:15:08  12   documents that are not derived from the inventor or based

05:15:10  13   on the inventor's testimony.

05:15:12  14        THE COURT:  All right.  To the extent I understand

05:15:22  15   your objection, I'm going to overrule it.

05:15:24  16        I believe that the concept of reduction to

05:15:26  17   practice here is adequately addressed by the language

05:15:31  18   included in the Court's instruction.

05:15:33  19        Is there anything further from either party on

05:15:36  20   Page 17?

05:15:38  21        MR. UDICK:  None from the Plaintiff.

05:15:39  22        MR. LERNER:  Not from Defendants.

05:15:40  23        THE COURT:  Then we'll turn to Page 18.  Let me

05:15:43  24   ask if there's objection here from either party?

05:15:45  25        MR. UDICK:  None from the Plaintiff.

05:15:46   1          MR. LERNER:  None from Defendants.

05:15:48   2          THE COURT:  Page 19, is there objection from

05:15:51   3   either party?

05:15:52   4          MR. UDICK:  None from the Plaintiff.

05:15:53   5          MR. LERNER:  None from Defendants.

05:15:54   6          THE COURT:  Page 20, is there objection from

05:15:58   7   either party?

05:15:59   8          MR. UDICK:  Not from the Plaintiff.

05:16:01   9          MR. LERNER:  None from the Defendants.

05:16:03  10          THE COURT:  Turning to Page 21, is there objection

05:16:05  11   here from either party?

05:16:07  12          MR. UDICK:  None from the Plaintiff.

05:16:08  13          MR. LERNER:  None from Defendants.

05:16:09  14          THE COURT:  Turning then to Page 22, is there

05:16:12  15   objection here from either party?

05:16:14  16          MR. UDICK:  None from the Plaintiff.

05:16:15  17          MR. LERNER:  None from Defendants.

05:16:16  18          THE COURT:  Turning to Page 23, is there objection

05:16:20  19   from either party?

05:16:21  20          MR. UDICK:  None from the Plaintiff.

05:16:22  21          MR. LERNER:  None from Defendants.

05:16:24  22          THE COURT:  Turning to Page 24, is there objection

05:16:26  23   here from either party?

05:16:28  24          MR. UDICK:  None from the Plaintiff.

05:16:29  25          MR. LERNER:  None from Defendants.

05:16:32    1          THE COURT:  Turning to Page 25, is there objection
05:16:35    2   here from either party?
05:16:36    3          MR. UDICK:  None from the Plaintiff.
05:16:37    4          MR. LERNER:  There is one from Defendants,
05:16:39    5   Your Honor.
05:16:39    6          THE COURT:  State your objection.
05:16:40    7          MR. LERNER:  In the last paragraph, it's the
05:16:45    8   non-inclusion of an instruction on the entire market value
05:16:48    9   rule.  We believe the evidence has shown that the display
05:16:52   10   module was a commercially-marketed product that itself has
05:16:56   11   multiple components.  The accused touch sensors for the
05:17:03   12   '338 patent are a small part of that and, therefore, there
05:17:05   13   should be an instruction on the entire market value rule.
05:17:06   14          THE COURT:  That objection is overruled.
05:17:08   15          Anything further on Page 25?
05:17:11   16          MR. LERNER:  Not from Defendants.
05:17:12   17          MR. UDICK:  Not from Plaintiff, Your Honor.
05:17:13   18          And my colleague just passed up a reference to
05:17:16   19   Page 18 that we just identified, and I don't know how you'd
05:17:19   20   like us to address that.
05:17:21   21          THE COURT:  You're asking me to go back to
05:17:25   22   Page 18?
05:17:26   23          MR. UDICK:  Unfortunately, yes, Your Honor.
05:17:28   24          THE COURT:  Let's finish the process we're
05:17:40   25   involved in now.  I don't want to invite both sides to

| | | |
|---|---|---|
| 05:17:43 | 1 | revert to every page in the document.  The process will |
| 05:17:47 | 2 | never end.  Let's finish where we are, and I'll see if |
| 05:17:51 | 3 | there's anything additional that either side wants to offer |
| 05:17:54 | 4 | or raise. |
| 05:17:55 | 5 | All right.  Hearing nothing further with regard to |
| 05:17:57 | 6 | an objection related to anything on or omitted from |
| 05:18:04 | 7 | Page 25, we'll turn to Page 26, and I'll ask if there is |
| 05:18:09 | 8 | objection here from either party. |
| 05:18:10 | 9 | MR. UDICK:  None from the Plaintiffs. |
| 05:18:11 | 10 | MR. LERNER:  None from the Defendants. |
| 05:18:13 | 11 | THE COURT:  Page 27, is there objection? |
| 05:18:17 | 12 | MR. UDICK:  None from the Plaintiffs. |
| 05:18:19 | 13 | MR. LERNER:  None from Defendants. |
| 05:18:20 | 14 | THE COURT:  Page 28, is there objection? |
| 05:18:23 | 15 | MR. UDICK:  None from the Plaintiff. |
| 05:18:25 | 16 | MR. LERNER:  None from the Defendants. |
| 05:18:27 | 17 | THE COURT:  Page 29, is there objection? |
| 05:18:28 | 18 | MR. UDICK:  None from the Plaintiff. |
| 05:18:30 | 19 | MR. LERNER:  None from the Defendants. |
| 05:18:31 | 20 | THE COURT:  Page 30, is there objection? |
| 05:18:33 | 21 | MR. UDICK:  None from the Plaintiff. |
| 05:18:35 | 22 | MR. LERNER:  None from the Defendants. |
| 05:18:37 | 23 | THE COURT:  Page 31, is there objection? |
| 05:18:44 | 24 | MR. UDICK:  None from the Plaintiff. |
| 05:18:45 | 25 | MR. LERNER:  None from Defendants. |

841

05:18:47  1          THE COURT:  Page 32, is there objection?

05:18:49  2          MR. UDICK:  None from the Plaintiff.

05:18:50  3          MR. LERNER:  None from Defendants.

05:18:54  4          THE COURT:  And I have a Page 33 that you may not

05:18:58  5   have, but I will just ask -- your pages end on 33 or 32?

05:19:06  6          MR. UDICK:  33.

05:19:07  7          MR. LERNER:  33.

05:19:08  8          THE COURT:  All right.  Then let's turn to 33

05:19:10  9   together.  Is there any objection here on this last page?

05:19:12  10         MR. UDICK:  None from the Plaintiff.

05:19:14  11         MR. LERNER:  None from the Defendants.

05:19:16  12         THE COURT:  All right.  I typically insert into my

05:19:23  13  copy of this a chart where I'm assisted in keeping

05:19:27  14  counsel's time as they present their closing arguments.

05:19:30  15         You don't have that in yours, and that bracketed

05:19:34  16  chart for me to keep the time on sometimes causes the last

05:19:37  17  page or two to be different.  That's why I asked that.  I'm

05:19:40  18  satisfied we've covered the entirety of the document.

05:19:42  19         Other than whatever it is Plaintiff has alluded to

05:19:47  20  on Page 18, do either of you have any other objections to

05:19:51  21  raise with regard to the final jury instructions?

05:19:54  22         MR. UDICK:  No, Your Honor, not for Plaintiffs.

05:19:57  23         MR. LERNER:  Not from Defendants.

05:19:58  24         THE COURT:  All right.  Then out of a desire to be

05:20:03  25  complete and not overlook anything substantive, even though

05:20:07    1    it may not have been timely urged, let's turn back to

05:20:11    2    Page 18, and let me ask Plaintiff what objection they may

05:20:16    3    have here.

05:20:17    4              MR. UDICK:  Your Honor, in the fourth paragraph,

05:20:19    5    and within that paragraph the sixth line, the line begins:

05:20:27    6    Been disclosed either stated expressly or implied.

05:20:31    7              We believe the standard there is inherently, and

05:20:34    8    we just ask for a correction from "implied" to

05:20:40    9    "inherently."

05:20:44    10             THE COURT:  All right.  Anything further?

05:21:00    11             MR. UDICK:  No, Your Honor.

05:21:01    12             THE COURT:  That objection is overruled.

05:21:03    13             That will complete the final charge conference

05:21:05    14   with regard to the final jury instructions or charge to the

05:21:08    15   jury.

05:21:08    16             Let's turn our attention, counsel, to the verdict

05:21:11    17   form.  You have before you, again, what is the most current

05:21:17    18   version of the verdict form with the benefit of the Court

05:21:22    19   taking into account the input received during the informal

05:21:26    20   charge conference.

05:21:27    21             The first page is the style of the case and

05:21:33    22   caption.  The second page are definitions.  The third page

05:21:36    23   are instructions.  The first substantive question doesn't

05:21:41    24   begin until Page 4.

05:21:43    25             Does either Plaintiff or Defendant have any

05:21:45  1  objection to anything regarding Pages 1, 2, or 3?

05:21:50  2          MR. UDICK:  None from the Plaintiff, Your Honor.

05:21:52  3          MR. LERNER:  Not for Defendants.

05:21:53  4          THE COURT:  Then turning to Page 4 where

05:21:55  5  Question 1 is located, is there objection here from either

05:21:58  6  party?

05:21:58  7          MR. UDICK:  None from the Plaintiff.

05:21:59  8          MR. LERNER:  We do object, Your Honor, to the

05:22:02  9  Question No. 1.

05:22:04  10         THE COURT:  State your objection.

05:22:06  11         MR. LERNER:  The objection is that it does not

05:22:08  12 distinguish among any of the patents.  It does not

05:22:14  13 distinguish among any of the entities.  And we believe that

05:22:20  14 both with the -- among the different claims, there are

05:22:25  15 material differences among products that warrant separate

05:22:29  16 questions as to those products.

05:22:32  17         We've provided the Court with a grouping that we

05:22:33  18 would have proposed, which I can restate, but I wouldn't

05:22:38  19 want to if it's unnecessary.

05:22:40  20         THE COURT:  Well, as I mentioned during the

05:22:47  21 informal charge conference, Section 281 of the Patent Act

05:22:51  22 makes it clear who is an infringer, not what device may be

05:23:00  23 an infringing device.  We have discussed this.  I'm aware

05:23:03  24 of the Defendants' position.

05:23:04  25         But your objection to Question 1 on Page 4 of the

| | | |
|---|---|---|
| 05:23:07 | 1 | verdict form is overruled. |
| 05:23:09 | 2 | Let's turn to Page 5 where Question 2 is located |
| 05:23:12 | 3 | regarding the validity/invalidity questions -- or question, |
| 05:23:18 | 4 | rather.  Is there objection here from either party? |
| 05:23:20 | 5 | MR. UDICK:  None from the Plaintiff, Your Honor. |
| 05:23:22 | 6 | MR. LERNER:  None from Defendants. |
| 05:23:23 | 7 | THE COURT:  All right.  Turning then to Page 6 |
| 05:23:25 | 8 | where Question 3 is located regarding willful infringement, |
| 05:23:29 | 9 | is there any objection from either party? |
| 05:23:32 | 10 | MR. UDICK:  None from the Plaintiff, Your Honor. |
| 05:23:34 | 11 | MR. LERNER:  Defendants do object, Your Honor, to |
| 05:23:38 | 12 | the reference to Samsung as opposed to the individual |
| 05:23:41 | 13 | entities separately. |
| 05:23:43 | 14 | THE COURT:  All right.  Anything further, |
| 05:23:44 | 15 | Mr. Lerner? |
| 05:23:49 | 16 | MR. LERNER:  No, Your Honor, that's it. |
| 05:23:50 | 17 | THE COURT:  That objection is overruled. |
| 05:23:51 | 18 | Turn to Page 7, Question 4A is located there.  Is |
| 05:23:57 | 19 | there objection here from either party? |
| 05:23:59 | 20 | MR. UDICK:  None from the Plaintiffs. |
| 05:24:06 | 21 | THE COURT:  Any objection from Defendants? |
| 05:24:08 | 22 | MR. LERNER:  Not from Defendants. |
| 05:24:09 | 23 | THE COURT:  Turning then to Page 8 where Question |
| 05:24:12 | 24 | 4B is located, is there a question -- is there objection |
| 05:24:15 | 25 | from either party here? |

05:24:17  1          MR. UDICK:  None from the Plaintiff.

05:24:18  2          MR. LERNER:  Not from Defendants.

05:24:19  3          THE COURT:  All right.  Page 9 is the final page

05:24:23  4   calling for the date and signature by the jury foreperson.

05:24:27  5          Is there any objection to the final page, Page 9?

05:24:31  6          MR. UDICK:  Not from the Plaintiffs, Your Honor.

05:24:33  7          MR. LERNER:  Not from the Defendants.

05:24:34  8          THE COURT:  All right.  Thank you, counsel.  That

05:24:36  9   will complete the formal charge conference with regard to

05:24:40  10  the verdict form, and it will complete the formal charge

05:24:44  11  conference for this case.

05:24:45  12          As I mentioned to you earlier, it's the Court's

05:24:48  13  practice and it's my intention in this case, I'll make the

05:24:52  14  one substantive change that we talked about with regard to

05:24:56  15  the charge, and I will produce seven final copies in

05:25:03  16  written, hard-copy form of the charge, together with one

05:25:09  17  clean copy of the verdict form.

05:25:10  18          And those documents collectively will be given by

05:25:13  19  the court to the Court Security Officer at the time I

05:25:17  20  instruct the jury to retire and deliberate, with the

05:25:20  21  instruction to the Court Security Officer to deliver those

05:25:23  22  items to the jury in the jury room.

05:25:24  23          I will tell the jury as a part of my instructions

05:25:28  24  that they will each receive their own written copy of these

05:25:31  25  instructions.  I do that because I want to encourage their

05:25:35   1   most closely directed attention to my verbal instructions
05:25:41   2   and not detract by them feeling compelled to take notes or
05:25:46   3   otherwise do something other than give me their undivided
05:25:49   4   attention.
05:25:49   5           All right.  As I indicated earlier, I intend to be
05:25:55   6   ready to go at 8:00 o'clock in the morning.
05:25:57   7           Is there anything either Plaintiff or Defendant is
05:26:00   8   aware of that should be considered by the Court before we
05:26:03   9   recess until that time tomorrow?
05:26:06  10           MR. UDICK:  Nothing more from the Plaintiff,
05:26:07  11   Your Honor.
05:26:07  12           MR. LERNER:  Nothing from Defendants, Your Honor.
05:26:09  13           THE COURT:  All right.  Can I get -- if you are --
05:26:13  14   I assume you all know by now, can I get, for my
05:26:17  15   information, a representation of who's going to present
05:26:21  16   closing arguments from each side?
05:26:23  17           MR. FENSTER:  Yes, Your Honor.  As with opening,
05:26:25  18   the closing will be delivered between myself and Mr. Ward.
05:26:28  19           THE COURT:  And you understand you're required to
05:26:30  20   use at least 20 minutes in your first opening?
05:26:33  21           MR. FENSTER:  Understood, Your Honor.
05:26:34  22           THE COURT:  All right.  What about closing
05:26:36  23   arguments for Defendants?
05:26:37  24           MR. LERNER:  Mr. Haslam will present closing
05:26:39  25   arguments for Defendants.

05:26:40   1          THE COURT:  All right.  Thank you, counsel.

05:26:43   2          You are excused until Monday morning.  And the

05:26:45   3   Court stands in recess.

05:26:48   4          COURT SECURITY OFFICER:  All rise.

05:26:49   5          (Recess.)

           6

           7

           8                    CERTIFICATION

           9

          10          I HEREBY CERTIFY that the foregoing is a true and

          11   correct transcript from the stenographic notes of the

          12   proceedings in the above-entitled matter to the best of my

          13   ability.

          14

          15

          16    /S/ Shelly Holmes                  3/5/2021
               SHELLY HOLMES, CSR, TCRR            Date
          17   FEDERAL OFFICIAL REPORTER

          18

          19

          20

          21

          22

          23

          24

          25