**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SOLAS OLED LTD.<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG DISPLAY CO., LTD.,<br>SAMSUNG ELECTRONICS CO., LTD.,<br>AND SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>Defendants. | Civil Action No. 2:19-cv-00152-JRG<br><br>███████████<br><br>**ORAL HEARING REQUESTED** |

**DEFENDANTS' RULE 50(b) MOTION FOR**
**JUDGMENT AS A MATTER OF LAW OF NO DAMAGES**

DC: 7531607-2

## TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................................... 1

II.     LEGAL STANDARD.................................................................................................... 1

III.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
        BECAUSE SOLAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO
        SUPPORT THE DAMAGES AWARD. .......................................................................... 1

        A.      ▌▌▌▌▌▌▌▌▌▌▌▌▌ cannot support the jury's damages award
                for the '311 patent. ......................................................................................... 2

        B.      Mr. Dell's testimony based on a cost savings analysis of ITO versus
                external metal mesh touch sensors cannot support a reasonable royalty
                award for the '311 patent. ............................................................................... 5

        C.      Mr. Dell's use of SDC's OLED display module revenues as the royalty
                base cannot support the jury's verdict for the '311 patent....................... 8

        D.      The 2005 UDC-SDI Agreement cannot support the '338 patent damages
                award. ............................................................................................................ 11

        E.      The post-2005 UDC portfolio license agreements cannot support the jury's
                damages award for the '338 patent. ...................................................... 15

        F.      Solas's running royalty evidence cannot as a matter of law support the
                jury's lump sum awards for the '311 and '338 patents.......................... 16

        G.      Solas failed to present any evidence that the ▌▌▌▌▌▌▌▌
                ▌▌▌▌▌▌ is comparable to the hypothetical negotiations. ................ 19

IV.     CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega,*
    708 F.3d 614 (5th Cir. 2013) ...................................................1

*Applied Med. Res. Corp. v. U.S. Surgical Corp.,*
    435 F.3d 1356 (Fed. Cir. 2006)...............................................21

*CSIRO v. Cisco Sys., Inc.,*
    809 F.3d 1295 (Fed. Cir. 2015)............................................9, 10

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC,*
    927 F.3d 1292 (Fed. Cir. 2019)...............................................19

*Eli Lilly & Co. v. Aradigm Corp.,*
    376 F.3d 1352 (Fed. Cir. 2004).................................................1

*Ericsson, Inc. v. D-Link Sys., Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014)..................................................6

*Garretson v. Clark,*
    111 U.S. 120 (1884)................................................................10

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970)...........................................6

*Guile v. United States,*
    422 F.3d 221 (5th Cir. 2005) ...............................................1, 8

*i4i Ltd. P'ship v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010)...................................................2

*Kaist IP US LLC v. Samsung Elecs. Co., Ltd.,*
    439 F. Supp. 3d 860, 887 (E.D. Tex. 2020) ............................18

*LaserDynamics, Inc. v. Quanta Comput., Inc.,*
    694 F.3d 51 (Fed. Cir. 2012)........................................... *passim*

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009).................................................17

*Oiness v. Walgreen Co.,*
    88 F.3d 1025 (Fed. Cir. 1996)....................................................1

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd.*,
    No. 6:18-CV-00388, 2018 WL 10126008 (E.D. Tex. Oct. 26, 2018) ....................................19

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011)................................................................................................7

*Prism Techs. LLC v. Spring Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017)..............................................................................................20

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)...........................................................................................2, 19

*Spring Commc'ns Co., L.P. v. Charter Commc'ns, Inc.*,
    No. 17-1734-RGA, 2021 WL 982732 (D. Del. Mar. 16, 2021) ............................................21

*Spring Commc'ns Co., L.P. v. Time Warner Cable, Inc.*,
    760 Fed. Appx. 977 (Fed. Cir. 2019) ....................................................................................21

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)................................................................................................1

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013)..............................................................................................11

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).........................................................................................1, 10

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)....................................................................................................1

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010).....................................................................................2, 13, 17

**Other Authorities**

Federal Rule of Civil Procedure 50(b)............................................................................................1

## I.      INTRODUCTION

Defendants Samsung Display Co., Ltd. ("SDC"), Samsung Electronics Co., Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA") respectfully move under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law ("JMOL") of no damages. Defendants also respectfully request an oral hearing.

## II.     LEGAL STANDARD

JMOL is proper when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). Jury findings must be supported by "substantial evidence," which is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004). Conclusory expert testimony does not qualify as substantial evidence. *See, e.g.*, *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014) (applying Fifth Circuit law). Inferences that "would be 'mere speculation and conjecture'" are also "not sufficient to support a jury's verdict." *Guile v. United States*, 422 F.3d 221, 226 (5th Cir. 2005).

## III.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE SOLAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE DAMAGES AWARD.

It was Solas's burden to prove damages. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996). Royalty opinions that are "arbitrary" or "unrelated to the facts of th[e] case" are "unreliable" and "irrelevant" as a matter of law. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317–18 (Fed. Cir. 2011). A jury's award cannot be the result of "surmise and conjecture, 'divorced from proof of economic harm linked to the claimed invention . . . and inconsistent with sound damages jurisprudence.'" *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33–34 (Fed. Cir. 2012). "Any evidence unrelated to the claimed invention does not support compensation

for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). On a JMOL motion, the court must determine whether there was "a sufficient evidentiary basis" for the jury's damages award. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856–57 (Fed. Cir. 2010). Here, because there is not substantial evidence to support the damages awards, Defendants' motion for JMOL should be granted.

**A.    The ███████████████████ cannot support the jury's damages award for the '311 patent.**

For his '311 patent analysis, Mr. Dell relied on the royalty rates from the portfolio license agreement between ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████ Mr. Dell's analysis cannot provide substantial evidence for the jury's award.

*First*, Solas failed to establish the comparability of the ███████████████████ the hypothetical negotiation for the '311 patent. *See Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them."). No evidence was presented of technical comparability. Mr. Credelle offered no testimony about the ███████████████████ or the licensed patents, and neither expert considered the fact that, when the ███████████████████, the '311 patent had not issued, and all of the pending claims in the application (which eventually led to the '311 patent) stood rejected based on prior art.[1] *See, e.g.*, DTX-6 ('311 Patent File History) at 0427–0444 (March 19, 2015 Office Action);

---

[1] It was only months later, after the ███████████████████ had already been executed, that the applicant even amended the pending claims to introduce the limitation that the "touch sensors are configured to wrap around one or more edges of a display," and it was not until February 2016 that the '311 patent issued. *See* DTX-6 ('311 Patent File History) at 0447–0457 (June 19, 2015 (continued…)

████████████████████████ Mr. Dell therefore had no foundation to opine on a reasonable royalty for the '311 patent based on the ████████████████.

In addition, Mr. Dell did not establish economic comparability. Mr. Dell failed to address how ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ As Mr. Shaikh explained, the ████████████████ was executed as part of Atmel's transfer of "manufacturing [capabilities], the employees, factory, everything" to Uni-Pixel. 3/2/2021 Tr. (Public) 307:10–16 (Mr. Shaikh); *see also e.g.*, *id.* at 320:1–322:1 (Mr. Shaikh).

*Second*, Mr. Dell failed to properly apportion the royalty rate used in the ██████████ ████████ ████████████████████████ ████████████ which are a small fraction of the cost of ***OLED display modules*** that Mr. Dell used as the royalty base for his analysis (*see, e.g.*, 3/3/2021 Tr. (Public) 439:3–20, 444:5–14 (Mr. Dell); 3/2/2021 Tr. (Public) 301:6–11, 318:9–18 (Mr. Shaikh)). Mr. Dell did not even mention this difference in his testimony, and improperly inflated his damages figures by failing to adjust the royalty rate he took from the ██████████████████ to account for the drastically different royalty bases. Moreover, Mr. Dell failed to apportion the royalty rate of the ████████ ████ Agreement to reflect that the application for the '311 patent was just one application among ████████████████████████████████████████ and was

_____

Response to Office Action); *id*. at 0488–0496 (September 24, 2015 Notice of Allowance); ████████
████████████████████████████

not among the most valuable assets in the patent portfolio. In fact, when asked whether the "'311 patent [was] fundamental to the Uni-Pixel deal," Mr. Shaikh testified that the "focus was [the] manufacturing [patents]" in the portfolio, which did not include the application for the '311 patent. 3/2/2021 Tr. (Public) 320:1–321:14 (Mr. Shaikh). Mr. Dell, however, failed to carry out any apportionment analysis to account for the value attributed to the other patents and patent applications in the portfolio.

Evidence presented by Defendants concerning a reasonable royalty for the '311 patent confirms that Solas failed to present legally sufficient evidence to support the damages award for the '311 patent, and that, at most, the reasonable royalty would be a fully paid-up lump sum of no more than $500,000. *See generally* 3/5/2021 Tr. (Public) 735:13–737:8 (Mr. Kim); 3/5/2021 Tr. (Public) 738:19–749:18 (Mr. Martinez); ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

The real-world evidence concerning the value of the '311 patent was also supported by comparable license agreements entered into by ██ ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**B.** **Mr. Dell's testimony based on a cost savings analysis of ITO versus external metal mesh touch sensors cannot support a reasonable royalty award for the '311 patent.**

To apportion the royalty rate of the ████████████████████████████ ████████████████████████████████ Mr. Dell testified about ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

Mr. Dell's cost savings theory cannot support the damages award for multiple independent reasons. *First*, Mr. Dell failed to analyze cost savings attributable to the claimed inventions over what existed in the prior art. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("[T]he ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 9: "The utility and advantages of the patent property over the old modes or devices."). ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

But Mr. Dell's premise is clearly and indisputably incorrect. Even Solas's counsel conceded that the '311 patent did not invent metal mesh touch sensors. *See, e.g.*, 3/1/2021 Tr. (Public) 204:9–11 ("metal mesh . . . [i]t's not something we invented, but metal mesh sensors ***that wrap around the edge*** is the invention" (emphasis added)); ████████████████████████████████

████████ For instance, the prior art Yilmaz reference (U.S. Patent App. Pub. No. 2010/0045632 published on February 25, 2010) had disclosed metal mesh touch sensors. *See, e.g.*, DTX-167 ¶¶ 22, 155–56; 3/2/2021 Tr. (Public) 358:7–10 ("[MR. HASLAM]: [T]his patent [DTX-167] described . . . a touch sensor . . . with copper wiring in a mesh pattern, correct? [MR. YILMAZ]: Yes."). Other prior art references cited during the prosecution of the '311 patent also disclosed

metal mesh touch sensors, and prosecution claims directed to metal mesh touch sensors were rejected by the Patent Office based on the prior art. *See, e.g.*, DTX-6 ('311 Patent File History) at 0427–0444 (March 19, 2015 Office Action). Dr. Sierros explained that metal-mesh touch sensors were known in the art prior to the '311 patent. *See, e.g.*, 3/4/2021 Tr. (Public) 661:13–663:3. However, Mr. Dell's analysis was based solely on purported costs of using "metal mesh," a feature well known in the prior art. Nothing in Mr. Dell's cost-savings analysis concerned or considered costs of metal mesh touch sensors specifically configured to wrap around the edge of a display.

*Second*, even apart from Mr. Dell's improper comparison of costs of ITO touch sensors to external metal mesh touch sensors that were known in the prior art and were not an alleged invention of the '311 patent, ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████. Mr. Dell's analysis failed to assess or calculate "the benefit conferred to the infringer by use of the patented technology." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (discussing "estimated cost savings from use of the ***infringing product***" as a "method of determining a reasonable royalty" (emphasis added)).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



In fact, the cost information on which Mr. Dell relied was for external metal mesh touch sensors that ██████████████████████████████████████████████████████████

Thus, the costs of external metal mesh touch sensors referenced in ████████████ ████████—sensors which did not practice any asserted claim of the '311 patent, were not used in any accused product, ██████████████████████████████—cannot provide any evidence of the purported value of the asserted claims of the '311 patent or any cost-savings attributable to the claimed inventions. At best, Mr. Dell's analysis amounted to "mere speculation and conjecture" that is "not sufficient to support [the] jury['s] verdict." *Guile*, 422 F.3d at 225.

### C. Mr. Dell's use of SDC's OLED display module revenues as the royalty base cannot support the jury's verdict for the '311 patent.

Mr. Dell's analysis relied on the entire OLED display module as the smallest saleable patent practicing unit ("SSPPU") for the '311 patent and used SDC's revenues from the sale of its

OLED display modules as the royalty base. *See, e.g.*, 3/3/2021 Tr. (Public) 445:9–21 (Mr. Dell). This cannot support the jury's verdict for multiple reasons.

*First*, Mr. Dell incorrectly defined the SSPPU for the '311 patent as the OLED display module instead of the touch sensor, which is a mere component of the OLED display module that SDC markets and sells to its customers. *See, e.g.*, 3/3/2021 Tr. (Public) 470:20–471:1 (Mr. Repice) ("Samsung Display . . . sells to multiple companies . . . [including] Apple and Google."); 3/3/2021 Tr. (Public) 444:15–19 ("[MS. HENRY]: Mr. Dell, did you see documents . . . suggesting that Samsung Display sells OLED display modules . . . to other companies that aren't Samsung companies and even to consumers? [MR. DELL]: Yes, I did.").

In the case of multi-component products such as SDC's OLED display modules, the royalty base should not be "the entire product, but instead on the 'smallest saleable patent-practicing unit,'" as "calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *see also CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("[A] damages model cannot reliably apportion from a royalty base without that base being the smallest salable patent-practicing unit").

Mr. Dell testified that the SSPPU is the OLED display module because ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████ But this is legally erroneous. The asserted claims of the '311 patent do not require a display; they only require a flexible touch sensor and the flexible substrate configured to wrap around the edges of the display and computer-readable storage media. *See, e.g.*, 3/2/2021 Tr. (Public) 314:11–15 (Mr. Shaikh); 3/5/2021 Tr. (Public) 744:15–20 (Mr. Martinez); 3/4/2021 Tr. (Public) 669:22–670:2 (Dr. Sierros). ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████   Where, as here, the "claims are drawn to an individual component of a multi-component product," *i.e.*, the touch sensor component of SDC's OLED display module, "it is the exception, not the rule, that damages may be based upon the value of the multi-component product." *VirnetX*, 767 F.3d at 1326. Further, the difference in value of the multi-component system versus an individual component is stark. For example, Mr. Shaikh testified that Atmel's XSense metal mesh touch sensors were sold for a $1/inch. *See, e.g.*, 3/2/2021 Tr. (Public) 301:6–11, 318:9–18.

*Second*, Mr. Dell relied on total OLED display module revenues for his royalty base without apportioning to only the touch sensor feature set forth in the asserted claims. *See CSIRO*, 809 F.3d at 1301 ("[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features."). ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████   Mr. Dell's analysis thus violates precedent requiring that "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884).

*Third*, Mr. Dell's analysis violated the entire market value rule because he used SDC's revenues from its sale of entire OLED display modules as the royalty base without demonstrating "that the patented feature drives the demand for [the] entire multi-component [display modules]."

*LaserDynamics*, 694 F.3d at 67. Solas provided "no evidence that [the touch sensor technology] alone motivates consumers to purchase [an OLED display], such that the value of the entire [display] can be attributed to the patented [touch sensor technology]." *Id*. at 69. This "fails to satisfy the requirements of [Federal Circuit] precedent to support the usage of the entire market value rule when calculating reasonable royalty damages." *Id*.; *see Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013). Further, Defendants provided unrebutted testimony establishing that the accused touch sensor does not drive consumer demand to purchase display modules or phones; Mr. Repice testified that, from the user perspective, there is no difference in the touch sensing capabilities of the accused Galaxy S8 (which uses an integrated metal mesh touch sensor) versus the Galaxy S8+ (which uses an external ITO sensor and was not accused of infringing the '311 patent). *See, e.g.*, 3/3/2021 Tr. (Public) 476:17–24 (Mr. Repice).

### D.      The 2005 UDC-SDI Agreement cannot support the '338 patent damages award.

There is also no substantial evidence to support the jury's damages verdict on the '338 patent. Solas's evidence was based on a royalty rate in the 2005 UDC-SDI Agreement (PTX-509). This evidence could not support the jury's award, however, because Solas failed to establish this portfolio agreement's comparability to the hypothetical negotiation over the '338 patent. Further, even if the agreement were comparable, the damages award lacks substantial evidence. Undisputed facts establish that under Solas's own damages theory no more than ***half*** of the amount of damages awarded for the '338 patent could be supported.

There was no evidence from which a reasonable jury could find the required technical comparability for the 2005 UDC-SDI Agreement. *See LaserDynamics*, 694 F.3d at 79. Mr. Dell did not analyze technical comparability. He purported to rely on Solas's technical expert, Mr. Credelle, but Mr. Credelle did not even consider the majority of the licensed patents. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ Mr. Dell

lacked foundation to offer reasonable royalty opinions based on the 2005 UDC-SDI Agreement.

Not only did Solas's experts fail to consider the majority of the patents licensed in the 2005

UDC-SDI Agreement, ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

Likewise, there was no evidence from which a reasonable jury could find the required economic comparability. *See Wordtech Sys., Inc.*, 609 F.3d at 1320. Mr. Dell failed to address the fundamental differences in economic circumstances between the hypothetical negotiation and the 2005 UDC-SDI Agreement. █████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ In contrast, it is undisputed that SDC's current products do not infringe the '338 patent and that SDC ceased using the allegedly infringing design for new models well before Solas even filed a complaint alleging infringement. *See, e.g.*, 3/1/2021 Tr. (Public) 207:12–15 (Solas's Opening). █████████████████████████████

███████████████████████████████████████████████████████

██████████ Those circumstances are entirely unlike the hypothetical negotiation in 2013. Further, the agreement licensed UDC's entire portfolio ███████████, when the hypothetical negotiation concerns just one patent. Mr. Dell failed to show any economic comparability of the 2005 UDC-SDI Agreement to a 2013 hypothetical negotiation for the '338 patent.

Not only was the 2005 UDC/SDI agreement idiosyncratic and based on entirely different circumstances than a hypothetical negotiation, but the agreement had also been superseded by a different agreement years before the 2013 hypothetical negotiation date. Mr. Dell failed to offer any testimony regarding how or why a payment structure from a 2005 UDC/SDI agreement would have remained relevant to the April/May 2013 hypothetical negotiation for the '338 patent when it had been renegotiated and superseded in 2011 ███████████████████████ between UDC and Samsung Mobile Display ("SMD") (PTX-535, "2011 UDC-SMD Agreement"). Mr. Dell also

failed to address significant industry changes between the 2005 and 2011 agreements, and how those considerations would have affected the behavior of the parties to the hypothetical negotiation in April/May 2013. Undisputed facts showed, for example, that at the time of the 2005 agreement

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Mr. Dell's opinions based on the 2005 UDC/SDI agreement are unreliable and cannot support a reasonable royalty award.

Lastly, even under Mr. Dell's theory based on the 2005 UDC-SDI Agreement, there is no substantial evidence to support the $27,326,497 damages award for the '338 patent. ████████

████████████████████████████████████████████████████████

Mr. Dell based his analysis on the royalty rate paid by SDC under the 2005 UDC-SDI Agreement, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

14

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

Therefore, even if the 2005 UDC-SDI Agreement were technologically and economically comparable (it is not), there is no substantial evidence for the jury's damages award. Solas's damages theory based on the agreement ████████████████████████████████████

██████████████████████████

**E.     The post-2005 UDC portfolio license agreements cannot support the jury's damages award for the '338 patent.**

In addition to the 2005 UDC-SDI Agreement, Solas introduced several later UDC portfolio license agreements, including 2011 and 2018 agreements with SDC (PTX-535 and PTX-536), a 2008 UDC-Konica Minolta Agreement (PTX-744), and a 2011 UDC-Pioneer Agreement (PTX-743). Yet Solas failed to present any testimony of comparability of these agreements. These agreements cannot support the jury's damages verdict for the '338 patent. █████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

15

Evidence presented by Defendants concerning the reasonable royalty for the '338 patent confirms that Solas failed to present legally sufficient evidence to support the damages award for the '338 patent, and that, at most, the reasonable royalty should be a fully paid-up lump sum of no more than $1,150,000. *See generally* 3/5/2021 Tr. (Public) 735:13–737:8 (Mr. Kim); 3/5/2021 Tr. (Public) 738:19–749:18 (Mr. Martinez); ███████████████████████████

████████████████████████████████████

███████████████████████████ The evidence showed that,

based on the ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████

**F.  Solas's running royalty evidence cannot as a matter of law support the jury's lump sum awards for the '311 and '338 patents.**

There is no substantial evidence to support the amounts of the jury's lump sum awards. Solas's theory and evidence for reasonable royalties for the '311 and '338 patents were based entirely on a running royalty structure and cannot support the jury's lump sum verdicts as a matter

16

of law. Running royalty and lump sum approaches to damages are fundamentally different, and

there would need to be an evidentiary basis to convert one to the other.

> For a jury to use a running-royalty agreement as a basis to award lump-sum damages [] some basis for comparison must exist in the evidence presented to the jury. In the present case, the jury had almost no testimony with which to recalculate in a meaningful way the value of any of the running royalty agreements to arrive at the lump-sum damages award.

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326–30 (Fed. Cir. 2009); *see also Wordtech*

*Sys., Inc.*, 609 F.3d at 1320 (running royalty licenses could not support the lump sum award). Yet

there was no such evidence offered, and the damages award therefore fails as a matter of law.

 Mr. Dell also relied on a purported "cost savings" analysis to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Solas offered no evidence in support of a lump sum

on the '311 patent, let alone how to convert a running royalty to a lump sum.

Likewise, for its '338 patent damages theory, Solas relied on a running royalty rate in the

2005 UDC-SDI Agreement (PTX-509) and asked the jury for $27,326,497 in running royalty

damages. *See, e.g.*, 3/3/2021 Tr. (Public) 454:3–7. Mr. Dell also pointed to UDC's licenses with

Konica Minolta (PTX-744) and Pioneer Corporation (PTX-743)—both of which were running

royalty license agreements—in support of his proposed running royalty damages award for the

'338 patent. *See, e.g.*, 3/3/2021 Tr. (Public) 451:24–453:6 (Mr. Dell).

Solas provided no expert testimony or evidence to allow the jury to convert the running

royalty structures of the UDC licenses into a lump sum award. This is a "significant shortcoming," as "fundamental differences exist between lump-sum agreements and running-royalty agreements." *Lucent Techs*, 580 F.3d at 1329–30.

The only evidence to support lump-sum damages is the evidence offered by Defendants, which does not support anything close to the amounts awarded. *See Kaist IP US LLC v. Samsung Elecs. Co., Ltd.*, 439 F. Supp. 3d 860, 887 (E.D. Tex. 2020) (damages award "unsupported by the evidence" because "jury was not presented with evidence from which to extrapolate beyond th[e] [damages] period to award damages for the entire life of the patent, such as a per unit royalty rate or evidence of the anticipated number of units to be sold throughout the life of the patent"); ▉

▉

▉

▉

In contrast to Solas, Defendants introduced evidence showing that any damages for the '311 and '338 patents should be in the form of a fully paid-up lump sum payment. For the '338 patent, as explained in Section III.E, ▉

▉

▉

▉

▉

▉

▉

▉ Based on the evidence presented at trial of a lump-sum damages structure, no reasonable jury could have

awarded in $27,326,497 as a lump-sum for the '338 patent.

As explained in Section III.A, the evidence further showed that the appropriate reasonable royalty for the '311 patent was a lump sum of no more than $500,000. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████ Based on the evidence presented at trial of a lump-sum damages structure, no reasonable jury could have awarded in $35,412,046 as a lump-sum for the '311 patent.

**G.    Solas failed to present any evidence that the ████████████████ is comparable to the hypothetical negotiations.**

Although Solas repeatedly tied its damages claim at trial to the ████████████

████████████████████████████████████████

████████████████████████ that agreement should not have been admitted into evidence and cannot support the damages verdict because there was no expert testimony that "carefully considered" the "relevant circumstances—such as similarities and differences in technologies and market conditions and the state of the earlier litigation when settled." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019).

Settlement agreements are "not admitted without scrutiny" because they are "likely influenced . . . by the litigation and may skew the results of the hypothetical negotiation." *Papst*

19

*Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd.*, No. 6:18-CV-00388, 2018 WL 10126008, at *1 (E.D. Tex. Oct. 26, 2018) (citing *ResQNet.com*, 594 F.3d at 872 and *LaserDynamics*, 694 F.3d at 77). Precedent requires an "adequate basis" to support the introduction of a settlement agreement, including "creditable expert evidence." *Prism Techs. LLC v. Spring Spectrum L.P.*, 849 F.3d 1360, 1370–71 (Fed. Cir. 2017).

████████████████████████████████████████████████████████████ .

Moreover, it is undisputed that Solas would not even have been a party to the hypothetical

negotiation over the '338 patent (between Casio and SDC) or the '311 patent (between Atmel and

SDC). *See, e.g.*, 3/5/2021 Tr. (Public) 748:1–7 (Mr. Martinez); ████████████████████

████████████████████████████████████████████████████████████

████████████ ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████  would have been "a factor of which the parties would have been aware at the

time of their hypothetical negotiation" in 2013 (for the '338 and '450 patents) and 2017 (for the

'311 patent). *Spring Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 Fed. Appx. 977, 981

(Fed. Cir. 2019). ████████████████████████████████████████████ "when

[it] occurred after the date of the hypothetical negotiation, as the hypothetical negotiation occurred

not 'on the heels' of the settlement agreement[] . . . , but before [it]." *Spring Commc'ns Co., L.P.*

*v. Charter Commc'ns, Inc.*, No. 17-1734-RGA, 2021 WL 982732, (D. Del. Mar. 16, 2021) (citing

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1366 (Fed. Cir. 2006)).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter JMOL of

no damages.

21

Dated: April 19, 2021

Respectfully submitted,

*/s/ Melissa R. Smith*

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

Jeffrey H. Lerner
jlerner@cov.com
Jared R. Frisch
jfrisch@cov.com
Daniel W. Cho
dwcho@cov.com
Tarek J. Austin
taustin@cov.com
Eric T. O'Brien
eobrien@cov.com
David J. Cho
djcho@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Fax: (202) 662-6291

Robert T. Haslam
rhaslam@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Phone: (650) 632-4700
Fax: (650) 632-4800

**COUNSEL FOR DEFENDANTS SAMSUNG DISPLAY
CO., LTD., SAMSUNG ELECTRONICS CO., LTD.,
AND SAMSUNG ELECTRONICS AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this April 19, 2021.


*/s/ Melissa R. Smith*
Melissa R. Smith